**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| HAWES, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>MACY'S INC., *et al.*,<br><br>                    Defendants. | Civil Action: 1:17-CV-00754<br><br>Judge Timothy S. Black |

**DEFENDANT AQ TEXTILES, LLC'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant AQ Textiles, LLC ("AQ"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) and Local Rule 7.2(a)(1), submits this Memorandum in support of its Motion to Dismiss Plaintiffs' claims.

**INTRODUCTION**

First, as a threshold matter, Plaintiffs' allegations are insufficient to establish that this Court has personal jurisdiction over AQ warranting dismissal under Rule 12(b)(2). Second, Plaintiffs' class-action claims must be dismissed for lack of standing pursuant to Rule 12(b)(1) to the extent they are based on products the named Plaintiffs did not purchase. Third, Plaintiffs' claims must be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

**PLAINTIFFS' ALLEGATIONS**

Despite over 175 paragraphs of allegations and ten separate claims for relief, Plaintiffs' claims can be boiled down to one sentence: Plaintiffs allege that sheets they bought in California and Missouri, respectively, were labeled with incorrect thread counts. Plaintiffs' Complaint makes only a handful of specific allegations with respect to AQ. Plaintiffs allege that AQ is a

North Carolina LLC with its principal place of business in North Carolina. Compl. ¶ 16. They also allege AQ "imports and distributes the relevant sheet and bedding products" to AQ's fellow defendant, Macy's, Inc. ("Macy's"). *Id.* ¶ 18. Plaintiffs do not allege any conduct by AQ in Ohio or any connection between AQ and Ohio.

Plaintiffs allege that the specific sheet sets purchased by the named Plaintiffs were "imported" by AQ. *Id.* ¶¶ 38-39. They also assert that AQ and another defendant, Creative Textiles Pvt. Ltd. ("Creative"), "made false written representations as to the thread count of their sheets and bedding products, at least, on product packaging," *id.* ¶ 41, and that they "sold sheets and bedding products with inflated thread counts in order to obtain more business, and sell more products in a competitive market." *Id.* ¶ 45. They do not allege any direct contact between AQ and Plaintiffs, nor do they allege that AQ made any representations directly to Plaintiffs. Instead, they allege that Plaintiffs are "intended third-party beneficiaries" of (unidentified) contracts between AQ and other Defendants, the terms of which they only guess at. *Id.* ¶ 86.

Plaintiffs vaguely allege that AQ and the other Defendants "knew or had reason to know that the thread counts on the sheets and bedding products were false or deceptive" because the retail prices were lower than other sheets with similarly advertised thread counts. *Id.* ¶ 49.[1] They also claim, on information and belief, that AQ "participated in developing the labeling and packaging with inflated thread counts, and either knew or should have known that the advertised thread counts were false." *Id.* ¶ 37. Those two allegations—one of which asserts knowledge based on publicly available information and the other made only on information and belief—constitute the <u>only</u> allegations that AQ knew of the allegedly inaccurate thread count.

---

[1] This allegation attributes the same knowledge to consumers that AQ allegedly had as to the thread count and quality of the bed sheets. Plaintiffs do not allege that AQ had any knowledge of or control over the retail price of the sheets.

Those vague statements are the closest thing to specific allegations about AQ's conduct in the 37-page Complaint. The remaining material allegations are generally made against all Defendants collectively, without specifying their individual roles, and/or on information and belief. Plaintiffs assert ten claims for relief against AQ: 1) Violation of the Magnuson-Moss Warranty Act ("MMWA"); (2) Violation of the Missouri Merchandising Practices Act ("MMPA"); (3)-(5) violations of the California Unfair Competition Law ("UCL"); (6) violation of the California False Advertising Law ("FAL"); (7) violation of the California Consumer Legal Remedies Act ("CLRA"); (8) Breach of Implied Warranty of Merchantability; (9) Breach of Express Warranty; and (10) Fraud. Each of those claims is asserted on behalf of either or both of a California class and a Missouri class, as well as an alternative nationwide class and alternative classes for each of the other forty-eight states.

## ARGUMENT

### I.     PLAINTIFFS' CLAIMS AGAINST AQ MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2).

Plaintiffs' claims should be dismissed for lack of personal jurisdiction. Plaintiffs bear the burden of establishing a *prima facie* case of personal jurisdiction. *Walters v. Naphcare, Inc.*, No. 3:09cv136, 2010 U.S. Dist. LEXIS 32520, at *13-14 (S.D. Ohio Mar. 31, 2010). The plaintiff's burden is met "only when it 'set[s] forth specific facts that support a finding of jurisdiction.'" *Id.* at *14 (quoting *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)).

