UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| SARA HAWES and AMY HILL, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MACY'S INC, AQ TEXTILES LLC, CREATIVE TEXTILE MILLS PVT. LTD., JOHN DOE CORPORATIONS (1-100)<br><br>Defendants. | Case No. 1:17-CV-754<br><br>Judge Timothy S. Black |

**PLAINTIFFS' COMBINED RESPONSE TO
DEFENDANT MACY'S INC.'S MOTION TO DISMISS**

**INTRODUCTION**

Defendant Macy's Inc.'s ("Defendant") motion to dismiss (Dkt. 17) should be denied. Defendant's brief raises no meritorious legal defenses; rather, it is premised on premature factual and class certification arguments. And Defendant distorts and ignores the facts and claims alleged in the Plaintiffs' Class Action Complaint ("Complaint") (Dkt. 1).

Defendant misrepresented its sheets and linens as having higher thread counts than they actually possess (for Plaintiff Hawes, by approximately 75%). It ignored accepted ASTM industry standards and trade literature concerning acceptable thread counting. The Complaint describes in detail Defendant's consumer, warranty, and fraud violations. Defendant cannot escape these claims, so it seeks to avoid them with standing and various garden-variety 12(b)(6) defenses. Plaintiffs and putative class members' injuries are well-pled: they were charged more money for misrepresented thread count sheets and linens and they believed Defendant's promises that the higher thread count sheets provided higher quality, durability, and fitness which would, in turn, provide softer and more comfortable sleeping. Defendant's brief does nothing to unravel the false representations, promises, and unlawful conduct.[1]

**FACTUAL BACKGROUND**

Plaintiffs Sara Hawes and Amy Hill filed their Complaint on November 8, 2017, on behalf of themselves and all other similarly situated. The Complaint alleges that Defendants Macy's Inc. ("Macy's"), AQ Textiles LLC ("AQ"), and Creative Textile Mills Pvt. Ltd. ("Creative"), collectively deceived and misled the American consumer public by selling sheets, linens, and other bedding and textile products with an inflated and misrepresented "thread count"[2] which

---

[1] Plaintiffs hereby incorporate the arguments made in their concurrently-filed Opposition to Defendant AQ Textiles, L.L.C.'s Motion to Dismiss.

[2] "Thread count" – analogous to the price point – represents to everyday consumers the level of quality associated with a bedding or textile product. Dkt. 1 at ¶¶ 19-23. The counting of threads is an important industry practice because consumers will readily use thread count as an indicator of fabric value and quality. *Id*. As the thread count increases, so does the price that consumers are willing to pay for bedding and linens. *Id*. at ¶¶ 22-23.

significantly departed from industry standards and norms. Dkt. 1 at ¶¶ 1, 3-5, 24-29, 34-35, 47. This is important, as consumers associate products with higher thread counts as having a higher quality, being softer, and being more comfortable. *Id*. at ¶¶ 1-2, 11-12, 21-23. Defendant was aware of this perception by the public and profited by knowingly and/or negligently misrepresenting the thread counts of its products to increase sales and/or to increase sales prices. *Id*. at ¶¶ 20, 35, 46, 49. Defendant not only made misleading statements regarding the products in question on its website and in its retail stores (*id*. at ¶ 42), but also knew that the thread counts on the products were being inaccurately reported, or at minimum, should have known because the prices for the misleading products were lower than authentic materials with the correct advertised thread counts. *Id*. at ¶¶ 46, 50.

Defendant's improper conduct, in conjunction with Co-Defendants AQ and Creative, caused Plaintiffs and class members to purchase the falsely advertised products at inflated prices. *Id*. at ¶¶ 48, 50. More importantly, Plaintiffs and class members did not receive what Defendants promised and warranted – *i.e.*, sheets, bedding and other linen products of a certain thread count, quality and fitness for its intended use. *Id*. at ¶¶ 80, 160. Plaintiffs and class members were injured as a result and now bring this lawsuit. *Id*. at ¶¶ 48, 50, 95.

