# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (CINCINNATI)

HAWES, *et al.*,

                    Plaintiffs,

v.

MACY'S INC., *et al.*,

                    Defendants.

Civil Action: 1:17-CV-00754

Judge Timothy S. Black

## DEFENDANT AQ TEXTILES, LLC'S
## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant AQ Textiles, LLC ("AQ") submits this Reply Memorandum in support of its Motion to Dismiss Plaintiffs' claims. In their Response to AQ's Motion to Dismiss, Plaintiffs attempt to recast their allegations as more robust than they actually are and to imbue them with meaning that cannot reasonably be implied. Careful consideration of the actual allegations in the Complaint—and the inapposite legal authorities cited by Plaintiffs—reveals that all claims should be dismissed.

## ARGUMENT

### I. PLAINTIFFS' ALLEGATIONS PROVIDE NO BASIS FOR THE ASSERTION OF PERSONAL JURISDICTION OVER AQ.

In their Response, Plaintiffs appear to concede that general jurisdiction over AQ is lacking, but argue that the Court can exercise specific jurisdiction over AQ "given AQ's relationship with Macy's, which is headquartered in Ohio, as well as AQ's substantial connections to this forum." Plaintiffs' Combined Response to AQ's Motion to Dismiss, DE #26 ("Pltfs.' Resp.") at 3. They also argue that exercising specific jurisdiction over AQ satisfies federal due process requirements,

in particular claiming that their claims arise out of AQ's activities in Ohio.  *Id.*  Both arguments are legally deficient and are refuted by Plaintiffs' own allegations.

### A. Plaintiffs do not allege any connections between AQ and Ohio to support specific jurisdiction.

In support of their position that specific jurisdiction exists, Plaintiffs point to paragraphs 13-18 for the proposition that "AQ imported and supplied the falsely advertised products . . . to the Ohio-headquartered entity Macy's"; to paragraphs 45 and 56 for the proposition that "AQ sold these inflated thread-count textiles in many markets . . . including Ohio"; and to paragraphs 8 and 86 for the proposition that "AQ intended to target consumers in states like Ohio."  Pltfs.' Resp. at 4.  Plaintiffs do not claim to allege that AQ imported or distributed the products at issue into Ohio; they instead say they alleged that the products "imported and supplied . . . to the Ohio-headquartered entity Macy's."  They do not claim to allege that AQ sold the products at issue in Ohio; instead, they say they alleged that AQ sold the products in "many markets . . . including Ohio." And finally, they do not claim to allege that AQ intended to target consumers in Ohio; instead, they say they alleged that "AQ intended to target consumers in states like Ohio."

A review of the specific allegations in question further reveals the weaknesses in Plaintiffs' position.  For example, in paragraphs 45 and 56, Plaintiffs allege the following:

> 45.    Despite their knowledge, Defendants Creative Textiles and AQ Textiles sold sheets and bedding products with inflated thread counts in order to obtain more business, and sell more products in a competitive market.

> 56.    Additionally or in the alternative to the California and Missouri State Classes, and pursuant to Federal Rules of Civil Procedure Rule 23(c)(5), Plaintiffs seek to represent a Nationwide Class and/or Classes (the "Subclasses") consisting of members from the 50 States and the District of Columbia, as well as any subclasses or issue classes that Plaintiffs may proposed and/or the Court may designate at the time of class certification.  The alternative Nationwide Class or state-based Classes could be defined as follows:

> . . . .

2

Ohio State Class:
All persons in Ohio that purchased bedding or linen from Defendant Macy's that
was manufactured or supplied by Defendant AQ Textiles and/or Defendant
Creative Textiles and that was packaged or advertised with a representation
regarding thread count.

There is no allegation in those paragraphs or anywhere else in the Complaint that AQ sold the

products at issue "in many markets . . . including Ohio." The attempt to rely on a description of a

subclass of unidentified persons in Ohio (neither of the named Plaintiffs is a resident of Ohio) who

may have purchased the products at issue is unavailing.[1]

Similarly, Plaintiffs allege the following in paragraphs 8 and 86 of the Complaint:

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391, because
Defendants conduct business in this District, and have intentionally availed
themselves of the laws and market of this District, and a substantial part of the
events or omissions giving rise to the claims occurred in this District.

