UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | |
|---|---|
| HAWES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MACY'S INC., *et al.*, <br><br> Defendants. | Civil Action: 1:17-CV-00754 <br><br> Judge Timothy S. Black |

### DEFENDANT MACY'S, INC.'S
### REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant Macy's, Inc. ("Macy's") submits this Reply Memorandum in support of its Motion to Dismiss Plaintiffs' claims. In their Response to Macy's Motion to Dismiss, Plaintiffs attempt to recast their allegations as more robust than they actually are and to imbue them with meaning that cannot reasonably be implied. Careful consideration of the actual allegations in the Complaint—and the inapposite legal authorities cited by Plaintiffs—reveals that all claims should be dismissed.

### ARGUMENT

**I. PLAINTIFFS LACK STANDING TO BRING CLASS CLAIMS FOR PRODUCTS THEY DID NOT PURCHASE.**

Plaintiffs argue that they have standing because the misrepresentations at issue are "substantially similar," and that the determination of their standing should be deferred until the class certification stage. Both arguments are unavailing.

### A. Plaintiffs have no standing to bring class claims for products they did not purchase because different sheet sets present distinct factual and legal issues.

Plaintiffs first argue that they have standing to bring claims with respect to not just the sheets they purchased, but to "all "bedding or linen manufactured or supplied by Defendant AQ Textiles and/or Defendant Creative Textiles that was packaged or advertised with a representation regarding its thread count and sold at a Macy's store," because those claims "arise from Defendants' identically misleading misrepresentation – that Defendants' products are of a higher thread count than they are." Plaintiffs' Combined Response to Macy's Motion to Dismiss ("Pltfs.' Resp.") at 4. They claim that "[t]he underlying harm [to consumers] is identical no matter if the misrepresentation is 500, 700, or 1200 thread count, or any other misrepresented number." *Id.*

That formulation of Plaintiffs' claims, however, ignores the very logic on which their dubious claims rest. Plaintiffs allege that "thread count is used as an indicator of fabric quality and a basis on which they make purchasing decisions. As the thread count increases, so does the price that consumers are willing to pay for bedding and linens." Compl. ¶ 19. They then claim that "[t]he inflated thread counts put forth by Defendants in their products induced Plaintiffs and other Class Members to purchase their products when Plaintiffs and other Class Members would not have purchased them, or would only have paid a lower price for the product if they had known the actual thread counts at the time of purchase." *Id.* ¶ 50. They claim that "[t]he Products were therefore worth less than the Products as represented, and Plaintiffs and Class Members paid extra or a premium for them." *Id.* ¶ 94.

Those allegations demonstrate the central theme of Plaintiffs' claims: that consumers will pay more for sheets with higher thread counts, and how much they will pay depends on consumers' perceptions of how much sheets of a certain thread count are worth. It is not then the case that "[t]he underlying harm [to consumers] is identical no matter if the misrepresentation is 500, 700,

or 1200 thread count, or any other misrepresented number." Instead, the harm for each plaintiff will depend on no less than five distinct factual issues: (1) the represented thread count of the sheets purchased, (2) the "actual" thread count of the sheets purchased, (3) the amount that each plaintiff paid for her sheets, (4) the quality or utility of the sheets purchased, and (5) the amount that each plaintiff "would" have paid if she knew the true thread count and/or quality of the sheets. If it is true that consumers would pay more for 700-thread-count sheets than 500 thread-count sheets, and more for 1200 thread-count sheets than 700 thread-count sheets, then the exact represented thread count (not to mention the exact "actual" thread count) of each set of sheets is crucial, and differences in those thread counts could completely change the nature and outcome of individual plaintiffs' claims. Conversely, if Plaintiffs actually mean to suggest that there is no difference between thread counts of 500, 700, or 1200, then they are admitting that their claims are without merit.

Plaintiffs cite to three cases in support of their claim that the unpurchased products here are substantially similar to the ones they actually purchased (Pltfs.' Resp. at 4 & n.3), but each case is factually distinguishable from this one. In *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012, the court found that the plaintiffs were challenging the "same basic mislabeling practice" on ice cream products where each of the labels at issue said one of two things—"All Natural Flavors" or "All Natural Ice Cream." In *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 892 (N.D. Cal. 2012), the Plaintiffs claimed that all products at issue were identically labeled as "organic," and the court based its ruling in part on the fact that the plaintiffs disclaimed "any intent to challenge whether specific ingredients actually are organic." Finally, in *Mednick v. Precor, Inc.*, No. 14 C 3624, 2014 WL 6474915, at *4 (N.D. Ill. Nov. 13, 2014), the Court found that the plaintiffs' claims

3

regarding both purchased and unpurchased exercise equipment the claims relied "on essentially the same misrepresentation"—that touch sensors contained in each product were accurate. These cases are distinct from the situation here; in this case, each product would need to be evaluated separately. There is no basis in the Complaint for a finding that the alleged misrepresentations for the unpurchased products are "substantially similar" to alleged misrepresentations for the purchased products.

