## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| SARA HAWES and AMY HILL, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>MACY'S, INC.,<br><br>    Defendants. | <br><br><br>Case No.:  1:17-cv-00754<br><br>JURY TRIAL DEMANDED |

### AMENDED CLASS ACTION COMPLAINT

Plaintiffs Sara Hawes and Amy Hill ("Plaintiffs") bring this action on their own behalf and on behalf of putative classes (the "Classes") consisting of Plaintiffs and all others similarly situated, pursuant to the laws of the United States and California and Missouri, or, in the alternative, nationwide and in all 50 States and the District of Columbia, against Macy's Inc. ("Macy's" or "Defendant") and allege the following based on information and belief, except for those paragraphs pertaining to Plaintiffs' own actions, which are alleged based on personal knowledge.

### INTRODUCTION

1.      Plaintiffs bring this action on their own behalf, and on behalf of a Class consisting of Plaintiffs and all others similarly situated, to redress Defendant's deceptive acts and unconscionable business practices designed to deceive and mislead consumers and the public into believing that Defendant's bedding and linen products had higher thread counts than they actually have and, as such, were of better quality, more durable, last longer, softer, and more comfortable for sleeping than products with lesser thread counts.  In purchasing bedding and linen products, Plaintiffs and the Class received less than what was promised by Defendant due to the improperly inflated thread counts represented on advertisements and bedding and linen labels sold by Defendant.

2.      Members of the bedding and linen products industry, including the Defendant, and it its manufactures and distributors, including Creative Textiles and AQ Textiles,

consistently communicate to consumers that higher thread count sheets are of better quality, softer, and more comfortable for sleeping. As a result, consumers purchasing bedding and linen products use thread count as a primary indicator of the quality, durability and longevity of the sheets offered for sale and pay higher prices for higher thread counts.

3.      As part of a scheme to make their bedding and linen products more attractive, boost sales, and increase profits, Defendant and its manufactures and distributors/importers, including Creative Textiles and AQ Textiles, knowingly departed from known, well-established, and long-standing industry standards governing the calculation and advertisement of thread counts by inflating the thread counts on the labels of the products they manufactured, marketed, distributed, and/or sold.

4.      Defendant misrepresented, and continue to misrepresent, that the thread count in many of the bedding and linen products they advertise, market, distribute throughout the country, resulting in the sale of bedding and linen products represented to have greater than their true thread counts to consumers throughout the United States. The representation of the false and misleading thread count also deceives and misleads consumers into believing that they are purchasing a product which is of higher quality, durability, longevity, softness, or better for sleeping than products with a lower thread count.

5.      Inaccurate thread counts create reasonable but mistaken beliefs by consumers about the quality, durability and longevity of bedding and linen products. For example, reasonable consumers believe that a bedding package label stating that it contains 800 thread-count bedding actually contains bedding with a thread count calculated at 800 according to an honest and consistent industry standard. Likewise, consumers believe that an 800 thread-count bedding is going to be of higher quality, durability, longevity, softer, and/or better for sleeping than lower thread-count bedding. Consumers rely on Defendant's representations and advertising as they compare and assess products and make purchase decisions.

6.      As a direct result of Defendant's improper, deceptive, and unconscionable scheme to misrepresent bedding and linen thread counts, Plaintiffs and other Class members suffered damages because the inflated thread counts put forth by Defendant in their products induced

Plaintiffs and other Class Members to purchase their products when Plaintiffs and other Class Members would not have purchased them, or would only have paid a lower price for the product if they had known the actual thread counts at the time of purchase.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.  Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Defendant conduct business in this District, and have intentionally availed themselves of the laws and markets of this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

9.  Defendant Macy's improper conduct set forth herein occurred in this District or was conceived of and executed from this District in whole or in part.  Defendant's decisions to engage in the improper conduct set forth herein were made in this District.  Some of the bedding and linen products at issue were advertised, marketed, sold and/or distributed by Macy's, or its operating entities, in this district.  Macy's or its operating entities directly advertised, marketed and sold bedding and linen products to consumers in this district.

10.  The harm alleged herein occurred in this District or emanated from Defendant's improper conduct that occurred in this District, in whole or in part.

## FACTS

11.  Plaintiff Amy Hill is a resident of the City of St. Louis, Missouri and a citizen of Missouri.  Ms. Hill purchased Fairfield Square 1000TC Luxury Sateen sheets from a Macy's store in St. Louis County, MO.  She believes she made the purchase in summer or fall of 2016. Plaintiff Hill reasonably believed that the sheets she purchased were in fact of 1000 thread count, and she was deceived by the false label because the sheets' thread count was in fact far less.

Plaintiff Hill relied on the thread count representations on the packaging when purchasing these sheets and believed that the sheets were of higher quality, durability, longevity, softer, and better for sleeping than sheets with lower thread counts.

12.     Plaintiff Sara Hawes is an adult citizen of California.  In or around May 2017, Ms. Hawes purchased a Somerset Collection brand queen-size sheet set represented to be "900 Thread Count" from Defendant Macy's retail store located at 8500 Beverly Blvd. in Los Angeles, CA. *See* Ex. A, Label on sheets purchased by Plaintiff. Plaintiff relied on and was deceived by the thread count representations on the packaging and in the Macy's store when purchasing these sheets and believed that she was purchasing sheets with a 900 thread count and that the sheets were of higher quality, durability, longevity, softer and better for sleep than sheets with lower thread counts.  The actual thread count of her sheets was much less.  Plaintiff paid $76.11 ($69.99 plus tax) for this sheet set.

