UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| SARA HAWES, *etc.* | Case No. 1:17-cv-754 |
| Plaintiff | Judge Timothy Black |
| *v.* | |
| MACY'S WEST STORES, INC. | |
| Defendant | |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     STATEMENT OF FACTS RELEVANT TO CLASS CERTIFICATION ....................... 1

      A.     The cotton and polyester yarns that are woven to construct Macy's sheets are composed of multiple fibers that are spun or laid together.................................... 1

      B.     The ASTM standard for counting the number of yarns ("threads") in a sheet requires that multiple fibers be counted as one single yarn. .................................. 2

      C.     Macy's supplier, AQ, uses an alternative, non-standard method to count the number of threads in its sheets, counting the multiple polyester fibers that form a single yarn as multiple yarns.................................................................................. 3

      D.     Macy's has long known about AQ's alternative counting method and has adopted it, labelling Macy's sheets with the higher thread counts. ..................................... 4

      E.     Macy's does not disclose that its thread counts are based on a non-standard counting method, despite concerns by government agencies and textile associations that such counts mislead consumers. .................................................. 6

      F.     Macy's pricing data provides evidence that consumers pay more for sheets with higher thread counts. ............................................................................................... 9

III.    STATEMENT OF THE CASE.................................................................................... 9

IV.    ARGUMENTS IN SUPPORT OF CLASS CERTIFICATION ..................................... 11

      A.     Definition, Size, and Ascertainability of the Class ................................................ 11

      B.     Commonality of Questions and Typicality of Plaintiff's Claims ......................... 13

      C.     Adequacy of Class Representative......................................................................... 15

      D.     Predominance and Superiority ............................................................................... 16

V.     CONCLUSION........................................................................................................... 18

      CERTIFICATE OF SERVICE ..................................................................................... 20

      APPENDIX 1 ............................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds,* 568 U.S. 455, 460 (2013) ........... 11

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 567 (6th Cir. 2007) .................................................... 17

*Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1125-1126 (9th Cir. 2017) ............................. 13

*Daffin v. Ford Motor Co.,* 549, 552 (6th Cir. 2006) ................................................................... 12

*Galoski v. Applica Consumer Prods.,* 309 F.R.D. 419, 422-423 (N.D. Ohio 2015) ................... 13

*Givens v. Van Devere, Inc.,* 2012 WL 4092803, at *19 (N.D. Ohio 2012) ................................. 14

*Gooch v. Life Investors Ins. Co. of Am.,* 672 F.3d 402, 417 (6th Cir. 2012) ............................... 11

*Hicks v. State Farm Fire & Cas. Co.,* 965 F.3d 452, 464 (6th Cir. 2020)................................... 16

*In re ConAgra Foods,* 90 F.Supp.3d 919, 984 (C.D. Cal. 2015) ................................................ 15

*In re FCA US LLC Monostable Electronic Gearshift Litig.,* MDL No. 2744, 382 F. Supp. 3d, 687, 696-699 (E.D. Mich. 2019)................................................................................................ 9

*In re Tobacco II Cases,* 207 P.3d 20, 29-30 (Cal. 2009) ........................................................... 14

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,* 45 F. Supp. 3d 724, 753-754 (N.D. Ohio 2014) ................................................................................................................... 9

*In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.,* 722 F.3d 838, 851-52 (6th Cir. 2013) ............................................................................................................ 11, 13, 16

*McCrary v. Elations Co., LLC,* 2014 WL 1779243, at *14 (C.D. Cal. Jan. 13, 2014)................ 15

*Palombaro v. Emergy Fed. Credit Union,* 2017 WL 3437559, at *3 (S.D. Ohio Aug. 10, 2017) ................................................................................................................................... 12, 15

*Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561-562 (8th Cir. 1982)......................................... 14

*Randleman v. Fid. Nat. Title Ins. Co.,* 646 F.3d 347, 352-352 (6th Cir. 2011)........................... 16

*Rikos v. Proctor & Gamble Co.,* 799 F.3d 497, 505 (6th Cir. 2015)........................................... 11

*Rosales v. FitFlop USA, LLC,* 882 F. Supp.2d 1168, 1178 (S.D. Cal. 2012)............................. 15

*Tyson Foods, Inc. v. Bouephakeo,* 136 S. Ct. 1036, 1045 (2016)................................................ 13

*Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008)............................................. 14

*Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 538 (6th Cir. 2012) ....................................... 12

**Statutes**

California Business and Professions Code § 17200 ...................................................... 10

California Consumer Legal Remedies Act § 1750 ....................................................... 10

**Rules**

Fed. R. Civ. P. 23(a) and (b)(3) ........................................................................ 1, 11

## I.    INTRODUCTION

What is the proper way to count the number of threads in a bed sheet?  The American Society for Testing and Materials (ASTM) established the required method used by the textile industry.[1]  Defendant Macy's West Stores, Inc. (Macy's), however, uses an alternative method favored by its supplier, AQ Textiles (AQ),[2] which violates this standard and results in significantly higher thread counts.[3]  Plaintiff Sara Hawes claims that Macy's undisclosed use of the non-standard counting method is deceptive and that Macy's thread count representations contained on its packaging and in its advertising are therefore false and misleading.[4]  Since consumers pay higher prices for higher thread counts, she and other Macy's customers have incurred damages.[5]

