**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

SARA HAWES,

          Plaintiff,

          v.

MACY'S WEST STORES, INC.,

          Defendant.

Civil Action: 1:17-CV-00754

Judge Timothy S. Black


**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**


Defendant Macy's West Stores, Inc. ("Defendant"), through undersigned counsel, respectfully submits the following Memorandum in Opposition to Plaintiff's Motion for Class Certification.

## <u>TABLE OF CONTENTS</u>

SUMMARY OF ARGUMENT (LR 7.2(a)(3)) ...............................................................1

INTRODUCTION .............................................................................................................5

STATEMENT OF PERTINENT FACTS ...........................................................................6

    I.   Procedural History. .................................................................................................6

    II.  Parties and Background Information ......................................................................7

    III. Macy's Purchase of Sheets from AQ Textiles .......................................................9

    IV. The Parties' Dispute Regarding Thread Count ....................................................12

ARGUMENT .................................................................................................................15

    I.   Legal Standard. ....................................................................................................15

    II.  Plaintiff Cannot Satisfy Rule 23(a)'s Requirements ...........................................16

         A.  Plaintiff has not met her burden with respect to numerosity .......................17

         B.  Plaintiff cannot establish that questions or law or fact are common to
            the class ........................................................................................................20

         C.  Plaintiff cannot establish that her claims are typical of those of the
            class .............................................................................................................24

            1.  Plaintiff lacks standing to pursue her individual claims ........................24

            2.  Plaintiff lacks standing to pursue class claims for products that
                she did not purchase .............................................................................26

            3.  Plaintiff's unique factual circumstances make her claims atypical ........30

         D.  Plaintiff cannot establish that she will fairly and adequately protect
            the interests of the class ...............................................................................31

    III. Plaintiff Cannot Satisfy Rule 23(b)(3)'s Requirements Because
         Common Questions Do Not Predominate Over Individual Questions ...............34

         A.  Whether, and to what extent, thread counts are "inflated" cannot be
            determined on a class-wide basis .................................................................35

         B.  Whether thread-count representations are material cannot be
            determined on a class-wide basis .................................................................36

C. The extent of Defendant's involvement in the alleged
misrepresentations cannot be determined on a class-wide basis .................38

D. Damages and restitution cannot be determined on a class-wide basis..........41

E. Whether class members are "consumers" for purposes of CLRA
claims must be determined on an individualized damages and
restitution cannot be determined on an individualized basis .......................44

CONCLUSION............................................................................................................45

CERTIFICATE OF SERVICE ....................................................................................47

## SUMMARY OF ARGUMENT (LR 7.2(a)(3))

Plaintiff's Motion for Class Certification must be denied for failure to satisfy the requirements of either Rule 23(a) or Rule 23(b)(3).

- **Plaintiff cannot satisfy the requirements of Rule 23(a).**

First, as to the Rule 23(a) requirement of numerosity, Plaintiff has failed to carry her burden of demonstrating that there are, in fact, sufficiently numerous members of the class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Instead, Plaintiff has put forth only problematic speculation regarding the size of the class. Such evidence is insufficient to support class certification. *Golden v. City of Columbus*, 404 F.3d 950, 965–66 (6th Cir. 2005); *Bond v. Antero Resources Corp.*, 328 F.R.D. 187, 190 (S.D. Ohio 2018).

Second, Plaintiff has failed to establish that the claims of the class arise from a "common contention" or "common injury" that applies across the entire class. Plaintiff's commonality arguments are founded on the theory that Defendant participated in a scheme to inflate thread counts uniformly across all sheets supplied by AQ Textiles, but that theory is unsupported by the record. As a result, Plaintiff's proposed common questions are either not disputed at all or are questions that cannot actually be resolved simultaneously for all members of the class. In particular, Plaintiffs will not be able to establish, for each class member, that they would not have purchased sheets but for an alleged misrepresentation regarding thread count. That distinguishes this case from others in which courts have found that common questions existed. *Compare Dukes*, 564 U.S. at 349–50, *with Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 504–09 (6th Cir. 2015).

Third, Plaintiff is unable to establish that her claims are typical of those of the class. As another federal court held in dismissing Plaintiff's claims against AQ Textiles arising from the exact same sheet purchase, Plaintiff lacks standing to pursue individual claims because she has

failed to demonstrate that she suffered an injury-in-fact traceable to the conduct of Defendant. *Hill v. AQ Textiles LLC*, No. 1:19CV983, 2021 WL 1026740, at \*2–3 (M.D.N.C. Mar. 17, 2021). Moreover, Plaintiff has failed to demonstrate that the products she purchased are similar enough to the numerous products purchased by would-be class members that she has standing to pursue claims on their behalf. *Godec v. Bayer Corp.*, No. 1:10-CV-224, 2011 WL 5513202 (N.D. Ohio Nov. 11, 2011). Finally, even if standing concerns are resolved, Plaintiff's unique factual circumstances (including her focus on her sheets' color rather than their thread count and her skin's sensitivity to polyester, which she failed to realize was in the sheets) mean her claims are atypical of those of other class members. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996).

Fourth, Plaintiff has not demonstrated that she will fairly and adequately protect the interests of the class. Specifically, her close friendship with one of the attorneys representing her and the putative class in this lawsuit means that she will likely be more concerned with protecting her friend's financial interest than she will be with protecting the interests of class members. Courts have found such issues to preclude class certification in the past. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003); *Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193, 208 (E.D. Pa. 2017).

- **Plaintiff cannot satisfy the requirements of Rule 23(b)(3)**

"Rule 23(a)(2)'s commonality requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions." *Zehentbauer Fam. Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 503 (6th Cir. 2019). Here, Plaintiff cannot satisfy the requirements of Rule 23(b) because common issues do not predominate over the numerous key issues that will require individualized proof.

First, the central issues of whether—and to what extent—thread counts were inflated are not susceptible to class-wide proof.  Plaintiff's evidence does not demonstrate that the numerous sheet products at issue are affected by uniform thread-count misrepresentations.  In fact, evidence from Plaintiff's own expert demonstrates that the extent of the alleged deviation from stated thread counts will vary greatly between products.  The factfinder will therefore have to determine the extent of alleged thread count inflation on a product-by-product basis, an inquiry that will be impacted by the unique facts applying to each sheet product.

Second, a key element of many of Plaintiff's claims is whether consumers relied on the thread-count representations at issue, which often turns on whether the representations were material to consumers.  *Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 969 (S.D. Cal. 2016); *Rikos*, 799 F.3d at 512.  "[I]f the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129, 103 Cal. Rptr. 3d 83, 95 (2009).  Here, as demonstrated by Plaintiff's own experience, numerous factors may inform a consumer's decision to purchase sheets.  Therefore, the materiality of any discernable over-counting will vary between consumers and therefore will not be subject to assessment on a class-wide basis.

Third, many of the putative class claims will require class members to demonstrate that Defendant made the alleged misrepresentations on sheet packaging and/or knew of their falsity. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867 (9th Cir. 2018); *In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1089 (S.D. Cal. 2020). Here, the extent of Macy's involvement in approving the product inserts displaying thread-count representations varies significantly between the subject products. In addition, Macy's received thread-count test reports for some of the sheets, but did not receive them for many others.  These and other issues will prevent class-wide resolution of Defendant's

responsibility for, and knowledge regarding, the thread-count representations on product packaging.

Fourth, where the class's proposed damages model "falls far short of establishing that damages are capable of measurement on a classwide basis," the named plaintiff "cannot show Rule 23(b)(3) predominance." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). Here, as set forth more fully in the motion to strike the report of Stefan Boedeker, the damages models proposed by Plaintiff's economic expert are not sufficient to demonstrate that damages can be determined on a class-wide basis. For one thing, Plaintiff's expert has not actually conducted any damages analysis but merely proposed how it *might* be accomplished. Even if he had conducted his analysis, however, the manner in which he proposes to do so is fatally flawed because of his failure to properly reflect or account for important variables, among other flaws. And in any event, as referenced above, the wide variance in the extent of alleged thread over-counting between products would defeat class-wide damages proof regardless of those other errors.

Finally, whether class members are "consumers" for purposes of Plaintiff's CLRA claim will need to be determined on an individualized basis. The CLRA only affords remedies to "consumers," defined as "an individual who seeks or acquires by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). Determining whether a class member purchased sheets "for personal or business use is not a common question and will require individualized examination." *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 576 (E.D. Cal. 2012).

*     *     *     *     *     *

For these reasons, Plaintiff's Motion for Class Certification should be denied.

4

## INTRODUCTION

Plaintiff Sara Hawes bought a single set of sheets from a Macy's retail store in Los Angeles in 2017. She alleges that the sheets failed to meet her expectations because they were labeled with an inflated thread count. Now, Plaintiff Hawes—whose best friend is one of the attorneys representing her in this action—seeks to certify a class that includes not just the consumers who purchased the same sheets she did, but those who purchased <u>hundreds</u> of different products with wide-ranging differences in thread counts and other characteristics. Plaintiff premises this incredibly broad proposed class on a tenuous theory: that the supplier of those sheets (not a party to this case) adopted an improper method for calculating the thread count of sheets and strong-armed independent testing labs into employing that method.

The evidence before the Court simply does not support Plaintiff's theory. Indeed, Plaintiff has hardly presented any evidence at all, and the evidence she has submitted undermines any suggestion that Defendant was part of a coordinated strategy to inflate thread count. Accordingly, Plaintiff's proposed common issues are illusory. Moreover, Plaintiff ignores the myriad individualized factors—relating to both consumer preferences and the nature of the sheet products themselves—that will predominate and render common proof of either liability or damages impossible. In no way are these issues better illustrated than by the Plaintiff herself: she bought the sheets because of their color, not because of their thread count, and incorrectly believed them to be 100% cotton, not realizing that they contained polyester (a material that irritates her skin).

