# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (CINCINNATI)

| | |
|---|---|
| SARA HAWES,<br><br>    Plaintiff,<br>    v.<br><br>MACY'S WEST STORES, INC.,<br><br>    Defendant. | Civil Action: 1:17-CV-00754<br><br>Judge Timothy S. Black |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Macy's West Stores, Inc. ("Defendant"), through undersigned counsel, respectfully submits the following Memorandum in Support of its Motion for Summary Judgment.

## TABLE OF CONTENTS

STATEMENT OF ARGUMENT (LR 7.2(a)(3)) ................................................. 1

INTRODUCTION ............................................................................................... 4

STATEMENT OF THE PERTINENT FACTS ..................................................... 5

   I.    Procedural History ..................................................................................... 5

   II.   Parties and Background Information .......................................................... 5

   III.  Plaintiff's Claims ....................................................................................... 7

ARGUMENT ..................................................................................................... 11

   I.    Legal Standard ......................................................................................... 11

   II.   Plaintiff cannot obtain equitable relief because she has an adequate
        remedy at law ......................................................................................... 11

   III.  Plaintiff's claims fail because she has not met her burden of
        showing Defendant made, adopted, or even knew of any
        underlying misrepresentation regarding thread count .............................. 14

         A.  Plaintiff cannot establish that Defendant made or adopted any
             thread-count representations regarding the thread counts of
             Plaintiff's sheets. ................................................................................. 14

         B.  Plaintiff cannot establish that the thread count of her sheets was
             miscounted or misrepresented .............................................................. 16

         C.  Plaintiff cannot establish that Defendant knew or should have known
             that the thread-count representations on Plaintiff's sheets were false ........ 18

   IV.  Plaintiff's unjust enrichment claim fails because it is duplicative and
        inapplicable where the basis for the claim is an undisputed contractual
        transaction. ............................................................................................. 21

   V.   Plaintiff has failed to meet her burden of showing she suffered damages
        resulting from her sheet purchase. ............................................................ 22

A.  The record evidence is insufficient for Plaintiff to demonstrate that the value she received differs from what she paid. ................................. 22

B.  Plaintiff cannot succeed on the "price premium" theory put forth by her economic expert. ............................................................... 25

C.  Plaintiff has failed to put forth any evidence sufficient to show that the sheets she purchased failed to meet any objective standard of softness, durability, or quality. ............................................... 28

VI.  Plaintiff lacks standing to seek injunctive relief because she will not be harmed in the future ...................................................................... 29

CONCLUSION ................................................... 32

CERTIFICATE OF SERVICE ........................................... 33

## SUMMARY OF ARGUMENT (LR 7.2(a)(3))

Defendant's Motion for Summary Judgment should be granted for several independent and sufficient reasons:

- **Plaintiff cannot obtain equitable relief because she has an adequate remedy at law.**

Plaintiff seeks only equitable relief with respect to her claims under the UCL (counts 2–4), FAL (count 5), and CLRA (count 6), as well as her claim for unjust enrichment (count 9). Plaintiff cannot obtain equitable relief because she plainly has an adequate remedy at law in the form of her claims for damages. *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837 (9th Cir. 2020). Accordingly, Defendant is entitled to summary judgment on the claims for which Plaintiff seeks equitable relief.

- **Plaintiff has not established that Defendant participated in, had control over, adopted, or even knew about the alleged misrepresentation at issue in this case.**

Plaintiff's UCL (counts 2–4), FAL (count 5), CLRA (count 6), express warranty (count 7), and fraud (count 8) claims depend on the existence of an underlying misrepresentation or deceptive conduct that Defendant either participated in, had control over, adopted, or knew about. *See, e.g.*, *Emery v. Visa Int'l Serv. Ass'n,* 95 Cal.App.4th 952, 960, 116 Cal.Rptr.2d 25 (2002) ("A defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate sections 17200 [UCL] or 17500 [FAL]."); *In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 WL 1456632, at *9 (S.D. Cal. May 22, 2009) (dismissing CLRA claim where there were no "allegations of participation or control in the alleged unlawful advertising scheme"); *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 801 F. Supp. 2d 993, 1013 (S.D. Cal. 2011) (dismissing express warranty claim where no allegations that retailer made representations at issue); *Apex Compounding Pharmacy, LLC v. eFax*

1

*Corp.*, No. LACV1605165 JAK (JPRX), 2017 WL 9500946, at *3 (C.D. Cal. Apr. 20, 2017) (knowledge of falsity required for fraud claim). Because Plaintiff has failed to come forth with any evidence that Defendant participated in, had control over, adopted, or even knew about the alleged misrepresentations at issue in this case, summary judgment in defendant's favor as to Plaintiff's UCL, FAL, CLRA, express warranty, and fraud claims (counts 2–8) is appropriate.

- **Plaintiff's unjust enrichment claim fails because it is duplicative and inapplicable where the basis for the claim is an undisputed contractual transaction.**

Plaintiff's unjust enrichment claim (count 9) fails because it is not recognized as an independent cause of action. *See, e.g.*, *Fisher v. Honda N. Am., Inc.*, No. LA CV13-09285 JAK, 2014 WL 2808188, at *10 (C.D. Cal. June 12, 2014). If the Court chooses to recognize Plaintiff's unjust enrichment claim as an independent cause of action, it nonetheless cannot lie where a contract exists between the parties. *See, e.g.*, *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 172, 114 Cal. Rptr. 2d 109, 125 (2001). Here, Plaintiff alleged that she paid for and received sheets in a consumer transaction with Defendant. Either that allegation is true—in which case a contract was formed and the Plaintiff's claims lie in contract or warranty—or it is false, in which case she has no claims at all. Summary judgment in Defendant's favor as to Plaintiff's unjust enrichment claim (count 9) is appropriate.

- **Plaintiff has failed to meet her burden of showing she suffered damages resulting from her sheet purchase.**

To establish UCL (counts 2–4), FAL (count 5), breach of express warranty (count 7), and fraud (count 8) claims, a plaintiff must demonstrate the difference in value between what she paid for and what she received. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009); *S.M. Wilson & Co. v. Smith Intern., Inc.*, 587 F.2d 1363, 1375 (9th Cir. 1978); *Miller v. Fuhu Inc.*, 2015 WL 7776794, at *19 (C.D. Cal. Dec. 1, 2015); *Persson v. Smart Inventions, Inc.*, 125 Cal. App.

4th 1141, 1165 (2002). Plaintiff has not put forth any evidence—through an expert or otherwise—demonstrating that the market value of her sheets differs from what she paid. In fact, she has not put forth any evidence whatsoever of the market value of *any* sheet. Nor has she forecast any evidence that the sheets she purchased were deficient with respect to any objective characteristic. For these reasons, summary judgment in Defendant's favor as to Plaintiff's UCL (counts 2–4), FAL (count 5), breach of express warranty (count 7), and fraud (count 8) claims is appropriate.

- **Plaintiff lacks standing to seek injunctive relief because she will not be harmed in the future.**

In order to have standing to seek injunctive relief, a plaintiff must demonstrate threat of future injury. *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 531–32 (S.D. Ohio 2011). During her deposition, Plaintiff unequivocally stated that she will not purchase the sheets at issue again, foreclosing any possibility of her being harmed in the future. Because she will not suffer future injury, she lacks standing to seek injunctive relief.

