# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| SARA HAWES, | |
| Plaintiff, | Civil Action: 1:17-CV-00754 |
| v. | |
| MACY'S WEST STORES, INC., | Judge Timothy S. Black |
| Defendant. | |

**DEFENDANT'S STATEMENT OF PROPOSED UNDISPUTED FACTS IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

Defendant Macy's West Stores, Inc. ("Defendant"), through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and this Court's Standing Order Governing Civil Motions for Summary Judgment, respectfully submits the following Statement of Proposed Undisputed Facts in support of its Motion for Summary Judgment. Evidentiary materials cited herein have already been submitted to the Court or are attached as reflected in the Index of Exhibits at the end of this Statement.

1.      Plaintiff purchased a set of Somerset Collection sheets from a Macy's department store in Los Angeles on June 6, 20/17. **Ex 2**, Deposition Transcript of Sara Hawes ("Hawes Tr.") 106:5–12 & Ex. 2.

2.      Defendant operated the Macy's department store from which Plaintiff purchased her sheets. *See* **Ex. 3**, Deposition Transcript of Danielle Swift ("Swift Tr.") 118:22–119:1.

3.      The label on the Somerset sheets purchased by Plaintiff stated that the sheets had a thread count of 900. Hawes Tr., Ex. 2.

4.     Plaintiff's receipt reflects that she paid $64.70 for the sheets she purchased from Macy's. Hawes Tr., Ex. 2.

5.     Plaintiff described herself as an "avid consumer of sheets" and estimated that she purchases sheets one to two times per year. Hawes Tr. 35:4–10, 35:24–25, 41:12–22.

6.     Plaintiff testified that, when purchasing sheets, she considers: the color, price, company, thread count, and whether the sheets are 100% cotton. Hawes Tr. 35:22–36:1, 40:2–8, 40:22–41:11, 45:13–20.

7.     Plaintiff testified that, when purchasing sheets, she first considers the color of the sheets (specifically, whether they are "a certain hue of gray") and then whether the sheets are 100% cotton. Hawes Tr. 45:8–18.

8.     Plaintiff testified that purchasing 100% cotton sheets is important to her because she has very sensitive skin that reacts to synthetic fabric—including polyester. Hawes Tr. 46:21–48:5, 55:5–13.

9.     Plaintiff testified that she had never purchased sheets that were less than 100% cotton prior to purchasing Somerset sheets from Macy's. Hawes Tr. 40:2–8, 46:21–47:1.

10.    Plaintiff testified that she chose the Somerset sheets because they were the only ones available in the store in her favorite shade of gray. Hawes Tr. 66:9–67:5.

11.    Plaintiff testified that she believed the sheets she purchased were made of 100% cotton. Hawes Tr. 76:11–13.

12.    The label on the Somerset sheets purchased by Plaintiff stated that they were made of 55% cotton, 45% polyester. Hawes Tr., Ex. 2.

13.    Plaintiff testified that she did not see any representations regarding the thread count of the sheets she purchased other than on product packaging. Hawes Tr. 72:21-75:12.

2

14.     Plaintiff testified that she did not recall seeing any advertising for the sheets that she purchased, other than signs in the Macy's store that did not reference thread count.  Hawes Tr. 30:10−14, 72:21−75:12.

15.     Macy's Merchandising Corporation employs buyers who are responsible for buying most of the sheets sold in Macy's retail stores. Swift Tr. 6:24−7:24; ECF No. 100-1, Declaration of Danielle Swift ("Swift Decl.") ¶ 3; **Ex. 4**, Supplemental Declaration of Sal Ciniglio ("Ciniglio Supp. Decl.") ¶ 3.

16.     Macy's buyers negotiate purchases of sheets from vendors such as AQ Textiles. Swift Tr. 11:17−12:2, 26:8−15; Swift Decl. ¶¶ 3, 5; Ciniglio Supp. Decl. ¶ 3.

17.     Separately, Macy's has "private label" program sheets, which are designed by a separate department and are sold exclusively at Macy's. Swift Tr. 11:1−16; Swift Decl. ¶¶ 4−5.

18.     The Somerset sheets were not part of a Macy's private label program; their purchase was negotiated through Macy's sheet buyer.  Ciniglio Supp. Decl. ¶ 7.