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States

Constitution."[2] *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). Ohio's long-arm statute does not extend to the constitutional limits of due process; as a result, if a plaintiff cannot satisfy the due process requirements, the long arm statute will not be satisfied. *Wang v. YCMG Brands, LLC*, No. 1:17-cv-0008, 2017 U.S. Dist. LEXIS 190574, at *7 (S.D. Ohio Nov. 17, 2017).

    **A.  The exercise of jurisdiction would not be compatible with due process.**

 "There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." *Conn v. Zakharov*, 667 F.3d 705, 712-13 (6th Cir. 2012).

    **i.  There is no general jurisdiction over AQ in Ohio.**

In *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the United States Supreme Court held that jurisdiction over out-of-state corporate entities is only appropriate "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id*. at 754 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Court further stated that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 760. For a corporation or similar entity, the "paradigm" states that a corporation will be "essentially at home" in the state of its incorporation and in the state in which it has its principal place of business. *Id; see also BNSF Ry. v. Tyrrell,* 137 S. Ct. 1549, 1559 (2017).

While the Sixth Circuit has not yet had occasion to seriously consider *Daimler*, the Second, Fifth, Seventh, and Ninth Circuits have all read *Daimler* to stand for the proposition that

---

[2] It is true that Plaintiffs assert a federal claim under the MMWA, so jurisdiction is not based solely on diversity, but the Sixth Circuit has held that the same process applies to federal question claims. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002).

"except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Id.* at *22 (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016)); *accord Wang v. YCMG Brands, LLC*, No. 1:17-cv-0008, 2017 U.S. Dist. LEXIS 190574, at *9 (S.D. Ohio Nov. 17, 2017).

AQ is a North Carolina limited liability company with its principal place of business in North Carolina. Plaintiffs do not make a single specific allegation that could credibly tie AQ to Ohio, much less render it "at home" outside its home state of North Carolina. Therefore, there cannot be general jurisdiction over AQ in Ohio.

### ii.  There is no specific jurisdiction over AQ with respect to Plaintiffs' claims.

The specific jurisdiction inquiry is much different from general jurisdiction. As this Court has explained:

> In order for a state court to exercise specific jurisdiction, the *suit* must aris[e] out of or relat[e] to the defendant's contacts with the *forum*. In other words, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.

*Wang v. YCMG Brands, LLC*, No. 1:17-cv-0008, 2017 U.S. Dist. LEXIS 190574, at *9 (S.D. Ohio Nov. 17, 2017) (alterations in original) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017)).

The Supreme Court in *Bristol-Myers Squibb* recognized that specific jurisdiction does not exist over class action claims with no connection to the forum. 137 S. Ct. at 1780. Consistent with that limitation, other district courts have held that, "for the determination of specific personal jurisdiction in a class action, 'it is the named plaintiff's claim that must arise out of or

result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification.'" *Aliano v. Quaker Oats Co.*, No. 16 C 3087, 2017 U.S. Dist. LEXIS 1158, at *13-14 (N.D. Ill. Jan. 4, 2017) (quoting *Ambriz v. Coca Cola Co.*, No. 13-CV-03539, 2014 U.S. Dist. LEXIS 9870, at *6 (N.D. Cal. Jan. 27, 2014)). Out-of-state named plaintiffs whose claims arise from conduct in their home states cannot claim specific jurisdiction exists just because unnamed purported class members may have claims which arise from in-state conduct.

The District Court for the Northern District of Illinois recently considered whether it had specific jurisdiction over a class-action defendant in a situation similar to this one. In *DeMaria v. Nissan North America, Inc.*, No. 15 C 3321, 2016 U.S. Dist. LEXIS 11295 (N.D. Ill. Feb. 1, 2016), seventeen named plaintiffs from sixteen states sued Nissan North America, Inc., asserting claims on behalf of sixteen putative state-specific classes. *Id.* at *13-14. The plaintiffs alleged that Nissan had knowingly marketed and sold cars with defects throughout the country, including in Illinois.