## ARGUMENT AND AUTHORITIES

**I.      Plaintiffs have standing to assert all claims as to all of Defendants' products.**

Defendant argues that Plaintiffs lack standing to pursue claims for sheets not purchased by Plaintiffs. However, the weight of the authority holds that because Plaintiffs are representatives of a putative class, they have standing to assert claims for substantially similar products even if they did not purchase other substantially similar products purchased by other consumers.: "The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Brown v. Hain Celestial Group, Inc.,* 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012). Under the majority approach,

3

"the critical inquiry is whether there is sufficient similarity between the products purchased and not purchased." *Mednick v. Precor, Inc.*, No. 14 C 3624, 2014 WL 6474915, at *3 (N.D. Ill. Nov. 13, 2014).

In this case, Plaintiffs' claims arise from Defendants' identically misleading representation — that Defendants' products are of a higher thread count than they actually are. *See, e.g.,* Dkt. 1 ¶¶ 1, 3,11, 12, 35, 36, 37, 38, 39, 40. Plaintiffs sufficiently state the misleading nature of each products' labels by alleging that sheets and bedding products are advertised and packaged with false thread counts. *See, e.g.,* Dkt. 1 ¶¶ 11, 12, 38, 39, 44, 49.

As to Defendant's argument that Plaintiffs "have not even bothered to identify all the products they claim to be suing over" (*see* Dkt. 17-1 at 5), the complaint indicates otherwise. Plaintiffs' class definitions clearly define the products at issue – bedding or linen manufactured or supplied by Defendant AQ Textiles and/or Defendant Creative Textiles that was packaged or advertised with a representation regarding its thread count and sold at a Macy's store. Dkt. 1 at ¶¶ 51, 56.

Critically, in evaluating substantial similarities between purchased and unpurchased products, courts consider not only physical similarities but also the similarities between the alleged *misrepresentations*. *Mednick v. Precor, Inc.*, No. 14 C 3624, 2014 WL 6474915, at *3 (N.D. Ill. Nov. 13, 2014).[3] Plaintiffs have alleged that all of the sheets and bedding forming the basis of their claims share the same common misrepresentation – a misrepresented thread count. Dkt. 1 at ¶¶ 35-50, 51, 56. The underlying harm is identical no matter if the misrepresentation is 500, 700, or 1200 thread count, or any other misrepresented number.

---

[3] *See also Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012) ("Where product composition is less important, the cases turn on whether the alleged misrepresentations are sufficiently similar across product lines."); *Astiana v. Dreyer's Grand Ice Cream, Inc.,* C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012) ("That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors.").

Moreover, the analysis of whether the Plaintiffs' have standing to bring claims on behalf of other purchases is premature and should be deferred; the "better…approach" is to conduct such analysis under Rule 23 at class certification. *Quinn v. Walgreen Co.,* 958 F. Supp. 2d 533, 542 (S.D.N.Y. 2013). Even the *Godec* standing decision was made at certification, not on a motion to dismiss. *Godec v. Bayer Corp.,* 1:10-CV-224, 2011 WL 5513202, at *2, n3 (N.D. Ohio Nov. 11, 2011) (analysis under Rule 23(a)(4)); *see also, e.g., Burton v. Hodgson Mill, Inc.*, 16-CV-1081-MJR-RJD, 2017 WL 1282882, at *5 (S.D. Ill. Apr. 6, 2017) ("Though standing should not be obtained via the back door of class certification, this Court finds that it would be premature to rule on standing/class certification issues that are clearly intertwined prior to the Plaintiff formally moving for certification."); *Quinn,* 958 F. Supp. 2d at 542 ("There is no question plaintiffs have standing to assert claims relating to the product they did purchase. Further, there are substantial similarities between all of defendants' Glucosamine Supplements, and the alleged misrepresentations on the labels of the Glucosamine Supplements are nearly identical. Therefore, the Court finds the appropriate time to consider whether plaintiffs can bring claims on behalf of purchasers of all of the various Glucosamine Supplements is at the class certification stage, not on a motion to dismiss.").[4]

The substantially similar misrepresentations are clearly alleged in Plaintiffs' Class Action Complaint. At this stage of the proceedings, nothing more is required. Because Plaintiffs' complaint sets forth in detail why the misrepresentation is equally misleading as to all products, Plaintiffs' allegations are sufficient for standing as to all sheets and bedding made part of the class