86.      Plaintiffs and each of the other Nationwide Class members have had
sufficient direct dealings with Defendant Macy's to establish privity of contract.
Nonetheless, privity is not required here because Plaintiffs and each of the other
Nationwide Class members are intended third-party beneficiaries of contracts
between Creative Textiles, AQ Textiles, and Macy's, and specifically, of Creative
Textiles' and AQ Textiles' warranties. Upon information and belief these contracts
provided for products warranted to be of a particular thread count, and therefore of
a quality that would merit a higher price than products labeled with a lower thread
count. Defendant Macy's was not intended to be the ultimate consumer of the
sheets and bedding products and has no rights under the warranty agreements
attaching to the products, which were for benefit of the consumers only.

---

[1] Even if Plaintiffs had alleged this, the case of *Demaria v. Nissan N. Am., Inc.*, No. 15 C 3321, 2016 WL 374145, (N.D. Ill. Feb. 1, 2016), demonstrates that out-of-state plaintiffs cannot establish personal jurisdiction over out-of-state defendants simply by alleging that the defendant engaged in a nationwide course of conduct that included conduct in the forum state. In *DeMaria*, the Court dismissed all claims but those of the Illinois plaintiff because "each plaintiff's claim is predicated on the law of the particular state where he or she purchased a car and the claims of the other plaintiffs as alleged remain unrelated to anything that transpired in Illinois." *Id.* at *8. Here, determination of the named plaintiffs' claims will depend on the law of the states where they claim to have purchased sheets, and have nothing to do with any conduct of AQ occurring in Ohio, even if such conduct had been alleged.

3

Nowhere in those paragraphs is there an allegation that AQ intended to "target" customers in Ohio or indeed any allegation that AQ intended to target customers at all. Plaintiffs cannot remedy such failures by recasting those allegations in their brief.

A review of paragraphs where Plaintiffs claim to have alleged "substantial connections" between AQ and Ohio reveals that there are no such connections. There is no allegation that AQ has ever done business in Ohio; no allegation that it sells or ships product there; no allegation that it owns or leases property or employs persons there; no allegation that it participated in any conduct there, whether tied to this lawsuit or otherwise; and indeed, no allegation that any representative of Ohio has ever even been to Ohio. In fact, the word "Ohio" appears in only four places in the entire Complaint: once in the case caption naming this Court; once in paragraph 13, in the address of Macy's headquarters; and twice in Paragraph 56, where Plaintiffs describe their proposed alternative Ohio Class. Given the complete lack of _any_ connections, much less "substantial" connections, alleged between AQ and Ohio, there can be no specific jurisdiction over AQ.

**B.  Exercising specific jurisdiction over AQ would violate its due process rights.**

In their response, Plaintiffs argue that the due process requirements set forth by the Sixth Circuit are satisfied here. The Sixth Circuit's due process analysis requires that _each_ of three prongs be satisfied:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

_Rodkey v. 1-800 Flowers Team Servs., Inc._, No. 3:16-CV-311, 2017 WL 318473, at *6 (S.D. Ohio Jan. 23, 2017) (quoting _Means v. United States Conference of Catholic Bishops_, 836 F.3d 643, 649 (6th Cir. 2016)).

4

Plaintiffs claim that AQ "has only contested the second prong of this test" (the "arising from") prong. In fact, AQ contests all three prongs. The first prong requires "purposeful availment" of the privilege of acting in Ohio. Plaintiffs argue that AQ has purposefully availed itself of doing business in Ohio by virtue of its "own contacts with Ohio, and its associated business dealings with Macy's." Pltfs.' Resp. at 5. As discussed above, there is not a <u>single</u> contact between AQ and Ohio alleged in the Complaint. Any finding of "purposeful availment," then, would seem to rest on AQ having allegedly contracted with Macy's, which is headquartered in Ohio.[2] Courts in the Sixth Circuit, following the United States Supreme Court, have consistently held that merely contracting with an entity based in the forum state, without more, is <u>not</u> sufficient to satisfy due process. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997) ("The mere fact that Paragon entered into a contract with a Michigan corporation does not mean that Paragon purposefully availed itself of the 'benefits and protections' of Michigan law."); *McMunigal v. Bloch*, No. 1:09-CV-01674, 2010 WL 2106189, at *4 (N.D. Ohio Apr. 21, 2010) (finding that the purposeful availment prong was not satisfied where "there is no indication that Defendant, by entering into the Aspen agreement, intended to create an ongoing relationship with Ohio or with Plaintiff beyond what was called for by the agreement"); *see also Calphalon Corp.*