The decision in *Rushing v. Williams-Sonoma, Inc.*, No. 16-CV-01421-WHO, 2016 WL 4269787 (N.D. Cal. Aug. 15, 2016), in contrast, demonstrates why Plaintiffs lack standing for claims about other products. There, the plaintiff brought class-action claims accusing Williams-Sonoma and other retailers of selling sheets with inflated thread counts. The plaintiff attempted to bring class-action claims not only with respect to the sheets he purchased—which he claimed had an inflated thread count due to counting two-ply yarn as two threads rather than one—but for "31 additional products with misleading thread counts at or above 350," which he claimed could be reasonably presumed to have exaggerated thread counts. *Id.* at *2. The defendants sought to dismiss all of the plaintiff's claims with respect to sheets he did not actually purchase.

The court in *Rushing* first described the situations in which it would allow a plaintiff to proceed with class claims with respect to products he did not purchase, saying that the inquiry "necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Id.* at *3 (quoting *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014)). The court went on the say that "a claim that a reasonable consumer would be misled by a representation on a label may well require a context-specific analysis of the appearance of the label, the misrepresentation's placement on the label, and other information contained on the label," and that "where the actual

composition or appearance of the product is legally significant to the claim at issue, the consumer may only be allowed to pursue claims for products with identical product composition and/or appearance." *Id.* (quoting *Ang*, 2014 WL 1024182, at *8).

Applying those standards, the court found that Plaintiff could only proceed with claims for sheets that suffered from the exact same alleged misrepresentation—counting two-ply yarn as two threads, holding that "[t]he legal theory and defenses applicable to his claim are legally significant and raise different questions not applicable" to any other alleged thread-count defects. *Id.* at *4. And even then, the Court would only allow the plaintiff to proceed with other claims "only to the extent that he can plausibly allege, consistent with Rule 11, that the unpurchased products are two-ply products that suffer from the same deception of which he complains." *Id.*

Applying the reasoning of the court in *Rushing* to the alleged facts here, the Plaintiffs' claims with respect to products they did not purchase fall woefully short. The Plaintiffs attempt to characterize all alleged misrepresentations regarding thread count as identical, but provide no factual basis for the Court to assess the validity of that claim. They do not make any allegations regarding how, why, or in what proportion the thread counts are incorrect, except to say that they are "inflated." Indeed, there is not even consistency among the named Plaintiffs' own claims; while Plaintiff Hawes alleges that she purchased sheets with a represented thread count of 900 and an "actual" thread count of 249 (Compl. ¶ 39), Plaintiff Hill alleges that she purchased sheets with a represented thread count of 1000 but says only that the "actual" thread count was "far less" (*id.* ¶ 38). Nor do Plaintiffs even directly allege which other sheet sets may have misrepresented thread counts; instead, they say only that they seek to bring class claims for all sheet sets with thread counts provided to Macy's by AQ, without individually naming those sheet sets or even directly alleging that the thread counts for those other sets are inaccurate.

5

Plaintiffs' own allegations reveal that distinct legal and factual issues would determine the resolution of any claims for products they did not actually purchase. Because Plaintiffs have failed even to allege sufficient detail for the Court to determine the issues involved, their claims with respect to any products other than the ones they actually purchased must be dismissed.

### B. There is no reason to delay dismissal of Plaintiffs' claims for products they did not purchase until the class certification stage.

Plaintiffs next argue that the Court should delay a ruling on whether their claims for products they did not purchase should proceed until the class certification stage. They argue that the court in *Godec v. Bayer Corp.*, No. 1:10-CV-224, 2011 WL 5513202 (N.D. Ohio Nov. 11, 2011), cited by Macy's, did not dismiss the plaintiff's claims for products he did not purchase until that stage, saying that the court was engaging in "analysis under Rule 23(a)(4)." Pltfs.' Resp. at 5.

The court in *Godec*, however, was not engaging in Rule 23 analysis when it dismissed the plaintiff's claims for products he did not purchase; in fact, the court explicitly did so "before turning to the requirements of Rule 23." *Godec*, 2011 WL 5513202, at *2. That the court did so without having to consider class certification issues demonstrates that the question of whether Plaintiffs have standing to proceed with respect to products they did not purchase is not "intertwined" with class certification issues, as Plaintiffs suggest. Pltfs.' Resp. at 5. Instead, Plaintiffs' vague description of the other products over which they claim to be suing—and the necessity of determining distinct factual and legal issues for each product, should Plaintiffs ever identify them—demonstrate that there is no reason to let those claims proceed any further than the 12(b)(6) stage.