13.     Defendant Macy's is a Delaware corporation, with its principal executive offices located at 7 West 7th Street, Cincinnati, Ohio 45202.  Prior to June 1, 2007, Macy's Inc. was known as Federated Department Stores, Inc.  As of April 2, 2016, Macy's was operating 870 stores in 45 states, the District of Columbia, Guam and Puerto Rico under the names of Macy's, Macy's Backstage, Bloomingdale's, Bloomingdale's Outlets, and Bluemercury.  Macy's also made sales throughout the United States via its consumer websites: www.macys.com; bloomingdales.com; and bluemercury.com.  In Macy's Annual Report for the fiscal year ending January 30, 2016, Macy's reported net sales of $27,079,000,000, of which 16% ($4,332,640,000) was identified as Home/Miscellaneous sales, which presumably includes sales of bedding and linen products.[1]

14.     Defendant Macy's sells bedding and linen products bearing at least the following brand names:
> AQ Textiles
> Bar III
> Betsey Johnson
> Bluebellgray

---

[1] The other categories are Women's Accessories, Intimate Apparel, Shoes and Cosmetics; Woman's Apparel; and Men's and Children's.

Brookstone
Calvin Klein
Carter's
Charter Club
Donna Karan
Echo
Elite Home
Fairfield Square Collection
Hotel Collection
Hugo Boss
Jay Franco
Jessica Sanders
JLA Home
Joy Mangano
Lacoste Home
Martex
Martha Stewart Collection
Nautica
NoJo
Pendleton
Ralph Lauren
Shavel
Sunham
Tommy Bahama Home
Tommy Hilfiger
Trina Turk
Waterford
Westpoint
Westport

*See* www.macys.com.

15.     Creative Textiles is a private limited company organized under the laws of the Republic of India, with its primary place of business at 212, Cama Industrial Estate, Sun Mill Compound Mumbai, Maharashtra 400013 India.

16.     AQ Textiles is a North Carolina LLC with it principal place of business and registered offices located at 214 Staunton Drive, Greensboro, North Carolina 27410.

17.     Creative Textiles manufactures and sells textiles, including the relevant sheets and bedding products, throughout the United States, through its subsidiary AQ Textiles. [2]

18.      AQ Textiles, on behalf of Creative Textiles, imports and distributes the relevant

---

[2] Creative Textiles was a defendant in the original complaint filed (Doc. 1) but the Court entered an order (Doc. 38) dismissing them for lack of personnel jurisdiction.

sheet and bedding products to Defendant Macy's.[3]

19. Defendant Macy's sold the relevant sheets and bedding products manufactured and distributed by Creative Textiles and AQ Textiles in Ohio, Missouri, California and throughout the United States during the relevant time period.

20. For consumers purchasing bedding and linens, thread count is used as an indicator of fabric quality, durability and longevity and a basis on which they make purchasing decisions. As the thread count increases, so does the price that consumers are willing to pay for bedding and linens.

21. Industry participants at each level of the supply chain, including Defendant, and its manufactures and distributors/importers, know that consumers will pay higher prices for linens and bedding products with a higher thread count and as such increase the price as the thread counts on the products increase. This includes manufacturers such as Creative Textiles, distributors/importers such as AQ Textiles, and retailers such as Defendant Macy's.

22. Consumers rely on represented thread count as the gauge for the quality, durability, longevity and fitness for their bedding and linen products. *See* ABC News, Are Shoppers Short-Sheeted by Thread Count? November 14, 2016, *available at http://abcnews.go.com/GMA/ story?id=125380&page=1* ("Consumers who enjoy slipping under top-quality bed sheets rely on thread count as a gauge while shopping….").

23. Consumers pay more for higher thread count sheets. *Id.* ("A single-ply 300-count can run about $55 a set, while the 600 thread-count sheets that [tested as] only a 300-count is $180 a set.").

24. An informal survey of the prices of cotton, king-size bedding sets at online retailers in December 2016 showed that as thread count increased, so did the price for the bedding.

---

[3] AQ textiles was a defendant in the original complaint filed (Doc. 1) but the Court entered an order (Doc. 38) dismissing them for lack of personnel jurisdiction.



25.    The common or standard practice in the U.S. bedding and linen industry has been to count the number of threads in both the warp (vertical direction) and filling (horizontal direction).  Common or standard practice counts each yarn as one thread, regardless of whether the yarn was a single-ply or multi-ply yarn.

26.    The American Society for Testing and Materials' ("ASTM") Standard Test Method for Warp (End) Count and Filling (Pick) Count of Woven Fabric, Designation: D3775-12, covers the standard test method for measuring warp end count and filling pick count and is applicable to all types of woven fabric.  Section 9.1.1 of D3775-12 instructs on the appropriate method for determining thread count: "Count individual warp ends and filling picks as single units regardless of whether they are comprised of single or plied components."

27.    The terms relevant to ASTM D3775-12, and related to textiles, are defined by ASTM Designation: D123-03.  *See* Section 3, Terminology of ASTM D3775-123.  These terms, among others, include:

   a.  **count,** *n − in woven textiles*, the number of warp yarns (ends) and filling yarns (picks) per unit distance as counted while the fabric is held under zero tension,

and is free of folds and wrinkles.

    b.   **end,** *n − in fabric*, an individual warp yarn (single or ply) or cord.

    c.   **filling,** *n −* yarn running from selvage to selvage at right angles to the warp in a woven fabric.

    d.   **pick,** *n −* an individual filling yarn.

    e.   **pick count,** *n − in woven fabrics*, the number of filling yarns per unit fabric length.

*See* ASTM D 123-03, Standard Terminology Relating to Textiles.

28.    The prior versions of ASTM D3775, going back at least to 2003, included the same instructions for proper counting under the standard.  ASTM, Standard Test Method for Warp End Count and Filling Pick Count of Woven Fabric, Designation: D3775-03a, Section 9.1.4 instructs, "Count individual warp yarns (ends) and filling yarns (picks) as single units regardless of whether they are comprised of single or plied components."

29.    Per ASTM D3775-12 § 9.1.4, the standard deviation of the samples tested, should be 5% or less.  In other words, the stated thread count should be within 5% of the actual thread count.

30.    However, some bedding and linen manufacturers, importers and retailers, such as Defendant, are not adhering to the standard-based, traditional, and common industry practice. These manufacturers and retailers double or triple the true thread count by counting plied yarns individually.  This includes manufacturers such as Creative Textiles, distributors/importers such as AQ Textiles, and retailers such as Defendant Macy's.