At this stage of the case, the Court is <u>not</u> asked to decide which of the two counting methods is proper, nor whether Macy's undisclosed use of the alternative method constitutes fraud, a breach of warranty, unjust enrichment, or a violation of state law.  Rather, the Court is <u>only</u> asked to determine whether the central questions in this case—*What is the proper counting method?* and *Are Macy's thread counts misleading?*—can be answered on a class-wide basis.  Since these key questions predominate over any individual issues, this Court should certify this case as a class action under Fed. R. Civ. P. 23(a) and (b)(3).

## II.    STATEMENT OF FACTS RELEVANT TO CLASS CERTIFICATION

### A.    The cotton and polyester yarns that are woven to construct Macy's sheets are composed of multiple fibers that are spun or laid together.

The products at issue are all "Chief Value Cotton" (CVC)[6] bed sheets sold by Macy's in its retail stores and online.  All of the sheets are supplied to Macy's by AQ, which buys them from

---

[1]  *See* Exhibit 1, Report by (Proposed) Expert Sean Cormier, pp. 11-13.

[2]  *See* Exhibit 2, Rule 30(b)(6) of Macy's through Designee Danielle Swift, p. 42 (███████ ██████████████); *see also* Exhibit 3, Rule 30(b)(6) Deposition of AQ through Designee Larry Queen, p. 56 (AQ uses a counting method that differs from the ASTM standard counting method).

[3]  *See* Ex. 1, Cormier Report at 14 (the non-standard counting method <u>always</u> results in a higher count than would be made using the ASTM standard method).

[4]  *See* ECF #64, Third Amended Complaint, ¶¶1, 3-6, 35-36, 42, 46-50.

[5]  *See* Exhibit 4, Report by (Proposed) Expert Stefan Boedeker, ¶72.

[6]  *Chief Value Cotton* is a "customs term" in the textile trade to refer to fabrics which are composed of more cotton than any other fiber type, like polyester.  *See* Ex. 3, Queen Depo. at 12; Ex. 2, Swift Depo. at 57.

1

textile mills in India.[7]  Regardless of the mill, the sheets are all constructed in the same manner,[8] which is as follows[9]:

- Cotton fibers (called "staple"), which are about one to one-and-a-half inches long—and therefore too short for use in production on their own—are spun together to form yarns; *i.e.,* there are hundreds or thousands of cotton fibers per yarn.

- Polyester fibers (sometimes called "filaments"), which are very long, but too thin for use in production on their own, are combined (with or without a "twist") to form yarns; *i.e.,* there are several polyester fibers per yarn.

- The cotton yarns and the polyester yarns are woven together in a crisscross fashion to form a fabric.  The cotton yarns run in a vertical direction (called the "warp"); their endpoints are called *ends*.  The polyester yarns run in a horizontal direction (called the "fill" or "weft") and their endpoints are called *picks*.  The thread count of a sheet is determined by counting how many threads are woven into one square inch of fabric.

**B.** **The ASTM standard for counting the number of yarns ("threads") in a sheet requires that multiple fibers be counted <u>as one single yarn</u>.**

ASTM is an international standards organization that develops and publishes technical standards for a wide range of products, including textiles and bed sheets.[10]  According to a former Macy's employee in the sheets department, who is now an AQ employee, ███████████████

███████████████████████████████████████████████

---

[7] *See* Exhibit 5, Deposition of Sal Ciniglio, pp. 9, 18, 20-21 (the companies have identified all of the CVC sheets at issue in this case by unique identifier (a UPC number) and associated detailed product description) (AQ is an "importer" of the sheets from India, and a "supplier" to Macy's, ███████████ *see also* Ex. 3, Queen Depo. at 12-14 (the primary mill is operated by a company called Creative Textiles; ███████ ███████

[8] *See* Ex. 3, Queen Depo. at 13-14 (███████████████████████████████████ ███████████████████

[9] We provide here a summary, ███████████████  *See* Ex. 3, Queen Depo. at 32-33 (███ ███████████████████████████ .  Mr. Cormier provides greater detail.  *See* Ex. 1, Cormier Report at 4-11.

[10] *See* Ex. 1, Cormier Report at 11-13.