Plaintiff tries to paper over her evidentiary defects by relying on the reports of two would-be experts to fill in the gaps. These reports, however, suffer from the same defect as Plaintiff's factual recitation: they rely principally on allegation, theory, and innuendo, rather than finding support within the actual evidentiary record in the case. Even if the experts' reports are not struck

in their entirety—relief Defendant seeks simultaneously with the filing of this Brief—they cannot help Plaintiff meet her burden of demonstrating that the elements of Rules 23(a) and (b) have been satisfied with respect to the putative class.

For those and the other reasons explained below, Plaintiff's motion for class certification should be denied.

## STATEMENT OF THE PERTINENT FACTS

### I.    Procedural History

Plaintiffs Sara Hawes and Amy Hill filed their original Complaint in this action on November 8, 2017, alleging claims for violations of the Federal Magnuson-Moss Warranty Act ("MMWA"), Missouri's Merchandising Practices Act ("MMPA"), California's Unfair Competition Law ("UCL"), California's False Advertising Law ("FAL"), California's Consumer Legal Remedies Act ("CLRA"), breach of implied warranty of merchantability under California and Missouri law, breach of express warranty under California and Missouri law, and fraud under unspecified law.  ECF No. 1.  They claimed that Defendants Macy's Inc. ("MI"), AQ Textiles LLC ("AQ Textiles"), and Creative Textile Mills Private Limited ("Creative") misled them into believing that their bedding and linen products have higher thread counts than they actually had and that such products were softer and more comfortable than products with lesser thread counts. *Id.* ¶¶ 1–6.  Plaintiffs alleged that they, along with putative class members, were injured because they would not have purchased such products, or only would have paid lower prices for such product, had they know the "actual thread counts" at the time of purchase.  *Id.* ¶ 6.

AQ Textiles and MI moved to dismiss the Complaint on several grounds.  On September 28, 2018, this Court dismissed the Complaint as to AQ Textiles for lack of personal jurisdiction. ECF No. 38.  As to MI, this Court dismissed the MMWA claim and breach of implied warranty of

merchantability claim with prejudice and dismissed the CLRA claim and breach of express warranty claim without prejudice.  ECF No. 39.  The Court deferred ruling on whether Plaintiffs lack standing to pursue class claims for products they did not purchase until the class certification stage. *Id.* at 5–7.

On June 12, 2019, Plaintiffs amended their Complaint, this time only asserting claims against MI.  ECF No. 55.  Plaintiffs asserted claims for violation of the MMPA, UCL, FAL, and CLRA, as well as claims for breach of express warranty, fraud, and unjust enrichment.  *Id.*  On August 12, 2019, Plaintiffs filed a Third Amended Complaint asserting the same claims for relief, but this time naming Defendants Macy's Retail Holdings, Inc. ("MRH") and Defendant as defendants. The claims on behalf of Plaintiff Hall, and against MRH, were subsequently dismissed, leaving only individual and class claims by Plaintiff Hawes against Defendant remaining. ECF Nos. 72, 73, & 76.

On February 1, 2021, Plaintiff Hawes filed her Motion to Certify Class Action which seeks to certify the following class: "<u>Every person in California who purchased from Macy's a CVC (cotton-polyester blend) sheet supplied by AQ Textiles between November 8, 2013, and the date the class is certified.</u>"  ECF No. 84, Plaintiff's Motion for Class Certification ("Pl.'s Mot.") 11 (emphasis added).  She seeks class treatment for he claims arising under the UCL, FAL, and CLRA, as well as claims for breach of express warranty, fraud, and unjust enrichment.[1]

## II.    Parties and Background Information

Plaintiff Sara Hawes is a self-described "avid consumer of sheets" who estimates that she purchases sheets one to two times per year. Ex. A, Transcript of Deposition of Sara Hawes

---

[1] The Third Amended Complaint also stated a claim for violation of the MMPA.  However, Plaintiff does not seek to certify a class with respect to this claim.  *See* Pl.'s Mot. 10 (omitting MMPA claim from list of Plaintiff's claims).

("Hawes Tr.") 12:1–18, 35:4–10, 35:24–25, 41:12–22. When purchasing sheets, Plaintiff considers: the color, price, company, thread count, and whether the sheets are 100% cotton. *Id.* 35:22–36:1, 40:2–8, 40:22–41:11, 45:13–20. Of those factors, she first considers the color of the sheets (specifically whether the sheets are "a certain hue of gray") and then whether the sheets are 100% cotton. *Id.* 35:22–23, 45:8–18. Purchasing 100% cotton sheets is important to Plaintiff because she has very sensitive skin that reacts to synthetic fabric—including polyester. *Id.* 46:21–48:5, 55:5–13. To Plaintiff's knowledge, she has never purchased or used sheets that were less than 100% cotton. *Id.* 40:2–8, 46:21–47:1.

Plaintiff purchased a set of 900-thread-count Somerset Collection sheets from a Macy's store in Los Angeles on June 6, 2017. *See* Hawes Tr. 106:5–12 & Ex. 2. She purchased the sheets because they were the only ones available in the store in her favorite shade of gray. *Id.* 66:9–67:5. Plaintiff claims that she was immediately disappointed with the sheets because she was "so used to" the other sheets that she "buy[s] all the time." *Id.* 76:14–17, 77:15–76:1. She believed that the sheets she purchased from Defendant were "of lesser quality." *Id.* 75:24–25. She also believed that the sheets were 100% cotton. *Id.* 76:11–13. Apparently she did not read the insert on the packaging of her sheets, which stated that they were made of 55% cotton and 45% polyester. *Id.*, Ex. 2.

Defendant operates Macy's retail stores, including the store in Los Angeles where Plaintiff Hawes says she purchased the sheets at issue. Ex. B, Transcript of Deposition of Danielle Swift ("Swift Tr.") 118:22–119:1. Buyers employed by a related entity, Macy's Merchandising Corporation, are responsible for buying most of the sheets sold in retail stores operated by Macy's

entities.[2] Swift Tr. 6:24–7:24; Declaration of Danielle Swift ("Swift Decl.") ¶ 3. Those buyers

negotiate the purchase of sheets from vendors like AQ Textiles.  Swift Tr. 11:17–12:2, 26:8–15;

Swift Decl. ¶¶ 3, 5.

Consumer preferences for bedsheets do not all match those of Plaintiff. In fact, consumers

seek many different traits in sheets.  *See* Swift Tr. 54:11–22 (stating that Macy's has "a pretty wide

group of consumers" and that they have different demands including thread count, fiber, color,

size, and price); Ex. C, Transcript of Deposition of Sal Ciniglio ("Ciniglio Tr.") 28:14–23 (stating

that "[a] lot of things . . . go into the decision-making for a consumer" such as softness, whether

sateen, whether percale, crispness, features and benefits, cooling agents, and hem treatments); *id.*

29:9–16 (stating that the quality of sheets depends on how they are constructed and what the

consumer is looking for and that "[y]ou can get a 200 thread count sheet that's immaculate because

it has all the bells and whistles.  It has Egyptian cotton, it's a sateen.  It's what you're looking for

in the quality of the sheet.").  Additionally, to the extent that consumers consider thread count,

some shop within a range and do not have exacting preferences.  *See* Hawes Tr. 49:14–17 (looks

for thread counts "above 600"); *id.* 53:6–8 (for the most part she has purchased sheets with thread

counts of 600 to 800).  Because consumer preferences vary, Macy's stocks its retail stores with

different sheet products with a wide variety of characteristics.  Swift Decl. ¶¶ 10, 17, 18.

## III.    Macy's Purchase of Sheets from AQ Textiles

Among the sheets sold by Macy's are those supplied by AQ Textiles.  Some of those sheets

are made of 100% cotton.  Swift Decl. ¶ 5. AQ Textiles also supplies Macy's with sheets that are

made of a cotton/polyester blend with cotton being a higher percentage than polyester; those sheets

---

[2] The exception is sheets that are a part of Macy's "private label" programs—programs that are designed by a different department for sale exclusively in Macy's retail stores.  Swift Tr. 11:1–16; Swift Decl. ¶¶ 4–5.

9

are sometimes referred to as "chief value cotton" or "CVC" sheets. Swift Decl. ¶ 5. Since 2013, Macy's has sold at least 625 different CVC products supplied by AQ Textiles, each with a unique Universal Product Code ("UPC"). *Id.* ¶ 7. Those sheet products vary widely with respect to characteristics such as color, size, fabric, and composition. *Id.* ¶¶ 7, 10–11, 16–18 They also vary widely with respect to thread count, going as low as 400 and as high as 1800. Declaration of Sal Ciniglio ("Ciniglio Decl.") ¶ 3.

Many of the hundreds of products that AQ Textiles has provided to Macy's during the class period belong to roughly 20 separate "core programs." Swift Decl. ¶¶ 7–8. For example, Plaintiff purchased a set of sheets from the Somerset Collection program. *Id.* ¶ 7. A core program is a product line that generally adheres to a set of specifications, which set forth parameters regarding size, fabric, weaving style, thread count, and color choice, among other things. *Id.* ¶ 9. The specification for a program of sheets can vary across time, potentially resulting in material differences between different shipments of the same product. *See* Declaration of Larry Queen ("Queen Decl.") ¶¶ 9, 27. For example, the specifications for the Somerset Collection program— which includes the sheets purchased by Plaintiff Hawes—changed over time to require a different size of polyester yarns. *Id.* Sheets that are part of "core programs" are contrasted with those that Macy's calls "opportunity buys." Swift Decl. ¶ 8. Opportunity buys are sheets that Macy's buys after they have already been manufactured, labeled, and packaged. *Id.* Accordingly, Macy's has no input into the specifications of those programs. *See id.*

Programs are designed to appeal to customers in different ways and, accordingly, use different packaging inserts. *Id.* ¶ 17. While Macy's approves the packaging inserts for core programs, it does not do so for opportunity buys (which, as stated above, are packaged and labeled before Macy's ever buys them). *Id.* ¶ 8; Ciniglio Decl. ¶¶ 4, 6. Within the CVC programs that AQ

10

Textiles has supplied to Macy's, the mixture of cotton and polyester can differ. Swift Decl. ¶ 15 ("The Parker program for example contains 55% cotton and 45% polyester, and the Bradford program for example contains 60% cotton and 40% polyester."). Sheet sets supplied to Macy's by AQ Textiles come in a variety of combinations: one flat sheet, one fitted sheet, and two pillowcases; one flat sheet, one fitted sheet, and four pillowcases; and two pillowcases. *Id.* ¶ 6. Some programs include duvet covers, while others do not. *Id.* ¶ 9.