*    *    *    *    *    *

For these reasons, and as explained more fully below, the Court should enter summary judgment in favor of Defendant and against Plaintiff on each of her claims.

## INTRODUCTION

Plaintiff asserts a litany of claims against Macy's West Stores, Inc. ("Defendant") relating to a set of sheets that she purchased back in 2017. According to Plaintiff, the 900-thread-count Somerset Collection sheets that she purchased have a lower "true" thread count than advertised on its packaging. After engaging in lengthy discovery, Plaintiff has come forth with little to no evidence to support her claims. This case should not be permitted to proceed to a jury.

On one side of this case is Defendant—a classic "innocent retailer" who did not participate in, control, or adopt the alleged thread count misrepresentations on the packaging of the Somerset Collection sheets that Plaintiff purchased. Defendant did not investigate or confirm the thread count of those sheets prior to Plaintiff's purchase and had no knowledge of any purported inaccuracy of the thread-count of the sheets. Because Plaintiff has no evidence to the contrary, Defendant cannot be held liable for merely placing the Somerset sheets that Plaintiff purchased on its shelves.

On the other side of this case is Plaintiff, who claims that Defendant injured her by selling her this set of sheets. Despite seeking restitution as a remedy for many of her claims, Plaintiff has not put forth sufficient evidence to demonstrate that these supposedly mislabeled sheets were worth any less or were otherwise lacking in any other objective criteria such as quality, durability, softness, or comfort.

Class action litigation can serve an important function in remedying widespread harm suffered by many individuals and in holding accountable bad actors whose conduct cannot be deterred by individual actions with small monetary value. That is not the case here. This case pits a Plaintiff who cannot establish that she was harmed against a defendant who is totally disconnected from the thread count representations that Plaintiff alleges harmed her. The Court

4

should not permit this lawyer-driven litigation to proceed to a jury, and should instead grant summary judgment against each of Plaintiff's claims.

## STATEMENT OF THE PERTINENT FACTS[1]

### I. Procedural History

Plaintiffs Sara Hawes and Amy Hill filed their original Complaint in this action on November 8, 2017, alleging claims against Defendants Macy's Inc. ("MI"), AQ Textiles LLC ("AQ Textiles"), and Creative Textile Mills Private Limited ("Creative"). ECF No. 1. AQ Textiles and MI moved to dismiss the Complaint on several grounds. On September 28, 2018, this Court dismissed the Complaint as to AQ Textiles for lack of personal jurisdiction. ECF No. 38. As to MI, this Court granted the motion in part and denied it in part.

On June 12, 2019, Plaintiffs amended their Complaint, this time only asserting claims against MI. ECF No. 55. On August 12, 2019, Plaintiffs filed a Third Amended Complaint, this time naming Defendants Macy's Retail Holdings, Inc. ("MRH") and Macy's West Stores, Inc. as defendants. The claims on behalf of Plaintiff Hall, and against MRH, were subsequently dismissed, leaving only individual and class claims by Plaintiff Hawes against the current Defendant. ECF Nos. 72, 73, & 76. On February 1, 2021, Plaintiff Hawes filed her Motion to Certify Class Action. That motion has been fully briefed and awaits ruling.

### II. Parties and Background Information

Defendant operates certain Macy's retail stores, including the store in Los Angeles where Plaintiff Hawes says she purchased the Somerset sheets at issue. SUF ¶¶ 1–2. Buyers employed by a related entity, Macy's Merchandising Corporation, are responsible for buying most of the

---

[1] Pursuant to this Court's Standing Order Governing Motions for Summary Judgment, attached as Exhibit 1 to this Memorandum is Defendant's Statement of Proposed Undisputed Facts ("SUF"), which is incorporated herein by reference.

sheets sold in retail stores operated by Macy's entities,[2] including the Somerset sheets at issue. *See* SUF ¶¶ 15, 17, 18. Those buyers negotiate the purchase of sheets from vendors like AQ Textiles. SUF ¶ 16. Defendant is not involved in the manufacture of the sheets acquired from AQ Textiles, and there is no evidence that either Defendant or Macy's buyers took any independent action to verify the thread-count representations on Somerset sheets before Plaintiff bought them. SUF ¶¶ 23, 24, 36, 37. For some of the sheets Defendant acquires from AQ Textiles, Defendant approves the aesthetic aspects of the packaging. SUF ¶ 33.

Defendant ordered the Somerset sheets at issue in this case using specifications provided by AQ Textiles. SUF ¶ 8. Those specifications provided, among other attributes, that the sheets have a thread count of 900, that the sheets be 55% cotton and 45% polyester, and that the sheets be woven with particular size threads. SUF ¶ 20. After receiving the sheets from AQ Textiles, Defendant did not test them to determine their thread count or take any other action to verify their thread count; instead, Defendant relied on AQ Textiles to confirm that the sheets complied with their represented specifications. SUF ¶¶ 34, 36, 37.

Plaintiff Sara Hawes is a self-described "avid consumer of sheets" who estimates that she purchases sheets one to two times per year. SUF ¶ 5. When purchasing sheets, Plaintiff considers: the color, price, company, thread count, and whether the sheets are 100% cotton. SUF ¶ 7. Of those factors, she first considers the color of the sheets (specifically whether the sheets are "a certain hue of gray") and then whether the sheets are 100% cotton. SUF ¶ 6. Purchasing 100% cotton sheets is important to Plaintiff because she has very sensitive skin that reacts to synthetic

---

[2] The exception is sheets that are a part of Macy's "private label" programs—programs that are designed by a different department for sale exclusively in Macy's retail stores. SUF ¶ 17. The Somerset sheets that Plaintiff purchased were supplied by AQ Textiles and were not part of Macy's "private label" program. SUF ¶ 18.

fabric—including polyester. SUF ¶ 8. To Plaintiff's knowledge, she has never purchased or used sheets that were less than 100% cotton. SUF ¶ 9.

Plaintiff purchased a set of 900-thread-count Somerset Collection sheets from a Macy's store in Los Angeles on June 6, 2017, for the price of $64.70.[3] SUF ¶ 1, 4. She purchased the sheets because they were the only ones available in the store in her favorite shade of gray. SUF ¶ 10. Plaintiff claims that she was immediately disappointed with the sheets because she was "so used to" the other sheets that she "buy[s] all the time." SUF ¶ 68. She believed the sheets were 100% cotton. SUF ¶ 11. Apparently she did not read the insert on the packaging of her sheets, which stated that they were made of 55% cotton and 45% polyester. SUF ¶ 12.

### III.    Plaintiff's Claims

Plaintiff's remaining claims at issue are for violation of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA"); breach of express warranty; common-law fraud; and unjust enrichment.[4] Each of those claims stems from a single supposed defect with the Somerset sheets Plaintiff purchased: that their thread count was inflated. Specifically, in the Third Amended Complaint, Plaintiff alleges that despite being labeled as 900-thread-count sheets, the sheets had a "true" thread count of 249. ECF No. 64 ("Third Am. Compl.") ¶ 40.

The evidence exchanged during discovery does not support that allegation. Third-party test reports for Somerset sheets that were obtained from independent testing labs by Creative, and then provided to AQ Textiles, confirm that the sheets were within 5% of their listed thread count.