19.     Macy's ordered Somerset sheets based on specifications provided by AQ Textiles. Ciniglio Supp. Decl. ¶ 8.

20.     The Somerset specification provided that the sheets have a thread count of 900 and that the sheets be 55% cotton and 45% polyester. The Somerset specification further provided that the cotton yarns be 60s Singles Cotton. At first, 20 denier polyester thread was used in the weft direction while later, beginning in 2017, 15 denier polyester thread was used in the weft direction. Ciniglio Supp. Decl. ¶¶ 9−10.

21.     Sheets made from a blend of cotton and polyester, where cotton makes up at least 50% of the material, are often referred to as "chief value cotton" or "CVC" sheets. Swift Decl. ¶ 5.

22. The Somerset sheets purchased by Plaintiff were manufactured by Creative Textiles Private Limited. Third Amended Complaint ("Compl.") ¶ 39; ECF No. 100-5, Declaration of Lawrence Queen ("Queen Decl.") ¶¶ 6, 27.

23. Macy's was not involved in manufacturing the Somerset sheets. Ciniglio Supp. Decl. ¶¶ 4.

24. After Creative manufactured the Somerset sheets, they were sold to AQ, who imported them to the United States. Third Am. Compl. ¶ 39; Queen Decl. ¶¶ 4, 6, 27 & Ex. I.

25. Somerset sheets were sold by AQ to Macy's between July 23, 2015 and May 29, 2017. Queen Decl. ¶ 27.

26. The Somerset sheets were manufactured by a process involving the simultaneous insertion of a number of adjacent, parallel, multi-filament polyester weft yarns into a single shed formed by cotton warp yarns. ECF No. 100-4, Declaration of Amit Omprakash Agarwal ("Agarwal Decl.") ¶ 7.

27. The purchase orders for the Somerset sheets manufactured by Creative and imported by AQ reflect this method by stating both the number of weft insertions and the number of polyester weft yarns included in each insertion. Agarwal Decl. ¶¶ 12–13 & Ex. A.

28. For the sheets manufactured by Creative and sold to AQ, including the Somerset sheets, a number (usually 8 to 12) of polyester weft yarns (usually between 15 denier and 25 denier) are inserted in parallel at once. The insertions are made by an air jet that pushes the yarns together through the warp yarns. Agarwal Decl. ¶ 6.

29. The individual polyester weft yarns usually contain 14 filaments per yarn. Agarwal Decl. ¶ 10.

30. For the sheets manufactured by Creative and sold to AQ, including the Somerset sheets purchased by Plaintiff, the individual polyester yarns inserted into each shed are not twisted or woven together in any way, either before or during the weaving process. Agarwal Decl. ¶ 8; ECF No. 100-3, Expert Report of Tushar Ghosh, Ph.D., ¶ 29.

31. The Somerset sheets at issue do not use plied yarns. **Ex. 5**, Deposition Transcript of Sean Cormier ("Cormier Tr.") 161:9-11; **Ex. 6**, Expert Report of Linwood Wright ¶ 33.

32. Defendant did not label the Somerset sheets. Ciniglio Supp. Decl. ¶ 12; Third Am. Compl. ¶¶ 37–38.

33. For some of the sheets that are sold in retail stores, Macy's discusses and approves aesthetic aspects of the product labels, but Macy's does not discuss or approve thread-count representations. Swift Tr. 43:14-16; Ciniglio Supp. Decl. ¶ 6.

34. Defendant relied on AQ Textiles to confirm that the Somerset sheets complied with all product specifications, including thread count, and made no independent effort to otherwise verify the thread count of the Somerset sheets. Swift Tr. 42:15-43:4; ECF No. 100-6, Declaration of Sal Ciniglio ("Ciniglio Decl.") ¶ 2; Queen Decl. ¶¶ 17–20; Ciniglio Supp. Decl. ¶¶ 5, 8, 13–14.

35. At the time Plaintiff purchased her sheets, Macy's sheet buyers were unaware of any governmental entities investigating the thread count of Somerset sheets or any credible customer complaints regarding the thread count of Somerset sheets. Ciniglio Supp. Decl. ¶ 15; Swift Tr. 74:4–7, 83:25–84:5, 86:24–87:8.