Nissan moved to dismiss for lack of personal jurisdiction. The plaintiffs argued that the court had specific jurisdiction over Nissan "based on their allegations that 'Nissan is registered to conduct business in Illinois'; 'intentionally avails itself of the markets within Illinois through the promotion, sale, marketing and distribution of its vehicles'; and 'manufactures, markets, distributes and warrants automobiles in the United States.'" *Id.* at *20. The court found that personal jurisdiction was lacking with respect to every claim except the ones made by the lone Illinois plaintiff, who was "the only plaintiff who purchased her car in Illinois and the only plaintiff whose claim can fairly be said to arise out of any activity taking place in, or directed at, Illinois." *Id.* at *21. As for the other plaintiffs, their complaint did not "allege that anything

[Nissan] did in Illinois had anything to do with any of the other plaintiffs' claims, or that any of their claims arose out of activities by [Nissan] tied to Illinois." *Id.*; *see also Famular v. Whirlpool Corp.,* No. 16 CV 944, 2017 U.S. Dist. LEXIS 8265, at *15-18 (S.D.N.Y. Jan. 19, 2017) (reaching same result). Therefore, the claims of the non-Illinois plaintiffs were dismissed.

The holding in *DeMaria* demonstrates that, in a class action arising out of the sale of consumer products, there can be specific jurisdiction over a defendant only with respect to the claims of those Plaintiffs whose claims arise out of the defendant's in-forum conduct. Here, neither of the named plaintiffs alleges any in-forum conduct by AQ. In fact, it is impossible to imagine how the named Plaintiffs' claims could arise out of any conduct occurring in Ohio, since they allege that they reside (and bought the products at issue) in California and Missouri, respectively. Without any specific allegations that tie AQ's conduct to Ohio, no person who bought sheets outside of Ohio could hope to establish specific jurisdiction over AQ in Ohio. Therefore, there is no specific jurisdiction over AQ with respect to the named Plaintiffs' claims.

Plaintiffs' allegations fail to establish any basis for the exercise of either general or specific personal jurisdiction over AQ; the claims against AQ should be dismissed with prejudice.

**B. AQ is not subject to personal jurisdiction under Ohio's long-arm statute.**

As discussed above, because Plaintiffs cannot satisfy the requirements of federal due process, they cannot satisfy the narrower requirements of the Ohio long-arm statute. Regardless of the due process inquiry, Plaintiffs cannot satisfy the requirements of Ohio's long-arm statute.

Ohio's long-arm statute, Ohio Rev. Code § 2307.382, provides several possible bases for the exercise of personal jurisdiction. Each of the possible bases, however, revolves around one of three essential ties to Ohio: some action taken in Ohio, an injury caused in Ohio, or the

involvement of property which is located in Ohio. *See* Ohio Rev. Code § 2307.382(A)(1-9).

Even where the plaintiff alleges one of those three elements, the long-arm statute only provides

for jurisdiction over "a cause of action arising from acts enumerated in this section." Ohio Rev.

Code § 2307.382(C). In other words, a plaintiff must not only allege some act or harm occurring

in Ohio, but also that her claims actually <u>arise</u> from such act or harm.

Similarly, Plaintiffs have not satisfied the requirements for the long-arm statute for; they

do not allege <u>any</u> act or omission occurring in Ohio with respect to AQ. Instead, Plaintiffs make

only the boilerplate allegation that "Defendants conduct business in this District, and have

intentionally availed themselves of the laws and markets of this District, and a substantial part of

the events of omissions giving rise to the claims occurred in this district." Compl. ¶ 8. The rest of

the Complaint is <u>entirely</u> devoid of any specific allegation of conduct by AQ, or harm to

Plaintiffs, occurring in Ohio; in fact, the named Plaintiffs purchased the products at issue in

California and Missouri, respectively. Compl. ¶¶ 11-12. Plaintiffs cannot satisfy the requirements

of Ohio's long-arm statute, and there is no personal jurisdiction over AQ.

## II. PLAINTIFFS' CLASS-ACTION CLAIMS MUST BE DISMISSED FOR LACK OF STANDING TO THE EXTENT THEY ARISE FROM THE SALE OF PRODUCTS THAT THE NAMED PLAINTIFFS DID NOT BUY.