---

[4] *See also Cardenas v. NBTY, Inc.*, 870 F.Supp.2d 984, 992 (E.D. Cal. 2012); *Brown*, 913 F.Supp.2d at 890–92; *Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010) (denying defendants motion to dismiss plaintiff's claims relating to products he did not purchase, noting "this is not a case in which plaintiff is asserting claims against defendants that never harmed him," and "defer[ing] ruling on the issue until the class certification stage"); *Elias v. Ungar's Food Products, Inc.,* 252 F.R.D. 233, 243 (D. N.J.2008) (granting in part motion for class certification and noting, "the fact that the named plaintiffs did not purchase some of the products at issue does not render plaintiffs' claims atypical from the potential class members nor does it defeat commonality"); *Bietsch v. Sergeant's Pet Care Products, Inc.,* 15 C 5432, 2016 WL 1011512, at *9 (N.D. Ill. Mar. 15, 2016).

definitions. *Vass v. Blue Diamond Growers*, CV 14-13610-IT, 2015 WL 9901715, at *7 (D. Mass. Aug. 11, 2015), *report and recommendation adopted*, 14-CV-13610-IT, 2016 WL 1275030 (D. Mass. Mar. 31, 2016) ("Applying the substantial similarity test employed by the majority of courts, the allegations of the amended complaint demonstrate sufficient similarity between the Purchased Product and the Substantially Similar Products that Vass has standing to assert claims based on products he did not purchase."). Defendant's standing arguments regarding the unpurchased products are thus premature and without merit and should be denied.

**II.    Plaintiffs' claims should not be dismissed under 12(b)(6).**

"For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the complaint in the light most favorable to the plaintiff and take all well-pleaded factual allegations as true." *Baird v. Daniels*, No. 1:12-CV-945, 2014 WL 1407945, at *2 (S.D. Ohio Apr. 11, 2014) (Black, J.) (citing *Tackett v. M & G Polymers*, 561 F.3d 478, 488 (6th Cir.2009)). The factual allegations need only be enough to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The inquiry is restricted to the subject matter in the complaint, orders, and the public record. *Basset v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th. Cir. 2008).

**A.    Plaintiffs' Magnuson-Moss Warranty Act claims should not be dismissed.**

Defendant argues that the Magnuson-Moss Warranty Act (MMWA) warranty claims should be dismissed because the complaint does not allege a breach of express warranty and Plaintiffs did not offer Defendant an opportunity to cure. These arguments fail.

Defendant's contention that the complaint fails to allege a breach of warranty is incorrect. Plaintiffs allege a breach of express warranty at count 9 of the Complaint and illustrate that an express warranty existed herein (*see* Plaintiffs' express warranty discussion, *infra*).

The MMWA defines the term written warranty as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such

6

material or workmanship is defect free or will meet a specified level of performance over a specified period of time …". 15 USCA § 2301(6)(A). The MMWA "does not require that a warranty be provided, it merely requires that if a warranty is extended, [the warrantor] must comply with its terms." *Lawhorn v. Joseph Toyota, Inc.*, 141 Ohio App.3d 153, 155 (2001). Defendant's representations and thread count statements amount to a "written affirmation of fact … [that] relates to the nature of the material or workmanship …". The representations and/or statements regarding the thread count constitute an assurance and promise that the products have a certain thread count and accordingly a certain character and quality. *See* Dkt. 1-2, Ex. A (Hawes' sheets stated "900 THREADS PER SQUARE INCH … SINGLE SHEET YARN"); ¶39 (Ms. Hawes' purchased sheets were 249 count instead of the represented 900 count). Plaintiffs also allege that these representations constitute an assurance that the products "will meet a specific level of performance over a specified period of time …" ¶¶79-80. Thus, Defendant's statements regarding thread counts created written promises and warranties within the meaning of the MMWA.

Defendant claims that Plaintiffs failed to provide it with an opportunity to cure its conduct "as required by subsection 2310(e)." Dkt. 17-1 at 8. Because this a class action, Plaintiffs are permitted to provide notice when the time comes to file a motion for class certification pursuant to Rule 23 and "that time has not yet come."[5] *Siriano v. Goodman Mfg*. Co., No. 2:14-CV-1131, 2015 WL 12748033, at *15 (S.D. Ohio Aug. 18, 2015); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 825 (S.D. Ohio 2012) (same). Furthermore, Plaintiffs were not obligated to provide Defendant with an opportunity to cure since such a gesture would have been futile. This is demonstrated by Defendant's strident denials of the claims against it, and refusal to acknowledge that the sheets do not have the advertised thread count. Defendant sold large quantities of the misrepresented sheets during the class period, such that an adequate cure would be extremely costly, and "repairing" sheets is not possible. Since at least 2002, Defendant knew or should have

---

[5] In addition, Plaintiffs, by and through their counsel, gave prelitigation notice to Defendants pursuant to Cal. Civ. Code Sec. 1750, *et al.*, on June 27, 2017.