---

[2] Plaintiffs allege the existence of such a contract in paragraph 86 of the Complaint. The vague allegations regarding the purported contract do not include any allegation of where the contract was signed, where or how it was negotiated, or where it was to be performed. The absence of such allegations is also fatal to Plaintiffs' attempt to satisfy due process. *Accord Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) ("In *Burger King,* 471 U.S. at 479, 105 S.Ct. 2174, the Supreme Court stated that 'prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing' must be considered to determine whether 'the defendant purposefully established minimum contacts within the forum.'" (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985))).

*v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) ("We think the district court correctly recognized that the mere existence of a contract between Rowlette and an Ohio citizen for seventeen months is insufficient to confer personal jurisdiction over Rowlette.").

Plaintiffs also fail the second prong of the due process test: "the cause of action must arise from the defendant's activities there." Plaintiffs claim that they have satisfied the second prong because "Defendants (including AQ), through Macy's principal place of business in Ohio, effectuated the harm to Plaintiffs" and "AQ cannot credibly deny that Ohio serves as an important factual nexus for the operative facts in this controversy." Pltfs.' Resp. at 6.

It is Plaintiffs who cannot credibly deny that there is <u>no</u> factual nexus, much less an important one, between Ohio and their claims. The only allegation tying <u>any</u> conduct by the Defendants to Ohio is the allegation that Macy's is headquartered there. Plaintiffs do not allege that any products were shipped or distributed through Ohio; that any products were labeled in Ohio; that any misrepresentations were made in Ohio; that they heard or saw any misrepresentations in Ohio. Plaintiffs attempt to remedy this by casting Ohio-based Macy's as the "conduit" for AQ's conduct. It is nothing more than an attempt to impute Macy's connections with Ohio to AQ for jurisdictional purposes, something that would not even be proper were AQ a wholly owned subsidiary of Macy's, rather than merely an alleged contracting partner. *Accord Rodkey*, 2017 WL 318473, at *3 ("The Sixth Circuit has held that a court may not exercise personal jurisdiction over a corporate defendant based on its relationship with another corporation that is subject to personal jurisdiction, unless the corporate defendant is an alter ego or successor to the other corporation." (citing *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008))).

6

Plaintiffs also fail the third prong—that AQ must have a "substantial connection" with Ohio such that the exercise of jurisdiction would be reasonable. Plaintiffs' only argument that they satisfy this prong is based on their misplaced claims that the first two prongs were satisfied. *See.* Pltfs.' Resp. at 5 n.2. Because Plaintiffs cannot satisfy any of the due process prongs laid out by the Sixth Circuit, their claims against AQ must be dismissed.

### C. Bristol-Myers Squibb supports a finding of no jurisdiction over AQ.

Plaintiffs cite three cases for the proposition that *Bristol-Myers Squibb* does not apply to class actions. Those cases are, however, (1) based on a footnote from the lone dissenting Justice in *Bristol-Myers Squibb*, and (2) isolated from the vast majority of cases holding that *Bristol-Myers Squibb* does apply to class action lawsuits. *See, e.g.*, *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (applying *Bristol-Myers Squibb* and declining to exercise specific jurisdiction over non-resident class members' claims); *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4, n.4 (D. Ariz. Oct. 2, 2017) (noting lack of personal jurisdiction over putative class members with no connection to Arizona); *In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) (applying *Bristol-Myers Squibb* and noting that personal jurisdiction in class actions "must comport with due process just the same as any other case"); *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil Inc.*, No. 14 C 2032, --- F. Supp. 3d ----, 2018 WL 1255021, at *16 (N.D. Ill. Mar. 12, 2018) (citing *Bristol-Myers Squibb* as part of finding no reason to distinguish mass action from class action); *DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) (dismissing out-of-state class claims under *Bristol-Myers Squibb*); *LDGP, LLC v. Cynosure, Inc.*, No. 15 C 50148, 2018 WL 439122, at *3 (N.D. Ill. Jan. 16, 2018) (same); *Dyson v. Bayer Corp.*, No. 4:17CV2584 SNLJ, 2018 WL 534375, at *5 (E.D.