6

## II. PLAINTIFFS' ATTEMPT TO RECAST THEIR ALLEGATIONS IN THEIR RESPONSE CANNOT CURE THE SUBSTANTIVE DEFICIENCIES IN THEIR CLAIMS.

In response to Macy's original Memorandum, Plaintiffs attempt to supplement their deficient Complaint through exposition in their Response. However, "it is black letter law that a plaintiff may not cure a pleading deficiency through assertions in a brief in opposition to a motion to dismiss." *Mohawk Rebar Serv., Inc. v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers Local Union No. 17*, No. 1:14 CV 00137, 2015 WL 5657252, at *8 (N.D. Ohio Sept. 24, 2015). Because their actual allegations fail to state any cognizable claim, each of Plaintiffs' claims must be dismissed.

### A. Plaintiffs MMWA claim should be dismissed for failure to plead a "specified level of performance over a specified period of time."

Plaintiffs have failed to state a claim under the MMWA. Plaintiffs have not alleged a warranty that "affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time" or which includes a promise "to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking." *See* 15 U.S.C. § 2301(6) (emphasis added). Even if, *arguendo*, the Court were to read Plaintiffs' arguments regarding quality of sleep or softness into the Complaint, the Complaint would still contain no allegations whatsoever as to a level of quality of sleep or a specified period of time. Instead, the allegations of the Complaint state only that Plaintiffs had a subjective belief that the sheets "were of a higher quality, softer, and better for sleeping than sheets with lower thread counts." Compl. ¶¶ 11, 12. Plaintiffs' allegations about what Plaintiffs believed about sheets, however, do not constitute representations made by Defendants regarding a specified level of performance over a specified period of time. Plaintiffs' MMWA claims must be dismissed.

7

> **B. Plaintiffs' breach of warranty of merchantability claim should be dismissed for failure to plead that the sheets lacked "even the most basic degree of fitness for ordinary use."**

Plaintiffs have also failed to state a claim for breach of the implied warranty of merchantability. Under both Missouri and California law, the fundamental inquiry for a claim of breach of an implied warranty of merchantability is whether "the product lacks even the most basic degree of fitness for ordinary use." *Birdsong v. Apple, Inc.*, 590 F.3d 955. 958 (9th Cir. 2009); *see also Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011) ("The implied warranty of merchantability does not mean a promise by the merchant that the goods are exactly as the buyer expected, but rather that the goods satisfy a minimum level of quality.").

Plaintiffs claim that they have alleged that "the result of the low thread count and false promises caused deficiencies in the bed sheets softness, comfort, and durability necessary for quality sleeping." Pltfs.' Resp. at 14. In fact they have alleged no such thing. The paragraphs they primarily cite to in support of that proposition—paragraphs 1 and 2 of the Complaint—say only that members of the industry, including Defendants, represent that sheets with higher thread count are of better quality than those of lower thread count. Nowhere do they allege that the sheets they purchased were not as soft, comfortable, or durable than they should have been, based on their represented thread count. Indeed, other than a single, barren allegation that the sheets "were unfit for the ordinary purpose for which they are used," Compl. ¶ 160, the Complaint contains no allegations whatsoever that Plaintiffs slept less comfortably as a result of using the sheets. In fact, the Complaint does not even allege that either of the Plaintiffs used the sheets. Because the Complaint contains no actual allegations that the sheets were unfit for their intended purpose, Plaintiffs' breach of implied warranty claim must be dismissed.

8

### C. Plaintiffs' fraud claims should be dismissed for failure to plead those claims with particularity.[1]

Plaintiffs' fraud claims are not pleaded with particularity and must be dismissed. First, there are no allegations linking Macy's to the allegedly fraudulent representations at issue. There are no allegations showing that Macy's had actual or constructive knowledge of the alleged deficiency in the sheets' thread counts.[2] Instead, the Complaint contains only a sole allegation that Defendants—not Macy's alone—knew or should have known of the misrepresented thread counts based on the price of the sheets being "substantially lower than the prices for authentic sheets of the advertised thread counts." Compl. ¶ 44. This information, however, was equally available to any consumer who purchased the sheets, including the named Plaintiffs.