31.    According to the National Textiles Association ("NTA") and the Federal Trade Commission ("FTC"), this practice of determining thread count by counting plied yarns individually "inflates the thread count numbers to levels which double or triple (or more) the thread count as determined by the long standing, traditional way.  This practice has also created confusion in the marketplace and has caused consumers to compare thread counts that may have been calculated in two dramatically different ways."  *See* FTC Letter to National Textile Association, August 2, 2005, Ex. B.

8

32.     In its Letter to the National Textile Association, the FTC stated that:

> [C]onsumers could be deceived or misled by the practice of stating an inflated thread count, achieved by multiplying the actual count by the number of plies within the yarn. A possible non-deceptive way to disclose both the thread count and the yarn ply would be to state, for example: '300 thread count, 2 ply yarn.' A representation of '600 thread count' for this same product would likely mislead consumers about the quality of the product being purchased."

33.     The practice of counting the plies that make up each thread was also condemned by the American Textile Manufacturer's Institute ("ATMI"). In a letter sent to the FTC on January 31, 2002, Ex. C, ATMI addressed marketing of bed sheets and pillowcases to consumers with claims of extremely high yarn or thread count claims, stating that:

> Labeling these products based on a count that includes each ply in plied yarns deceives the customer into believing that bedding products with higher counts are better, when, in fact, they might be inferior because of the method used to determine the count.
>
> …
>
> In many cases, these extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric. A plied yarn is one in which two or more yarns are twisted together to form a single strand.
>
> ATMI believes this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American public into making purchasing decisions to purchase items, based on false and misleading information.
>
> ASTM method D 3775-96 (Standard Test Method for Fabric Count of Woven Fabric) [a prior version of D3775-12] the long-accepted industry standard for determining count. This method has been in use in this country for many years and serves as the industry's standard way to report the count of many woven textile fabrics, including sheeting. It is based on the number of yarns in the warp direction and filling direction, regardless of ply, and has become an important parameter used by consumers to judge the quality of sheeting products, since the higher the count, the more luxurious the product.
>
> ATMI believes that any information provided to the consumer should be true and correct so as not to be deceptive or misleading. We believe that plied yarns are properly counted as only one yarn. For example, a fabric containing 250 individual four ply yarns in a square inch would be described as a "250 thread count fabric, even though each thread or yarn contained four plies twisted together." It would be false and misleading to describe this as a 1000 thread count product.

34.     The FTC's reply letter to ATMI dated March 18, 2002, advised how the Commission's staff would analyze claims that counting yarns within a ply as individual yarns to

determine thread count was a deceptive practice. *See* Ex. D. The FTC advised that where ASTM standards existed, the Commission would give great weight to the applicable standards to determine if product claims were reasonable or deceptive:

> A thread count claim, like other objective, material claims about a product, must be supported by a "reasonable basis." In determining what constitutes a reasonable basis for claims, we would consider what experts in the field believe is appropriate, including whether there are relevant consensus-based test procedures, such as an ASTM test procedure, or other widely accepted industry practices that apply to the matter. If so, we would give such procedure or practices great weight in determining whether the advertiser has met its substantiation burden. In other related context, the Commission has encouraged the use of ASTM tests. *See* Press Release, FTC Announces Actions on Wool Labeling Rules, dated March 8, 1994 (copy attached) ("In its clarification of the procedure used for testing the fiber content of wool products, the FTC said the industry members should, where possible, use procedures established by the American Society for Testing and Materials (ASTM).").

35. Despite these long-standing industry standards for calculating thread counts, and the likelihood that deviating from the standards would mislead and deceive consumers, Defendant Macy's bedding and linen products were manufactured, marketed, advertised, sold and/or distributed with inflated thread counts.

36. Defendant Macy's represented that numerous bedding and linen products were of a certain thread count, but when measured in accordance with industry standards, these thread counts were far less than claimed because Defendant improperly counted the plies making up the threads in their linens rather than the threads themselves. As such, Defendant Macy knew or should have known that the advertised thread counts were false and/or misleading to consumers.

37. Creative Textiles, on information and belief, knowingly packaged and labeled its products including the relevant products sold by Defendant Macy's with inflated thread counts in order to win business or command higher prices, and either knew or should have known that the advertised thread counts were false and/or misleading.

38. AQ Textiles, on information and belief, participated in developing the labeling and packaging of the relevant products sold by Defendant Macy's with inflated thread counts, and either knew or should have known that the advertised thread counts were false and/or misleading to consumers.

39.     Plaintiff Hill purchased a Fairfield Square 1000TC brand sheet set, imported by AQ Textiles and manufactured by Creative Textiles, which was represented to be 1000TC from Defendant Macy's retail store.  However, upon information and belief, the true thread count of those sheets was in fact far less.

40.     Plaintiff Hawes purchased a Somerset Collection brand sheet set, imported by AQ Textiles and manufactured by Creative Textiles, which was represented by each Defendant to be 900 thread count, from Defendant Macy's retail store at 8500 Beverly Blvd. in Los Angeles, CA. However, the true thread count of those sheets according to industry standards was approximately 249.

41.     On information and belief, numerous other brands sold by Defendant Macy's are marketed with false thread counts.

42.     Defendant Macy's made false representations as to the thread count of their sheets and bedding products on the website http://macys.com, as well as in all the retail Macy's stores stocked with the relevant goods in product descriptions and labels on products' labeling and packaging.

43.     Defendant Macy's representations regarding the thread counts of their sheets and bedding products were deceptive and misleading according to both the industry standard and the FTC's guidelines for accurately describing thread counts.

44.     Defendant Macy's and its manufacturers and distributors/importers, including Creative textiles and AQ Textiles, knew or had reason to know that the thread counts on the sheets and bedding products were false and deceptive for at least the following reason: the prices for the products, at both wholesale and retail levels, were substantially lower than the prices for authentic sheets of the advertised thread counts.

45.     Despite their knowledge, Defendant Macy's sold sheets and bedding products with inflated thread counts in order to obtain more business and sell more products in a competitive market.

46.     Defendant Macy's, although it knew or should have known that the sheets and bedding products were labeled with inflated thread counts, repeated those misrepresentations,

11

sold the sheets and bedding products with the help of those misrepresentations, and profited from those sales.