███████████████████████████████████████████████████.″[11]  AQ said

ASTM ██████████████████████████████████████████████.[12]

In 2009, textile companies began manufacturing and selling CVC sheets that had multiple polyester fibers per yarn.[13]  ASTM updated its counting standard, Standard 3775, in 2012.[14]  Thus, the introduction of multiple polyester picks in the construction of CVC sheets pre-dated by several years ASTM's operative standard.[15]  Indeed, both Macy's and AQ agreed ███████████████ ████████████████████████████████████████████″[16]

ASTM Standard 3775 counts all spun cotton fibers that compose a single yarn to be one thread.  The Standard counts all polyester fibers that are combined together (regardless of whether they are "twisted" or not) to compose a single yarn for purposes of determining the thread count.[17]

C.  **Macy's supplier, AQ, uses an alternative, non-standard method to count the number of threads in its sheets, counting the multiple polyester fibers that form a single yarn as multiple yarns.**

Larry Queen founded AQ about 15 years ago.  He quickly grew the business to supply bed sheets to Macy's ██████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████.[18]

Contrary to the ASTM standard, AQ's counting method requires someone to physically pull the polyester yarns apart to count the individual fibers composing the yarn, whereas the ASTM standard does not provide for such subdivision and uses visual analysis (lenses and microscopes).[19]

---

[11]  *See* Ex. 5, Ciniglio Depo. at 35-36.

[12]  *See* Ex. 3, Queen Depo. at 45.

[13]  *Id*. at 57.

[14]  *Id*. at 55.

[15]  *Id*. at 58.

[16]  *Id.* at 60; *accord* Ex. 2, Swift Depo. at 64-65.

[17]  *See* Ex. 1, Cormier Report at 11-13.

[18]  *See* Ex. 3, Queen Depo. at 8-10, 31.

[19]  *Id.* at 56; *accord* Ex. 1, Cormier Report at 13.



**D.** **Macy's has long known about AQ's alternative counting method and has adopted it, labelling Macy's sheets with the higher thread counts.**

---

[20] *See* Ex. 5, Ciniglio Depo. at 94.

[21] *See* Ex. 3, Queen Depo. at 80.

[22] *See* Ex. 2, Swift Depo. at 90-91 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); *id.* at 95-96 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

[23] *See* Ex. 3, Queen Depo. at 115-118.

[24] *Id.*

[25] *Id.* at 26-29, 38; *accord* Ex. 2, Swift Depo. at 34. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 3, Queen Depo. at 40.  As noted herein, Queen ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[26] *Id.* at 41 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4



It is well known in the industry (and it's common sense) that a higher thread count, which consumers naturally associate with a higher quality fabric,[31] commands a higher market price.[32]

---

[27] *See* Ex. 5, Ciniglio Depo. at 12-13, 88-89, 95-96. The "buyer" position is so central to the issues in this case that Ms. Swift was designated by Macy's as its corporate witness in this case. *See also* Ex. 3, Queen Depo. at 19-20 (███████████████████████████████████████████); *accord* Ex. 2, Swift Depo. at 26. ██████ *See* Ex. 5, Ciniglio Depo. at 7.

[28] *See* Ex. 5, Cinigilio Depo. at 72. ███████████████████████████ *Id.* at 82-83. ██████████████████████████████████████████████████ *Id.* at 84-85. ██████████ *Id.* at 96; *accord* Ex. 3, Queen Depo. at 64 ██████████████████████████

[29] *See* Ex. 5, Ciniglio Depo. at 66-67, 70. █████████████████████████████ *See* Ex. 3, Queen Depo. at 30. ███████████████████████████████████ *Id.* at 95.

[30] *See* Ex. 2, Swift Depo. at 76-77.

[31] The association between count and quality is natural and logical: if there are more threads per square inch, the threads must be thinner, which results in a softer, more pliable, and also more durable fabric (all other factors being held equal). *See* ██████████████████; *accord* Ex. 1, Cormier Report at 4.

[32] Although the defense witnesses consistently tried to avoid agreeing to this self-evident, nearly-axiomatic proposition, they ultimately admitted that—if all other variables (color, size, weave, etc.) were held constant, and the only variable that changed between one version of the product and the other was thread count—the price would increase as the thread count increased. *See* Ex. 5, Ciniglio Depo. at 31-33, 76; *accord* Ex. 2, Swift Depo. at 57 (█████████████████████████████████████████).

Indeed, Macy's and its competitors emphasize thread counts in labeling and marketing.[33]  In this case, AQ and Macy's were well attuned to the importance of thread counts to consumers, and that they should be prominently displayed in customer-facing packaging.[34]  Indeed,



**E.**  **Macy's does not disclose that its thread counts are based on a non-standard counting method, despite concerns by government agencies and textile associations that such counts mislead consumers.**

Macy's does not advise customers that the thread counts on its product packaging and insert cards are not industry-standard counts.

Government agencies and trade associations have long been concerned about potentially deceptive representations about thread counts.  In January 2002, the Executive Vice President of the American Textile Manufacturer Institute (ATMI) wrote to the Federal Trade Commission (FTC) that "some companies are marketing bed sheets to U.S. consumers where extremely high

[33] See also Appendix 1.

[34] See Ex. 5, Ciniglio Depo. at 62-64.

[35] Id. at 62-64. See Ex. 3, Queen Depo. at 43-44 ( ).

[36] See Exhibit 6, AQ-HawesvMacys_0017332 ).

[37] See Ex. 3, Queen Depo. at 71.