The sheets sold by AQ Textiles also vary with respect to other factors that may affect their softness, hand feel, and durability as well as their general appeal to consumers. For example, the sheets are made with different constructions (common variations include percale, which is more durable, and sateen, which results in a satin-like sheen and softness). Queen Decl. ¶ 11. They also may incorporate special features, such as deep pockets (for fitting deeper mattresses) and the use of special technologies, such as Celliant technology that has been proven to result in better sleep and physical recovery for users. *Id.* ¶¶ 12–14. The many variables in the nature and composition of the sheets can affect their price. *Id.* ¶ 15. Additionally, at the product level, prices change depending on size of sheet purchased, whether there is a sale (either on all sheets at Macy's or just a certain program), and costs paid to the supplier. Swift Decl. ¶¶ 22–23.

AQ Textiles does not manufacture the sheets it provides to Macy's; it buys them from overseas textile mills, mostly in India. Creative is one such mill. When AQ Textiles buys sheets from Creative, it submits a purchase order containing specifications for the same characteristics as those submitted to Macy's. Queen Decl. ¶ 7. Creative then manufactures the sheets to AQ Textiles' specifications and supplies them to AQ Textiles. Creative ships them to AQ Textiles in the United States, and AQ Textiles then supplies them to retailers such as Macy's. Macy's does not have any direct contact with Creative. Swift Tr. 119:7–120:16; Queen Decl. ¶ 7.

11

IV.     **The Parties' Dispute Regarding Thread Count**

Plaintiff Hawes' complaint regarding the sheets she purchased relates to a single attribute: their thread count. She alleges that the thread count of her sheets was inflated; rather than being 900 threads, she claims that their "true thread count" was 249.[3] Third Am. Compl. ¶ 40. She also alleges that the thread count of "numerous other brands" of sheets sold in Macy's stores are inflated. *Id.* ¶ 41. Plaintiff claims that Defendant knew or should have known that the thread counts of the sheets it sold were inflated, and that Defendant therefore deceived customers who bought the sheets. *Id.* ¶¶ 42–47.

The parties agree that the thread count of bedsheets is generally determined by a standard promulgated by the American Society of Testing Materials ("ASTM") known as the D3775 standard. The current version of the standard is D3775-17e. *See* Ex. D, Standard Test Method for End (Warp) and Pick (Filling) Count of Woven Fabrics, D3775-17e, ASTM International. The standard describes both the methods in which a thread-count test can be performed and how the threads should be counted. Among other things, the standard provides that when yarns are "laid-in together and parallel, count each yarn separately, as a single unit, regardless of whether it is comprised of single or plied components." *See id.* ¶ 9.1.3.

In her class certification motion, Plaintiff claims that AQ Textiles has adopted a "counting method" that deviates from the ASTM standard because it requires the person testing the sheets "to physically pull the polyester yarns apart to count the individual fibers composing the yarn." Pl.'s Mot. 3. This claim is completely unfounded. There is no evidence submitted by Plaintiff demonstrating that AQ Textiles, or anyone else, has asked testing labs to "count the individual

---

[3] Plaintiff did not allege how she determined the "true" thread count of her sheets to be 249 prior to filing suit. Counsel for Plaintiff has refused to provide any pre-suit testing substantiating that number, and there is no evidence that any such test ever occurred.

fibers comprising the yarn." (Indeed, when asked in his deposition, Larry Queen, the President of AQ Textiles, rejected any suggestion that he or AQ Textiles promote a thread-counting method that involves counting "fibers.") Ex. E, Transcript of Deposition of Larry Queen ("Queen Tr.") 62:14–63:2. Moreover, while Plaintiff vaguely alleged in her complaint that Macy's, Creative, and AQ Textiles are not adhering to industry practice (Third Am. Compl. ¶ 30), Plaintiff has not provided any evidence whatsoever with respect to the supposedly different practices followed by other manufacturers or suppliers of CVC sheets.

Plaintiff's theory relies almost exclusively on the report of one of her experts, Sean Cormier, who accuses AQ Textiles of promoting a supposedly deviant test method.[4] Report of Sean Cormier, ECF No. 84-1 ("Cormier Report") at 13–15. At Cormier's deposition, though, it became apparent that his support for that claim is based on a misapprehension of Queen's deposition testimony and documents produced in discovery that were referenced in his report (but, tellingly, neither attached to the report nor otherwise provided to the Court in connection with Plaintiff's Motion). For example, Cormier references an April 27, 2017 email that he says was a communication from AQ Textiles to a testing lab containing statements by AQ Textiles; in fact, the document was an email from a sheet manufacturer *to* Queen and did not involve a testing lab at all. Ex. F, Transcript of Deposition of Sean Cormier ("Cormier Tr.") 184:10-186:8 & Ex. 12; Queen Decl. ¶¶ 25–26 & Ex. H.

Plaintiff also claims that Defendant has adopted AQ Textiles' supposed "alternative method" for counting threads. Pl.'s Mot. 4–6. Plaintiff does not provide any credible factual support for this statement; instead, she again relies primarily on Cormier's report. Contrary to Plaintiff's unsupported assertions, the undisputed evidence shows that Defendant does not have

---

[4] Defendant is concurrently filing a motion to strike Cormier's report and disqualify him as an expert in this case.

any "method" for counting threads at all; neither it nor the sheet buyers have any involvement in counting threads or confirming thread count. Swift Tr. 42:5–14; 72:21–24, 90:15–18; Ciniglio Decl. ¶ 2. Instead, Macy's suppliers (like AQ Textiles) are responsible for confirming that the product complies with all represented specifications, including thread count. Swift Tr. 42:15–43:4, 72:4–73:5; Ciniglio Decl. ¶ 2; Queen Decl. ¶¶ 17-20. Plaintiff has not submitted any evidence showing that Macy's buyers regularly received test reports from independent testing labs; instead, the evidence is that they received such reports only "occasionally," and they got them from AQ Textiles, not testing labs. Queen Tr. 42:5–43:1, 69:9–12; *see also* Ciniglio Decl. ¶ 2 (stating that, between 2010 and 2017, Macy's did not require test reports for products purchased from AQ Textiles). There is no evidence of any direct communication between either Macy's or the sheet buyers and <u>any</u> independent testing lab, much less all of them, regarding the sheets purchased from AQ Textiles.[5]

The only evidence Plaintiff has provided in support of her contention that the thread counts of sheets sold by Macy's are inflated is—again—Cormier's report. Cormier says that he determined the "true" thread of Plaintiff's Somerset Collection sheets to be 227, and that he determined the thread counts of three other randomly selected sets of sheets with labeled thread counts of 625, 825, and 1250 to be 205, 248, and 248, respectively. Cormier Report 17. However, Cormier—who before his work in this litigation had never performed a thread-count test on bedsheets[6]—did not perform the thread-count test in accordance with the procedure set forth in

---

[5] Plaintiff claims, in a footnote to her class certification motion, that "[t]here is evidence that Macy's also required testing labs to use the non-standard counting method." For factual support, Plaintiff cites to a discussion during Swift's deposition about an email that Plaintiffs have not submitted to the Court. The deposition testimony does not support that conclusion; the email in question was between SGS (a testing lab) and representatives of Macy's <u>private label</u> group, which has nothing to do with the sheets in question. Swift, the 30(b)(6) representative of Defendant, testified that she had no idea who the people on the email were, or what they were talking about. Swift Tr. 87:14-91:10.

[6] *See* Cormier Tr. 150:9-16.

14

ASTM D3775. *See* Cormier Tr. 158:20-159:25, 236:24-240:3. Cormier did not test any sheets other than those four sets, and Plaintiff has not forecast how or when <u>any</u> other sheet sets—much less every other sheet set in the class, dating back to 2013—might be tested to determine their supposed "true" thread count. The only test reports from independent testing labs before the Court demonstrate that the sheets at issue have accurately represented thread counts. Queen Decl., Exs. A–G, I–M. Moreover, contrary to what Plaintiff claims, those reports are not uniform in either content or form; instead, they present their results in a variety of ways with a variety of different statements accompanying them. *See generally id.*

Plaintiff is represented in this litigation by class counsel including Erica Mirabella, Plaintiff's "best friend" that she has known since the sixth grade and whom she talks to on the phone or texts every week.[7] Hawes Tr. 18:25–19:2, 77:24–80:8; *see* Third Am. Compl., p. 35 (listing Erica Mirabella among counsel). Nothing other than a conversation with her attorneys led Ms. Hawes to believe that the thread count of the sheets she purchased from Defendant was inflated, and Plaintiff has stated that her understanding "of the consumer market" is attributable to Mirabella. Hawes Tr. 79:18–23, 85:18–21.

## <u>ARGUMENT</u>

### I.    Legal Standard

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (citation omitted), and is appropriate only when Plaintiff can satisfy her burden of complying with each of the four requirements of Rule 23(a) and at least one of the requirements of 23(b). *In re*

---

[7] Plaintiff has repeatedly sought opportunities to serve as a class representative. *See Hawes v. Apple Inc.*, No. 5:18-cv-01339 (N.D. Cal. 2018); *Hawes v. Waist Gang Society, LLC*, No. 2:16-cv-01784 (C.D. Cal. 2016); *Hawes v. Abbott Labs, Inc.*, No. 1:15-cv-00308 (N.D. Ill. 2015); Hawes Tr. 114:8–124:10.

*Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "The party seeking the class certification bears the burden of proof." *Id.* "Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required." *Pipefitters Local 636 v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011).