---

[3] Plaintiff initially alleged that she paid $76.11 for the sheets. Third Am. Compl. ¶ 12.
[4] There appears to be no dispute that each of Plaintiff's claims arises under the laws of California, the state where she purchased her sheets. The Third Amended Complaint also stated a claim for violation of the Missouri Merchandising Practices Act ("MMPA"), but that claim was only asserted on behalf of former Plaintiff Amy Hill, whose claims were dismissed, and not on behalf of Plaintiff Hawes.

SUF ¶¶ 39, 40.  One of Plaintiff's experts, Sean Cormier, examined the sheets and claims to have determined that they have a "true" thread count of 227.  Report of Sean Cormier, ECF No. 84-1 ("Cormier Rep.") 17. However, Cormier did not conduct his testing in accordance with the governing standard, ASTM D3775.  SUF ¶¶ 46, 47.  Nor has Plaintiff confirmed his results with any testing from an independent lab.

While Plaintiff alleges that Defendant knew the stated thread count of her sheets was inflated, she has come forth with absolutely <u>no</u> evidence that Defendant participated in making any thread count representations, or had any advance knowledge that such representations were inaccurate, with respect to the sheets she purchased.  SUF ¶¶ 33–37, 51–53. Instead, Plaintiff contends (1) that <u>all</u> sheets potentially at issue (including the Somerset sheets she purchased) were tested with a "counting method" that deviates from the applicable industry standard (ASTM D3775) because it requires the person testing the sheets "to physically pull the polyester yarns apart to count the individual fibers composing the yarn"; and (2) that Defendant knew about this alternative "counting method" when it sold sheets to Plaintiff and other consumers. *See, e.g.*, Pl.'s Class Certification Mot. 3–5.

Contrary to these claims, however, there is no evidence demonstrating that AQ Textiles, Defendant, or anyone else asked testing labs to "count the individual fibers comprising the yarn," or that any testing labs actually did so with respect to the Somerset sheets that Plaintiff purchased (or any other sheets provided by AQ Textiles to Macy's). SUF ¶¶ 51, 52. Indeed, when asked in his deposition, Larry Queen, the President of AQ Textiles, flatly rejected any suggestion that he

or AQ Textiles promote a thread-counting method that involves counting "fibers." SUF ¶ 50. Plaintiff can point to no evidence to the contrary.[5]

Even if there were any competent evidence to support Plaintiff's contentions about AQ Textiles's "alternative" testing method, there is no evidence that Defendant participated in using such a method or knew anything about it prior to Plaintiff's purchase of her Somerset sheets in June 2017. SUF ¶¶ 37, 51–53. Defendant did not have any "method" for counting threads at all; neither it nor the sheet buyers have any involvement in counting threads or confirming thread count. SUF ¶¶ 34, 36, 37, 51–52. Instead, Macy's suppliers (like AQ Textiles) are responsible for confirming that all products, including the Somerset sheets Plaintiff purchased, comply with all represented specifications, including thread count. SUF ¶¶ 34, 36. Plaintiff cannot forecast any evidence that Macy's buyers had any reason to believe AQ had failed to do so with respect to the Somerset sheets. SUF ¶ 35. Indeed, there is no evidence of any direct communication between either Defendant or Macy's sheet buyers and <u>any</u> independent testing lab regarding the Somerset sheets purchased by Plaintiff. SUF ¶¶ 51, 52.

With respect to her alleged damages, Plaintiff claims that the price she paid for the sheets ($64.70) was inflated by thread-count misrepresentations, such that she paid more than she should have for her sheets. Third Am. Compl. ¶¶ 12, 48–50. However, Plaintiff has not forecast any evidence of what the sheets were actually worth when she bought them, or what she "should" have

---

[5] To the extent Plaintiff seeks to rely on the opinion of her designated expert, Sean Cormier, to substantiate that AQ Textiles generally employed an "alternative" counting method, that reliance is misplaced. At Cormier's deposition, it became apparent that Cormier's opinion in that respect (*see* Cormier Rep. 3–4, 13–14) is based on a misapprehension of Queen's deposition testimony and documents produced in discovery that were vaguely referenced in (but not attached to) his report. For example, Cormier references an April 27, 2017 email that he says was a communication from AQ Textiles to a testing lab containing statements by AQ Textiles; in fact, the document was an email from a sheet manufacturer *to* Queen and did not involve a testing lab at all. SUF ¶ 48. In any event, there is nothing linking the discussion in that email to Defendant or the Somerset sheets purchased by Plaintiff.

paid for them.  SUF ¶¶ 54–58.  Nor has she forecast any evidence of what consumers routinely pay for sheets of 900 thread count, or those with thread counts close to the 227 her expert contends is the 'true' thread count.  *Id.*  Indeed, while her Complaint incorporated and referenced an "informal" survey of the thread counts and prices of other sheets (Third Am. Compl. ¶ 24), Plaintiff has not produced any actual data underlying the supposed "survey."[6]

Plaintiff also alleged in her Complaint that she was injured because the sheets she purchased were lacking in durability, softness, quality, and suitability when compared with those of a similar price or a "true" thread count of 900.  Third Am. Compl. ¶¶ 1, 2, 4, 5, 12.  These allegations are similarly unsupported by the record.  Neither Plaintiff nor any expert she retained have purported to test those attributes with respect to either Somerset sheets or any others, meaning there is no data or study on which any such comparison could be made.  SUF ¶¶ 59–67.  That leaves only Plaintiff's subjective "disappointment" with the sheets, seemingly resulting from her failure to observe that the sheets were not made of 100% cotton as she preferred.  *See* SUF ¶¶ 8, 9, 11, 12, 68.

---

[6] In any event, as another federal district court observed in considering the exact same "informal survey" in the context of a nearly identical Complaint filed by Plaintiff and others against AQ Textiles, the chart reflecting its results seems to suggest that Plaintiff did not overpay for her sheets at all.  *Hill v. AQ Textiles LLC*, No. 1:19CV983, 2021 WL 1026740, at *2–3 (M.D.N.C. Mar. 17, 2021).

## ARGUMENT

### I. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the court must review factual evidence in the light most favorable to the nonmoving party and draw reasonable inference in that party's favor, "[c]onclusory testimony devoid of any specific facts . . . is not sufficient" to create the requisite genuine issue of material fact. *Robinson v. Georgia-Pac. Corrugated, LLC*, No. 1:18-CV-307, 2020 WL 473543, at *6 (S.D. Ohio Jan. 29, 2020) (citing *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 598–99 (6th Cir. 1999)).

"Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment." *Babcock & Wilcox Co. v. Cormetech, Inc.*, 848 F.3d 754, 758 (6th Cir. 2017). Instead,

> the dispute must present a *genuine* issue of *material* fact. A dispute is genuine only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment. A factual dispute concerns a material fact only if its resolution might affect the outcome of the suit under the governing substantive law . . . .

*Id.* (internal citations and quotation marks omitted).

### II. Plaintiff cannot obtain equitable relief because she has an adequate remedy at law.

As a preliminary matter, the numerous claims for which Plaintiff seeks equitable relief fail as a matter of law because Plaintiff has an adequate remedy at law.

In addition to her equitable claim for unjust enrichment (count 9), Plaintiff asserts a number of claims for which the available relief is equitable. UCL claims (counts 2–4) are equitable in

nature, so compensatory damages cannot be recovered[7] and remedies are limited to injunctive relief and restitution. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009); *Forty Niner Truck Plaza, Inc. v. Shank*, No. CIV. S-11-860 FCD, 2011 WL 4386299, at *2 (E.D. Cal. Sept. 20, 2011). Similarly, restitution (and not compensatory damages) is the only monetary remedy available for FAL claims (count 5). *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 695 (2006). Finally, while damages are available under the CLRA, plaintiff seeks only equitable relief (in the form of an injunction) on her CLRA claim in this lawsuit (count 6). Third Am. Compl. ¶ 130.