36. Neither Defendant nor the Macy's sheet buyers who select the sheets sold in Macy's stores have any involvement in counting threads or confirming thread count with respect to sheets sold by AQ Textiles to Macy's. Swift Tr. 42:5–14; Ciniglio Decl. ¶ 2; Ciniglio Supp. Decl. ¶¶ 12–14.

37.     At the time of Plaintiff's sheet purchase, neither Macy's West Stores, Inc. nor Macy's buyers took independent action to verify statements made on the packaging of sheets purchased from AQ Textiles, including the Somerset sheets. Ciniglio Supp. Decl. ¶¶ 5, 8.

38.     AQ Textiles will not accept a shipment of sheets from Creative without a satisfactory thread-count test report from an independent testing lab. Agarwal Decl. ¶ 20.

39.     Creative Textile Mills Private Limited obtained independent third-party test reports for the Somerset sheets, which Creative then provided to AQ Textiles. Queen Decl. ¶¶ 27–33 & Exs. I–M.

40.      The independent test reports obtained by Creative and provided to AQ Textiles reported that the sheets were within 5% of their listed thread count.  Queen Decl. ¶¶ 27–33 & Exs. I–M.

41.     The ASTM D3775 standard promulgated by ASTM International is a proper standard by which to measure the thread count of woven bedsheets, including CVC sheets. *See* **Ex. 7**, Deposition Transcript of Lawrence Queen ("Queen Tr.") 60:15–17.

42.     The ASTM D3775 standard has been periodically updated.  The most recent effective versions of the standards have been ASTM D3775-12 (enacted in 2012) and D3775-17e1 (enacted in September 2017). Cormier Tr., Exs. 6–7.

43.     Both D3775-12 and D3775-17e1 state that "[w]hen two yarns are laid-in together and parallel, count each yarn separately, as a single unit, regardless of whether it is comprised of single or plied components." Cormier Tr., Exs. 6–7.

44.     Both D3775-12 and D3775-17e1 state that the person performing the test should "[c]ount the number of [ends] and [picks] in five randomly spaced places diagonally across the width" of the sheet sample being tested. Cormier Tr., Exs. 6–7.

6

45.     Both D3775-12 and D3775-17e1 state that "[w]hen individual yarns cannot be readily distinguished visually for counting in a fabric," alternative counting methods may be used, including by "raveling" and then counting the yarns.   Cormier Tr., Exs. 6–7.

46.     Plaintiff's expert, Sean Cormier, tested only a single sample from the Somerset sheets, and did not test five samples from different parts of the subject sheet, as described in both the versions of ASTM D3775-12 and -17e1. Cormier Tr. 158:20-159:25 & Exs. 6–7.

47.     Cormier did not conduct his thread count test of the Somerset sheets in accordance with the ASTM D3775 standard. Cormier Tr. 158:20–159:25 & Exs. 6–7.

48.     During his deposition, Cormier agreed that, while his expert report stated that "AQ Textiles sent an email to SGS Testing Laboratories on 4/27/17 telling them that they are doing the test incorrectly" the email in question was instead from GCPL Exports *to* Larry Queen, President of AQ Textiles. Cormier Tr. 184:10–186:8 & Ex. 12; Queen Decl. ¶¶ 25–26 & Ex. H.

49.     During his deposition, Larry Queen, President of AQ Textiles, denied that he or AQ Textiles had ever advocated for a thread-counting method that involved counting "fibers." Queen Tr. 62:14–63:2.

50.     There is no evidence that AQ Textiles has asked or instructed testing labs to count fibers within yarns, as opposed to yarns themselves, with respect to CVC sheets sold by AQ Textiles to Macy's. *See* Queen Tr. 62:14–63:2.

51.     There is no evidence that either Defendant or Macy's buyers have asked or instructed testing labs to count fibers within yarns, as opposed to yarns themselves, with respect to CVC sheets sold by AQ Textiles to Macy's.

52.     There is no evidence that Defendant or Macy's sheet buyers ever communicated with any independent testing lab regarding the Somerset sheets purchased by Plaintiff or the thread count thereof.