The Court lacks subject matter jurisdiction for claims brought by parties without

standing,. *Goleta Nat'l Bank v. O'Donnell*, 239 F. Supp. 2d 745, 761 (S.D. Ohio 2002). Where a

named plaintiff in a class-action lawsuit attempts to assert class-action claims with respect to

products she did not actually buy, those claims must be dismissed for lack of standing. *See, e.g.*,

*Murray v. Sears, Roebuck & Co.*, No. C 09-5744 CW, 2014 U.S. Dist. LEXIS 18082, at *31-32

(N.D. Cal. Feb. 12, 2014) ("A plaintiff therefore may not represent a class in bringing CLRA

claims based on products that he or she never purchased."); *Pearson v. Target Corp.*, No. 11 CV

7972, 2012 U.S. Dist. LEXIS 187208, at *3-4 (N.D. Ill. Nov. 9, 2012) ("[H]ow could [plaintiff] possibly have been injured by representations made on a product he did not buy?"); *Granfield v. Nvidia Corp.*, No. C 11-05403 JW, 2012 U.S. Dist. LEXIS 98678, at *18-19 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing.").

One decision of the District Court for the Northern District of Ohio is particularly instructive. In *Godec v. Bayer Corp.*, No. 1:10-CV-224, 2011 U.S. Dist. LEXIS 131198 (N.D. Ohio Nov. 11, 2011), the named plaintiff attempted to assert class-action claims arising from alleged misrepresentations made by a pharmaceutical company in marketing two separate types of "Men's One-a-Day" vitamins—one of which he had purchased and one of which he had never purchased. *Id.* at *5-6. Despite the similarities in the alleged misrepresentations, the court refused to allow class-action claims with respect to the product which the named plaintiff had not purchased, holding that the named plaintiff lacked standing to assert those claims. *Id.* at *8.

Despite each having purchased only one specific sheet set (Compl. ¶¶ 38-39), the named Plaintiffs seek to assert class claims on behalf of "all persons" in California and Missouri (or, alternatively, nationwide) who purchased <u>any</u> set of sheets "that was manufactured or supplied by [AQ] and/or [Creative] and that was packaged or advertised with a representation regarding thread count." Compl. ¶ 51. As in *Godec*, Plaintiffs cannot have standing to proceed with claims for any products except the ones they actually purchased.

Plaintiffs' attempt to assert claims for products beyond the ones they purchased is even more problematic because they have not identified all the products they claim to be suing over. They included in their Complaint a long list of sheet product lines allegedly sold by Macy's (*id.*

¶ 14), and later allege that Macy's represented that "numerous" (unidentified) other products had inflated thread counts (*id.* ¶ 35). They do not say whether any representations regarding thread count were made for those product lines, nor do they say whether or how they have any information that any thread counts for those additional lines are incorrect. Such vague allegations serve to further emphasize the fact that the named Plaintiffs are not in position to assert claims for products they did not purchase. Their claims for any product except the two they actually purchased should be dismissed under Rule 12(b)(1) for lack of standing.

## III. PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER TO RULE 12(b)(6).

A plaintiff's claims are subject to dismissal under Rule 12(b)(6) when the allegations fail to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79. To satisfy the "facial plausibility" standard and survive a Rule 12(b)(6) motion, a plaintiff must do more than simply plead facts that hint at the "sheer possibility that a defendant has acted unlawfully." *Id.*

### A. Plaintiffs' MMWA claims are defective and must be dismissed.

Plaintiffs assert claims under the MMWA for breach of express written warranties and breach of implied warranties. Their MMWA claims must be dismissed for failure to state a claim.

The MMWA provides a federal cause of action for breach of a "written warranty" or an implied warranty with respect to consumer goods. The MMWA defines "written warranty" as:

(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6). The MMWA does not define "implied warranty," instead providing the scope of an implied warranty is defined by the state law creating the implied warranty. *Id.* § 2301(7).

The portion of the MMWA which creates a civil remedy is 15 U.S.C. § 2310(d). That section provides that a consumer who is damaged by a seller's failure to comply with a written or implied warranty may file a civil suit for damages in state or federal court. However, 15 U.S.C. § 2310(e) provides that neither a class action nor an individual claim brought under subsection 2310(d) for a failure to comply with a warranty may proceed on the merits "unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply." In the case of a class action suit, the same subsection provides that "such reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant that they are acting on behalf of the class."

Plaintiffs' MMWA claims fail in part or in whole for multiple reasons. First, to the extent Plaintiffs' MMWA claims rely on a written warranty, those claims fail because Plaintiffs have not alleged the existence of a "written warranty" as defined by the MMWA. The only written warranty that Plaintiffs claim existed was Defendants' alleged warranty "that the sheeting and bedding products had a certain true and accurate thread count." *See* Compl. ¶ 79. This does not

meet the definition of "written warranty" contained in the MMWA, which is limited to a warranty which "affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time" or which includes a promise "to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking." *See* 15 U.S.C. § 2301(6); *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 615-16 (E.D. Mich. 2017) ("[A] mere 'product description' may implicitly promise a product will meet expectations or not fall short, but it does not affirmatively promise defect-free performance and it therefore falls outside MMWA's definition." (citing *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014))).