7

known that the thread count industry was to meet industry standard ASTM D3775 and that the NTA, ATMI, FTC worked to warn manufacturers about improper thread count representations. Dkt. 1 at ¶¶25-29; ¶161 ("Defendants were noticed of these issues within a reasonable time by multiple complaints including the instant one."). Defendant's reliance on the non-reported case *Kuns v. Ford Motor Co.* concerning whether "cure" was necessary, has little utility and is actually helpful to Plaintiffs here because it was an appeal of summary judgment that held that "cure is normally a question of fact." *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 577 (6th Cir. 2013); *Malkamaki v. Sea Ray Boats, Inc.*, 411 F. Supp. 2d 737, 745 (N.D. Ohio 2005) (noting that cure issue is a factual issue). Lastly, Defendant's sheets did not indicate where any notice of breach was to be sent. Accordingly, Defendant's motion to dismiss Plaintiffs' warranty claims should be denied.

**B. Plaintiffs' breach of warranty of merchantability claim should not be dismissed.**

Defendant's argument is confusing given the clear allegations in the Complaint. Defendant incorrectly claims that Plaintiffs' allegations fail because "they make no complaints regarding the softness, comfort, or durability of the sheets" and only lodge harmless and unimportant mathematical sheet count discrepancies. Dkt. 17-1 at 10. Defendant omits that Plaintiffs have alleged that its sheet representations and affirmations are (1) untrue, *see* Dkt. 1 at ¶39 (the "true thread count" of Ms. Hawes' sheets was approximately 249, not 900 as stated[6]); and (2) that the result of the low thread count and false promises caused deficiencies in the bed sheets softness, comfort, and durability **necessary for quality sleeping**. *Id.* at ¶¶1, 2 ("more comfortable for sleeping"), 4, 5 ("better for sleeping"), 11, 12 (Named Representative "believed … better for sleep"), 160 ("were unfit for the ordinary purpose"). Defendant's sheets are unfit for their ordinary use. "Crucial to the inquiry is whether the product conformed to the standard performance of like products used in the trade." *Pisano v. American Leasing*, 146 Cal.App.3d 194, 198, 194 Cal.Rptr.

---

[6] Difference in thread count between what was represented and sold by Defendant equals 651 (900 - 249), which is only 28% of what was represented.

77 (1983). The Complaint states plainly that the sheets did not contain the represented thread count despite "long-standing industry standards for calculating thread counts." Defendant advertised and sold "bedding and linen products with inflated thread counts." Dkt. 1 at ¶¶34, 39 (sheets contain 249 thread counts and not 900). *See Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014) (implied warranty of merchantability upheld because product was "not adequately packaged, consistent with an implied promise that they were adequately filled with tuna.").

Here, Plaintiffs suffered collateral and resulting damages because in addition to the sheets not meeting represented expectations, they also failed their obvious purpose -- to help customers sleep comfortably in their beds. As such, Plaintiffs' injuries were "**inevitably caused by**" **the** "**defect**" in the sheets. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) (emphasis added). At bottom, the sheets lack "the most basic degree of fitness for ordinary use." *Id.* at 958; *see* Mo. Rev. Stat. § 400.2–314.1(2)(c); Cal. Com.Code § 2314(2)(c); Ohio Rev. Code Ann. 1302.27. Accordingly, Defendant's motion to dismiss Plaintiffs' breach of the warranty of merchantability claims should be denied.

### C. Plaintiffs' fraud claims are pled with sufficient particularity.

As a threshold matter, Federal Rule 9(b) only applies to allegations of "fraud or mistake." Fed. R. Civ. P. 9(b). While Plaintiffs' consumer protection claims implicate fraud, those claims are not premised solely upon fraudulent misconduct and contain warranty allegations. To the extent Plaintiffs' consumer protection claims are premised upon such allegations, they cannot be dismissed.