Mo. Jan. 24, 2018) (finding no jurisdiction over out-of-state plaintiffs' claims pursuant to *Bristol-Myers Squibb*); *Jordan v. Bayer Corp.*, No. 4:17-cv-00865-AGF, 2018 WL 837700, at *4 (E.D. Mo. Feb. 13, 2018) (same); *Jordan v. Bayer Corp.*, No. 4:17-cv-00865 (CEJ), 2017 WL 3006993, at *4 (E.D. Mo. July 14, 2017) (same); *Spratley v. FCA US LLC*, 3:17-CV-0062, 2017 WL 4023348, at *9 (N.D. N.Y. Sept. 12, 2017) (same). AQ's reading of *Bristol-Myers Squibb* is not expansive, but merely the correct application of the law.[3]

### D. Ohio's long-arm statute is not satisfied solely by an allegation that AQ contracted with Macy's, an Ohio-based corporation.

Plaintiffs cannot satisfy Ohio's long-arm statute. The statute, Ohio Rev. Code § 2307.382, provides several different bases for jurisdiction, each of which will be sufficient to confer jurisdiction only with respect to "a cause of action arising from acts enumerated in this section." Ohio Rev. Code § 2307.382(c). In their Response, Plaintiffs argue that two of the enumerated bases apply: 2307.382(a)(1), regarding the transaction of business in Ohio; and 2307.382(a)(2), "contracting to supply services or goods in this state." Pltfs.' Resp. at 7-8. Both provisions are unavailing.

Plaintiffs first argue that AQ has transacted business in Ohio, and that their claims arise out of such transaction. It appears that Plaintiffs argue that AQ has transacted business in Ohio through contracting with Macy's, an Ohio-headquartered entity. That argument has already been shown to be deficient in the due process inquiry, and the same argument has been rejected by this Court in the context of the long-arm statute. *See Field Aerospace, Inc. v. Boeing Co.*, No. 1:17-CV-379, 2017 WL 2688050, at *5 (S.D. Ohio June 22, 2017) (holding that, to be transacting business in Ohio, the out-of-state defendant must have 'ongoing substantive contacts,' and 'the

---

[3] Plaintiffs should take no comfort in the Supreme Court's denial of certiorari in *GlaxoSmithKline LLC v. M.M.*, 199 L.E.2d 20 (2017). The Court did not reveal any reason for its denial. In addition, in *GSK*, the defendant conceded purposeful availment with the State of Illinois. *M.M. v. GlaxoSmithKline LLC*, 2016 IL App (1st) 151909 (2016).

existence of a contract or simply soliciting business in Ohio is not enough.'" (quoting *Enflo Co., Inc. v. Augustine*, No. 3:14-cv-00076, 2014 WL 3105016, at *10 (S.D. Ohio July 3, 2014)); *Rodkey*, 2017 WL 318473, at *5 (holding that defendant did not "transact business" for purposes of the long-arm statute where it "does not have an office or mailing address in Ohio; does not own, lease, manage, or maintain any property in Ohio; and does not have any employees in Ohio" and "[t]here is no evidence that [defendant] negotiated or entered into [a contract] in Ohio."); *see also Ashton Park Apts., Ltd. v. Carlton-Naumann Constr., Inc.*, 2009-Ohio-6335, ¶¶ 15-19 (affirming dismissal for lack of personal jurisdiction and holding that appellee "was not 'transacting business' in Ohio by entering into a single contract with two Ohio residents to build a home in Florida."). Plaintiffs' first argument fails.

Plaintiffs then argue that jurisdiction is proper under the long-arm statute because AQ "contracted with Macy's, a corporation based in Ohio, to supply goods and services." Pltfs.' Resp. at 8. This argument, however, ignores the full text of subsection 2307.382(a)(2), which requires that Plaintiffs' claims arise from AQ's "contracting to supply services or goods <u>in this state</u>" (emphasis added). Plaintiffs do not allege anywhere that AQ contracted with Macy's to provide goods or services <u>in Ohio</u>, or that AQ in fact provided any goods or services in Ohio. They instead suggest that contracting with an Ohio company alone, <u>regardless of where goods and services will be provided</u>, is enough to confer jurisdiction. That runs counter to the holding in the *Ashton Park Apartments* case cited above, and would produce absurd results; for example, it would suggest that a North Carolina-based company that contracted with Macy's to maintain the premises in Macy's North Carolina stores could be sued in Ohio for an injury suffered in a North Carolina Macy's. More importantly, such a formulation would run afoul of the consistent guidance from federal courts that jurisdiction be based on contacts that are not "fortuitous" or "attenuated." *See, e.g.*,

*Calphalon*, 228 F.3d at 723 (refusing to find personal jurisdiction over out-of-state defendant where any contacts with Ohio "occurred solely because Calphalon chose to be headquartered in Ohio, not because [defendant] sought to further its business and create 'continuous and substantial' consequences there.").