Second, allegations made as to Defendants together manifestly fail to meet the particularity requirements of Rule 9(b). *See Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015) ("The [Second Amended Complaint] attributed fraudulent representations and conduct to multiple defendants generally, in a group pleading fashion. The district court correctly concluded that such vague allegations do not satisfy Rule 9(b). . . . 'Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.'" (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d. Cir. 1987)); *Swartz v. KPMG, LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged

---

[1] The fraud claims include Count Ten (fraud under both California and Missouri law) and Counts Two, Three, Four, Five, Six and Seven (statutory consumer protection claims) which all sound in fraud.

[2] Despite Plaintiffs' inclusion of a reference to Paragraph 37 of the Complaint, that paragraph does not refer to Macy's at all. And Plaintiffs' argument that the filing of its complaints against the defendants provided the requisite knowledge of representations made <u>before</u> the complaints were ever filed defies logic.

participation in the fraud." (internal quotation marks omitted)). Plaintiffs' allegations, as referenced in their brief in opposition to the motion to dismiss, repeatedly refer to Defendants plural or to a singular Defendant without specifying whether "Defendant" refers to AQ, Creative Textiles, or Macy's.

Third, Plaintiffs cite to an overturned case from the Southern District of Illinois, which is under the jurisdiction of the Seventh Circuit Court of Appeals, for the proposition that particularity requirements should be relaxed pending discovery. That case should have no bearing here. In stark contrast, the Sixth Circuit Court of Appeals has held that, under current pleading standards, "plaintiff must allege specific facts . . . even if those facts are only within the head or hands of the defendants. The plaintiff may not use the discovery process to obtain these facts after filing suit." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (emphasis added).

Fourth, Plaintiffs' arguments regarding economic loss should have no bearing on this matter for the same reason their fraud claims should be dismissed: any fraudulent inducement exception to the economic loss rule does not apply because Plaintiffs have failed to plead fraud with particularity. Plaintiffs' fraud claims should be dismissed for failure to plead those claims with particularity and because the economic loss rule bars recovery on those claims.

> **D. Plaintiffs' Consumer Legal Remedies Act ("CLRA") and breach of warranty claims should be dismissed not just for failure to plead notice, but because Plaintiffs explicitly allege inadequate notice.**

Plaintiffs seek to supplement their Complaint by claiming they provided adequate notice of their warranty and CLRA claims. Plaintiffs' argument again misses the mark. The question is not whether Plaintiffs provided notice, which this reply does not address, but whether Plaintiffs pleaded notice, which is required by the law. *See Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 817

(N.D. Cal. 2014) (dismissing breach of warranty claims for failure to <u>plead</u> reasonable notice); *Budach v. NIBCO, Inc.*, No. 2:14-cv-04324-NKL, 2015 WL 687-145, at *3 (W.D. Mo. Nov. 6, 2015) (dismissing breach of warranty claims due to failure to <u>plead</u> pre-suit notice). Not only have Plaintiffs failed to plead appropriate notice,[3] but Plaintiffs <u>allege in the Complaint</u> that they have not provided appropriate notice and demand pursuant to California Civil Code 1782. *See* Compl. ¶ 153. Plaintiffs' CLRA and warranty claims should be dismissed for failure to properly plead notice.

For the reasons stated herein and in Macy's original Memorandum, Plaintiffs' claims against Macy's must be dismissed in their entirety.

---

[3] Plaintiffs allege that they have provided notice by filing multiple complaints. *See id.* ¶ 161. Macy's has been unable to find any legal support for the argument that filing previous complaints will provide proper notice and opportunity to cure.

11

Respectfully submitted, this the 23rd day of March, 2018.

/s/ Beth A. Bryan
John B. Nalbandian (Ohio Reg. 0073033)
Beth A. Bryan (Ohio Reg. 0082076)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
nalbandian@taftlaw.com
bryan@taftlaw.com

Reid L. Phillips (admitted *pro hac vice*)
NC State Bar No. 7968
Jennifer K. Van Zant (admitted *pro hac vice*)
NC State Bar No. 21280
Andrew L. Rodenbough (admitted *pro hac vice*)
NC State Bar No. 46364
Ryan C. Fairchild (admitted *pro hac vice*)
N.C. State Bar No. 47729
BROOKS, PIERCE, MCLENDON,
HUMPHREY & LEONARD, LLP
230 North Elm Street
2000 Renaissance Plaza
Greensboro, NC 27401
Telephone: (336) 373-8850
Facsimile: (336) 378-1001
rphillips@brookspierce.com
jvanzant@brookspierce.com
arodenbough@brookspierce.com
rfairchild@brookspierce.com

Attorneys for Defendant
MACY'S INC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed via the Court's CM/ECF system, which will send electronic notification to all counsel of record.

This the 23rd day of March, 2018.

/s/ Beth A. Bryan
Beth A. Bryan

22227359.1