47.     By improperly inflating thread counts contrary to industry standards, Defendant Macy's has engaged in, and continue to engage in, practices which are unconscionable, deceptive, and fraudulent, and which are based on false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts with the intent that others rely on such concealment, suppression, or omission in their manufacturing, advertising, marketing, selling, and distribution of bedding and linen products.

48.     As a direct and proximate result of Defendant's improper conduct, Plaintiffs and Class Members paid more for bedding and linen products which Defendant represented had inflated thread counts.

49.     By representing that their products had higher thread counts than they actually had, Defendant unjustly profited from the sale of such bedding and linen products to consumers.

50.     The inflated thread counts put forth by Defendant in their products induced Plaintiffs and other Class Members to purchase their products when Plaintiffs and other Class Members would not have purchased them or would only have paid a lower price for the product if they had known the actual thread counts at the time of purchase.

## CLASS ACTION ALLEGATIONS

51.      Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and seeks to represent two Classes:

**California Class:**

All persons in California that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Missouri Class:**

All persons in Missouri that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

52.     The class period commences on the first date that Defendant Macy's marketed, advertised, sold and/or distributed the offending bedding and linen products and ending on the date that the Court certifies this suit as a class action.

53.     Excluded from the Classes (and in the alternative, the Subclasses defined below) are Defendant, any parent, subsidiary, affiliate, or controlled person of Defendant, as well as the officers, directors, agents, servants, or employees of Defendant.

54.     The Classes are so numerous that joinder of all members is impracticable.  The disposition of these claims in a class action will provide benefits to the parties, Class members, and the Court.

55.     Although the Class members' identities and numbers are presently unknown, Defendant's records can readily determine this information using objective criteria.  The California and Missouri Classes likely consist of thousands of consumers throughout California and Missouri.

56.     Additionally or in the alternative to the California and Missouri State Classes, and pursuant to Federal Rules of Civil Procedure Rule 23(c)(5), Plaintiffs seek to represent a Nationwide Class and/or Classes (the "Subclasses") consisting of members from the 50 States and the District of Columbia, as well as any subclasses or issue classes that Plaintiffs may propose and/or the Court may designate at the time of class certification.  The alternative Nationwide Class or state-based Classes could be defined as follows:

**Nationwide Class:**

All persons in the United States that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Alabama State Class:**

All persons in Alabama that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Alaska State Class:**

All persons in Alaska that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Arizona State Class:**

All persons in Arizona that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Arkansas State Class:**

All persons in Arkansas that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**California State Class:**

All persons in California that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Colorado State Class:**

All persons in Colorado that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Connecticut State Class:**

All persons in Connecticut that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Delaware State Class:**

All persons in Delaware that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**District of Columbia State Class:**

All persons in District of Columbia that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Florida State Class:**

All persons in Florida that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

14

**Georgia State Class:**

All persons in Georgia that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Hawaii State Class:**

All persons in Hawaii that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Idaho State Class:**

All persons in Idaho that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Illinois State Class:**

All persons in Illinois that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Indiana State Class:**

All persons in Indiana that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Iowa State Class:**

All persons in Iowa that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Kansas State Class:**

All persons in Kansas that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Kentucky State Class:**

All persons in Kentucky that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Louisiana State Class:**

All persons in Louisiana that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Maine State Class:**

All persons in Maine that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Maryland State Class:**

All persons in Maryland that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Michigan State Class:**

All persons in Michigan that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Minnesota State Class:**

All persons in Minnesota that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Mississippi State Class:**

All persons in Mississippi that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Missouri State Class:**

All persons in Missouri that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Montana State Class:**

All persons in Montana that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Nebraska State Class:**

All persons in Nebraska that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Nevada State Class:**

All persons in Nevada that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**New Hampshire State Class:**

All persons in New Hampshire that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**New Jersey State Class:**

All persons in New Jersey that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**New Mexico State Class:**

All persons in New Mexico that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**New York State Class:**

All persons in New York that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**North Carolina State Class:**

All persons in North Carolina that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**North Dakota State Class:**

All persons in North Dakota that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Ohio State Class:**

All persons in Ohio that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Oklahoma State Class:**

All persons in Oklahoma that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Oregon State Class:**

All persons in Oregon that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Pennsylvania State Class:**

All persons in Pennsylvania that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Rhode Island State Class:**

All persons in Rhode Island that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**South Carolina State Class:**

All persons in South Carolina that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**South Dakota State Class:**

All persons in South Dakota that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Tennessee State Class:**

All persons in Tennessee that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Texas State Class:**

All persons in Texas that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Utah State Class:**

All persons in Utah that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Vermont State Class:**

All persons in Vermont that purchased bedding or linen from Defendant Macy's

that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Virginia State Class:**

All persons in Virginia that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Washington State Class:**

All persons in Washington that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**West Virginia State Class:**

All persons in West Virginia that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Wisconsin State Class:**

All persons in Wisconsin that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

**Wyoming State Class:**

All persons in Wyoming that purchased bedding or linen from Defendant Macy's that was manufactured or supplied by AQ Textiles and/or Creative Textiles and that was packaged or advertised with a representation regarding thread count.

57.     Plaintiffs will fairly and adequately protect the interests of the Classes and have retained attorneys experienced in class and complex litigation as counsel.

58.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.   A class action will permit an orderly and expeditious administration of the claims of the Classes, will foster economies of time, effort, and expense, and will insure uniformity of decisions.  The prosecution of individual actions by Class members would create the risk of (a) inconsistent or varying adjudications with respect to individual Class members; and (b) be grossly impracticable because the cost of vindicating an individual Class member's claim would likely exceed the value of the claim.

59.     Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

60.     Due to the relatively small amounts of damaged to each member of the Classes, a class action is superior to other available methods for the fair and efficient adjudication of the controversy which is subject of this action.

61.     The interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and there is no known difficulty that would be encountered in the management of these Classes.