[38] See Ex. 2, Swift Depo. at 33, 46-47 (

yarn or thread counts are claimed – some as high as 1,000 count."[39]  "[T]hese extremely high counts are achieved by counting yarns within a ply as individual yarns, thus dramatically increasing the number of yarns in a square inch of fabric" (*id.*)—this is exactly what AQ's non-standard counting method does.  The ATMI's position was that "this method of labeling products based on counting each individual yarn in plies to be a deceptive practice, which misleads the American public into making decisions to purchase items, based on false and misleading information." (*Id.*)  The ATMI referred the FTC to ASTM Standard 3775 and said that this was an important issue because "consumers judge the quality of sheeting products [based on] the higher the count, the more luxurious the product." (*Id.*)

In March 2002, the FTC's Associate Director for Enforcement replied to the ATMI and explained how the FTC would analyze the issue.[40]  She said the FTC "would consider what experts in the field believe is appropriate, including whether there are relevant consensus based test procedures, such as an ASTM procedure [which] would be given great weight in determining whether the advertiser has met its substantiation burden." (*Id.*)  In other related contexts, the Commission has encouraged the use of ASTM tests." (*Id.*)

In August 2005, the FTC provided a staff opinion to the National Textile Association (NTA) regarding the proper way to disclose thread counts on labels or in advertising for sheets.[41]  The FTC noted that the industry recognizes that "thread count has evolved over time as a key indicator used by consumers to make purchasing decisions … it is generally understood that a higher thread count indicates a better product." (*Id.*)  The NTA Chairman had explained to the FTC that some textile suppliers were using an alternative counting method (like AQ's method here) of counting individual fibers as separate yarns.  The Chairman noted that this put members of the NTA at a competitive disadvantage, since they used the traditional ASTM counting method, so many were considering switching to the alternative method.  The FTC replied, "we believe that

---

[39]  *See* Exhibit 7, Moore Letter to Ecklund.

[40]  *See* Exhibit 8, Kolish Letter to Moore.

[41]  *See* Exhibit 9, Kohm Letter to Wright.

consumers could be deceived or misled by the practice of stating an inflated threat count achieved by multiplying the actual count by the number of plies within the yarn." (*Id.*)

In August 2018, the General Counsel for the Texas Department of Agriculture (TDA) wrote to Macy's and AQ.[42] The TDA had received a complaint about Macy's thread counts and sent a sample sheet for a test. The TDA advised that it had "determined the distributor and manufacturer may have engaged in deceptive acts and practices [under Texas law] [by] advertising the goods as having a thread count of 1200, when, in fact … the goods have a thread count of 441, which constitutes a materially false, misleading or deceptive act or practice." (*Id.*)

The AATC is a textile organization that develops testing standards. One of its members circulated an email to the group, which included AQ, regarding the "ongoing saga" of how to count the individual picks in polyester threads, asking whether "it [is] deceptive to consumers" to represent that a sheet has "810 threads per inch if 640 of those threads are made of 10-pick insertions."[43] It appears AQ never responded. And it kept using its non-standard counting method.

In addition to industry concerns about inflated thread counts, there were also complaints by consumers about the quality of Macy's purportedly high-count sheets. ████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████[44]

To represent that a sheet has a thread count which it does not truly have is "cheating."[45] Despite concerns about cheating in this way dating back nearly 20 years—████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████

---

[42] *See* Exhibit 10, Kleinschmidt Letter to Macy's, Inc.

[43] *See* Ex. 3, Queen Depo. at 87-90.

[44] *See* Ex. 5, Ciniglio Depo. at 48. ████████████████████████████████
████████████████ *Id.* at 59.

[45] ████████████████████████

**F.** **Macy's pricing data provides evidence that consumers pay more for sheets with higher thread counts.**

Macy's produced electronic data regarding each of the CVC sheets at issue, which contains sufficient detail regarding each product's attributes for an economist to perform an analysis to quantify the difference between the price of each of the products *as sold using the non-standard thread counts* and the price each of the products should have commanded *had the thread counts been properly stated under the standard counting method.*[46]  Plaintiff's proposed expert economist has set forth the methods by which he will conduct this analysis on a class-wide basis if and when the Court certifies the class.  He proposes using either or both of two methods widely accepted in cases like this one to determine the price difference: a hedonic regression and a conjoint analysis.[47] *See, e.g., In re FCA US LLC Monostable Electronic Gearshift Litig.,* MDL No. 2744, 382 F. Supp. 3d, 687, 696-699 (E.D. Mich. 2019) (recognizing regression and conjoint analyses are appropriate methods for determining class-wide damages); *accord In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,* 45 F. Supp. 3d 724, 753-754 (N.D. Ohio 2014).

In order to show that common questions as to damages exist and predominate, Plaintiff's expert performed a preliminary analysis of some of the sales data produced by Macy's, which confirmed ███████████████████████████████████████████████████████
███████████████████ (*Id.* at ¶74 and Figure 2.)  To refine this analysis in the merits phase, the regression and/or conjoint tools will control for the variables in the products (*e.g.,* size, weave, etc.) to hold them constant while quantifying the effect on price a change in thread count has; the analyses will also take into account market behavior and consumer patterns; and will seek and use such information as is necessary for the analysis.  (*Id.* at ¶¶76-78.)