Rule 23's requirements are not mere pleading standards. *See Dukes*, 564 U.S. at 351. Instead, they must be satisfied through "significant proof." *Id.* at 353. "[C]certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Zehentbauer Fam. Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 503–04 (6th Cir. 2019) (citation omitted). If Plaintiff satisfies the Rule 23(a) prerequisites, Plaintiff must also "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The class certification analysis "will frequently entail overlap with the merits of the plaintiff's underlying claim. That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Zehentbauer*, 935 F.3d at 503–04.

Here, because Plaintiff has failed to satisfy the requirements of either Rule 23(a) or 23(b), no class should be certified.

## II.     Plaintiff Cannot Satisfy Rule 23(a)'s Requirements

Plaintiff seeks to serve as class representative for "[e]very person in California who purchased from Macy's a CVC (cotton-polyester blend) sheet supplied by AQ Textiles between November 8, 2013, and the date the class is certified."[8] Pl.'s Mot. 11. She proposes that the class

---

[8] By not limiting the class to include only those sheets manufactured by Creative, Plaintiff seeks to certify a class broader than the scope of discovery conducted in this case. Plaintiff often limited her discovery requests to sheets that were manufactured by Creative, and when she did not, both Defendant (in response to written discovery) and AQ Textiles (in response to subpoenas) limited their responses in that manner. *See, e.g.*, Ex. H (5-11-2020 Fourth Subpoena to AQ Textiles, defining "Products" in Paragraph 23 of "Definitions & Instructions" as those manufactured by Creative); Ex. I (Defendant's 3-27-2020 Responses

members join her in each of her remaining claims for relief. Pl.'s Mot. 10. Under Federal Rule of

Civil Procedure 23(a), a case may only proceed as a class action if the party seeking certification

demonstrates that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Plaintiff has not carried her burden of demonstrating that any of these

prerequisites for proceeding as a class action has been satisfied.

### A.    Plaintiff has not met her burden with respect to numerosity.

With respect to the first requirement—numerosity—"[a] party seeking class certification

must affirmatively demonstrate his compliance with the Rule . . . he must be prepared to prove that

there are *in fact* sufficiently numerous parties." *Dukes*, 564 U.S. at 350.  "While the exact number

of class members need not be pleaded or proved, impracticability of joinder must be positively

shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 965–66 (6th Cir.

2005) (citation and internal quotation marks omitted).

Case law from this circuit demonstrates that when the plaintiff puts forth only speculative

evidence regarding the size of the class, certification must be denied.  In *Golden*, the named

---

to Fourth Set of Requests for Production, stating in General Objection 3 that Defendant's responses would be limited to sheets manufactured by Creative). In depositions conducted by Plaintiff, Plaintiff's counsel similarly limited their questions to only sheets manufactured by Creative.  *See* Swift Tr. 30:19–24 (Class Counsel: "For purposes of today, can we agree that we're going to talk about sheets at issue. And the sheets at issue are those which were manufactured by Creative and for which AQ served as the vendor, and which were then sold in a Macy's store or online, I suppose."); Cinglio Tr. 22:2–5 ("For purposes of today's deposition, I want to limit our scope to sheets that are sold to Macy's by AQ and that come from Creative, in which are CVC sheets.").  To the extent Plaintiff seeks to certify a class that includes purchasers of any sheets other than those manufactured by Creative, she plainly has no evidentiary support for such claims, and any attempt to include such purchasers in a class should be rejected.

plaintiff sought to represent a class of "tenants in Columbus whose water service was or will be terminated because of the landlord's or prior tenant's indebtedness." *Id.* at 966. To prove impracticability of joinder, the named plaintiff "relie[d] exclusively on one figure—the number of renters in Columbus, which, according to Golden, is 150,000." *Id.* The Sixth Circuit held that merely referring to this number did not suffice to prove numerosity under Rule 23(a)(1), and that the named plaintiff "must offer something more than bare speculation to link the gravamen of her claim for liability to the class of individuals she purports to represent." *Id.*

Similarly, in *Bond v. Antero Resources Corp.*, the named plaintiffs sought to represent three subclasses of "leaseholders who have entered into leases with Defendant for the production of oil and gas." 328 F.R.D. 187, 190 (S.D. Ohio 2018). Contending that numerosity was established, named plaintiffs (a) described defendant's network of gas and oil wells and analyzed one of those wells to extrapolate potential class size; (b) insisted that evidence in the complaint and class certification motion "will show the class is well over 100 members geographically spread across Ohio with no means of uniting in one lawsuit making joinder difficult and inconvenient"; and (c) noted that defendant produced 6,306 leases in discovery and "if only 10% were class members, then the class would still be over 600 lessors randomly spread across hundreds of miles." *Id.* at 191–92. Based on that, the named plaintiffs contended that "the class could range in size from nearly 350 members to in excess of 850 members." *Id.* at 191.

The *Bond* court noted that "Plaintiffs rely on speculation, rather than facts, to support their numerosity argument," and cautioned that counsel's conclusory assertions are not evidence and cannot satisfy plaintiff's burden. *Id.* at 193–94. Holding that named plaintiffs had not carried their burden of establishing numerosity, the Court stated that, "[li]ke the plaintiffs in *Golden*, Plaintiffs

have offered a total population of which some unknown number of individuals may be class members. This is not sufficient under Rule 23(a)(i)."[9]  *Id.* at 194.

Here, Plaintiff contends that the class she seeks to represent "includes thousands of people."  Pl.'s Mot. 12.  The sole support Plaintiff offers for this figure is that:

> AQ supplied about 800,000 sheets per year. Macy's accounts for about 40% of that business (i.e., 320,000 sheets per year). . . . Even if California sales only accounted for 5% of that total, there are still tens of thousands of transactions during the proposed class period. Upon certification, Macy's would be able to provide the exact sales numbers in the state of California during the class period.

Pl.'s Mot. 12, n. 57. Plaintiff's Motion, in turn, cites Larry Queen's deposition, where Queen testified that Macy's makes up approximately 40% of AQ Textiles' overall business, which includes 800,000 sets of CVC sheets per year that AQ Textiles obtains from three different textile mills (not just Creative).  *See* Queen Tr. 15:19-16:15.

Plaintiff's evidentiary forecast is problematic for a number of reasons.  It relies exclusively on rough estimates from Queen as to how many total sheets AQ Textiles currently supplies per year to all Macy's entities, without any evidence of how many units of any particular product Macy's actually sold, much less how many it sold in the state of California. Moreover, Plaintiff's

---

[9] Many other courts within the Sixth Circuit have similarly indicated that generalized or speculative testimony cannot satisfy plaintiff's burden of establishing numerosity.  *See, e.g.*, *Davis v. City of Detroit*, No. 15-10547, 2018 WL 4179316, at *5 (E.D. Mich. Aug. 31, 2018) (finding that plaintiff failed to satisfy the numerosity requirement because extrapolating class size based on "extremely generalized testimony" would be "overly speculative"); *Davis v. Strickland*, No. 2:09-CV-015, 2009 WL 2047891, at *5 (S.D. Ohio July 7, 2009), *report and recommendation adopted*, *195 No. 2:09-CV-015, 2009 WL 2998980 (S.D. Ohio Sept. 15, 2009) (citation omitted) ("Plaintiffs' bare speculation is insufficient to satisfy the numerosity requirement."); *Edwards v. McCormick*, 196 F.R.D. 487, 494 (S.D. Ohio 2000) (citation omitted) ("Plaintiffs here seek to satisfy the numerosity requirement by relying on speculation as to how many people *may* have received from Defendant collection letters that are similarly violative of the FDCPA. Mere supposition, like that offered by Plaintiffs here, is not enough to satisfy Rule 23(a)'s numerosity requirement."). Nor can sales volume, standing alone, satisfy Plaintiff's burden.  *See, e.g.*, *Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 337–38 (E.D. Ky. 2002) (holding, in a products liability case, that the total sales volume of the product in question is not in itself sufficient proof of numerosity); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 681 (S.D. Cal. 1999) ("Sales volume standing alone cannot serve as the basis of a numerosity finding in this case.").

forecast fails to account for the fact that many consumers likely purchased more than one set of sheets (either in a single purchase or in separate purchases). Finally, Plaintiff fails to account for the fact that not all of the sheets supplied by AQ Textiles were manufactured by Creative, meaning that many of the sheets at issue are outside the scope of this litigation.

In the end, Plaintiff simply has not offered "something more than bare speculation to link the gravamen of her claim for liability to the class of individuals she purports to represent." *Golden*, 404 F.3d at 966. Instead, as in *Golden* and *Bond*, Plaintiff has offered "a total population of which some unknown number of individuals may be class members." *Accord Bond*, 328 F.R.D. at 194. That is insufficient to establish that the proposed class is sufficiently numerous. Accordingly, Plaintiff's motion should be denied.

> **B.    Plaintiff cannot establish that questions or law or fact are common to the class.**

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes,* 564 U.S. at 349–50 (internal quotation marks omitted). Class members' "claims must depend upon a common contention" which "must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. "In other words, named plaintiffs must show that there is a common question that will yield a common answer for the class (to be resolved later at the merits stage), and that that common answer relates to the actual theory of liability in the case." *Rikos*, 799 F.3d at 505.

In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court held the commonality requirement was not satisfied in a putative Title VII class action where the named plaintiffs alleged that Wal-Mart engaged in a pattern or practice of gender-based discrimination. 564 U.S. at 349–60. In *Dukes*, the essential inquiry in resolving the Title VII claims was "the reason for a particular

employment decision." *Id.* at 352. Because the plaintiff had neither alleged that Wal-Mart had an express corporate policy against the advancement of women nor provided significant proof that Wal-Mart operated under a general policy of discrimination, commonality was not established. *Id.* at 344–45, 353–54. The Court stated: "Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*" *Id.* at 352.