"It has long been the province of federal courts sitting in equity to apply a body of federal common law." *York Risk Servs. Grp., Inc. v. Couture*, 787 F. App'x 301, 307 n. 3 (6th Cir. 2019). As the United States Supreme Court has long recognized, this means that federal courts sitting in diversity must apply traditional equitable principles, including the fundamental principle that "a plain, adequate and complete remedy at law must be wanting," to equitable claims. *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945); *see also O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (holding that a complaint seeking equitable relief failed because it did not plead "the basic requisites of the issuance of equitable relief" including "the inadequacy of remedies at law"). "That a State may authorize its courts to give equitable relief unhampered by any or all such restrictions cannot remove these fetters from the federal courts." *York*, 326 U.S. at 105–06.

The Ninth Circuit recently applied these fundamental principles to claims much like those here. In *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), the court addressed a would-be class representative's claims for false product advertising arising under California law. Following the Supreme Court's decision in *York*, the court held that "federal courts must apply

---

[7] Plaintiff's unjust enrichment claim is also an equitable claim, which imposes the same limitation with respect to remedies. *Brand v. Nissan N. Am., Inc*., No. CV1607378BROSKX, 2017 WL 11610901, at *13 (C.D. Cal. Feb. 24, 2017).

equitable principles derived from federal common law to claims for equitable restitution under California's Unfair Competition Law ('UCL') and Consumers Legal Remedies Act ('CLRA')." 971 F.3d 834, 837 (9th Cir. 2020). That meant that such principles, including that equitable relief is not appropriate where an adequate remedy exists at law, will apply "when a party requests restitution under the UCL and CLRA in a diversity action." *Id.* at 841–44.

Addressing the false advertising claims before it, the Ninth Circuit held that the plaintiff could not show that she lacked an adequate remedy at law. *Id.* at 844. The court first noted that the plaintiff had not even alleged that she lacked an adequate legal remedy in her complaint. *Id.* Even leaving aside that fundamental pleading defect, the plaintiff sought damages that were coextensive with the equitable restitution she sought, and failed to explain how recovering such damages would be "any less prompt, certain, or efficient than restitution." *Id.* at 844 & n.8. Accordingly, the court dismissed the Plaintiff's UCL and CLRA claims.[8] *Id.*

*Sonner*, which is consistent with existing Supreme Court and Sixth Circuit precedent applying equitable principles, is instructive here. As addressed above, the Plaintiff's UCL, FAL, CLRA, and unjust enrichment claims seek equitable relief, i.e., restitution and injunctive relief. But Plaintiff has other claims, addressing the same exact harm, that seek damages—in particular, her claims for breach of warranty and fraud. Furthermore, Plaintiff had another adequate remedy at law in the form of a damages claim under the CLRA, one that she initially pleaded but the Court rejected because Plaintiff failed to provide sufficient pre-suit notice. *See* ECF No. 54 at 5; ECF No. 62 at 2–3. Plaintiff has made no attempt to explain why these claims do not provide her with

---

[8] Several district courts have applied *Sonner* in dismissing equitable claims, including requests for restitution and injunctive relief. *Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021); *In re California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 1176645, at *7-8 (N.D. Cal. Mar. 29, 2021); *Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV2000769CJCGJSX, 2020 WL 5492990, at *3–4 (C.D. Cal. Sept. 9, 2020).

an adequate remedy at law. In fact, despite the operative complaint being Plaintiff's *third* amended pleading, she has not even bothered to <u>allege</u> that she lacks an adequate remedy at law. Plaintiff has an adequate remedy at law to recover the damages alleged, and therefore Defendant is entitled to summary judgment on counts two through six and nine.

### III. Plaintiff's claims fail because she has not met her burden of showing Defendant made, adopted, or even knew of any underlying misrepresentation regarding thread count.

As discussed above, Plaintiff's claims all arise from the allegation that the thread count of the Somerset sheets she purchased from a Macy's store operated by Defendant was inflated. Plaintiff's evidentiary forecast falls short with respect to that allegation in three key ways, each of which is an independent justification for dismissing her claims. First, Plaintiff has failed to establish that Defendant made or adopted any thread-count representation with respect to her sheets. Second, her evidence fails to show that the thread count of her sheets was inflated. And third, even if she could establish that the thread count of her sheets was inflated, she cannot show that Defendant knew or should have known that the sheets were mislabeled.

### A. Plaintiff cannot establish that Defendant made or adopted any thread-count representations regarding the thread counts of Plaintiff's sheets.

In order to maintain claims under the UCL (counts 2–4), FAL (count 5), and CLRA (count 6), Plaintiff must establish that Defendant "somehow participated in, controlled, or adopted the deceptive advertising" at issue in this case. *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 801 F. Supp. 2d 993, 1012 (S.D. Cal. 2011); *see also Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, 959, 116 Cal. Rptr. 2d 25 (2002) (holding, in reference to UCL and FAL claims, that "[a] defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500" (quoting *People v. Toomey*, 157 Cal. App. 3d 1, 14, 203 Cal. Rptr. 642 (1984)). Courts therefore regularly

14

decline to impose liability for labeling misrepresentations on retailers who do not personally participate in, or exercise control over, the labeling of the products at issue. *See In re Hydroxycut,* 801 F. Supp. 2d at 1012 (dismissing UCL and CLRA claims); *In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1086-89 (S.D. Cal. 2020) (dismissing FAL and UCL claims and holding that "Defendant cannot be held liable under the UCL merely 'for placing the falsely advertised Products on the shelf'" (quoting *In re Hydroxycut*, 801 F. Supp. 2d at 1012)), *on reconsideration on separate grounds*, No. 3:18-CV-0840-GPC, 2020 WL 3840559 (S.D. Cal. July 8, 2020); *In re Jamster*, 2009 WL 1456632, at *8-9 (S.D. Cal. May 22, 2009) (dismissing UCL, FAL, and CLRA claims arising from alleged false advertising where plaintiff could not show that defendants "participated or exercised unbridled control over" advertising representations).

Similarly, in order to establish liability for breach of express warranty (count 7), Plaintiff must show that the seller "made an affirmation of fact or promise or provided a description of its goods." *Blennis v. Hewlett–Packard Co.*, 2008 WL 818526, at *2 (N.D. Cal. Mar. 25, 2008). Accordingly, retailers cannot be liable for breach of warranty where they did not make the statements alleged to have formed the warranty. *See In re Hydroxycut*, 801 F. Supp. 2d at 1013 (dismissing express warranty claim where the complaint failed to allege that the retailer made its own representations regarding the products that plaintiffs relied on in purchasing the products).

Finally, to succeed on a claim of fraud (count 8), Plaintiff must establish that Defendant made a misrepresentation of fact. *See, e.g.*, *Tenet Healthsystem Desert, Inc. v. Blue Cross of California*, 245 Cal. App. 4th 821, 837, 199 Cal. Rptr. 3d 901, 914–15 (2016) (listing elements of fraud under California law, including misrepresentation); *Conroy v. Regents of Univ. of California*, 45 Cal. 4th 1244, 1255, 203 P.3d 1127, 1135 (2009) (same).