53.     There is no evidence that Defendant was aware of any communications between AQ Textiles and independent testing labs regarding the counting of fibers within yarns at the time of Plaintiff's sheet purchase.

54.     There is no evidence of the market value of the sheets purchased by Plaintiff other than the price paid by Plaintiff.

55.     There is no evidence that the market value of the sheets purchased by Plaintiff is any less than the price paid by Plaintiff.

56.     There is no evidence of the market value of any products comparable to the Somerset sheets that Plaintiff purchased.

57.     There is no evidence of the market value of any CVC sheets with an "authentic" thread count of 900. Hawes Tr. 111:17–112:8.

58.     There is no evidence that the market value of any products comparable to the Somerset sheets that Plaintiff purchased is any less than the price paid by Plaintiff.

59.     There is no evidence that the sheets purchased by Plaintiff are less soft than other CVC sheets marketed with a thread count of 900.

60.     There is no evidence that the sheets purchased by Plaintiff are less soft than other CVC sheets in the same price range as paid by Plaintiff.

61.     There is no evidence that the sheets purchased by Plaintiff are less durable than other CVC sheets marketed with a thread count of 900.

62.    There is no evidence that the sheets purchased by Plaintiff are less durable than other CVC sheets in the same price range as paid by Plaintiff.

63.    There is no evidence that the sheets purchased by Plaintiff are of lesser quality than other CVC sheets marketed with a thread count of 900.

64.    There is no evidence that the sheets purchased by Plaintiff are of lesser quality than other CVC sheets in the same price range as paid by Plaintiff.

65.    There is no evidence that the sheets purchased by Plaintiff are worse for sleeping than other CVC sheets marketed with a thread count of 900.

66.    There is no evidence that the sheets purchased by Plaintiff are worse for sleeping than other CVC sheets in the same price range as paid by Plaintiff.

67.    There is no evidence that the sheets purchased by Plaintiff suffer from any defect other than Plaintiff's contention that they do not have the marketed thread count.

68.    Plaintiff testified that she was immediately disappointed with the sheets she purchased because they were unlike the sheets that she "buy[s] all the time" and is "so used to." Hawes Tr. 75:13–20.

69.    Plaintiff testified that she would not buy the Somerset sheets again in the future. Hawes Tr. 87:25.

## Index of Exhibits

| Exhibit Number | Content |
|---|---|
| 2 | Excerpts from Transcript of Deposition of Sara Hawes |
| 3 | Excerpts from Transcript of Deposition of Danielle Swift |
| 4 | Supplemental Declaration of Sal Ciniglio |
| 5 | Excerpts from Transcript of Deposition of Sean Cormier |
| 6 | Expert Report of E. Linwood Wright, III |
| 7 | Excerpts from Transcript of Deposition of Larry Queen |

## Index of Previously Filed Materials

| ECF Number | Content |
|---|---|
| 100-1 | Declaration of Danielle Swift |
| 100-3 | Expert Report of Tushar Ghosh, Ph.D. |
| 100-4 | Declaration of Amit Omprakash Agarwal |
| 100-5 | Declaration of Lawrence Queen |
| 100-6 | Declaration of Sal Ciniglio |

This the 30th day of July, 2021.

/s/ Beth A. Bryan
Beth A. Bryan (Ohio Reg. 0082076)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
Telephone: (513) 381-2838
Facsimile: (513) 381-0205
bryan@taftlaw.com

Jennifer K. Van Zant (admitted *pro hac vice*)
NC State Bar No. 21280
Andrew L. Rodenbough (admitted *pro hac vice*)
NC State Bar No. 46364
Ryan C. Fairchild (admitted *pro hac vice*)
N.C. State Bar No. 47729
Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
230 North Elm Street
2000 Renaissance Plaza
Greensboro, NC 27401
Telephone: (336) 373-8850
Facsimile: (336) 378-1001
jvanzant@brookspierce.com
arodenbough@brookspierce.com
rfairchild@brookspierce.com

*Attorneys for Defendant*

11

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed via the Court's

CM/ECF system, which will send electronic notification to all counsel of record.


This the 30th day of July, 2021.

/s/ Beth A. Bryan
Beth A. Bryan