While the Complaint contains allegations that attempt to mirror the "certain level of performance over a certain period of time" language outlined in the MMWA, *see* Compl. ¶¶ 79-80, those allegations are merely attempts to recast a representation regarding thread count as one regarding performance over time—which it is not. Because Plaintiffs have not alleged the existence of a written warranty as defined in the MMWA, their MMWA claims must be dismissed to the extent they rely on an alleged "written warranty."[3]

Second, Plaintiffs' MMWA claims against AQ fail in their entirety because they did not provide AQ with notice and an opportunity to cure before filing their MMWA claims, as required by subsection 2310(e). Plaintiffs acknowledge this failure and attempt to excuse it by arguing that providing an opportunity to cure in this case would have been "unnecessary and futile." *See* Compl. ¶ 87. However, the MMWA contains no "futility" exception, and the Sixth

---

[3] AQ also argues that Plaintiffs' implied warranty claims must be dismissed for failure to state a claim. If those claims are dismissed, it also follows that Plaintiffs' MMWA claims would be dismissed to the extent they rely on the breach of the implied warranty of merchantability.

Circuit has refused to create one. *See Kuns v. Ford Motor Co.*, 543 F. App'x 572, 576 (6th Cir. 2013) (holding that notice requirement cannot be waived just because "a plaintiff subjectively determines that demand would be futile and does not so much as request the seller to cover the necessary repair"); *see also Colley v. P&G*, No. 1:16-cv-918, 2016 U.S. Dist. LEXIS 137725, at *35-36 (S.D. Ohio Oct. 4, 2016). As a result, the Plaintiffs' MMWA claims must be dismissed in their entirety.

### B. Plaintiffs' claims for breach of the warranty of merchantability must be dismissed because they have not alleged that the products they purchased are unfit for ordinary use.

Under Missouri law, to state a claim for breach of implied warranty of merchantability, a plaintiff must show "(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of the sale, (3) injury and damages to the plaintiff or his property (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury." *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011); *see also* Mo. Rev. Stat. § 400.2-314(2). Under California law, a claim for breach of implied warranty of merchantability will accrue if one of the following conditions is not met: the goods "(1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791(a).

In both states, the fundamental inquiry for a claim of breach of implied warranty of merchantability is whether "the product lacks even the most basic degree of fitness for ordinary use." *Birdsong v. Apple, Inc.*, 590 F.3d 955. 958 (9th Cir. 2009); *see also Ragland Mills, Inc. v. General Motors Corp.*, 763 S.W.2d 357, 360 (Mo. App. 1989) ("The implied warranty of

merchantability does not mean a promise by the merchant that the goods are exactly as the buyer expected, but rather that the goods *satisfy a minimum level of quality*."). Two cases, one from Missouri and one from California, demonstrate why the sheets at issue here readily satisfy "a minimum level of quality" and possess "fitness for ordinary use."

In the Missouri case, the plaintiff alleged he bought products with labels indicating certain levels of carbohydrates that affected blood sugar. *Johnson v. Atkins Nutritionals*, No. 2:16-cv-04213-MDH, 2017 U.S. Dist. LEXIS 208995, at *32 (W.D. Mo. Mar. 29, 2017). As here, the plaintiff made only general allegations that the product was not merchantable. *Id.* The court held this was insufficient:

> The products at issue are food products, and Plaintiff's allegations give no reason to believe that the products were unfit for their ordinary purpose: consumption as food by humans. Rather, Plaintiff's complaint is fundamentally premised on allegations that the products did not meet Plaintiff's expectations. That is not sufficient to establish a breach of the implied warranty of merchantability.

*Id.* In the California case, plaintiffs complained that their beverages had less than the promised amount of liquid. *See Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1028 (N.D. Cal. 2016). The court, in dismissing the plaintiffs' claim for implied warranty of merchantability, held that the plaintiffs did not allege "that the lattes were unfit for consumption; rather, Plaintiffs' allegations are that they wanted *more* latte—latte totaling the amount promised." *Id.* at 1032.