Plaintiffs' substantive and detailed allegations allow for this Court and the Defendant to appreciate the fraud conducted. The allegations here meet the criteria for common law fraud and satisfy any Federal Rule 9(b) particularity inquiry. In California, fraud is proven by showing (1) a misrepresentation, (2) knowledge or appreciation, (3) intent to defraud, (4) reliance, and (5) damage. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (internal citations

9

omitted). It is similar in Missouri. *Consol. Grain & Barge, Co. v. Hobbs*, 397 S.W.3d 467, 477 (Mo. Ct. App. 2013) (internal citations omitted) (required to show "(1) a representation by the defendant that is false, (2) the plaintiff's reliance on the truth of the representation, (3) the plaintiff's right to rely on the truth of the representation, and (4) injury"). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Fraud allegations shall with particularity state the "'time, place, and content of the alleged misrepresentation ... the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Baird v. Daniels*, No. 1:12-CV-945, 2014 WL 1407945, at *2 (S.D. Ohio Apr. 11, 2014) (Black, J.) (internal citations omitted). The allegations here meet these requirements.

Defendant falsely represented that it sheets contained higher thread counts than they did. *See* Dkt. 1 at ¶39 (Ms. Dawes purchased sheets were 249 count instead of the represented 900 count); ¶39 and ¶42 ("Macy's made false representations … on the website http://www.macys.com, as well as in all the retail Macy's stores stocked with the relevant goods"); ¶4 ("Defendants misrepresented, and continue to misrepresent, that the thread count in many of the bedding and linen products they advertise, market, distribute throughout the country…"); Dkt. 1-2, Ex. A (Hawes' sheets stated "900 THREADS PER SQUARE INCH … SINGLE SHEET YARN"); ¶¶25-29 (explaining that the industry standard for thread counting is ASTM D3775 and that Defendant did not comply); ¶¶11, 37, 40-42, 44, 47 (containing misrepresentation allegations).

Defendant was aware - or should have been aware - that its representations regarding thread count were not truthful and thus was aware they were fraudulent. *See* ¶¶25-29 (stating that manufacturer's thread counts were to meet industry standard ASTM D3775 and that since at least 2002 the NTA, ATMI, FTC worked to warn manufacturers about improper thread count representations); ¶37 ("Defendant … either knew or should have known that the advertised thread counts were false."); ¶161 ("Defendants were noticed of these issues within a reasonable time by multiple complaints including the instant one."); ¶¶37, 44, 46, 87, 116, 125, 138, 150 (containing knowledge allegations).

10

Defendant intended for its statements to induce the Plaintiffs and putative class. *See* Dkt. 1-2, Ex. A (Hawes' sheet wrapper stated "900 THREADS PER SQUARE INCH … SINGLE SHEET YARN"); ¶6 ("Defendants in their products induced Plaintiffs and other Class Members to purchase their products when Plaintiffs and other Class Members would not have purchased them"); ¶178 ("Defendants represented … in advertising, packaging, product descriptions, and other forms of communication … that the sheets and bedding products had higher thread counts than their true thread counts"); ¶9 ("Some of the bedding and linen products at issue were advertised, marketed, sold and/or distributed by Macy's, or its operating entities, in this district."); ¶3 ("As part of a scheme … Defendants knowingly departed from known, well-established, and long-standing industry standards governing the calculation and advertisement of thread counts."); ¶¶6, 50, 124-25 (containing inducement allegations).

The facts demonstrate that Plaintiffs relied on Defendant's statements. Defendant admits as much, stating "Plaintiffs clearly identify" misrepresentations "they saw." Dkt. 17-1 at 13. *See also* ¶12 (stating that Plaintiff Hawes purchased her sheets on or around May 2017 at a Macy's store located at 8500 Beverly Blvd. in Los Angeles, CA after relying on Defendant's label representations stating that the sheets had a "900 thread count"); ¶11 (stating that Plaintiff Hill purchased her sheets in the summer or fall of 2016 from a Macy's store located in St. Louis County, MO after relying on the Defendant's 1000 thread count representation); ¶¶21, 47, 57, 58 and 115 (containing reliance allegations).

Defendant's conduct resulted in both monetary and comfort (quality) damages to Plaintiffs and the putative class. *See* ¶6 ("Plaintiffs and other Class Members would not have purchased them, or would only have paid a lower price for the product."); ¶¶2, 6, 19-21, 22 ("A single-ply 300-count can run about $55 a set, while the 600 thread-count sheets that [tested as] only a 300-count is $180 a set."); 23 (price chart based on thread count); ¶151 ("higher prices"); *and* ¶¶1-2 ("higher thread counts actually…more comfortable").