The claims against AQ must be dismissed for lack of personal jurisdiction.

## II. PLAINTIFFS LACK STANDING TO BRING CLASS CLAIMS FOR PRODUCTS THEY DID NOT PURCHASE.

Plaintiffs argue that they have standing because the misrepresentations at issue are substantially similar, and that the determination of their standing should be deferred until the class certification stage. Although Plaintiffs identify the proper test, they do not apply it correctly.

### A. Plaintiffs have no standing to bring class claims for products they did not purchase because different sheet sets present distinct factual and legal issues.

Plaintiffs first argue that they have standing to bring claims with respect to not just the sheets they purchased, but "all "bedding or linen manufactured or supplied by Defendant AQ Textiles and/or Defendant Creative Textiles that was packaged or advertised with a representation regarding its thread count and sold at a Macy's store," because those claims "arise from the identical misleading labeling statement – that Defendants' products are of a higher thread count than they are." Pltfs.' Resp. at 9. They claim that "[t]he underlying harm [to consumers] is identical no matter if the misrepresentation is 500, 700, or 1200 thread count, or any other misrepresented number." *Id.* at 10.

That formulation of Plaintiffs' claims, however, ignores the very logic on which their claims rest. Plaintiffs allege that "thread count is used as an indicator of fabric quality and a basis on which they make purchasing decisions. As the thread count increases, so does the price that consumers are willing to pay for bedding and linens." Compl. ¶ 19. They then claim that "[t]he

inflated thread counts put forth by Defendants in their products induced Plaintiffs and other Class Members to purchase their products when Plaintiffs and other Class Members would not have purchased them, or would only have paid a lower price for the product if they had known the actual thread counts at the time of purchase." *Id.* ¶ 50. They claim that "[t]he Products were therefore worth less than the Products as represented, and Plaintiffs and Class Members paid extra or a premium for them." *Id.* ¶ 94.

Those allegations demonstrate the central theme of Plaintiffs' claims: that consumers will pay more for sheets with higher thread counts, and how much they will pay depends on consumers' perceptions of how much sheets of a certain thread count are worth. It is not then the case that "[t]he underlying harm [to consumers] is identical no matter if the misrepresentation is 500, 700, or 1200 thread count, or any other misrepresented number." Instead, the harm for each plaintiff will depend on no less than five distinct factual issues: (1) the represented thread count of the sheets purchased, (2) the "actual" thread count of the sheets purchased, (3) the amount that each plaintiff paid for her sheets, (4) the quality or utility of the sheets purchased, and (5) the amount that each plaintiff "would" have paid if she knew the true thread count and/or quality of the sheets. If it is true that consumers would pay more for 700-thread-count sheets than 500 thread-count sheets, and more for 1200 thread-count sheets than 700 thread-count sheets, then the exact represented thread count (not to mention the exact "actual" thread count) of each set of sheets is crucial, and differences in those thread counts could completely change the nature and outcome of individual plaintiffs' claims. Conversely, if Plaintiffs actually mean to suggest that there is no difference between thread counts of 500, 700, or 1200, then they are admitting that their claims are without merit.

Plaintiffs cite to three cases in support of their claim that the unpurchased products here are substantially similar to the ones they actually purchased (Pltfs.' Resp. at 9-10 & n.3), but each case is factually distinguishable from this one. In *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012, the court found that the plaintiffs were challenging the "same basic mislabeling practice" on ice cream products where each of the labels at issue said one of two things—"All Natural Flavors" or "All Natural Ice Cream." In *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 892 (N.D. Cal. 2012), the Plaintiffs claimed that all products at issue were identically labeled as "organic," and the court based its ruling in part on the fact that the plaintiffs disclaimed "any intent to challenge whether specific ingredients actually are organic." Finally, in *Mednick v. Precor, Inc.*, No. 14 C 3624, 2014 WL 6474915, at *4 (N.D. Ill. Nov. 13, 2014), the Court found that the plaintiffs' claims regarding both purchased and unpurchased exercise equipment the claims relied "on essentially the same misrepresentation"—that touch sensors contained in each product were accurate. There is no basis in the Complaint for a finding that the alleged misrepresentations for the unpurchased products are "substantially similar" to alleged misrepresentations for the purchased products.