## **EQUITABLE TOLLING**

62.     Despite knowing that their bedding and linen products were defective because they did not contain the qualities that Defendant advertised -- specifically with regard to thread counts - and Defendant concealed their defective nature from Plaintiff and the Class by affirmatively marketing and advertising their products as having certain qualities that they did not have.

63.     Plaintiff and Class Members did not and could not have known that their bedding and linen did not have the qualities that it was advertised to have, as this fact was not disclosed to them and could not have been apparent from a superficial inspection the products.

64.     Plaintiff and Class Members could not have discovered the defective nature of Defendant's products through the exercise of due diligence.

65.     Due to Defendant's fraudulent concealment of the defects associated with their products, Defendant is estopped from asserting statute of limitations defenses to any of the claims alleged herein.

## <u>COUNT ONE</u>

**Violation of the Missouri Merchandising Practices Act**
**(On Behalf of Plaintiff Hill and the Missouri Class, or Alternatively, the Nationwide Class and State Subclasses) [4]**

66.     Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

67.     Missouri's Merchandising Practices Act (the "MMPA") prohibits the act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.  Mo. Rev. Stat. § 407.020.

68.     Defendant's conduct constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce because Defendant misrepresent the thread counts of the Products.

69.     The mispresented thread count also creates the false impression and has the tendency and capacity to mislead consumers (see Mo. Code Regs. Ann. tit. 15, § 60-9.020) into believing that the Products are of a higher quality, luxury, durability and longevity than they in fact are.  Moreover, the overall format and appearance of the Products have the tendency and capacity to mislead consumers (15 Mo. Code Regs. Ann. tit. 15, § 60-9.030) because they create the false impression that the Products have a higher thread count than they actually do.

70.     The Products were therefore worth less than the Products as represented, and Plaintiffs and Class Members paid extra or a premium for them.

71.     Plaintiffs and Class Members purchased the Products for personal, family, or household purposes and thereby suffered an ascertainable loss as a result of Defendant's

---

[4] Substantially similar statutes exist in each of the other 49 states and the District of Columbia, which would permit the alternatively-pleaded state classes to pursue claims similar to the Missouri and California law-based claims in Counts I-IV.

21

unlawful conduct as alleged herein, including the difference between the actual value of the Product and the value of the Product if they had been as represented.

## COUNT TWO

**Unfair Competition Law – Unlawful Prong**
**California Business and Professions Code, § 17200, *et seq.***
**(On Behalf of Plaintiff Hawes and the California Class, or Alternatively, the Nationwide Class and State Subclasses)**

72.　　Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

73.　　Plaintiffs bring this Count on behalf of themselves and the California Class.

74.　　The acts of each of Defendant as described herein constitute unlawful business practices and violations of California's Unfair Competition Law, Business and Professions Code § 17200, et seq. (UCL).  Section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

75.　　Defendant's business practices as alleged are unlawful under Federal Trade Commission Act (FTCA) § 5(a), 15 U.S.C. § 45(a), which outlaws "unfair or deceptive acts or practices in or affecting commerce."

76.　　Defendant's business practices are unfair under FTCA § 5(a) because they are "likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition."  15 U.S.C. § 45(n).

77.　　Defendant's business practices are deceptive under FTCA § 5(a) because they include affirmative representations and omissions and are likely to mislead reasonable consumers under the circumstances.

78.　　Defendant's business practices are further unlawful under the CLRA and under UCL § 17000, et seq., as alleged herein.

79.　　Defendant's business practices are also unlawful pursuant to the FTCA by way of the Textile Fiber Products Identification Act, 15 U.S.C. §§ 70a(a), 70a(b), and/or § 70a(c). These sections make it unlawful, under 15 U.S.C. §§ 41 et seq., to sell, transport, deliver, or advertise "any textile fiber product . . . which is misbranded or deceptively advertised."

22

80.     As a result of Defendant's unlawful business practices, Plaintiff and Class Members have been harmed and are entitled, pursuant to UCL § 17203, to injunctive relief against the continuation of Defendant's practices, as well as the restitution of payments made for Defendant's bedding and linen products, including other equitable relief, costs, and attorneys' fees as recoverable by law.

## COUNT THREE

**Unfair Competition Law – Unfair Prong**
**California Business and Professions Code, § 17200,** *et seq.*
**(On Behalf of Plaintiff Hawes and the California Class, or Alternatively, the Nationwide Class and State Subclasses)**

81.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

82.     Plaintiffs bring this Count on behalf of themselves and the California Class.

83.     The acts of each of Defendant as described herein constitute unfair competition under § 17200.  They are contrary to public policy, violative of at least the FTCA, CLRA, and California False Advertising Law, and injurious to the public and to competitors who advertise accurate thread counts.

84.      Purchasers of Defendant's misleadingly advertised and labeled bedding and linen products, including Plaintiff and Class Members, were injured because they paid an excessive price for a product other than what they thought they were buying.

85.     Falsely advertising thread counts has no conceivable benefit to consumers or to competition.  This behavior leads consumers to purchase products they do not want, and it forces competitors to either follow suit in the deceptive conduct or suffer lost sales.

86.     Consumers could not have reasonably avoided the injuries they suffered because they lack the skill, knowledge, resources, equipment, and opportunity necessary to discern the true nature of the bedding and linen products Defendant sold.

87.     As a result of Defendant's unfair business practices, Plaintiff and Class Members have been harmed and are entitled, pursuant to UCL § 17203, to injunctive relief against the continuation of Defendant's practices, as well as the restitution of payments made for Defendant's bedding and linen products including other equitable relief, costs, and attorneys'

fees as recoverable by law.

## COUNT FOUR

**Unfair Competition Law – Fraudulent Prong**
**California Business and Professions Code, § 17200, et seq.**
**(On Behalf of Plaintiff Hawes and the California Class, or Alternatively, the Nationwide**
**Class and State Subclasses)**

88.     Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

89.     Plaintiffs bring this Count on behalf of themselves and the California Class.

90.     The acts of each of Defendant constitute fraudulent business practices under UCL § 17200.   They are contrary to public policy, violative of at least the FTCA, CLRA, and California False Advertising Law (UCL § 17500), and injurious to the public and to competitors who advertise accurate thread counts or no thread counts.