## III.    STATEMENT OF THE CASE

Plaintiff Sara Hawes bought a Queen-sized bed sheet set from a Macy's store on Beverly Blvd. in Los Angeles, California, on June 6, 2017, for $59.49 plus $5.21 in sales tax, a total of

---

[46] *See* Ex. 4, Boedeker Report at ¶¶71-78.

[47] *Id.* at ¶¶61-155 *especially* ¶¶151-155.

$64.70 after the use of a coupon.[48] Macy's had given this sheet, like most of its other bedding products, a fanciful name ("Somerset Collection"), labeled it "luxury," and represented that the sheet's thread count was 900.[49]

After some use, Hawes became concerned that the sheet's quality was inconsistent with a 900-thread count product, so she contacted an attorney,[50] who had the sheet tested, and discovered that the sheet's thread count—using the ASTM standard counting method—was only a fraction of what Macy's had claimed: **227**.[51] So, Hawes sent to Macy's a pre-suit notice letter under the California Consumer Legal Remedies Act on June 27, 2017.[52]

Macy's did not respond to her notice letter so Hawes filed this suit in November 2017.[53] The pleadings ultimately settled with the following claims moving forward: (1) claims under the unlawful, unfair, and fraudulent prongs of the California Business and Professions Code § 17200; (2) claims for deceptive advertising under the same code § 17500; (3) a consumer protection claim under the California Consumer Legal Remedies Act § 1750; (4) a breach of express warranty claim; (5) a fraud claim; and (6) an unjust enrichment claim.[54]

---

[48] *See* Exhibit 11, Deposition of Sara Hawes (Deposition Exhibit 1, Hawes Receipt). Hawes, a former art teacher now working as a personal chef, was a typical consumer of sheets who associated higher thread count with higher quality and higher price. *Id.* at 13-15, 49, 56. The Somerset sheet's retail price was about $190, but they were marked down to $69.99—so Hawes thought she was geting "really good sheets for a really good price." *Id.* at 60-61, 72, 104. Macy's sheets were often subject to sales. Indeed, both plaintiffs in related litigation purchased sheets that were on sale. *See Chiaraluce v. Macy's Inc.*, No. 2:20-cv-00081, ECF #1, Complaint, ¶¶13-14, 17-18. (The *Chiaraluce* matter is at the pleadings stage: Plaintiffs have moved for jurisdictional discovery before responding to Defendants' motion to dismiss; the discovery motion is pending.)

[49] *See* Exhibit 12, Somerset Packaging.

[50] *See* Ex. 11, Hawes Depo. at 77-78.

[51] *See id.* at 86; *see also* Ex. 1, Cormier Report at 17.

[52] *See* Exhibit 13, Legal Notice of Violation (June 27, 2017 Letter). Hawes testified that she would not have paid the price—even the on-sale price—for sheets that turned out to be such low quality, low thread count. *See* Ex. 11, Hawes Depo. at 87.

[53] *See* ECF #1, (Original) Complaint. Hawes was joined by another plaintiff, Amy Hill, who had a similar experience. Hill brought claims under Missouri law and on behalf of a proposed class of Missouri consumers. However, Hill dismissed her claims during the course of this litigation. *See* ECF #72. Therefore, only Hawes's claims under California law and on behalf of a California class are now before the Court.

[54] *Read* ECF #64, Third Amended Complaint, Counts Two through Nine, *with* ECF #39, Order on Motion to Dismiss, p. 16. In this brief, we refer to claims under the Cal. Bus. & Prof. Code and the California CLRA as the "statutory claims" and the warranty, fraud, and unjust enrichment claims as the "common law claims."

Hawes seeks to bring those claims on behalf of all California consumers.[55]

## IV.   ARGUMENTS IN SUPPORT OF CLASS CERTIFICATION

This case should be certified as a class action because it satisfies the four prerequisites of Fed. R. Civ. P. 23(a)—numerosity, commonality, typicality, and adequacy—as well as the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3). *See Amgen Inc. v. Connecticut Retirement Plans & Trust Funds,* 568 U.S. 455, 460 (2013). Although district courts have "substantial discretion in determining whether to certify a class … the Supreme Court has made clear that 'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.'" *Rikos v. Proctor & Gamble Co.,* 799 F.3d 497, 505 (6th Cir. 2015) (quoting *Amgen* at 465-66); *accord In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.,* 722 F.3d 838, 851-52 (6th Cir. 2013) ("courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits); *Gooch v. Life Investors Ins. Co. of Am.,* 672 F.3d 402, 417 (6th Cir. 2012) (court's "rigorous analysis" must be limited to determining whether Rule 23 has been satisfied, *not* whether the plaintiff is likely to prevail on the merits).

### A.   Definition, Size, and Ascertainability of the Class

Macy's has identified by unique product numbers each of the sheets supplied by AQ and labeled using the non-standard thread counting method; and Macy's records contain a complete description of each product, including customer-facing information.[56] ████████████████

████████████████████████████████████████████████

████████████████████████████ Based on this information, the class can be defined as follows:

> Each person in California who purchased from Macy's a CVC (cotton-polyester blend) sheet supplied by AQ Textiles between November 8, 2013, and the date the class is certified.