Conversely, in *Rikos v. Procter & Gamble Co.*, the Sixth Circuit held that the commonality requirement was satisfied in a false advertising class action where the named plaintiffs alleged that a nutritional supplement did not work as advertised (specifically, that it did not promote digestive health). 799 F.3d at 504–09. The Court found that: "Plaintiffs have identified a common question—whether [the supplement] is 'snake oil' and thus does not yield benefits to anyone— that will yield a common answer for the entire class and that, if true, will make [defendant] liable to the entire class." *Id.* at 506 (citation omitted). The Sixth Circuit affirmed the District Court's finding that commonality was established:

> It concluded that no individual would purchase [the supplement] but-for its digestive health benefits, which [defendant] promoted through an extensive advertising campaign. If [the supplement] does not provide any such benefits, then every class member was injured in the sense that he or she spent money on a product that does not work as advertised. No more investigation into the merits (i.e., whether [the supplement] actually works) is needed for purposes of satisfying Rule 23(a)(2)'s commonality requirement.

*Id.* at 506. In other words, because the binary question of whether the supplement provided digestive health benefits would yield a common answer for the entire class that went to the heart of plaintiff's claim, commonality was established. *Id.* at 508.

Here—like in *Dukes* and in contrast to *Rikos*—there is no common question that "will yield a common answer for the entire class and that, if true, will make Defendant liable to the entire

class." *Accord id.* at 506. In her Motion, Plaintiff contends that the following "critical factual and legal issues" are subject to class-wide resolution:

> 1. Does the ASTM standard counting method apply to CVC sheets? If so, how would one count the multiple polyester filaments per yarn using that method? 2. How does AQ's alternative counting method differ from the ASTM standard counting method? Does the alternative method result in higher thread counts than the standard method? 3. When did Macy's know (or, when should it have known) that the thread counts on its AQ-supplied sheets were inflated beyond the ASTM standard?"

Pl.'s Mot. 13–14. This framing, however, is misleading. As to the first issue, there is no dispute at all that the "ASTM standard counting method" (ASTM D3775) applies to CVC sheets, and that it is polyester yarns (and not the individual fibers comprising those yarns) that should be counted. Queen Tr. 60:15–17, 68:8–13. Plaintiff's attempt to create a dispute where none exists is nothing more than red herring.

The other two issues flagged by Plaintiff as common to all class members are problematic because they presuppose the existence of a fact that Plaintiff has not established: that there is an "alternative counting method" that was used to determine the thread count of the sheets supplied by AQ Textiles. There is no evidence in the record to support that contention. Instead, the independent test reports in the record demonstrate that the sheets were tested pursuant to the ASTM D3775 standard (and found to have a sufficient number of threads). Queen Decl. ¶¶ 8, 21–24, 27–31, 33, Exs. A–G, I–M. There cannot be common questions that assume the existence of an "alternative counting method"—much less ones that will yield answers that establish liability—if Plaintiff cannot demonstrate that any such method exists, much less that it was applied uniformly to all of the CVC sheets at issue.

In framing the supposedly common issues in this misleading manner, Plaintiff elides an <u>actual</u> key issue with respect to the thread counting: what are the "true" thread count of the sheets

purchased by Plaintiff and the purported class members?  That question is <u>not</u> a common issue that will result in a common answer for all class members; instead, as detailed further in Section III.A below, it is an individualized inquiry that will have to be addressed separately for each product at issue.

In seeking to argue otherwise, Plaintiff relies almost exclusively on the Cormier report. However, as addressed above and in the separate motion asking the Court to strike Cormier's opinions, that reliance is misplaced.  Cormier tested only four sets of sheets—one supposedly purchased by the Plaintiff and three that he selected himself from a Macy's store in New York— and claims to have determined that their thread count was deficient.  Cormier Report 17.  From there, Cormier and Plaintiff ask the Court to join them in making an extraordinary logical leap to the conclusion that the thread counts of the <u>every single one</u> of the AQ Textiles CVC sheets sold by Macy's since January 2013 were inflated.  The slender reed of the Cormier Report—if the Court does not strike it—simply cannot support that weighty burden.

The bottom line is that, as in *Dukes*, there is no evidence that Defendant has an express policy of committing the alleged wrongful acts (inflating thread counts); indeed, there is no evidence that Defendant knew of any inflation at all.  In putative product defect class actions, other federal courts have denied class certification where there is no evidence of a common defect.  *See, e.g.*, *Kramer v. Toyota Motor Corp.*, 668 F. App'x 765, 766 (9th Cir. 2016) ("Without any evidence of a common defect, there are no common questions of law or fact binding the proposed class together." (internal quotation marks omitted)).  Here, the necessary underpinning of Plaintiff's claims is the premise that threads were uniformly over-counted for all CVC products supplied by AQ Textiles to Defendant across the more than seven-year class period.  Because Plaintiff has not

established that such a misrepresentation underpinning all of her claims and questions framed as common to the class are indeed common, commonality cannot be established.

### C. Plaintiff cannot establish that her claims are typical of those of the class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Although "[t]he commonality and typicality requirements of Rule 23(a) tend to merge," *Dukes*, 564 U.S. at 350 n.5, they do raise distinct inquiries:

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Here, Plaintiff has failed to demonstrate that her for several reasons.

#### 1. *Plaintiff lacks standing to pursue her individual claims.*

First, Plaintiff cannot establish that she has Article III standing because she has failed to demonstrate that she suffered an injury-in-fact traceable to the conduct of Defendant.

As this Court noted in a previous order in this case, Plaintiff has the burden to establish standing for her claims. S*ee Hawes v. Macy's Inc.*, 346 F. Supp. 3d 1086, 1090 (S.D. Ohio 2018);[10] *see also, e.g.*, *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Sweeton v. Brown*, 27 F.3d 1162, 1169 (6th Cir. 1994). And "subject-matter jurisdiction, because it involves a court's

---

[10] ECF No. 39 at 3.

power to hear a case, can never be forfeited or waived." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual and imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation and internal quotation marks omitted). When a party has "set forth no specific facts demonstrating" the alleged injury, such allegations "are necessarily conjectural." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412, 420 (2013).

Here, Plaintiff alleged in her Complaint that she was damaged by paying more for the sheets she purchased because she believed they were softer, more durable, of higher quality, and/or better for sleeping than sheets with a lower thread count. Third Am. Compl. ¶¶ 1–6. The Middle District of North Carolina recently found that almost identical allegations made by Plaintiff Hawes, former plaintiff Hill, and other plaintiffs in a separate lawsuit against AQ Textiles—arising from the exact same sheet purchases at issue here—failed to establish an injury-in-fact for purposes of standing. *See Hill v. AQ Textiles LLC*, No. 1:19CV983, 2021 WL 1026740, at *2–3 (M.D.N.C. Mar. 17, 2021). As the court explained:

> [Plaintiffs] have not provided nor even alluded to any standard with which to evaluate whether a sheet is of lower quality, or whether it is softer or more comfortable to the consumer. They do not even attempt to compare their purchases with sheets they deem to accurately display corresponding thread counts to suggest that one is softer, for instance, as a result of its higher number of threads. The same is true with respect to durability and longevity. Not only do Plaintiffs likewise fail to offer any standard by which to measure these claims, they do not even allege that the sheets in question have deteriorated in any way, nor do they provide any information on how long the sheets must continue to serve their purpose in order to be appropriately long-lasting.

*Id.* at *2.

25

That decision was at the motion to dismiss stage, while this case is at class certification. This difference, however, only serves to highlight the dearth of evidence in support of Plaintiff's claim that she was injured when she purchased a set of sheets.  Despite more than two years of discovery, Plaintiff has failed to come forward with any evidence by which the quality, durability, or softness of the sheets she purchased could be compared to those of other sheets of similar price or similar thread count.  Nor has Plaintiff forecast any evidence that—even <u>were</u> there a credible standard to compare those attributes—the sheets she purchased would be found to be lacking.  In fact, Plaintiff has no evidentiary basis whatsoever to establish the gravamen of her "overpayment" claim: that she paid more than she should have for sheets of the "true" thread count she now alleges.[11]  That is because she has come forward with precisely zero evidence regarding the price, quality, or thread count of <u>any sheets other than the ones at issue here</u>.

The dearth of evidence supporting the contention that Plaintiff Hawes was harmed in any way means she cannot establish any injury in fact.  Accordingly, she has not demonstrated standing to pursue her own claims.  Because she has failed to do so, class certification must be denied.

2. *Plaintiff lacks standing to pursue class claims for products that she did not purchase.*

Plaintiff alleges that she purchased a set of Somerset Collection sheets with an advertised thread count of 900 that were manufactured by Creative, imported by AQ Textiles, and sold to her by Defendant.  Yet, she seeks to represent a class of purchasers of <u>all</u> CVC sheets sold in Macy's that were supplied by AQ Textiles over a more than seven-year period.  That class would involve

---

[11] Notably, Plaintiff's own allegations directly contradict the idea that she overpaid for the sheets based on thread count; in fact, she alleged that the prices she and class members paid "were substantially lower than the prices for authentic sheets of the advertised thread counts."  Third Am. Compl. ¶ 44.

purchasers of hundreds of different individual products sourced from Creative, to AQ Textiles, and then to Macy's.

For class-action claims, just as for individual claims, a particularized injury in fact is necessary in order for standing to exist. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see also Powers v. Ohio,* 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." (citations omitted)); *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("It is not enough that the conduct of which the plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."); *Allee v. Medrano*, 416 U.S. 802, 828–29 (1974) (Burger, C.J., dissenting) ("[A] person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action." (citations omitted)).