15

The upshot of this case law is that Plaintiff cannot succeed on any of her claims unless she can demonstrate that Defendant made, controlled, or adopted thread-count representations for the Somerset sheets. The undisputed record evidence shows that Plaintiff cannot make that showing. Defendant did not create the thread-count representations on sheets acquired from AQ Textiles (SUF ¶¶ 32, 33); indeed, Plaintiff herself alleged that Creative Textiles and AQ Textiles labeled them. Third Am. Compl. ¶¶ 37–38. Neither Defendant nor Macy's buyers took any independent action to verify any of the statements made on the packaging of the Somerset sheets. SUF ¶¶ 34, 36, 37. To the extent Defendant had any role with respect to the labeling of the sheets purchased by Plaintiff, such role was limited to the approval of the aesthetic aspects of labels before they were inserted by third parties, and did not involve approval of any thread-count representations. SUF ¶¶ 32, 33.

Nor is there any evidence that Defendant adopted the thread-count representation that Plaintiff says deceived her. Plaintiff has not identified any thread-count advertising disseminated by Defendant that she saw. In fact, she admitted at her deposition that she cannot recall seeing any advertising for the sheets she purchased, other than signs in Macy's that did not reference thread count. *See* SUF ¶¶ 13–14.

The bottom line is that there is no evidence from which a jury could find that Defendant participated in, controlled, or adopted the thread count representations on the packaging of Somerset sheets purchased by Plaintiff. In the absence of such evidence, Plaintiff's UCL, FAL, CLRA, fraud, and express warranty claims (counts 2–8) must fail.

### B. Plaintiff cannot establish that the thread count of her sheets was miscounted or misrepresented.

Even if Plaintiff could forecast evidence sufficient to show that Defendant made, adopted, or controlled the thread-count representation on the label of the sheets she purchased, she still must

come forward with sufficient evidence to show that the thread count was actually inflated. That is simple common sense: if the thread count of her sheets was not inflated, there was no misrepresentation or deception, and Plaintiff's claims would fail.

As addressed above, the evidence on which Plaintiff relies with respect to the sheets' "true" thread count is the opinion of her would-be expert, Sean Cormier, who claims that his inspection of the sheets revealed a thread count of 227. Cormier Rep. 17. Defendant has previously moved to strike Cormier's report and opinions on the basis that he is unqualified to give them and the opinions themselves are unreliable. *See* ECF No. 92. In particular, Defendant has argued that the thread-count "test" Cormier performed should be disregarded because Cormier (who was testing the thread count of sheets for the first time) did not perform the test consistent with the ASTM D3775 standard. ECF No. 92 at 4-5; *see* SUF ¶¶ 46–47. If Cormier's report and opinions are struck as requested by Defendant, then Plaintiff will be left without any clear way to establish that the thread count of her sheets was inflated.

In contrast to Cormier's dubious opinion, independent third-party test reports obtained by Creative Textiles and provided to AQ Textiles confirm the stated thread count of Somerset sheets. *See* SUF ¶¶ 39, 40. In an effort to discredit those and other test reports, Plaintiff has previously pushed the theory that AQ Textiles forced international testing labs to use an improper, alternative method of counting threads. The gaping holes in that theory—which, again, Plaintiff primarily supports through the suspect Cormier Report—have already been highlighted in prior filings. ECF No. 87 at 15–16; ECF No. 92 at 5–6. For purposes of this Motion, the key point is that there is simply no record evidence showing that AQ Textiles forced an improper "alternative" method of counting threads on testing labs (*see* SUF ¶¶ 50–52); and even if such evidence existed, it would not be sufficient to demonstrate that the thread count of <u>Plaintiff's</u> sheets was inflated. Moreover,

regardless of whether Plaintiff can prove the existence of AQ Textiles' "alternative" testing method, there is no evidence that Defendant was aware of the method at the time Plaintiff purchased her sheets,[9] much less aware that it had been applied to the specific sheets Plaintiff purchased.

In sum, Plaintiff's reliance on the Cormier report to establish that the thread count of her sheets was inflated is misplaced. If, as Defendant urges, Cormier's report and opinions are struck, Plaintiff will be left without any basis to establish that a misrepresentation occurred, and her claims should therefore be dismissed.

### C. Plaintiff cannot establish that Defendant knew or should have known that the thread-count representations on Plaintiff's sheets were false.

Finally, even if Plaintiff could show that Defendant made, adopted, or controlled the thread-count representation regarding her sheets <u>and</u> that the representation itself was false, she still would be required to demonstrate that Defendant knew or should have known the representation was false.

A defendant cannot be liable under the UCL, FAL, or CLRA for representations that it did not know were false. *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146–49 & n.5 (9th Cir. 2012) (stating that both the UCL and CLRA require that defendant know of the alleged defect at the time of sale); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867 (9th Cir. 2018) (holding that false representations are only actionable under the FAL if they were made by a defendant who knows them to be false or who should, by the exercise of reasonable care, know them to be false). The same is true for common-law fraud claims (count 8). *See Apex Compounding Pharmacy, LLC*

---

[9] The only document referenced by Cormier as arguably demonstrating that Macy's buyers were aware of a dispute over the application of D3775 to AQ Textiles' sheets is an email dated October 1, 2018, more than a year after Plaintiff had purchased her sheets. Cormier Report, ECF No. 84-1, at 13.

*v. eFax Corp.*, No. LACV1605165 JAK (JPRX), 2017 WL 9500946, at *3 (C.D. Cal. Apr. 20, 2017) ("Under California law, the 'indispensable elements of a fraud claim include a false representation, <u>knowledge of its falsity</u>, intent to defraud, justifiable reliance, and damages.'" (emphasis added) (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003))).

Courts are generally unwilling to impose on retailers who sell products labeled by third parties a duty to investigate and confirm statements made on the labels of such products. *See, e.g.*, *Parent v. Millercoors LLC*, No. 3:15-CV-1204-GPC-WVG, 2016 WL 3348818, at *7 (S.D. Cal. June 16, 2016) ("In the context of false advertising, there is no duty to investigate the truth of statements made by others."). Furthermore, consumer complaints, by themselves, are insufficient to establish knowledge of a defect. *See Wilson*, 668 F.3d at 1147; *Berenblat v. Apple, Inc.*, No. 08-4969 JF (PVT), 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (holding that consumer complaints were insufficient to show that defendant had knowledge of the defect at issue and "merely establish[ed] the fact that some consumers were complaining."); *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) ("Awareness of a few customer complaints, however, does not establish knowledge of an alleged defect.").

Here, Plaintiff has not put forth any evidence that Defendant knew (or even should have known) that the threads of the Somerset sheets Plaintiff purchased were over-counted. To the contrary, during the timeframe that Somerset sheets were sold to Macy's,[10] the undisputed evidence shows that Macy's buyers did not have any role in obtaining test reports for the Somerset sheets purchased from AQ Textiles. SUF ¶¶ 34, 36, 37. Nor did Macy's buyers have any actual knowledge of the true thread count of the Somerset sheets, or any reason to doubt the thread-count information provided by AQ Textiles. SUF ¶¶ 33–37. Nor is there any evidence that Defendant

---

[10] SUF ¶ 25 (July 23, 2015 through May 29, 2017).

ever communicated with any independent testing lab regarding (1) the Somerset sheets purchased by Plaintiff or (2) testing regarding the thread count of those sheets. SUF ¶¶ 51, 52.