The named Plaintiffs have not alleged that the sheets were unfit for use as sheets. They make no complaints regarding the softness, comfort, or durability of the sheets; they do not even allege that they ever <u>used</u> the sheets. Rather, the named Plaintiffs' allegations are that the purported "actual" thread count of the sheets failed to meet their expectations—to paraphrase the *Strumlauf* decision, they want "threads totaling the amount promised." As in *Strumlauf* and

*Johnson*, the named Plaintiffs' claim for breach of the implied warranty should be dismissed because they have not alleged that the sheets are "unfit" for their intended purpose.

### C. Plaintiff's fraud-based claims must be dismissed.

Plaintiffs make a claim for fraud under both California and Missouri law (Count Ten). In addition to Plaintiffs' fraud claim (Count Ten), Plaintiffs' Counts Two, Three, Four, Five, Six, and Seven (statutory consumer protection claims) sound in fraud. These claims must all be dismissed because they were not pled with sufficient particularity.

Under Rule 9(b) of the Federal Rules of Civil Procedure, allegations of fraud must be made both "with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993). Allegations made on "information and belief" do not meet the particularity requirement. *Carr v. Countrymark Coop., Inc.*, Case No. C-2-96-1246, 1998 U.S. Dist. LEXIS 23000, at *6 (S.D. Ohio Jan. 29, 1998). This requirement is designed to protect defendants from fishing expeditions and claims that can do great harm to a business's reputation. *See Jones v. Petland, Inc.*, No. 2:08-cv-1128, 2010 U.S. Dist. LEXIS 12538, at *9 (S.D. Ohio Feb. 11, 2010). Accordingly, "[t]he Sixth Circuit has explained that a fraud claim must set forth the who, what, when, where, and how of the purported fraud." *Culy Constr. & Excavating, Inc. v. Laney Directional Drilling Co.*, No. 2:12-cv-4, 2012 U.S. Dist. LEXIS 79575, at *18 (S.D. Ohio June 8, 2012) (citing *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)).

When the defendant is a corporation, "the plaintiff's burden . . . is even greater . . . . The plaintiff must allege the names of the of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Malifrando v. Real Time Resolutions, Inc.*, No. 2:16-cv-0223-TLN-GGH-

PS, 2016 U.S. Dist. LEXIS 164497, at *23 (E.D. Cal. Nov. 26, 2016) (quoting *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996)) (internal quotation marks omitted). "The circumstances of the alleged fraud must be specific enough 'to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *In re Toyota Motor*, 754 F. Supp. 2d at 1170 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Missouri courts have held that the Rule 9(b) particularity standard applies to claims brought under the MMPA (Count Two). *Johnsen v. Honeywell Int'l Inc.*, No. 4:14CV594 RLW, 2016 U.S. Dist. LEXIS 40964, at *6 (E.D. Mo. Mar. 29, 2016). "[I]n an MMPA claim, Plaintiff must identify the 'who, what, where, when, and how' of the alleged fraud 'to allow Defendant to prepare a defense to the MMPA charges.'"[4] *Id.* at *7-8. Similarly, the Ninth Circuit Court of Appeals has held that the requirements of Rule 9(b) apply not just to common-law fraud claims, but also to claims under the UCL (Counts Three, Four, and Five); the FAL (Count Six); and the CLRA (Count Seven). *See Toyota Motor*, 754 F. Supp. 2d at 1170; *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (noting the same as to the CLRA and UCL).

Plaintiffs' allegations fall far short of the required specificity. There are only two allegations which arguably link AQ to any specific fraudulent representations: in Paragraph 37, Plaintiffs allege "on information and belief" that AQ "knowingly participated in developing the labeling and packaging with inflated thread counts"; and in Paragraph 41, Plaintiffs allege that "Defendants Creative Textiles and AQ Textiles made false written representations as to the thread count of the relevant sheets and bedding products, at least, on product packaging."

---

[4] Where there are no allegations that a defendant sold "any goods or merchandise or provide[d] any services to the plaintiffs," the plaintiffs will have failed to state a claim under the MMPA. *Lavender v. Wolpoff & Abramson, L.L.P.*, No. 07-0015-CV-W-FJG, 2007 U.S. Dist. LEXIS 64375, at *6 (W.D. Mo. Aug. 30, 2007). Plaintiffs do not allege that AQ sold the Products to Plaintiffs, and in fact allege that they bought the product from Macy's,

The allegations in Paragraph 37 are made on information and belief and lack a sufficient factual basis to support an inference that the misrepresentations at issue were "knowingly made." That allegation is no fewer than four qualifications short of a direct allegation that AQ made a misrepresentation: (1) on information and belief, AQ (2) participated in (3) developing the (4) labeling and packaging of the allegedly defective products. Such an allegation reflects, at best, inadequate pleading, and at worst, the fishing expedition against which Rule 9(b) guards.