The allegations cited herein are pleaded with particularity. *See ITS Fin., LLC v. Advent Fin. Servs., LLC*, 823 F. Supp. 2d 772, 779–80 (S.D. Ohio 2011) (Black, J.) (citing complaint)

11

(statements amounting to repeated and knowing "'representations and assurances … intended to induce'" reliance to a party's detriment.); *Aero Fulfillment Servs. Corp. v. Oracle Corp.*, 186 F. Supp. 3d 764, 777 (S.D. Ohio 2016) (Black, J.) (plaintiff "alleges numerous specific fraudulent misrepresentations … including who made the statements, to whom, and approximately when the statements were made … to its detriment."); *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 934 (N.D. Cal. 2014) (list of allegations in complaint were sufficient to meet fraud standard).[7] Finally, discovery that will soon take place along with the development of a full record here will allow for the Plaintiffs and putative class to further examine and illustrate Defendant's fraudulent conduct. *See Morrision v. YTB International, Inc.*, 641 F.Supp.2d 768, 774-75 (S.D. Ill. 2009) ("Rule 9(b) generally is relaxed where facts pertinent to a plaintiff's claim of fraud are in the exclusive possession of a defendant and can be disclosed only through discovery.").

      **D.    Plaintiffs' CLRA claims are proper since prelitigation notice would have been futile.**

Macy's has challenged Plaintiffs' CLRA claims based on failure to provide prelitigation notice of the claims. First, Plaintiffs, by and through their counsel, gave prelitigation notice to Defendants pursuant to Cal. Civ. Code Sec. 1750, *et al.*, on June 27, 2017. Thus, this argument should be rejected in its entirety.

Furthermore, even if Plaintiffs had not given such notice, this challenge fails since California courts have recognized that plaintiffs are under no obligation to provide notice where such notice would be futile and/or a waste of time. *C.F. Cates v. Chiang*, 153 Cal.Rptr.3d 285, 306 (Cal. App. 4 Dist. 2013) ("Exercising its broad discretion, the court did not err in concluding that because the undisputed evidence shows a prelitigation demand would have been futile, Cates was not barred from recovering section 1021.5 attorney fees."); *Henderson v. J.M. Smucker Co.*, No. CV 10–4524–GHK, 2013 WL 3146774, at *10 (C.D. Cal. June 19, 2013) (same). *See also*

---

[7] California and Missouri analyze fraud using a preponderance of the evidence standard. *Crawford v. Smith*, 470 S.W.2d 529, 533 (Mo. 1971); *Liodas v. Sahadi*, 19 Cal. 3d 278, 286, 562 P.2d 316 (1977).

12

*Steen v. Board of Civil Service Commissioners*, 26 Cal.2d 716, 721, 160 P.2d 816 (Cal. 1945) ("[g]enerally a demand is not a prerequisite where it would be futile or an idle gesture.").[8]

Based on the record that has been established since the filing of Plaintiffs' complaint on November 8, 2017, requiring Plaintiffs to provide prelitigation notice would have been (and indeed was) futile and/or a waste of time. As evidenced by the motion to dismiss seeking dismissal of all claims against it, Macy's has not made any effort to settle the claims against it and continues to deny liability to Plaintiffs and the class they seek to represent. Accordingly, it is crystal clear that requiring Plaintiffs to provide prelitigation notice would have been futile. *See Cates*, 213 Cal.App.4th 791, 816 (finding prelitigation notice would have been futile where "[t]he evidence showed that for several years after Cates filed the action, the Commission continued to strongly assert that its practices were appropriate and the tribes did not owe the state any money. There is no evidence that the Commission would have agreed to change its procedures in response to a prelitigation settlement offer or that negotiating with the Commission was a reasonable alternative to the lawsuit.").

Thus, Plaintiffs' CLRA claims are proper and should not be dismissed by the Court.[9]

### E. Plaintiffs' warranty claims are proper since prelitigation notice would have been futile.

Macy's also challenges Plaintiffs' warranty claims based on Plaintiffs' failure to provide prelitigation notice. This argument similarly fails for the reasons discussed above with respect to Plaintiffs' CLRA claims since a) Plaintiffs did provide notice, and b) the providing of such notice

---

[8] "The law does not require useless acts from litigants as prerequisites to seeking relief from the courts." *Van Gammeren v. City of Fresno*, 51 Cal.App.2d 235, 240 (Cal.App.4.Dist 1942); *see also Doster v. County of San Diego*, 203 Cal.App.3d 257, 262 (Cal.App.4.Dist, 1988) ("[t]he law does not require a party to participate in futile acts."); Civ. Code, § 3532; *see People v. Herrera*, 49 Cal.4th 613, 622 (Cal. 2010) (law does not require the doing of futile act).