The decision in *Rushing v. Williams-Sonoma, Inc.*, No. 16-CV-01421-WHO, 2016 WL 4269787 (N.D. Cal. Aug. 15, 2016), in contrast, demonstrated why Plaintiffs lack standing for claims about other products. There, the plaintiff brought class-action claims accusing Williams-Sonoma and other retailers of selling sheets with inflated thread counts. The plaintiff attempted to bring class-action claims not only with respect to the sheets he purchased—which he claimed had an inflated thread count due to counting two-ply yarn as two threads rather than one—but for "31 additional products with misleading thread counts at or above 350," which he claimed could

12

be reasonably presumed to have exaggerated thread counts. *Id.* at *2. The defendants sought to dismiss all of the plaintiff's claims with respect to sheets he did not actually purchase.

The court in *Rushing* first described the situations in which it would allow a plaintiff to proceed with class claims with respect to products he did not purchase, saying that the inquiry "necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Id.* at *3 (quoting *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014)). The court went on the say that "a claim that a reasonable consumer would be misled by a representation on a label may well require a context-specific analysis of the appearance of the label, the misrepresentation's placement on the label, and other information contained on the label," and that "where the actual composition or appearance of the product is legally significant to the claim at issue, the consumer may only be allowed to pursue claims for products with identical product composition and/or appearance." *Id.* (quoting *Ang*, 2014 WL 1024182, at *8).

Applying those standards, the court found that the plaintiff could only proceed with claims for sheets that suffered from the exact same alleged misrepresentation—counting two-ply yarn as two threads, holding that "[t]he legal theory and defenses applicable to his claim are legally significant and raise different questions not applicable" to any other alleged thread-count defects. *Id.* at *4. And even then, the Court would only allow the plaintiff to proceed with other claims "only to the extent that he can plausibly allege, consistent with Rule 11, that the unpurchased products are two-ply products that suffer from the same deception of which he complains." *Id.*

Applying the reasoning of the court in *Rushing* to the alleged facts here, Plaintiffs' claims with respect to products they did not purchase fail. Plaintiffs attempt to characterize all alleged misrepresentations regarding thread count as identical, but provide no factual basis for the Court

13

to assess the validity of that claim.  They do not make any allegations regarding how, why, or in what proportion the thread counts are incorrect, except to say that they are "inflated."  Indeed, there is not even consistency among the named Plaintiffs' own claims; while Plaintiff Hawes alleges that she purchased sheets with a represented thread count of 900 and an "actual" thread count of 249 (Compl. ¶ 39), Plaintiff Hill alleges that she purchased sheets with a represented thread count of 1000 but says only that the "actual" thread count was "far less." (*id.* ¶ 38).  Nor do Plaintiffs even directly allege which other sheet sets may have misrepresented thread counts; instead, they say only that they seek to bring class claims for all sheet sets with thread counts provided to Macy's by AQ, without individually naming those sheet sets or even directly alleging that the thread counts for those other sets are inaccurate.

Plaintiffs' own allegations reveal that distinct legal and factual issues would determine the resolution of any claims for products they did not actually purchase.  Plaintiffs have failed even to allege sufficient detail for the Court to determine the issues involved, and their claims with respect to any products other than the ones they actually purchased must be dismissed.

### B.  There is no reason to delay dismissal of Plaintiffs' claims for products they did not purchase until the class certification stage.

Plaintiffs next argue that the Court should delay a ruling on whether their claims for products they did not purchase should proceed until the class certification stage.  They argue that the Court in *Godec v. Bayer Corp.*, No. 1:10-CV-224, 2011 WL 5513202 (N.D. Ohio Nov. 11, 2011), cited by AQ, did not dismiss the plaintiff's claims for products he did not purchase until that stage, saying that the court was "engaging in Rule 23(a)(4) analysis."  Pltfs.' Resp. at 10.