91.     Defendant represented the bedding and linen products as having a specified thread count with the intention that customers would rely on those representations in their purchases.

92.     Defendant knew or should have known that the threat counts they represented were false.

93.     Defendant's thread count representations were material factors in the purchases of the bedding and linen products by Plaintiff and the Class.

94.     Defendant's thread count representations were and continue to be relied upon by reasonable consumers, such as Plaintiff and the Class.

95.     Due to Defendant's fraudulent and deceptive representations concerning thread count, Plaintiff and the Class paid too much for the bedding and linen products.

96.     As a result of Defendant's fraudulent business practices, Plaintiff and Class Members have been harmed and are entitled, pursuant to UCL § 17203, to injunctive relief against the continuation of Defendant's practices, as well as the restitution of payments made for Defendants' bedding and linen products including other equitable relief, costs, and attorneys' fees as recoverable by law.

## COUNT FIVE

**Misleading and Deceptive Advertising**
**California Business and Professions Code, § 17500, *et seq.***
**(On Behalf of Plaintiff Hawes and the California Class)**

97. Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

98. Plaintiffs bring this Count on behalf of themselves and the California Class.

99. Plaintiffs assert this cause of action against each of Defendant for misleading advertising in violation of California Business and Professions Code Section 17500.

100. Defendant, at relevant times, have offered for sale bedding and linen products with deceptive advertisements and product specifications, as described herein. These deceptive advertisements and product specifications were made in the State of California and include product descriptions, advertisements, price listings, or other inducements in retail stores, or on the internet or in catalogs and other media.

101. Defendant's representations fall within the ambit of § 17500 because the representations were intended to induce the public to purchase the bedding and linen products referenced in the representations, and Defendant knew or should have known that the representations were misleading.

102. By disseminating representations that falsely represented the nature of the bedding and linen products to the general public, Defendant are likely to deceive the public of the State of California and other States.

103. As a result of Defendant's misleading and deceptive advertising, Plaintiff and Class Members have been harmed and are entitled, pursuant to § 17535, to injunctive relief against the continuation of Defendants' practices, as well as the restitution of payments made for Defendants' bedding and linen products, or the replacement of the products with goods of the type and quality described in the misleading advertisements, including other equitable relief, costs, and attorneys' fees as recoverable by law.

## COUNT SIX

**Violations of the California Consumer Legal Remedies Act,**
**California Civil Code § 1750, *et seq.***
**(On Behalf of Plaintiff Hawes and the California Class, Against Each Defendant)**

104.    Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

105.    Plaintiffs bring this Count on behalf of themselves and the California Class.

106.    Plaintiff brings this count pursuant to the Consumer Legal Remedies Act, California Civil Code § 1750, et seq. ("CLRA"), for omissions by Defendant, made actionable by affirmative misrepresentations and/or exclusive knowledge of material facts, and Defendant's active concealment of the truth.

107.    On May 8, 2019, before the filing of this Amended Complaint, Plaintiff Sarah Hawes sent Defendant a pre-suit notice letter pursuant to the CLRA.  Exhibit A.

108.    The bedding and linen products are "goods" pursuant to the CLRA at California Civil Code § 1761(a).

109.    Defendant is a "person" pursuant to the CLRA at California Civil Code § 1761(c).

110.    Plaintiff and the Class Members are "consumers" pursuant to the CLRA at California Civil Code § 1761(d).

111.    Purchases of the bedding and linen products by Plaintiff and the Class Members are "transactions" pursuant to the CLRA at California Civil Code § 1761(e).

### *Affirmative Misrepresentations*

112.    Thread count is a specific, quantifiable attribute of bedding and linen products.

113.    There is no requirement to communicate the thread count of bedding and linen products when advertising or selling them to consumers.  However, thread count is a significant driver of consumers' perceptions of the value, quality, durability and longevity of the products, as alleged throughout this Complaint.

114.    Defendant sold to Plaintiff bedding and linen products that were advertised with inflated thread counts.

115.    Defendant knew or should have known that the thread counts listed by themselves

and/or their manufacturers or wholesalers were false or misleading.

116. Defendant, as detailed in this Complaint, repeated these false or misleading statements of thread count in various product listings and descriptions, either in the store, or advertisements, or the website, which were seen and relied upon by Plaintiff and Class Members.

117. These misstatements of the thread count of the bedding and linen products are prohibited by the CLRA, because they are "undertaken by [Defendant] in a transaction intended to result or which results in the sale or lease of [the bedding and linen products] to any consumer."

118. Defendant violated the CLRA by knowingly advertising that their bedding and linen products had a higher thread count than they actually had.

119. Defendant violated the CLRA's proscription against misrepresentation of the "approval, characteristics, ingredients, uses, benefits, or quantities" of the bedding and linen products by advertising a falsely inflated thread count. These misrepresentations violated California Civil Code § 1770(a)(5)'s proscription against representing that goods have characteristics that they do not have; Civil Code § 1770(a)(7)'s proscription against representing that goods are of a particular standard, quality or grade when they are of another; and Civil Code § 1770(a)(9)'s proscription against advertising goods with the intent not to sell the goods as advertised.

***Exclusive Knowledge of Material Facts and Omissions of Material Facts***

120. Upon information and belief, through examination of their own products and interactions with manufacturers or wholesalers, and as otherwise detailed in this Complaint, Defendant have exclusive knowledge concerning the actual thread count of the bedding and linen products that they import and sell to consumers.

121. Defendant owe consumers a duty to disclose that the thread count information listed by Defendants, and/or the manufacturers or wholesalers of the bedding and linen products and advertised by Defendant is misleading and/or false.

122. Consumers, including Plaintiffs, have no realistic means of determining the actual thread count of the bedding and linen products. A textile expert with magnifying equipment is

needed to make such a determination. Further, the process of testing the thread count damages the sheets. Consumers therefore cannot be expected to discover the true thread count before making a purchase. This is true under any circumstances, but especially when ordering products over the internet or by catalog.