---

[55] Hawes has always sought to represent a class of California consumers. *See* ECF #1, (Orig.) Compl. at ¶51 (initial proposed class definition). But she also reserved the right to seek certification of a multi-state or nationwide class. *See* ECF #64, Third Amend. Compl. at ¶56. At this time, Hawes has chosen to only seek certification of the California class to pursue the California statutory and common law claims.

[56] *See* Ex. 3, Queen Depo. at 52-54.

This class, which includes thousands of people,[57] should exclude the defendant and its affiliates, as well as the Court and its personnel.

Each Macy's customer can identify him or herself as a member of the class using objective criteria. This criteria would be included in class notice, and described in detail on a website provided solely for that purpose. Indeed, the tags on the sheets themselves identify the product line (*e.g.,* "Somerset Collection"), the size (*e.g.,* "Queen"), and they confirm the cotton-polyester blend (*i.e.,* "55% Cotton / 45% Polyester"). Moreover, the tags also show the RN number ("RN # 113585"), which identifies AQ as the supplier of the sheets to Macy's.[58]

The class is appropriately defined because "the court [will] be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 538 (6th Cir. 2012). To wit, class membership turns on three objective criteria: (i) whether someone purchased one of the class sheets, (ii) in the state of California, and (iii) within the class period.[59, 60] Given that thousands of consumers will satisfy these criteria, joinder of them all in one action would be impracticable; as such, the numerosity prerequisite is satisfied. *See Palombaro v. Emergy Fed. Credit Union,* 2017 WL 3437559, at *3 (S.D. Ohio Aug. 10, 2017) (citing *Daffin v. Ford Motor Co.,* 549, 552 (6th Cir. 2006)) ("substantial" numbers satisfy Rule 23(a)).

---

[57] ███████████████████████████████████████████████████
████████ *See* Ex. 3, Queen Depo. at 16. ████████████████████
████████████████████████████████████████ Upon certification, Macy's would be able to provide the exact sales numbers in the state of California during the class period.

[58] *See* Ex. 3, Queen Depo. at 44; *see also, e.g.,* Exhibit 14, Somerset Label.

[59] The class period in the definition is based on the claims now pending (*i.e.,* those in the Third Amended Complaint and pursuant to the Court's Order on the Motion to Dismiss). The original Complaint was filed on November 8, 2017. *See* ECF #1. The longest statute of limitations applicable to the claims now pending is four years for the statutory claims (Counts 2-5) and the common law breach of express warranty claim (Count 7). *See* Cal. Bus. & Prof. Code § 17208; *see also* Cal. Comm. Code § 2725.

[60] Plaintiff Hawes has asked the Court to toll the statutes of limitations because Macy's concealed its wrongful conduct. *See* ECF #64, Third Amend. Compl. at ¶¶62-65. Whether such tolling is appropriate is a merits question not yet before the Court. If the Court later finds that tolling should apply, the class period can be modified and additional notice can be provided to class members who would then be included in the class.

Macy's may contend that, since it does not keep records of the *identities* of all of its customers, the class members are not "ascertainable." Even assuming ascertainability is an implicit requirement of Rule 23, *but see Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1125-1126 (9th Cir. 2017) (refusing to impose requirements not in the text of Rule 23), it is not unusual for consumer cases to be certified under similar circumstances. *See, e.g., Galoski v. Applica Consumer Prods.,* 309 F.R.D. 419, 422-423 (N.D. Ohio 2015). In *Galoski,* the court observed that "[a] company's failure to keep purchase records cannot provide an automatic defense to class certification." *Id.* at 422 (citation omitted). Indeed, "[t]he Sixth Circuit does not require that the defendant be able to specifically identify each class member, but only that a prospective class member be able to identify him or herself as having a right to recover or opt out based on the description of the class." *Id.* Here, class members will be able to self-identify for the reasons described above. And there are "several options available to provide notice to potential class members and protect against potentially false claims. Further, the defendant does have records of the total number of sales during the class period, therefore, any fear that they will have to pay out on unsubstantiated claims is somewhat mitigated as they know what their ultimate maximum responsibility would be." *Id.* at 422-423.

### B. Commonality of Questions and Typicality of Plaintiff's Claims

An *individual* question is one where class members would need to present evidence that "varies from member to member," whereas a *common* question "is one where the same evidence will suffice for each member [because] the issue is susceptible to generalized, class-wide proof." *See Tyson Foods, Inc. v. Bouephakeo,* 136 S. Ct. 1036, 1045 (2016). While courts must "start from the premise that there need be only one common question to certify a class," *see In re Whirlpool,* 722 F.3d at 853, each of the critical factual and legal issues in this case turn on the conduct *of the defendant* and not the experiences of any individual class member:

1. Does the ASTM standard counting method apply to CVC sheets? If so, how would one count the multiple polyester filaments per yarn using that method?