Many federal courts have held as a matter of law that a plaintiff does not have standing to serve as class representative for products that she did not purchase and was not injured by.[12] *See, e.g.*, *Kisting v. Gregg Appliances, Inc.*, No. 16-CV-141, 2016 WL 5875007, at *4 (E.D. Wis. Oct. 7, 2016) (collecting cases and reasoning that those holding that individuals lack standing to bring class claims for products that they did not purchase "comport with existing Supreme Court

---

[12] Courts have also denied class certification on typicality grounds where Plaintiff did not purchase the products at issue and the underlying state law contains a standing requirement. *Murray v. Sears, Roebuck & Co.*, No. C 09-5744 CW, 2014 WL 563264, at *9 (N.D. Cal. Feb. 12, 2014) (denying class certification and stating that plaintiff "may not represent a class in bringing CLRA claims based on products that he or she never purchased"); *see also Pearson v. Target Corp.*, No. 11 CV 7972, 2012 WL 7761986, at *1 (N.D. Ill. Nov. 9, 2012) (denying class certification and considering whether plaintiff lacked standing under state law and Article III).

precedent on standing for an individual, which, as the Court stated in *Lewis*, does not change in the context of a class action suit").[13] One decision of the District Court for the Northern District of Ohio is particularly instructive. In *Godec v. Bayer Corp.*, No. 1:10-CV-224, 2011 WL 5513202 (N.D. Ohio Nov. 11, 2011), the named plaintiff attempted to assert class-action claims arising from alleged misrepresentations made by a pharmaceutical company in marketing two separate types of "Men's One-a-Day" vitamins—one of which he had purchased and one of which he had never purchased. *Id.* at *1. Despite the similarities in the alleged misrepresentations, the court refused to allow class-action claims with respect to the product which the named plaintiff had not purchased, holding that the named plaintiff lacked standing to assert those claims. *Id.* at *2.

When it was still a party to this case, MI raised this argument at the motion to dismiss stage, based on the allegations of the then-current pleading. This Court determined "that as long as the purchased and unpurchased products are substantially similar, Plaintiffs have standing to assert claims based on products they did not purchase." *Hawes v. Macy's Inc.*, 346 F. Supp. 3d at 1091.[14] The Court deferred consideration of the standing issue until the class certification stage, where the Court could better address whether Plaintiff has standing to bring claims on behalf of purchasers of other products. *Id.* at 1092.[15] Now that time has come, and Plaintiff still has failed to come

---

[13] *See also Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1393 (S.D. Fla. 2014); *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011); *Ferrari v. Best Buy Co.*, Civil No. 14–2956, 2015 WL 2242128, at *9 (D. Minn. May 12, 2015); *Semeran v. Blackberry Corp.*, 2:15-CV-00750-SDW-LDW, 2016 WL 406339, at *3 (D.N.J. Feb. 2, 2016); *Chin v. Gen. Mills, Inc.*, Civil No. 12–2150, 2013 WL 2420455 (D. Minn. June 3, 2013); *Toback v. GNC Holdings*, No. 13–80526–CIV, 2013 WL 5206103, at *5 (S.D. Fla. Sept. 13, 2013); *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012); *Padilla v. Costco Wholesale Corp.*, No. 11 C 7686, 2012 WL 2397012, at *3 (N.D. Ill. June 21, 2012); *Hemy v. Perdue Farms, Inc.*, Civil Action No. 11–888, 2011 WL 6002463, at *11 (D.N.J. Nov. 30, 2011).
[14] ECF No. 39 at 6.
[15] ECF No. 39 at 7.

forward with any evidence that would allow the Court to find that she has standing to bring class claims on behalf of purchasers of other products.

Plaintiff does not attempt to explain how the unpurchased products are similar to the one she purchased other than to say that they are also sheet sets and their thread counts were misrepresented. More telling, though, is the evidence that Plaintiff does <u>not</u> have. Plaintiff has no evidence that the hundreds of unpurchased products she seeks to place at issue were manufactured according to the same, or even similar, specifications. She has no evidence that those products contain the same materials or in the same proportions. She has no evidence that those products contained or were marketed as having the same attributes, including thread count. She does not even have any evidence that the individual products remained the same over the time that they were sold in Macy's stores. And with respect to the most critical issue in the case—the sheets' thread count—she has only her supposed expert's opinion that four individual sheet sets, out of hundreds of individual SKUs, had inflated thread counts; and even then the extent of the supposed inflation varied significantly between the four products. *See* Cormier Report 17.

Conversely, the evidence submitted by Defendant conclusively demonstrates numerous differences between the unpurchased products and the ones Plaintiff purchased. The sheets at issue belong to at least 20 different core programs sold at various times; others came from "opportunity buys" that were not part of any particular program. Swift Decl. ¶ 8; Ciniglio Decl. ¶ 4. They vary significantly with respect to thread count and other attributes, with some having special features that distinguish them from other sheets. Swift Decl. ¶¶ 9–11; Queen Decl. ¶¶ 9-15; Declaration of Amit Agarwal ("Agarwal Decl.") ¶ 14. With respect to their thread count, the only evidence other than for the four products examined by Cormier is in the independent reports produced by AQ Textiles. Those test reports, which largely confirm the stated thread count of the

sheets, come from a variety of different testing labs and are displayed in a variety of different formats (contrary to Plaintiff's assertion that the reports, and the tests they reflect, were done uniformly). *See* Queen Decl. ¶¶ 8, 27–31, 33, & Exs. A–G, I–M. Those key differences prevent a finding that the products, or the circumstances of their sale, are substantially similar.

The bottom line is that Plaintiff has failed to establish any factual basis whatsoever for the Court to find that the myriad unpurchased products are substantially similar to the sheet set purchased by Plaintiff. Accordingly, Plaintiff lacks standing to assert class claims with respect to any products other than the ones she purchased.

3. *Plaintiff's unique factual circumstances make her claims atypical.*

The Sixth Circuit has found typicality lacking in a variety of circumstances. *See, e.g.*, *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 398–99 (6th Cir. 1998) (finding putative ERISA class action did not satisfy typicality requirements where representations made to each retiree differed—they retired from different plants, signed different retirement documents, heard different representations about the retirement program, and had different retirement counseling sessions); *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (finding putative class action against car dealerships and a financing company under Ohio state law and the federal Truth in Lending Act did not satisfy typicality requirement where discrepancies between named plaintiffs and putative class members included "the type of car, the degree of repairs necessitated, the response to those repairs, the purpose for which the car was purchased, the individual circumstances and transactions surrounding each purchase including each class member's understanding of the terms and conditions of their purchase agreements, and the extent of the injury suffered"). In particular, the Sixth Circuit has recognized that unique factual circumstances affecting the named plaintiff (and not other class members) can defeat a finding of typicality. *See In re Am. Med. Sys., Inc.*, 75 F.3d

at 1082 (finding putative class action against penile implant manufacturer did not satisfy typicality requirement where one named plaintiff had a prior surgery that may have caused the complained-of issue and where each of the several named plaintiffs purchased a different model of the product and experienced a distinct difficulty).

In this case, Plaintiff's alleged injuries do not arise from a wrong to the class. Instead, Plaintiff's dissatisfaction with her purchase was inevitable and personal to her given her skin's sensitivity to polyester (45% of the material in the sheets she purchased), her exclusive purchase of 100% cotton sheets in the past, and her incorrect belief that she had once again purchased 100% cotton sheets from Macy's. *See* Hawes Tr. 40:2–8, 46:21–48:5, 55:5–13, 76:11–13. Even if the parties agreed that the advertised thread count of Plaintiff's sheets were accurate, given Plaintiff's preferences and sensitivities, the sheets at issue were necessarily worth less to Plaintiff than a general consumer or absent class member.

More generally, even without Plaintiff's idiosyncrasies, the many variables that inform consumers' sheet preferences and the material differences in the characteristics of the varied sheet sets they purchased will make it impossible to establish the typicality of the Plaintiff's claims. Just as in *Sprague* and *Stout*, the purchase of every putative class member was informed by different motivations and factual circumstances, among them a wide variety of thread-count representations that each consumer may or may not have noticed or cared about. Accordingly, class certification must be denied.

### D. Plaintiff cannot establish that she will fairly and adequately protect the interests of the class.

Rule 23(a)(4) permits class certification only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit evaluates two criteria for determining adequacy of representation: "1) the representative must have common

interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys.*, 75 F.3d at 1083 (citation omitted).

First, "[t]he adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Id.* Here, as outlined in detail above, Plaintiff's claims are not typical of the claims of absent class members because of (a) Plaintiff's idiosyncrasies including sensitive skin which reacts to polyester, strong preference for 100% cotton sheets, strong preference for one color, and exclusive purchases of 100% cotton sheets in the past; and (b) the many material distinctions between the various varieties of sheets encompassed in the class Plaintiff seeks to represent. For the same reasons that typicality is not established, neither is adequacy.

Second, but equally as important, courts have found class representatives inadequate when they have a close relationship (including close friendship) with class counsel, reasoning that such class representatives may be more interested in ensuring class counsel's fee than protecting the interests of the class. *See, e.g.*, *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014) (Posner, J.) (expressing concern that lead plaintiff was employed by a law firm for which class counsel once worked and noting that "[t]here ought . . . to be a genuine arm's-length relationship between class counsel and the named plaintiffs. . . . we do wish to remind the class action bar of the importance of insisting that named plaintiffs be genuine fiduciaries, uninfluenced by . . . friendships"); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003) (holding that district court abused its discretion in finding class representative adequate where named plaintiff and class counsel had been close friends since high school and named plaintiff had

32

previously served as class counsel's stockbroker); *Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193, 208 (E.D. Pa. 2017) (finding named plaintiff to be an inadequate class representative where plaintiff and one of the counsel of record were friends of twenty-five years and "still regularly keep in touch despite living on opposite coasts"). Close relationships between a class representative and class counsel are especially troubling when coupled with other indicia of inadequacy. *See Bohn v. Pharmavite, LLC*, No. CV 11-10430-GHK AGRX, 2013 WL 4517895, at *3–4 (C.D. Cal. Aug. 7, 2013) (holding that adequacy was not established where plaintiff's inconsistent testimony was "even more troubling when viewed in light of Plaintiff's close personal relationship with" class counsel).

Here, Plaintiff—the sole class representative in this litigation—has been "best friends" with her class counsel since the sixth grade. Despite living on opposite coasts, Plaintiff and class counsel talk on the phone every week. Plaintiff's close relationship with one of her attorneys is especially troubling given that the record evidences her inattention to the basic facts of her own claims; for example, knowing whether she actually purchased cotton-polyester blend sheets of the type at issue in this action. These circumstances raise serious questions regarding Plaintiff's ability and interest in vigorously prosecuting the interests of the class. There is a serious risk that Plaintiff will be more interested in protecting her best friend's fee than the interests of absent class members. Accordingly, she is not an adequate representative of the interests of the class she seeks to certify.