Perhaps anticipating this dearth of evidence, Plaintiff (again, through the Cormier report) points to regulatory activities that they say put Defendant on notice of possible thread-count inflation. Cormier Rep. 18. Those activities include a 2002 letter from the American Textile Manufacturer's Institute, a 2005 letter from the FTC, and a 2018 letter from the Texas Department of Agriculture. *Id.* nn. 3–5. But the former two letters—sent more than a decade before Plaintiff's sheet purchase—were not sent specifically to Defendant; instead, they are just general industry guidance. And the issue raised in those two letters—counting individual plies in "plied" yarn—is inapplicable to the sheets at issue, as it is undisputed that the Somerset sheets do not used plied yarns. SUF ¶ 31. As for the January 2018 letter from the Texas Department of Agriculture referenced by Cormier, which was sent to both AQ Textiles and Macy's, it cannot have put Defendant on notice of any defect in the sheets purchased by Plaintiff because it was sent months <u>after</u> Plaintiff purchased her sheets.

Contrary to Plaintiff's allegations, there simply is no evidence that would allow a jury to find that Defendant was on notice that the thread-count representations on Plaintiff's sheets were, or could be, false.[11] Instead, the undisputed record evidence demonstrates that, at the time of Plaintiff's sheet purchase, Macy's sheet buyers were unaware of any regulatory inquiries regarding the thread count of the Somerset sheets or any credible customer complaints regarding the same.

---

[11] The same lack of evidence would prevent the jury from finding that Defendant satisfied the "intent to defraud" element of common-law fraud claims. *See Gentec Enterprises, Inc. v. Transistor Devices, Inc.*, No. CV 10-7057 GAF (SHX), 2011 WL 13217662, at *9 (C.D. Cal. Dec. 9, 2011) (granting summary judgment on fraud claim where plaintiff put forth no evidence that defendant had requisite intent to defraud); *Skinner v. Best Buy Co.*, No. 2:06-CV-03749-JHN-EX, 2010 WL 11512216, at *4 (C.D. Cal. Nov. 24, 2010) (granting summary judgment in class action as to deceit and concealment claims where plaintiff came forth with no evidence of the requisite fraudulent intent).

SUF ¶ 35. There is no basis for holding a retailer liable for supposed labeling misrepresentations just because the retailer sold a product and then later learned of an alleged misrepresentation on that product's packaging. Therefore, Plaintiff's claims must be dismissed for this additional reason.

## IV. Plaintiff's unjust enrichment claim fails because it is duplicative and inapplicable where the basis for the claim is an undisputed contractual transaction.

As discussed above, Plaintiff's unjust enrichment claim (count 9) should be dismissed, along with her other claims that seek equitable relief, because she has an adequate remedy at law. That claim is also subject to dismissal for other reasons.

"Generally, federal courts in California have ruled that unjust enrichment is not an independent cause of action because it is duplicative of relief already available under various legal doctrines." *Fisher v. Honda N. Am., Inc*., No. LA CV13-09285 JAK, 2014 WL 2808188, at \*10 (C.D. Cal. June 12, 2014) (quoting *Vicuna v. Alexia Foods, Inc.*, No. C 11–6119 PJH, slip op. at \*3, 2012 WL 1497507 (N.D. Cal. April 27, 2012); *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793, 131 Cal. Rptr. 2d 347 (2003); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012)); *see also In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("[P]laintiffs can not assert unjust enrichment claims that are merely duplicative of statutory or tort claims."). For this reason alone, summary judgment should be granted as to Plaintiff's unjust enrichment cause of action (count 9).

To the extent California courts recognize unjust enrichment as an independent cause of action, "[t]he elements of a claim of quasi-contract or unjust enrichment are (1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense." *See MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017). "The doctrine applies where plaintiffs, having no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant

to retain the benefit without paying for its value." *Id.* (emphasis added) (quoting *Hernandez v. Lopez*, 180 Cal.App.4th 932, 938, 103 Cal.Rptr.3d 376 (2009)). "[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where . . . express binding agreements exist and define the parties' rights." *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 94 Cal. App. 4th 151, 172, 114 Cal. Rptr. 2d 109, 125 (2001). This includes when, like here, the unjust enrichment claim overlaps a claim for breach of express warranty. *Smith v. Allmax Nutrition, Inc.*, No. 1:15-CV-00744-SAB, 2015 WL 9434768, at *9 (E.D. Cal. Dec. 24, 2015).

Plaintiff alleged that she paid for and received sheets in consumer transactions with Defendant. Either that allegation is true—in which case a contract was formed and Plaintiff's claims lie in contract or warranty—or it is false, in which case she has no claims at all. There is no possible middle ground, where Plaintiff exchanged money for sheets but the transaction is held to be outside the scope of contract remedies. Simply put, there is no plausible set of facts in which a quasi-contract claim, such as unjust enrichment, could be viable or necessary. For these reasons, summary judgment is appropriate as to Plaintiff's unjust enrichment claim (count 9).

## V.    Plaintiff has failed to meet her burden of showing she suffered damages resulting from her sheet purchase.

Plaintiff seeks a monetary remedy, whether legal or equitable in nature, with respect to each claim except her CLRA claim.[12] Whatever the source and nature of the monetary remedy sought, Plaintiff cannot establish her basis for recovery for multiple reasons.

### A.    The record evidence is insufficient for Plaintiff to demonstrate that the value she received differs from what she paid.

While Plaintiff's damages claims may arise under different laws and be framed as either legal or equitable remedies, they all require her to make one fundamental factual showing: the

---

[12] Plaintiff only seeks injunctive relief for her CLRA claim (count 6). Third Am. Compl. ¶ 130.

amount by which the value of the sheets she received differs from what she paid. The record evidence provides no basis for her to do so.

As discussed above, Plaintiff's UCL, FAL, and unjust enrichment claims give rise to only equitable remedies, including the monetary remedy of restitution. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009); *Forty Niner Truck Plaza, Inc. v. Shank*, No. CIV. S-11-860 FCD, 2011 WL 4386299, at *2 (E.D. Cal. Sept. 20, 2011); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 695 (2006). If the plaintiff obtains value from the product at issue, the proper measure of restitution is "[t]he difference between what the plaintiff paid and the [actual market] value of what the plaintiff received." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009); *see also Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1048 (C.D. Cal. 2018).

Similarly, the measure of damages for breach of warranty claims under California law is the difference between the market value of the goods received and those as warranted, unless special circumstances show proximate damages of a different amount. Cal. Com. Code § 2714(2); *see S.M. Wilson & Co. v. Smith Intern., Inc.*, 587 F.2d 1363, 1375 (9th Cir. 1978) (holding that breach of warranty allows damages that are "the monetary equivalent of the benefit of [the] bargain").

Finally, the measure of damages for fraud under California law is the difference between the value parted with and the actual value received. *Miller v. Fuhu Inc.*, 2015 WL 7776794, at *19 (C.D. Cal. Dec. 1, 2015); *see Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1165 (2002).

Plaintiff herself has acknowledged that the fundamental proof she must make to prove her damages is to show the difference between what she paid and the true "value" of the product. In her Reply in support of her Motion for Class Certification, Plaintiff states that "she has suffered

23

an 'injury in fact' equal to the difference in price" between what she paid and the sheets' "true" value.  ECF No. 112 at 1.  Subsequently, she asserts that her damages can be calculated by a simple formula: "Damages = Price Sold with Inflated Count – Price Sold with True Count."  ECF No. 112 at 9.