The allegation in Paragraph 41, by contrast, is not made on information and belief. It does suffers from multiple defects. First, it does not distinguish between Creative's conduct and AQ's conduct,[5] and second, it fails to specifically identify the actual misrepresentation purportedly made "on product packaging."[6] As a result, the allegations of Paragraph 41 fall short of specifying the "who, what, when, where, and how" of the alleged fraud as required by Rule 9(b).

Plaintiffs' fraud-based claims also fails the particularity test because the Complaint's sole enumerated basis for the Defendants' purported knowledge that the represented thread counts were incorrect[7] is that the prices of the sheets "were substantially lower than the prices for authentic sheets of the advertised thread counts."[8] *Id.* ¶ 44. This information, however, was equally available to any consumer who purchased the sheets, including the named Plaintiffs. If the basis for the Defendants' knowledge of the allegedly inflated thread count was equally

---

[5] *Accord Swartz v. KPMG, LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant" . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." (internal quotation marks omitted)).

[6] It is unclear whether this allegation refers only to the packaging for the products purchased by Plaintiffs, or the packaging for the "numerous other brands and marks sold by each Defendant." *See* Compl. ¶ 40.

[7] Plaintiffs also make boilerplate allegations to the effect that Defendants "were aware of or should have been aware of" the falsity of thread count representations, but mere restatement of the elements of a claim cannot satisfy even Rule 12(b)(6), much less Rule 9(b). *See* Compl. ¶ 179; *see also id.* ¶¶ 46, 116, 138.

[8] This also renders suspect Plaintiffs' claim that the Defendants were able to charge a premium by inflating the thread counts of the products at issue.

available to the named Plaintiffs, then their reliance on any fraudulent misrepresentations cannot have been justifiable.

Because the Complaint both (a) fails to adequately plead AQ's knowledge of falsity, and (b) undermines the named Plaintiffs' claims to have justifiably relied on AQ's representations, the fraud-based claims asserted against AQ must be dismissed.

### D.  Plaintiffs' claims for damages under the CLRA are defective.

Under Section 1782(a) of the California Civil Code, part of the CLRA, a prospective plaintiff must provide notice to the party allegedly violating the Act "[t]hirty days or more prior to the commencement of an action for damages pursuant to [the CLRA]."[9] The notice must be sent by "certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California. *Id.* District Courts in California have strictly construed the notice requirement, dismissing suits where notice was sent one day before filing the complaint or otherwise failed to meet the requirements of Section 1872. *See, e.g.*, *Saitsky v. DirecTV, Inc.*, No. CV 08-7918 AHM (CWx), 2009 U.S. Dist. LEXIS 134817, at *18-19 (C.D. Cal. Sep. 22, 2009). Plaintiff Hawes does not allege that she sent the required notice at all. *See* Compl. ¶ 153. Plaintiff therefore cannot establish that she complied with the requirements of the CLRA, and her claims for damages must be dismissed.[10]

### E.  Plaintiffs' breach of warranty claims must also be dismissed.

Under California Commercial Code § 2607, a buyer must "within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred

---

[9] In Paragraph 153, Plaintiff states that "Plaintiff and the California State Class do not seek to recover damages under the CLRA in this Complaint." However, underlined in the same paragraph, Plaintiff purports to seek actual damages, punitive damages, and restitution with respect to her CLRA claim.

[10] To the extent Plaintiffs seek injunctive relief, they have no standing to do so, because consumers allegedly misled by product labels lack standing for injunctive relief when there is no danger that they will be misled in the future. *Dachauer v. NBTY, Inc.*, 2016 U.S. Dist. LEXIS 78213, at **1-2 (N.D. Cal. June 3, 2016).

from any remedy." Where a plaintiff "fails to plead that she provided this notice within a reasonable time of discovering the breach, as is required by § 2607," her breach of warranty claims "must be dismissed." *See Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 817 (N.D. Cal. 2014), at 817-18. The Missouri UCC contains the same requirement. *See* Mo. Rev. Stat. § 400.2-607(3)(a); *see also Budach v. NIBCO, Inc.*, No. 2:14-cv-04324-NKL, 2015 U.S. Dist. LEXIS 150714 (W.D. Mo. Nov. 6, 2015) (dismissing breach of warranty claims due to failure to provide pre-suit notice).