[9] Both Macy's and AQ contest Plaintiffs' standing to seek injunctive relief under the CLRA. This argument fails since it is clear Plaintiffs' have suffered damages by virtue of their purchase of sheets containing misleading statements regarding thread counts. *See Meyer v. Sprint Spectrum L.P.*, 88 Cal.Rptr.3d 859, 865 (Cal. 2009) (to have standing under CLRA, there must be "infringement of any legal right under section 1770" and plaintiff must have suffered "damage as a result of the use or employment of an unlawful practice") (internal quotations omitted).

would was futile and/or a waste of time. *See Cates*, *supra*. Wherefore, because Plaintiffs were not under an obligation to provide notice of their warranty claims to Macy's or AQ, these claims should not be subject to dismissal.

### F. Plaintiffs' common-law fraud claims are not barred by the economic loss rule.

Macy's also argues that Plaintiffs' fraud claims are barred by the economic loss rule. These arguments should be rejected since Plaintiffs allege that they were fraudulently induced into purchasing the sheets based on Defendants' misrepresentations regarding thread counts.

Both California and Missouri courts recognize exceptions to the economic loss doctrine in instances of fraudulent inducement. *See Erlich v. Menezes*, 981 P.2d 978, 983, 87 Cal.Rptr.2d 886, 891 (Cal. 1999) (acknowledging exception to economic loss rule for instances of fraudulent inducement); *Las Palmas Associates v. Las Palmas Center Associates,* 235 Cal.App.3d 1220, 1238–1239 (Cal.App.2.Dist 1991) (same); *Patterson Oil Co., Inc v. Verifone, Inc.*, No. 2:15–cv–4089, 2015 WL 6149594, at *8 (W.D. Mo. Oct. 19, 2015) ("claims that the plaintiff was fraudulently induced to enter the contract are widely interpreted to present an exception to the economic loss doctrine."); *Murphy v. Northwest Mut. Ins. Co.*, No. 03-0864CV-W-HFS, 2005 WL 1421789, at *2 (Mo. Ct. App. June 13, 2015) (damages proximately caused by an intentional, false representation are an exception to the economic loss doctrine).

Here, Plaintiffs and the class have clearly alleged that they were fraudulently induced to purchase the sheets based on misrepresentations regarding thread counts. *See* Dkt. 1 at ¶6 (alleging that Defendants' misleading statements regarding thread counts "induced Plaintiffs and other Class Members to purchase their products …"). Accordingly, Plaintiffs' fraud claims are not subject to the restrictions imposed by the economic loss rule as Plaintiffs have alleged they were fraudulently induced to purchase the sheets in question. *Patterson Oil Co., Inc.*, 2015 WL 6149594, at *8 ("[c]laims about the quality of goods sold may therefore fall within the fraudulent inducement exception if they are nevertheless independent of the contract formed."). The fraud claims should proceed.

## **CONCLUSION**

For the reasons set forth above, Macy's motion to dismiss (Dkt. 17) should be denied.

DATED:  March 9, 2018                              *s/Jack Landskroner*
Jack Landskroner (0059227)
Drew Legando (0084209)
LANDSKRONER GRIECO MERRIMAN LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
Telephone: 216-522-9000
Fax: 216-522-9007
jack@lgmlegal.com
drew@lgmlegal.com

Charles Schaffer *(admitted pro hac vice)*
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (877) 882-1011
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

Stuart Cochran *(pro hac vice pending)*
STECKLER GRESHAM COCHRAN
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Telephone: 972-387-4040
stuart@stecklerlaw.com

Brendan S. Thompson *(pro hac vice pending)*
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave., NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
brendant@cuneolaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      A copy of this document was served by the Court's ECF System on all counsel of record on March 9, 2018, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

                                              *s/Jack Landskroner*
                                              Jack Landskroner (0059227)

                                              *Counsel for Plaintiffs*