The court in *Godec*, however, was not engaging in Rule 23 analysis when it dismissed the plaintiff's claims for products he did not purchase; in fact, the court explicitly did so "before turning to the requirements of Rule 23."  *Godec*, 2011 WL 5513202, at *2.  That the court did so

without having to consider class certification issues demonstrates that the question of whether Plaintiffs have standing to proceed with respect to products they did not purchase is not "intertwined" with class certification issues.  See Pltfs.' Resp. at 10.  Plaintiffs' vague description of the other products over which they claim to be suing—and the necessity of determining distinct factual and legal issues for each product, if ever identified—demonstrate that there is no reason to let those claims proceed any further than the 12(b)(6) stage.

III.   **PLAINTIFFS' ATTEMPT TO RECAST THEIR ALLEGATIONS IN THEIR RESPONSE CANNOT CURE THE SUBSTANTIVE DEFICIENCIES IN THEIR CLAIMS.**

In response to AQ's original Memorandum, Plaintiffs attempt to supplement their deficient Complaint through exposition in their Response. However, "it is black letter law that a plaintiff may not cure a pleading deficiency through assertions in a brief in opposition to a motion to dismiss." *Mohawk Rebar Serv., Inc. v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers Local Union No. 17*, No. 1:14 CV 00137, 2015 WL 5657252, at *8 (N.D. Ohio Sept. 24, 2015). Because their actual allegations fail to state any cognizable claim, each of Plaintiffs' claims must be dismissed.

A.   **Plaintiffs MMWA claim should be dismissed for failure to plead a "specified level of performance over a specified period of time."**

Plaintiffs have failed to state a claim under the MMWA. Plaintiffs have not alleged a warranty that "affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time" or which includes a promise "to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking." *See* 15 U.S.C. § 2301(6) (emphasis added). Even if, *arguendo*, the Court were to read Plaintiffs' arguments regarding quality of sleep or softness into the Complaint, the Complaint would still contain no allegations

whatsoever as to a level of quality of sleep or a specified period of time. Instead, the allegations of the Complaint state only that Plaintiffs had a subjective belief that the sheets "were of a higher quality, softer, and better for sleeping than sheets with lower thread counts." Compl. ¶¶ 11, 12. Plaintiffs' allegations about what <u>Plaintiffs believed</u> about sheets, however, do not constitute representations made by <u>Defendants</u> regarding a specified level of performance over a specified period of time. Plaintiffs' MMWA claims must be dismissed.

### B. Plaintiffs' breach of warranty of merchantability claim should be dismissed for failure to plead that the sheets lacked "even the most basic degree of fitness for ordinary use."

Plaintiffs have also failed to state a claim for breach of the implied warranty of merchantability. Under both Missouri and California law, the fundamental inquiry for a claim of breach of an implied warranty of merchantability is whether "the product lacks even the most basic degree of fitness for ordinary use." *Birdsong v. Apple, Inc.*, 590 F.3d 955. 958 (9th Cir. 2009); *see also Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011) ("The implied warranty of merchantability does not mean a promise by the merchant that the goods are exactly as the buyer expected, but rather that the goods <u>satisfy a minimum level of quality</u>.").

Plaintiffs claim that they have alleged that "the result of the low thread count and false promises caused deficiencies in the bed sheets softness, comfort, and durability necessary for quality sleeping." Pltfs.' Resp. at 14. In fact they have alleged no such thing. The paragraphs they primarily cite to in support of that proposition, paragraphs 1 and 2 of the Complaint say only that members of the industry, including Defendants, <u>represent</u> that sheets with higher thread count are of better quality than those of lower thread count. Nowhere do they allege that the sheets they purchased were not as soft, comfortable, or durable as they should have been, based on their represented thread count. Indeed, other than a single, barren allegation that the sheets "were unfit

for the ordinary purpose for which they are used," Compl. ¶ 160, the Complaint contains <u>no</u> <u>allegations whatsoever</u> that Plaintiffs slept less comfortably as a result of using the sheets. In fact, the Complaint does not even allege that either of the Plaintiffs <u>used</u> the sheets. Because the Complaint contains no actual allegations that the sheets were unfit for their intended purpose, Plaintiffs' breach of implied warranty claim must be dismissed.