123. Retailers of bedding and linen products frequently fail to identify the manufacturer, importer, or seller of textiles at the point of sale or on product packaging. Import records similarly do not reveal the names of the original manufacturers of the materials used to construct the imported products. These omissions from packaging and import records make it difficult to trace products back to manufacturers.

124. Defendant concealed from Plaintiffs and Class Members that the thread counts advertised for the bedding and linen products are inflated to more than the actual thread count as a result of counting plies rather than threads, and that these thread counts are not calculated according to the method used by other bedding and linen providers and prescribed by ASTM D3775.

125. Plaintiffs and Class Members, as reasonable consumers, attached importance to representations by Defendant concerning the thread counts of the bedding and linen products in deciding whether to purchase the products, and in deciding whether the price was reasonable. Thread counts are a material factor in consumers' determinations of the value and quality of bedding and linen products.

126. Without disclosure of the above information, reasonable consumers such as Plaintiffs were and continue to be deceived by Defendant's false thread counts.

127. Defendant violated the CLRA by failing to disclose material facts and continuing to advertise thread counts Defendant knew to be inflated in, without limitation, product labels, advertisements, product descriptions, and website text.

128. Defendant knew or should have known that their misrepresentations would cause Plaintiffs and Class Members to pay higher prices for the bedding and linen products than they would have paid, had a misleading thread count not been advertised.

129. In failing to disclose material facts contrary to their affirmative representations,

Defendant violated California Civil Code § 1770(a)(5)'s proscription against representing that goods have characteristics that they do not have; Civil Code § 1770(a)(7)'s proscription against representing that goods are of a particular standard, quality, or grade when they are of another; and Civil Code § 1770(a)(9)'s proscription against advertising goods with the intent not to sell the goods as advertised.

130.    Pursuant to California Civil Code § 1782(d), Plaintiffs seek all relief this Court finds just and proper under the CLRA.

131.    Defendant was put on notice of the violations of law pled above in several ways including but not necessarily limited to prior customer complaints, and a letter pursuant to Cal. Civ. Code § 1782(a) & (d) sent by counsel for Plaintiffs to Defendant on or around May 8, 2019, which apprised them generally of acts and omissions pled herein. See letter attached as Exhibit A. As of the filing of the Amended Complaint, Defendant has failed to cure their breach.

## COUNT SEVEN

**Breach of Express Warranty**
**California Law / U.C.C. § 2-313**
**(On Behalf of the California, or Alternatively, the Nationwide Class and State Subclasses)**

132.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

133.    This Count is brought on behalf of the California Class.

134.    Defendant was put on notice of the violations of law pled above in several ways including but not necessarily limited to prior customer complaints, and a letter pursuant to Cal. Civ. Code § 1782(a) & (d) sent by counsel for Plaintiffs to Defendant on or around June 27, 2017, which apprised them generally of acts and omissions pled herein. The letter also advised Defendant Macy's of the breach of the warranty. As of the date of the filing of the amended complaint, Defendant Macy's still has not cured the breach.

135.    Pursuant to § 2-313 of the UCC '[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.'" Representations or affirmations, regarding the products' quality, characteristics and/or longevity stated on product

packaging and labeling create warranties.

136. Defendant Macy's affirmations of fact and/or promises relating to their sheets and bedding products created express written warranties that the products would conform to Defendant's affirmations of fact and/or promises over the expected life of the of the products.

137. Alternatively, Defendant's representations, descriptions and specifications of the quality, durability, longevity and fitness of their sheets and bedding products became part of the bases of the bargains, creating express written warranties that the products purchased by Plaintiffs and Class Members would conform to those representations, descriptions and specifications over the expected life of the products.

138. In fact, the sheets and bedding products purchased by Plaintiffs and the Class did not so conform to Macy's representations, descriptions and specifications which created express warranties.

139. Plaintiffs and the Class were the intended targets of Defendant's misrepresentations.

140. Plaintiffs and the Class reasonably relied on Macy's misrepresentations, descriptions and specifications regarding the products' thread count, quality, durability. longevity and fitness of the products.

141. Thread count determines and affects the quality, durability, longevity and overall fitness for bedding and linen products. The higher the thread count in the bedding and linen product the higher quality, durability, longevity and overall fitness of those products. As thread count increases, so does the quality, durability, longevity and overall fitness of the products. A product with a higher thread count will be of higher quality, more durable and last longer than a product with a lower thread count.

142. As stated herein, consumers rely on the represented thread counts as the gauge for the quality, durability, longevity and fitness for their bedding and linen products. And consumers pay more for the higher thread count in sheet and linen products reasonably believing that they are purchasing products with superior quality, durability, longevity and fitness than products with lower thread counts.

143.     As stated herein, industry participants  at every level of the supply chain including Defendant Macy's know that consumers use thread count as the gauge of quality, durability, longevity, and fitness for their bedding and linen products and will pay more for a product with a higher thread count than they will for a product with a lower  thread count and as such increase the price as the thread counts of the products increase.

144.     Macy's expressly warrants on the labels of the sheets and bedding products that they have certain thread counts, qualities, durability, longevity, specifications and characteristics. In fact, the products' thread counts are lower than promised and warranted and as such the products' quality, durability, longevity are less than what was represented, promised and warranted with products with those represented thread counts.

145.     Plaintiffs and Class Members relied on Defendant's false representations as to the sheets and bedding products' thread counts.

146.     Defendant Macy's has breached their express warranties.

147.     As a result of the foregoing, the Plaintiffs and the Class Members have suffered damages in that the value of the products they purchased was less than warranted by Defendant Macy's.

148.     Plaintiffs and the Class were injured as a result of Defendant's breach of their express warranties about their sheets and bedding products.

149.     Plaintiffs, individually and on behalf of a Nationwide Class, seek all damages permitted by law, including a full refund of the purchase price for the sheets, compensation for the monetary difference between the sheets and bedding products as warranted and as sold, incidental and consequential damages, statutory attorney fees, and all other relief allowed by law.