13

2. How does AQ's alternative counting method differ from the ASTM standard counting method? Does the alternative method result in higher thread counts than the standard method?

3. When did Macy's know (or, when should it have known) that the thread counts on its AQ-supplied sheets were inflated beyond the ASTM standard?

Although Plaintiff Hawes and her counsel believe they have gathered substantial evidence to answer these questions *on their merits* in support of her causes of action, the questions are not yet before the Court at the certification stage. What is important about the questions is that none of them will be answered differently for any given member of the class—instead, the same answer will be given for each and every member of the class. For example, if the answer to Question #2 is "yes," it would be *yes* for every class member, whose claim would be advanced by the answer in an identical way. And if the answer to that question were "no," it would be *no* for every class member, whose claim would be impaired by the answer in an identical way. The same is true for each of the questions because they turn on textile science, the bed sheet retail market, or the actions of Macy's applicable to *all* of its customers.

Indeed, Ms. Hawes's claims are typical of the claims of other class members because they "stem from a single event or are based on the same legal or remedial theory." *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561-562 (8th Cir. 1982). Here, Macy's use of the alternative counting method is a single course of conduct that applies to all class members, and the theory that such use deceives consumers is the same for all California class members who are protected by the same state statutory and common laws. Indeed, since the "representative plaintiff would be able to prove other class members' claims by proving [her] own claim," *Givens v. Van Devere, Inc.,* 2012 WL 4092803, at *19 (N.D. Ohio 2012), her claims are typical of those of the class.

Moreover, the California statutory claims Hawes has brought on behalf of the class "are governed by the 'reasonable consumer' test." *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008) (thus, an individualized defense, such as that a given consumer was "satisfied with the product, is irrelevant"); *see also In re Tobacco II Cases,* 207 P.3d 20, 29-30 (Cal. 2009) (claims "focus on the defendant's conduct … in service of the statute's larger purpose of protecting the

14

general public against unscrupulous business practices, [therefore] relief under [the Code] is available without individualized proof of deception, reliance and injury for absent class members").[61] Indeed, "[t]he requirement of concrete injury is satisfied when the Plaintiff and class members … suffer an economic loss caused by the defendant, namely the purchase of defendant's product containing misrepresentations." *McCrary v. Elations Co., LLC,* 2014 WL 1779243, at *14 (C.D. Cal. Jan. 13, 2014).

## C. Adequacy of Class Representative

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Here, Ms. Hawes has worked with counsel to prepare the original and operative complaints, her answers to written discovery requests, and she provided deposition testimony, including that she understood that her role as a proposed class representative was "to fight" for "the entire class."[62] She has shown that she will "vigorously prosecute the interests of the class" and she has no conflicts of interest. *Cf. Palombaro,* 2017 WL 3437559, at *7 (citations omitted). When Macy's designee under Fed. R. Civ. P. 30(b)(6) was asked whether there was "any reason to doubt" that Hawes was representative of thousands of other consumers, the witness said there was not.[63]

And Hawes has retained counsel who are experienced and highly competent, from a consortium of law firms with sufficient resources to prosecute this case to trial. To date, they conducted substantial investigation prior to filing the initial complaint; they successfully litigated an early dispositive motion; they have reviewed thousands of documents produced by the defendant and third-parties; they have taken two corporate depositions and several fact witness depositions; and they have retained two experts who have produced reports in support of this

---

[61] As for the breach of warranty claim, under California law, an express warranty may be made by the product's packaging. *See Rosales v. FitFlop USA, LLC,* 882 F. Supp.2d 1168, 1178 (S.D. Cal. 2012). And "proof of individualized reliance or causation is not necessary to establish breach of an express warranty," so the claim is appropriate for class treatment. *In re ConAgra Foods,* 90 F.Supp.3d 919, 984 (C.D. Cal. 2015).

[62] *See* Ex. 11, Hawes Depo. at 89, 94.

[63] *See* Ex. 2, Swift Depo. at 41.

certification motion. Hawes's lawyers are qualified to serve as class counsel and should be so appointed.[64]

### D. Predominance and Superiority

"To meet the predominance requirement, a plaintiff must establish that issue subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individual proof." *Randleman v. Fid. Nat. Title Ins. Co.,* 646 F.3d 347, 352-352 (6th Cir. 2011); *see also In re Whirlpool,* 722 F.3d at 850 ("when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate"). "Cases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Hicks v. State Farm Fire & Cas. Co.,* 965 F.3d 452, 464 (6th Cir. 2020) (quoting *Young,* 693 F.3d at 545, and *Powers,* 501 F.3d at 619). Thus, where a central factual or legal question predominates over individual issues, permitting individual consumers "to litigate their cases [separately] is a vastly inferior method of adjudication when compared to determining threshold issues of [liability] that apply equally to the whole class." *Id.* (quoting *Daffin,* 458 F.3d at 554).

Here, the central question is, *what is the proper method of counting threads in CVC sheets: ASTM 3775 or the alternative used by Macy's?* This is a threshold question of liability: if the answer is that the ASTM standard is the only proper method, then Macy's method was improper and the resolution of this question substantially advances the plaintiff's case that Macy's thread count representations were unfair and deceptive under California law. And if the answer is that the alternative method is proper, then all class members' claims would fail in a single stroke. Thus, this question predominates.