*     *     *     *     *     *

For the reasons stated above, Plaintiff cannot satisfy any of the elements of Rule 23(a). Because the failure to satisfy any one of those elements is fatal to certification of class claims, Plaintiff's Motion for Class Certification must be denied.

33

### III. Plaintiff Cannot Satisfy Rule 23(b)(3)'s Requirements Because Common Questions Do Not Predominate Over Individual Questions[16]

Even if the Plaintiff were able to satisfy the threshold elements of Rule 23(a), she still must establish that class treatment is appropriate pursuant to Rule 23(b). *See In re Am. Med. Sys.,* 75 F.3d at 1079. Here, Plaintiff seeks class certification under Rule 23(b)(3), which applies where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The central issue in assessing the propriety of certification under Rule 23(b)(3) is the extent to which common issues predominate over individual ones. "Rule 23(b)(3) is framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations. Courts therefore have a duty to take a close look at whether common questions predominate over individual ones." *Zehentbauer Fam. Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 503 (6th Cir. 2019) (citations and internal quotation marks omitted). Courts, including this Court, frequently deny class certification sought under Rule 23(b)(3) where predominance cannot be established. *See, e.g.*, *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 819 (7th Cir. 2010) (predominance not established where Plaintiff failed to establish that all products at issue had the defect at issue); *Kondash v. Kia Motors Am., Inc.*, No. 1:15-CV-506, 2020 WL 5816228, at *11 (S.D. Ohio Sept. 30, 2020).

"Rule 23(a)(2)'s commonality requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions. And the Supreme Court in *Comcast* similarly noted that the same analytical principles govern Rule 23(b) and Rule 23(a), but Rule 23(b)(3)'s predominance criterion is even more

---

[16] Plaintiff has moved for class certification exclusively under Rule 23(b)(3). Pl.'s Mot. at 1, 11.

demanding than Rule 23(a)." *Zehentbauer*, 935 F.3d at 503 (citations and internal quotation marks omitted).  As discussed above, Plaintiff has filed to satisfy even the commonality requirements of Rule 23(a)(2),  But even if she had sufficiently forecast the existence of issues common to the class, she cannot show that the resolution of such issues will predominate over the many critical issues that must be resolved on a product-by-product, or consumer-by-consumer, basis.

### A.     Whether, and to what extent, thread counts are "inflated" cannot be determined on a class-wide basis.

As explained in Section II.B, *supra*, Plaintiff's evidence fails to demonstrate that either AQ Textiles or Defendant had a common practice that caused all of the sheets supplied by AQ Textiles and sold in Macy's stores to have an exaggerated thread count.  There is no "alternative" counting method, nor do the test reports from independent testing labs (numerous examples of which were produced by AQ Textiles) indicate any uniform instructions from AQ Textiles, Defendant, or anyone else.[17] *See* Queen Decl. ¶¶ 21–24; Agarwal Decl. ¶¶ 17–19. As a result, there is no binary issue of whether the thread count of every sheet set at issue was inflated, such that the Court could "resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

But even if Plaintiff Hawes could provide evidence sufficient to demonstrate that the thread counts of every sheet set at issue were inflated, that still would not resolve the more important issue of how much the counts were supposedly inflated.  Plaintiff's own evidence, in fact, establishes that the issue cannot be resolved on a uniform basis.  Plaintiff's expert, Sean Cormier, purported to test the thread count of four different sheet sets (including the sheets purchased by Plaintiff) to determine their "true" thread count.  He opined, based on his testing (which was not

---

[17] In fact, the test reports produced by AQ Textiles generally confirm the represented thread counts. *See* Queen Decl, Ex. A–G, I–M (collected examples).

done in accordance with ASTM D3775),[18] that Plaintiff's 900-thread-count sheet had a "true" thread count of 227.  He also opined that sheets with listed thread counts of 625, 825, and 1250 had "true" thread counts of 205, 248, and 248.  As these results show, even taking Cormier's questionable report as true, the <u>extent</u> of thread-count variance is not uniform in terms of either the number of percentage of threads.

Plaintiff and her counsel plainly hope to absolve themselves of the burden of actually attempting to obtain evidence—which does not exist—demonstrating whether and to what extent thread counts are inflated for <u>each</u> of the products purchased by purported class members. Tellingly, they have not told the Court how they plan to obtain and submit supposedly "accurate" test results for each of the other products at issue (i.e., all CVC sheet sets manufactured by Creative, imported by AQ Textiles, and sold by Defendant) rather than just the four tested by Cormier.  Whatever the case, the inescapable conclusion is that ultimately, Plaintiff will have to prove thread-count defects on a product-by-product basis. Because this issue—perhaps the single most important issue in the case—is not susceptible to class-wide proof, Plaintiff cannot establish predominance.

### B. Whether thread-count representations are material cannot be determined on a class-wide basis.

"UCL, FAL, CLRA, and fraud claims for restitution and damages all require a showing of reliance, of varying specificity, on the alleged misrepresentations or omissions." *Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 969 (S.D. Cal. 2016).  Specifically, class claims under the CLRA require that the class plaintiff demonstrate causation by establishing that any supposed misrepresentations were material to the class's purchasing decisions.  *See Rikos*, 799 F.3d at 512.  Moreover, under California law, "class treatment of breach of express warranty claims is only appropriate if

---

[18] Cormier Tr. 158:20-159:25.

plaintiffs can demonstrate that the alleged misrepresentation would have been material to a reasonable consumer." *Id.* at 513–14 (quoting *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015)).  Similarly, for claims of fraud (or under the fraud prong of the UCL), plaintiffs must establish reliance on supposed misrepresentations, and a presumption of reliance arises when the alleged misrepresentations are material. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326–27, 207 P.3d 20, 39 (2009).

Materiality is measured by a reasonable person standard.  *See Rikos*, 799 F.3d at 512.  "[I]f the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129, 103 Cal. Rptr. 3d 83, 95 (2009).  As other courts have realized, this means that where consumer decisions are potentially influenced by a number of factors, "materiality" is difficult to assess on a class-wide basis.  *See, e.g.*, *Lucas*, 212 F. Supp. 3d at 969 ("The Court cannot assess whether a reasonable consumer would attach importance to the misrepresentations or omissions regarding the risks associated with the PC 500 because each patient's decision-making calculus was dependent upon a variety of information and circumstances specific to the individual."); *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 576 (E.D. Cal. 2012) (holding, in a case asserting CLRA claims, that materiality was not an issue subject to common proof where multiple factors affected what a reasonable consumer would consider material in deciding whether to make the purchase in question); *Sanchez v. Wal Mart Stores, Inc.*, No. CIV 206CV02573JAMKJM, 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009)

(denying class certification and noting that consumers purchased the product in question for various reasons, including price, size, and other characteristics).

Here, even if thread over-counting were capable of discernment on a class-wide basis (which it is not), thread count is just one of many factors that consumers consider when purchasing sheets. Hawes Tr. 35:20-36:1; Swift Decl. ¶¶ 10, 17–18.  Moreover, when consumers consider their thread count preferences, some (like Plaintiff) think in terms of broad ranges, not specific values.  Hawes Tr. 49:14–17, 53:6–8. Unlike the binary consumer choice before the Sixth Circuit in *Rikos*, where "no individual would purchase [the supplement] but-for its digestive health benefits," 799 F.3d at 506, there is no evidence that thread count in general, much less a particular thread count value, is the *sine qua non* of a reasonable consumer's purchase decision. Instead, there are many different variables that factor into class members' decision to buy the sheets at issue. To some consumers, the difference between 900 thread count and a lower thread count may be material; to others (*such as Plaintiff*, who cared first and foremost about the sheets' color and material, not their thread count) it may not be. Because numerous factors inform a consumer's decision to purchase sheets, the materiality of any discernable over-counting will vary between consumers and therefore will not be subject to assessment on a class-wide basis.

### C.     The extent of Defendant's involvement in the alleged misrepresentations cannot be determined on a class-wide basis.

In addition to demonstrating the materiality of the alleged thread-count misrepresentations, many of Plaintiff's claims require her and the putative class members to prove that Defendant was actually involved in making them.

"[A] Defendant cannot be held liable under the UCL merely 'for placing the falsely advertised Products on the shelf.'" *In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1089 (S.D. Cal. 2020) (quoting *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1012

(S.D. Cal. 2011), *on reconsideration on separate grounds*, No. 3:18-CV-0840-GPC, 2020 WL 3840559 (S.D. Cal. July 8, 2020). Instead, the plaintiff must show that a defendant retailer "somehow participated in, controlled, or adopted the deceptive advertising." *Id.* (quoting *In re Hydroxycut*); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146–49 & n.5 (9th Cir. 2012) (affirming dismissal of UCL claim where defendant was unaware of defect, because "the failure to disclose a fact that a manufacturer does not have a duty to disclose, *i.e.*, a defect of which it is not aware, does not constitute an unfair or fraudulent practice").

Similarly, false representations are only actionable under the FAL if they were made by a defendant who knows them to be false or who should, by the exercise of reasonable care, know them to be false.[19] *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867 (9th Cir. 2018) (quoting *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1161 (9th Cir. 2012)). "In the context of false advertising, there is no duty to investigate the truth of statements made by others." *Parent v. Millercoors LLC*, No. 3:15-CV-1204-GPC-WVG, 2016 WL 3348818, at *7 (S.D. Cal. June 16, 2016). Accordingly, the "defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate [the FAL]." *In re Outlaw*, 463 F. Supp. 3d at 1086 (internal quotation marks omitted). Without such participation, an FAL claim must fail. *See id.* at 1087 (finding that retail stores "cannot be held liable for failing to investigate and disclose the falsity of the statements" on product packaging the retail stores did not create).

---

[19] The same, of course, is true for common-law fraud claims. *See Apex Compounding Pharmacy, LLC v. eFax Corp.*, No. LACV1605165 JAK (JPRX), 2017 WL 9500946, at *3 (C.D. Cal. Apr. 20, 2017) ("Under California law, the 'indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages.'" (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003))).