An unpublished decision from the Ninth Circuit demonstrates the application of these principles to claims similar to Plaintiff's.  In *Chowning v. Kohl's Dep't Store, Inc.*, 733 F. App'x 404 (9th Cir. 2018), the plaintiff alleged that the defendant retailer had made advertising misrepresentations in labeling products that she purchased, causing her to overpay for them.  The Plaintiff sought restitution, and the retailer moved for summary judgment on the basis that, *inter alia*, the Plaintiff had not brought forth sufficient evidence of her damages.  The district court granted summary judgment to the retailer.

On appeal, the Ninth Circuit held, relying on *In re Vioxx*, that the proper measure of restitution was "the price [plaintiff] paid for the articles versus the value of the articles she received." *Id.* at 405.  Reviewing the evidence in the case, the Court found that the plaintiff (and her damages expert) had failed to introduce sufficient evidence of the "retail value" of the products she purchased, in particular because she "introduced no competent evidence regarding the value of articles of clothing of similar style, quality, etc." *Id.* at 406.  Accordingly, there was no way for her to prove her damages, and the district court's order was affirmed. *Id.*

The facts here directly parallel those in *Chowning*. While Plaintiff alleges that the Somerset sheets she purchased were worth less than what she paid for them, she simply has not put forth any evidence demonstrating that the market value of her sheets differs from what she paid.  While— like the plaintiff in *Chowning*—Plaintiff has engaged a damages expert (Stefan Boedeker), he has not offered any opinion regarding the retail value of Plaintiff's sheets.  Moreover—and, again, just

24

like the plaintiff in *Chowning*—Plaintiff has not put forth any evidence whatsoever of the market value of *any* comparable product. SUF ¶¶ 54–58. That leaves the factual record bereft of any evidence which could possibly be used to measure the amount of damages—restitutionary or otherwise—to which Plaintiff may be entitled. In other words, there is no way to complete the formula she herself proposes – "Damages = Price Sold with Inflated Count – Price Sold with True Count" – because there is no evidence from which she can establish the "Price Sold with True Count." Accordingly, summary judgment should be entered against her.

## B. Plaintiff cannot succeed on the "price premium" theory put forth by her economic expert.

While Plaintiff's damages expert, Stefan Boedeker, fails to opine regarding the market value of Plaintiff's sheets, he does propose two separate damages models on a classwide basis: a hedonic regression analysis and a conjoint analysis. Report of Stefan Boedeker, ECF No. 84-4 ("Boedeker Rep.") 16, 21. In particular, Boedeker claims to be able to calculate a "price premium" for the sheets that is attributable to their thread-count representation. *Id.* at 8–9. As explained in Defendant's opposition to Plaintiff's Motion for Class Certification, ECF No. 87, Boedeker's proposed analyses are problematic for multiple reasons.[13] At the summary judgment stage, though, the most important issue is that <u>he has not actually done</u> any analysis.

A similar issue arose in *Shanks v. Jarrow Formulas, Inc*., No. LACV1809437PAAFMX, 2019 WL 7905745 (C.D. Cal. Dec. 27, 2019), where the court considered a plaintiff's UCL claims that the defendant's coconut oil products were deceptively labeled. The defendant moved for summary judgment, arguing that the plaintiff presented no evidence that he was entitled to

---

[13] For the reasons more fully set forth in Defendant's Brief in Opposition to Class Certification, ECF No. 87, and Defendant's Memorandum in Support of Motion to Strike Report and Exclude Opinions of Mr. Stefan Boedeker, ECF No. 91, Boedeker's opinions are not admissible and should not be considered by the Court.

damages or restitution. *Id.* *4.  In response, plaintiff contended that "(1) he 'may offer his testimony regarding how he valued the products absent the represented healthfulness as evidence of his damages', and (2) 'Plaintiff has testified (and would be able to testify at trial) that, absent the misbranded statements, he would not have purchased the products at all,' and that he is therefore entitled to a full refund of the purchase price." *Id.*

The court rejected that contention, holding: "Plaintiff cannot simply state that he will testify to damages at trial, without providing any evidence at the summary judgment stage as to whether he actually suffered monetary damages, and what those damages might be." *Id.*  Plaintiff had previously stated in discovery responses that he would introduce expert evidence to demonstrate his damages. *Id.*  By the time of summary judgment briefing, however, the deadline for expert disclosures had passed and the only evidence plaintiff had produced regarding his damages was a spreadsheet of the average price of defendant's product. *Id.*  The spreadsheet provided no evidence of what plaintiff paid or what plaintiff would have paid had he known the statements to be false. *Id.*  The court accordingly granted summary judgment for the defendant given the plaintiff's failure to set forth evidence of his monetary damages. *Id.*

Here, as in *Shanks*, the time for disclosure of expert reports has passed, and no further opinions may be disclosed. *See* ECF No. 61 (stating disclosure deadlines).  Accordingly, Plaintiff is limited to the expert testimony she has disclosed.  In his expert report, while Boedeker claims to be able to calculate a price premium for the sheets, he has not done so, and Plaintiff has not forecast any evidence by which he would arrive at such a number. SUF ¶¶ 54–58. With no actual calculation of a "price premium," and no data that could be used to make that calculation, this damages theory must therefore fail as applied to Plaintiff's individual claims.

Moreover, even if Boedeker had calculated a price premium in the way he proposes, another decision from a California federal court demonstrates that such calculation alone would be insufficient to support a restitutionary remedy. In *Morales v. Kraft Foods Group*, No. LA CV14-04387 JAK (PJWx), 2017 WL 2598556, at *22–26, 29–30 (C.D. Cal. June 9, 2017), certain defendants moved for summary judgment in a false labeling case where the plaintiff's expert conducted a conjoint analysis. The expert did not analyze the market value of the product at issue either with or without the allegedly deceptive label; instead, he analyzed how much consumers valued the specific labeling representation at issue. *Id.* at *24.

The court granted the defendants' motions for summary judgment, reasoning that because calculating restitutionary damages requires understanding <u>both</u> the loss to consumer, on one hand, and the gain to the seller, on the other, conjoint analysis that focused was insufficient to survive summary judgment. *Id.* *26 ("Here, both parties agree that the conjoint analysis does not provide any insight into the money received by the Defendant in connection with the sale of the Product. Rather, it bears only on the claimed loss to Plaintiffs. Thus, the evidence provided by Plaintiffs about their potential willingness to pay a premium due to the use of the 'natural cheese' label is insufficient to establish a basis for calculating restitution."); *see also id.* at *29.

The situation in this case is exactly the same. Boedeker's proposed analysis fails to account for both the loss to the consumer and the gain to the seller. Instead, it exclusively focuses on the losses suffered by members the putative class, without accounting at all for Defendant's alleged gain from its supposedly wrongful conduct. *See generally* Boedeker Rep. Accordingly, as in *Morales*, Plaintiff cannot establish that she is entitled to restitution from Defendant.

27

### C.    Plaintiff has failed to put forth any evidence sufficient to show that the sheets she purchased failed to meet any objective standard of softness, durability, or quality.