Plaintiff does not allege that any notice was sent. Plaintiff instead alleges that "[a]ffording Defendants a reasonable opportunity to cure their breaches of warranty would be unnecessary and futile here." *See* Compl. ¶ 87. There is no such exception to the pre-suit notice requirement stated in either the California or Missouri versions of the UCC. Plaintiff's claim for breach of express warranty must be dismissed for failure to plead that pre-suit notice was provided within a reasonable time of discovering the breach.

**F. Plaintiffs' common-law fraud claims are also barred by the economic loss rule.**

Plaintiffs' fraud claims are barred by the economic loss rule. Plaintiffs assert claims for common-law fraud under both California and Missouri law. Courts in both states have recognized that the economic loss rule prevents the use of tort remedies to recover what are, in essence, contract damages. *See Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO (PJWg), 2017 U.S. Dist. LEXIS 67525, at *28 (C.D. Cal. Apr. 13, 2017); *Trademark Medical, LLC v. Birchwood Laboratories, Inc.*, 22 F. Supp. 3d 998, 1002 (E.D. Mo. 2014).

Federal courts in both California and Missouri have recognized that the economic loss rule operates to bar fraud claims where those claims restate breach of contract or breach of warranty claims. *See Flynn v. CTB, Inc.*, No. 1:12CV68 SNLJ, 2015 U.S. Dist. LEXIS 129976,

at *31 (E.D. Mo. Sep. 28, 2015) ("[W]here the fraudulent misrepresentation concerns the quality, character, or safety of the goods sold, the economic loss doctrine bars the fraud claim because it is substantially redundant with warranty claims."); *Sterling Cross Def. Sys., Inc v. Dolarian Capital, Inc.*, No. 1:13-CV-01773-AWI-GSA, 2014 U.S. Dist. LEXIS 83528, at *7 (E.D. Cal. June 18, 2014) (dismissing fraud claim pursuant to the economic loss rule where the plaintiff failed to "allege any facts that Defendants owed a duty separate from that imposed by the contract" and sought damages for fraud which "appear to be the same economic losses that arise from the alleged breach of contract"). In *Flynn*, the court dismissed fraud claims where "Plaintiffs' damages flow from their frustrated expectations about the quality and performance" of the product.

Plaintiffs' fraud claims are merely an attempt to recast their breach-of-warranty claims as tort claims. Their fraud claims rely on the same basic allegation which underlies all of their claims—that Defendants sold sheets represented to be of a certain thread count that Plaintiffs believe to actually have a lower thread count. *See* Compl. ¶ 178. The damages they seek as a result of Defendants' alleged fraud—either a "full refund of the purchase price for the sheets" or "compensation for the monetary difference between the sheets and bedding products as warranted and as sold"—are "economic" damages which would generally flow from contractual, not tort, remedies. *See* Compl. ¶ 182. Like the plaintiffs in *Flynn*, Plaintiffs seek damages which "flow from their frustrated expectations" with respect to the sheets they claim to have purchased. Their fraud claims come within the ambit of the economic loss rule and must be dismissed.

## **CONCLUSION**

For the reasons stated above, AQ respectfully requests that the Court dismiss Plaintiffs' claims against AQ, in their entirety, with prejudice.

Respectfully submitted, this the 2nd day of January, 2018.

/s/ Beth A. Bryan
John A. Nalbandian (Ohio Reg. 0073033)
Beth A. Bryan (Ohio Reg. 0082076)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
nalbandian@taftlaw.com
bryan@taftlaw.com

Reid L. Phillips (motion for *pro hac vice*
admission forthcoming)
NC State Bar No. 7968
Jennifer K. Van Zant (motion for *pro hac vice*
admission forthcoming)
NC State Bar No. 21280
Andrew L. Rodenbough (motion for *pro hac vice*
admission forthcoming)
NC State Bar No. 46364
Ryan C. Fairchild (motion for *pro hac vice*
admission forthcoming)
N.C. State Bar No. 47729
BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, LLP
230 North Elm Street
2000 Renaissance Plaza
Greensboro, NC 27401
Telephone: (336) 373-8850
Facsimile: (336) 378-1001
rphillips@brookspierce.com
jvanzant@brookspierce.com
arodenbough@brookspierce.com
rfairchild@brookspierce.com

Attorneys for Defendant
AQ TEXTILES LLC

21

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed via the Court's

CM/ECF system, which will send electronic notification to all counsel of record.

This the 2nd day of January, 2018.

/s/ Beth A. Bryan
Beth A. Bryan

21801139.1