### C. Plaintiffs' fraud claims should be dismissed for failure to plead those claims with particularity.[4]

Plaintiffs' fraud claims are not pleaded with particularity and must be dismissed. The lack of particularity in Plaintiffs' allegations is made manifest in their response to AQ's memorandum in support of its motion to dismiss. Plaintiffs' particularity arguments refer <u>only</u> to "Macy's," "Defendants," "Defendant," or to no party at all. *See* Pls. Resp. at 15-17. Plaintiffs <u>do not and</u> <u>cannot cite a single instance alleging purportedly fraudulent conduct by AQ</u>. *See id.* Moreover, group pleading *per se* fails to meet the requirements of Rule 9(b). *See Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) ("The [Second Amended Complaint] attributed fraudulent representations and conduct to multiple defendants generally, in a group pleading fashion. The district court correctly concluded that such vague allegations do not satisfy Rule 9(b). . . . 'Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d. Cir. 1987)); *Swartz v. KPMG, LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of

---

[4] The fraud claims include Count Ten (fraud under both California and Missouri law) and Counts Two, Three, Four, Five, Six and Seven (statutory consumer protection claims) which all sound in fraud.

the allegations surrounding his alleged participation in the fraud." (internal quotation marks omitted)). Plaintiffs' fraud claims should be dismissed for failure to plead with particularity.[5]

**D. Plaintiffs' Consumer Legal Remedies Act ("CLRA") and warranty claims should be dismissed not just for failure to plead notice, but because Plaintiffs explicitly allege inadequate notice.**

Plaintiffs again seek to supplement the Complaint by claiming they provided adequate notice of their warranty and CLRA claims. Plaintiffs' argument again misses the mark. The question is not whether Plaintiffs provided notice, which this reply does not address, but whether they <u>pleaded</u> notice, which is required by both California and Missouri law. *See Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 817 (N.D. Cal. 2014) (dismissing breach of warranty claims for failure to <u>plead</u> reasonable notice); *Budach v. NIBCO, Inc.*, No. 2:14-cv-04324-NKL, 2015 WL 687-145, at *3 (W.D. Mo. Nov. 6, 2015) (dismissing breach of warranty claims due to failure to <u>plead</u> pre-suit notice). Not only have Plaintiffs failed to plead appropriate notice,[6] but Plaintiffs <u>allege in the Complaint</u> that they have not provided appropriate notice and demand pursuant to California Civil Code 1782. *See* Compl. ¶ 153. Plaintiffs' CLRA and breach of warranty claims fail.

For the reasons stated herein and in AQ's original Memorandum, Plaintiffs' claims against AQ must be dismissed in their entirety.

---

[5] Plaintiffs' arguments regarding economic loss should have no bearing on this matter for the same reason their fraud claims should be dismissed: any fraudulent inducement exception to the economic loss rule does not apply because Plaintiffs have failed to plead fraud with particularity.

[6] Plaintiffs allege that they have provided notice by filing multiple complaints. *See id.* ¶ 161. AQ has been unable to any legal support for the argument that filing previous complaints will provide proper notice and opportunity to cure.

Respectfully submitted, this the 23rd day of March, 2018.

/s/ Beth A. Bryan
John B. Nalbandian (Ohio Reg. 0073033)
Beth A. Bryan (Ohio Reg. 0082076)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
nalbandian@taftlaw.com
bryan@taftlaw.com

Reid L. Phillips (admitted *pro hac vice*)
NC State Bar No. 7968
Jennifer K. Van Zant (admitted *pro hac vice*)
NC State Bar No. 21280
Andrew L. Rodenbough (admitted *pro hac vice*)
NC State Bar No. 46364
Ryan C. Fairchild (admitted *pro hac vice*)
N.C. State Bar No. 47729
BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, LLP
230 North Elm Street
2000 Renaissance Plaza
Greensboro, NC 27401
Telephone: (336) 373-8850
Facsimile: (336) 378-1001
rphillips@brookspierce.com
jvanzant@brookspierce.com
arodenbough@brookspierce.com
rfairchild@brookspierce.com

Attorneys for Defendant
AQ TEXTILES LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed via the Court's

CM/ECF system, which will send electronic notification to all counsel of record.

This the 23rd day of March, 2018.

/s/ Beth A. Bryan
Beth A. Bryan

22227373.1