## COUNT EIGHT

**Fraud**
**(On Behalf of the California and Missouri Classes, or Alternatively, the Nationwide Class and State Subclasses, Against Each Defendant)**

150.     Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

151.     Plaintiffs bring this Count on behalf of themselves and the Classes.

152.    Defendant designed, manufactured, marketed, and/or sold sheets and bedding products with falsely inflated thread counts to Plaintiff and the Class. Defendant represented to Plaintiff and the Class in advertising, packaging, product descriptions, and other forms of communication, including standard and uniform material, that the sheets and bedding products had higher thread counts than their true thread counts.

153.    Defendant were aware of or should have been aware of the falsity of these representations.

154.    Plaintiffs and the Class reasonably relied upon Defendant's deception.  Plaintiffs and the Class had no way of knowing that Defendant's representations were false and/or misleading, and contrary to long-standing industry standards.  As consumers, Plaintiffs and the Class did not and could not unravel Defendant's deception on their own. Rather, Defendant's intended to deceive Plaintiff and the Class by concealing the true facts about the products' thread counts.

155.    Defendant's representations were material to consumers because the representations were directly relevant to the value and quality of the products.

156.    Plaintiffs, individually and on behalf of the Class, seeks all damages permitted by law, including full refund of the purchase price for the sheets, compensation for the monetary difference between the sheets and bedding products as warranted and as sold, incidental and consequential damages, punitive damages, attorney fees, and all other relief allowed by law.

## <u>COUNT NINE</u>

**Unjust Enrichment**
**(On Behalf of the California and Missouri Classes, or Alternatively, the Nationwide Class and State Subclasses, Against Each Defendant)**

157.    Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

158.    Plaintiffs bring this Count on behalf of themselves and the Classes.

159.    As Plaintiffs and the Class show just grounds for recovering money to pay for benefits Defendant received from them, they have a right to restitution at law through an action derived from the common-law writ of assumpsit by implying a contract at law, or a quasi-

contract as an alternative to a claim for breach of contract.

160.    Plaintiffs and members of the Class conferred a benefit upon Defendant Macy's by purchasing the bedding and linen products with an elevate thread count which was false and misleading.

161.    Defendant had knowledge that this benefit was conferred upon it.

162.    Defendant, having received such benefits, is required to make restitution as the circumstances here are such that, as between the two, it is unjust for Defendant to retain such monies based on the illegal conduct described above. Such money or property belongs in good conscience to Plaintiffs and the Class members and can be traced to funds or property in Defendant's possession. Plaintiff and Class members have unjustly enriched Defendant through payments and the resulting profits enjoyed by Defendant as a direct result of such payments. Plaintiff's and Class members' detriment and Defendant's enrichment were related to and flowed from the conduct challenged in this Complaint.

163.    Defendant appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class members, who, without knowledge that the bedding products and linens had elevated thread counts which were false and not accurate and that the bedding and linen products would not perform as advertised, paid a higher price for the product than it was worth. Defendant also received monies for the bedding and linen products that Plaintiffs and the proposed Class members would not have otherwise purchased had they known the truth about the thread counts and quality and characteristics of the bedding and linen products.

164.    It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

165.    Defendant's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

166.    An entity that has been unjustly enriched at the expense of another is required to make restitution to the other. Under common law principles recognized in claims of common counts, assumpsit, and quasi-contract, as well as principles of unjust enrichment, under the

33

circumstances alleged herein it would be inequitable for Defendant to retain such benefits without paying restitution or damages therefor. Defendant should not be permitted to retain the benefits conferred via payments to be received from and/or paid by Plaintiff and Class members as a result of such transactions, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable as a matter of right pursuant to Federal Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the putative Class Members pray that the Court enter judgment for them and against Defendant as follows:

a.   Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as the representatives of the Class, and designating Plaintiffs' counsel as counsel for the Class;

b.   Declaring that Defendant's acts and practices, as described herein, constitute deceptive acts and unconscionable business practices that are unlawful under the California and Missouri consumer statutes, and common law.

c.   Awarding Plaintiffs and the Class permanent injunctive relief prohibiting, restraining, and enjoining defendant from engaging in the conduct complained of herein, including, but not limited to, manufacturing, marketing, advertising, selling, and distributing bedding and linen products that have inflated thread counts;

d.   Directing Defendant to disgorge profits from its misleading and deceptive practices and to pay restitution to the Class;

e.   Awarding Plaintiffs and the Class actual, compensatory damages in an amount to be proven;

f.   Awarding Plaintiffs and the Class restitution of all monies paid to Defendant as a result of unlawful, deceptive, and unfair business practices;

g.     Awarding Plaintiffs and the Class exemplary damages in an amount to be proven;

h.     Ordering Defendant to issue corrective advertising;

i.     Awarding Plaintiffs and the Class reasonable attorneys' fees, experts witness fees, pre- and post-judgment interest, and other costs in amounts to be determined by the Court; and

j.     Granting any other further legal or equitable relief as this Court deems appropriate.

Date:   June 12, 2019          By:    s/ Drew Legando
Drew Legando (0084209)
Jack Landskroner (0059227)
Landskroner Grieco Merriman, LLC
1360 W 9th St #200
Cleveland, OH 44113
Phone: 888-570-3609
Jack@lgmlegal.com

Bruce Steckler
Stuart Cochran
Kirstine Rogers
STECKLER GRESHAM COCHRAN
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Phone: 972-387-4040
bruce@stecklerlaw.com
stuart@stecklerlaw.com
krogers@stecklerlaw.com

Erica Mirabella
MIRABELLA LAW LLC
132 Boylston St. 5th Floor
Boston, MA 02116
Telephone: (855) 505-5342
erica@mirabellallc.com

Charles LaDuca
David Black
Brendan Thompson
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016

Telephone: (202)789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com
dblack@cuneolaw.com

Michael McShane
Clint Woods
AUDET & PARTNERS, LLP
711 Van Ness Avenue
Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
mmcshane@audetlaw.com
lkuang@audetlaw.com

Charles Schaffer
LEVIN SEDRAN & BERMAN, LLP
510 Walnut Street
Suite 500
Philadelphia, PA 19106
Telephone: (877) 882-1011
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

*Attorneys for Plaintiffs*