---

[64] For the qualifications of counsel, *please see* Exhibit 15, Declaration of Drew Legando & Enclosures.

██████████████████████████ ██ ██████████████████████

██████████████████████████ ██

And the adjudication of this question will be made on a class-wide basis and using common evidence—most important, Macy's course of conduct in using the alternative counting method—such that the holding of thousands of trials for individual consumers would be extremely inefficient. Moreover, "the Supreme Court explained that litigation should be brought as a class action if individual suits would yield small recoveries [because] the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 567 (6th Cir. 2007) (quoting *Amchem,* 521 U.S. at 617). In this instance, given the small quantum of damages attributable to any individual purchase—and the great expense of proving the merits case—it is likely that the only alternative to a class action suit would be no suits at all. Therefore, a class action that provides a vehicle for consumers to aggregate their claims and thereby vindicate their rights under California's consumer protection laws is not only a superior method of adjudication, it is a necessary one.

Further, there is a viable method to determine class-wide damages under *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1433 (2013). The Supreme Court does not require that the theory be proven at the class-certification stage, but only that there is "any model supporting a plaintiff's damages case consistent with [her] liability case." *Id.* at 1433. As an initial matter, it is common sense (and nearly axiomatic) that if there are two sheets which have identical characteristics *except that the second one has a higher thread count*, and the second one commands a higher market price, then there is a direct relationship between the higher thread count and the higher price. And thus, if a consumer paid a higher price for a sheet that *purported* to have a higher thread count than

---

[65] *See* Ex. 2, Swift Depo. at 104.

[66] *See* Ex. 3, Queen Depo. at 110. ██████████████████████████
*Id.* at 61.

it truly had, she paid a premium for the misrepresented higher thread count—and has been damaged by the amount of that premium.

And Macy's own sales data shows just such a relationship. Moreover, Plaintiff's expert is prepared to conduct a regression analysis in order to help the Court—during the merits stage— quantify the relationship between thread count and price, and to determine the premiums paid by the consumers who comprise the class.

## V.     CONCLUSION

The Court should certify this case as a class action and direct the parties to confer about a proposed notice and plan for its distribution to class members.

Respectfully submitted,

s/ Drew Legando

Drew Legando (0082409)
Edward S. Jerse (0013155)
MERRIMAN LEGANDO WILLIAMS & KLANG, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-9000
F. (216) 522-9007
E. drew@merrimanlegal.com
    edjerse@merrimanlegal.com

Charles Schaffer
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelpha, PA 19106
T. (877) 882-1011
E. cschaffer@lfsblaw.com

Brendan S. Thompson
David L. Black
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Ave., NW, Suite 200
Washington, DC 20016
T. (202) 789-3960
E. brendant@cuneolaw.com
    dblack@cuneolaw.com

Stuart L. Cochran
STECKLER GRESHAM COCHRAN PLLC
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
T. (972) 387-4040
E. stuart@stecklerlaw.com

Michael McShane
Ling Y. Kuang
Kurt D. Kessler
AUDET & PARTNERS
711 Van Ness Ave., Suite 500
San Francisco, CA 94102
T. (715) 568-2555
E. mmcshane@audetlaw.com
    lkuang@audetlaw.com
    kkessler@audetlaw.com

*Plaintiff's Counsel*

## **CERTIFICATE OF SERVICE**

This motion and memorandum was filed on the Court's ECF System on February 1, 2021, through which it will be served on all counsel of record.

s/ Drew Legando
Drew Legando (0082409)

## APPENDIX 1

For a brief survey of how retailers and consumers associate thread count and quality and price, visit, for example:

- https://www.mattressadvisor.com/thread-count-really-matter-sheets/#:~:text=Higher%20thread%20counts%20mean%20higher,%2C%201000%2C%20or%20even%20 ("Since the mid-1990s, bed linens manufacturers have marketed high-thread count sheets as the top of the line in bedding. Higher thread counts mean higher prices, which consumers happily pay believing they are buying top quality sheets");

- https://www.styleathome.com/interiors/bedroom/article/buying-guide-the-truth-about-thread-count ("There's no doubt that most consumers believe the higher the thread count, the better the quality…");

- www.thesleepjudge.com/best-sheet-thread-count/ ("the higher the thread means the higher the price tag");

- https://www.tuck.com/whats-a-good-thread-count-for-sheets/  ("We've all heard the advice. When it comes to thread count, higher is always better.");

- https://bambi.com.au/understanding-thread-counts/  ("It's all about inflating the thread count to inflate the price tag");

- https://areahome.com/blogs/designers-notebook/does-thread-count-really-matter ("Even to this day, plenty of people believe that the higher the thread count, the higher the quality. High thread count quickly became synonymous with luxury');

- https://www.brooklinen.com/blogs/brookliving/best-thread-count-for-sheets ("Thread count is to sheets what carats are to diamonds.").

21