Finally, "California federal courts have held that, under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." *Wilson*, 668 F.3d at 1145.  Accordingly, where a seller makes advertising claims about a product without knowledge of their falsity, no CLRA claim will lie where a plaintiff later alleges that the representations about the product were untruthful.  *See, e.g.*, *Barrera v. Samsung Elecs. Am., Inc*., No. SACV18-00481-CJC(PJWx), 2018 WL 10759180, at *3 (C.D. Cal. Dec. 7, 2018) (dismissing CLRA, FAL, and UCL claims brought by plaintiff who purchased product before defendant knew of alleged misrepresentation).

Here, the evidence before the Court demonstrates that Defendant's knowledge regarding, and/or approval of, the alleged thread-count misrepresentations on the subject products' packaging[20] cannot be addressed uniformly for all of the products.  That is because the extent of Macy's involvement with respect to the packaging inserts containing thread-count representations varies significantly across the subject products.  In particular, a substantial percentage of the products were so-called "opportunity buys," products which Macy's buyers selected after they had already been packaged and labeled by another party. Swift Decl. ¶ 8; Ciniglio Decl. ¶ 4. This stands in stark contrast to Macy's "core programs," for which Macy's buyers approve the packaging inserts in advance.[21] Swift Decl. ¶ 8; Ciniglio Decl. ¶¶ 4, 6.  That key factual distinction alone will prevent a class-wide determination regarding Macy's knowledge or approval of the thread-count representations that Plaintiff contends are false.

---

[20] While Plaintiff alleged in her Complaint that thread-count misrepresentations were also made in product advertising and on the Macys.com website (Third Am. Compl. ¶ 42), she has not identified any evidence whatsoever in support of those contentions.

[21] To be clear, Defendant denies that the approval of design elements of the packaging inserts of certain sheets by Macy's buyers establishes that Defendant is liable for any alleged misrepresentations regarding thread count. There is no evidence before the Court that Defendant knew, or should have known, that any thread-count representation was false.

Plaintiff plainly hopes to avoid this issue through her argument that Defendant knew that AQ Textiles promoted an "alternative" counting method for testing the thread count of sheets. But, as addressed above, the evidence does not establish that AQ Textiles gave—or Defendant was aware of—special instructions requiring independent testing labs to deviate from industry-standard counting methods when testing sheets supplied by AQ Textiles. And in any event, the evidence does not show that Macy's buyers received thread-count test reports for all, or even most, of the products purchased from AQ Textiles; instead, the evidence is that they received such reports only "occasionally," if at all. Queen Tr. 42:5–43:1, 69:9–12; Ciniglio Decl. ¶ 2. So while Plaintiff may contend that the test reports provided by AQ Textiles were self-evidently suspicious (a contention unsupported by the evidence before the Court), that issue applies to only a handful of the products at issue, not all of them.

Because the evidence before the Court establishes that Defendant's knowledge of, and responsibility for, the alleged misrepresentations—critical issues in the case—cannot be determined on a class-wide basis, Plaintiff has failed to establish predominance.

### D. Damages and restitution cannot be determined on a class-wide basis.

Plaintiff must present a damages model that is consistent with her liability case, and the court "must conduct a rigorous analysis to determine whether that is so." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (citation and internal quotation marks omitted). Where the proposed model "falls far short of establishing that damages are capable of measurement on a classwide basis," the class plaintiff "cannot show Rule 23(b)(3) predominance." *Id.* at 34. Here, Plaintiff's sole source of evidence regarding class-wide damages is the expert testimony of Stefan

Boedeker.  Boedeker proposes two separate damages models: a hedonic regression analysis and a conjoint analysis. Report of Stefan Boedeker, ECF No. 84-4 ("Boedeker Rep.") 16, 21.

As explained more fully in the Motion to Strike filed concurrently with this brief, Boedeker's proposed models are problematic for multiple reasons.  First, both of Boedeker's models are insufficient because he has not actually conducted his damages analysis, but merely proposed how it *might* be accomplished.  Courts have stricken, and refused to rely on for purposes of class certification, expert opinions that merely provide a "preliminary overview of how damages might be calculated."  *See, e.g.*, *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 F. App'x 296, 299 (5th Cir. 2004) (affirming district court's decision to strike damages expert's regression opinion at class certification stage where expert's opinion opined that a formula could be found, but did not offer an actual formula); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 552 (C.D. Cal. 2014) (report struck where expert's methodology "may very well be capable of calculating damages in this action" but expert "made no showing that this is the case"). The result should be the same here.

Second, Boedeker's own work shows that his proposed damages models will be undermined by two fatal flaws. The first is that Boedeker intends to use the "ticket price" of sheets in his model, not the actual price paid by consumers.  Doing so will distort and inflate the damages he calculates, given that the vast majority of consumers likely did not pay the ticket price for their sheets.[22]  The second issue is that Boedeker failed to take into account differences in the sheets' attributes that may affect their appeal to consumers, such as color, weave, and unique performance characteristics.[23]  Moreover, his proposed conjoint analysis will be unable to account for one of

---

[22] *See* Swift Decl. ¶ 22 ("Macy's offers frequent sales, promotions, and coupons.  Sheets are one of the items that are frequently placed on sale.").

[23] The Swift Declaration lists 15 different attributes that are featured in different combinations on the sheets that Plaintiff seeks to include in the class description.  Swift Decl. ¶ 18.

the most important consumer variables of all—hand feel—because it will be conducted online. Boedeker Report ¶ 126; Ex. G, Transcript of Deposition of Stefan Boedeker ("Boedeker Tr.") 187:9-11. The omission of major attributes affects the entire integrity and reliability of the proposed damages models. *See Reed Constr. Data Inc. v. McGraw- Hill Cos.*, 49 F. Supp. 3d 385, 401 (S.D.N.Y. 2014) (excluding regression analysis under *Daubert* for failure to include major variable); *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1273 (S.D. Cal. 2010) ("[W]here significant variables that are quantifiable are omitted from a regression analysis, the study may become so incomplete that it is inadmissible as irrelevant and unreliable.").

Finally, even if Bodeker's models were fully formed and lacked the fatal flaws referenced above, they still would be incapable of calculating damages on a class-wide basis. That is because, as discussed above, Plaintiff has not demonstrated that the supposed "actual" thread count of each set of sheets will vary from the represented thread count in any sort of uniform manner; instead, testing would need to be done on a sheet-by-sheet basis. Indeed, even the Plaintiff's other expert, Sean Cormier, determined in the scant few samples he tested that the variance between the two numbers—whether measured in terms of the number of threads or percentage of actual thread count—would vary significantly. *See* Cormier Report 17. As explained in the motion to strike Cormier's opinions, the testing he performed—the sole evidence of any thread-count inflation— should not be credited. But even if it is, that testing only confirms that credible calculation of class-wide damages would be impossible. Indeed, among other flaws more fully outlined in the Motion to Strike and the Expert Report of Sean Iyer, Boedeker's proposed methods would *intentionally ignore* the individualized differences in damages between consumers due to allegedly lower thread count. *See* Section III.C, Expert Report of Sean Iyer, Ex. A to Declaration of Sean Iyer.

Because damages cannot be calculated on a class-wide basis, predominance cannot be established and class certification must be denied.

### E. Whether class members are "consumers" for purposes of CLRA claims must be determined on an individualized basis.

In addition to the arguments above, predominance cannot be established as to Plaintiff's CLRA claim for an independent reason. The CLRA only affords remedies to "consumers," defined as "an individual who seeks or acquires by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). Plaintiff seeks to certify a class of " [e]very person in California who purchased from Macy's a CVC (cotton-polyester blend) sheet . . . ." Pl.'s Mot. at 11. Here, there are many reasons why a "person" would buy sheets and not do so for "personal, family, or household purpose," such as, and without limitation, for use at (1) hotels, (2) vacation rentals, (3) long-term care facilities, (4) camps, or (5) retreats. Determining whether a class member purchased sheets "for personal or business use is not a common question and will require individualized examination." *Johnson*, 285 F.R.D. at 583; *see also Arabian v. Sony Elecs., Inc.,* No. 05-CV-1741 WQH, 2007 WL 627977 at *14 (C.D. Cal. 2007) ("This legal requirement will require an individual examination of the purpose for which each [product] was acquired."). This is yet another individualized issue "that weighs against class certification." *Harley Davidson*, 285 F.R.D. at 583.

*      *      *      *      *      *

In summary, even if Plaintiff had established the existence of common issues, the individualized nature of several critical issues in this case prevents common issues from predominating. As a result, Plaintiff has failed to satisfy the requirements of Rule 23(b)(3), and class certification must be denied.

## <u>CONCLUSION</u>

For the reasons stated herein, Defendant respectfully requests that the Court deny Plaintiff's Motion for Class Certification.

This the 3rd day of May, 2021.

> */s/ Beth A. Bryan*
> Beth A. Bryan (Ohio Reg. 0082076)
> TAFT STETTINIUS & HOLLISTER LLP
> 425 Walnut Street, Suite 1800
> Cincinnati, OH 45202
> Telephone: (513) 381-2838
> Facsimile: (513) 381-0205
> bryan@taftlaw.com
>
> Jennifer K. Van Zant (admitted *pro hac vice*)
> NC State Bar No. 21280
> Andrew L. Rodenbough (admitted *pro hac vice*)
> NC State Bar No. 46364
> Ryan C. Fairchild (admitted *pro hac vice*)
> N.C. State Bar No. 47729
> BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP
> 230 North Elm Street
> 2000 Renaissance Plaza
> Greensboro, NC 27401
> Telephone: (336) 373-8850
> Facsimile: (336) 378-1001
> jvanzant@brookspierce.com
> arodenbough@brookspierce.com
> rfairchild@brookspierce.com
>
>
> *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed via the Court's

CM/ECF system, which will send electronic notification to all counsel of record.


This the 3rd day of May, 2021.

/s/ Beth A. Bryan
Beth A. Bryan

46