In her Complaint, in addition to Plaintiff's contentions that the Somerset sheets were worth less than what she paid for them, Plaintiff repeatedly contends that the sheets she purchased were not as high-quality, durable, soft, or comfortable as she was led to believe.  *See* Third Am. Compl. ¶¶ 1, 2, 4, 5, 12. Despite this, Plaintiff has no evidentiary support that these characteristics support a difference in value between what she paid for and what she received.  Specifically, she has not forecast any evidence regarding the softness, durability, or quality of the sheets she purchased. SUF ¶¶ 59–66. Nor has she forecast any evidence by which the softness, durability, or quality of the she purchased could be compared to any other sheets. SUF ¶¶ 59–66. The lack of such evidence is fatal to Plaintiff's claims.

The Middle District of North Carolina recently found that almost identical allegations made by Plaintiff Hawes, former plaintiff Hill, and other plaintiffs in a separate lawsuit against AQ Textiles —arising from the exact same sheet purchases at issue here—failed to establish an injury-in-fact for purposes of standing.  *See Hill v. AQ Textiles LLC*, No. 1:19CV983, 2021 WL 1026740, at *2–3 (M.D.N.C. Mar. 17, 2021).  As the court explained:

> [Plaintiffs] have not provided nor even alluded to any standard with which to evaluate whether a sheet is of lower quality, or whether it is softer or more comfortable to the consumer. They do not even attempt to compare their purchases with sheets they deem to accurately display corresponding thread counts to suggest that one is softer, for instance, as a result of its higher number of threads. The same is true with respect to durability and longevity. Not only do Plaintiffs likewise fail to offer any standard by which to measure these claims, they do not even allege that the sheets in question have deteriorated in any way, nor do they provide any information on how long the sheets must continue to serve their purpose in order to be appropriately long-lasting.

*Id.* at *2.

That decision was at the motion to dismiss stage, while this case is at summary judgment. This difference, however, only serves to highlight the dearth of evidence in support of Plaintiff's claim that the sheets' performance was deficient in any way.  Despite more than two years of discovery, Plaintiff has failed to come forward with any evidence by which the quality, durability, or softness of the sheets she purchased could be compared to those of other sheets of similar price or similar thread count.  Nor has Plaintiff forecast any evidence that—even <u>were</u> there a credible standard to compare those attributes—the sheets she purchased would be found to be lacking.  In any event, to the extent Plaintiff was dissatisfied with the sheets' characteristics in any way, she caused her own "injury" by failing to realize the sheets she purchased were not 100% cotton and that they contained polyester, which she knew would irritate her skin.  *See* SUF ¶¶ 8, 9, 11, 12, 68.

Because Plaintiff cannot possibly prove that the sheets she purchased failed to meet any objective standard of quality, any damages premised on such alleged defects must fail.

## VI.    Plaintiff lacks standing to seek injunctive relief because she will not be harmed in the future.

"Article III standing requires that a party demonstrate that it: (1) has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 530 (S.D. Ohio 2011) (citing *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 962 (6th Cir. 2009)).

> The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted). In response to a summary judgment motion, a plaintiff can no longer rest on mere allegations but must set forth specific facts in support of her Article III standing. *See id.*

It must be "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000). "To obtain declaratory or injunctive relief, a claimant must show a present ongoing harm or imminent future harm." *Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir.) (citation omitted), *cert. denied*, 141 S. Ct. 257, 208 L. Ed. 2d 28 (2020). Where standing is premised entirely on the threat of repeated injury, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

This Court has previously recognized that standing for injunctive relief may be lacking in consumer class action cases such as this one. In *Rikos*, the court considered UCL and CLRA claims asserted against the seller of a digestive supplement who had made allegedly false and misleading claims. *See Rikos*, 782 F. Supp. 2d at 531–32. The defendant argued that the plaintiff, who was clearly aware of the allegedly false advertising, had not sufficiently alleged threat of future injury sufficient to seek injunctive relief. *Id.* at 531. The plaintiff contended that injunctions are the primary form of relief provided by California's consumer protection statutes and argued that, unless a class wide injunction was issued, the defendant would continue its violations and harm members of the class and general public. *Id.* at 531–32. This Court rejected that argument and held that the plaintiff lacked standing to seek injunctive relief. *Id.* at 532.

Many other federal courts have reached the same conclusion in similar situations. *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d

278, 292–93 (3d Cir. 2018) (holding that plaintiff lacked standing to seek injunctive relief relating

to corrective advertising claim because plaintiff was aware of the alleged health risks and unlikely

to suffer future economic injury); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465–66

(S.D.N.Y. 2020) (holding that plaintiffs lacked standing to seek injunctive relief where, by virtue

of brining the instant litigation, knew of the alleged labeling misrepresentation at issue); *see also*

1 McLaughlin on Class Actions § 4:28 (17th ed.) ("Though a minority view disagrees, most courts

to address the question have ruled that a plaintiff who is a former customer who provides no

concrete basis to conclude that he or she will purchase the product at issue in the future (so that

they become subject to the challenged practice) lacks standing to pursue injunctive relief on behalf

of a consumer class because the plaintiff is unlikely to suffer future harm.").

In this case, Plaintiff has sought injunctive relief as a remedy for several of her claims.  *See*

Third Am. Compl. ¶¶ 80 (UCL—unlawful prong, count 2), 87 (UCL—unfair prong, count 3), 96

(UCL—fraudulent prong, count 4), 103 (False Advertising Law, count 5), 130 (CLRA, count 6).

She has also included it in her prayer for relief.  *See id.* at 34.  The factual record, however, is

devoid of any evidence that she is likely to suffer future harm.  In fact, at her deposition, Plaintiff

explicitly said, "I won't buy the sheets again."[14] SUF ¶ 69.  In the absence of any evidence to the

contrary, that testimony forecloses the possibility that Plaintiff will be harmed in the future.

*Accord Rikos*, 782 F. Supp. 2d at 531–32. Accordingly, summary judgment is appropriate as to *all*

of Plaintiff's claims to the extent they seek injunctive relief—which includes Plaintiff's CLRA

claim in its entirety.

---

[14] In addition, Plaintiff testified that she always buys 100% cotton sheets, and the sheets at issue here are a blend of cotton and polyester.  *See* SUF ¶¶ 8, 9, 12. Thus, Plaintiff cannot establish that she is likely to suffer future harm.

## CONCLUSION

For the reasons stated herein, Defendant respectfully requests that the Court grant its Motion for Summary Judgment and dismiss all of Plaintiff's claims.

This the 30th day of July, 2021.

/s/ Beth A. Bryan
Beth A. Bryan (Ohio Reg. 0082076)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
Telephone: (513) 381-2838
Facsimile: (513) 381-0205
bryan@taftlaw.com

Jennifer K. Van Zant (admitted *pro hac vice*)
NC State Bar No. 21280
Andrew L. Rodenbough (admitted *pro hac vice*)
NC State Bar No. 46364
Ryan C. Fairchild (admitted *pro hac vice*)
N.C. State Bar No. 47729
Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
230 North Elm Street
2000 Renaissance Plaza
Greensboro, NC 27401
Telephone: (336) 373-8850
Facsimile: (336) 378-1001
jvanzant@brookspierce.com
arodenbough@brookspierce.com
rfairchild@brookspierce.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed via the Court's

CM/ECF system, which will send electronic notification to all counsel of record.

This the 30th day of July, 2021.

/s/ Beth A. Bryan
Beth A. Bryan