UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SARA HAWES<br><br>            Plaintiff<br><br>*v.*<br><br>MACY'S WEST STORES, INC.<br><br>            Defendant | Case No. 1:17-cv-00754<br><br>Judge Timothy S. Black |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

# INTRODUCTION

Plaintiff Sara Hawes purchased bed sheets from Defendant Macy's West Stores, Inc., at one of its California retail locations.[1] Macy's represented on the packaging and labeling of the sheets that they had a 900 thread count.[2] Bed sheet thread counts are a primary and important way in which a retailer communicates quality to consumers.[3] And a difference in the thread count between two sheets that otherwise have the same characteristics has a direct influence on pricing: the higher the count, the higher the price.[4] When Hawes found the sheets to have a lower-quality feel than she expected a 900-count sheet to have, she contacted a consumer-rights attorney to investigate.[5] Expert testing of the sheets found the thread count was actually 227.[6]

Hawes brought this case—and did so on behalf of a proposed class of California consumers[7]—to seek relief arising from Macy's thread-count misrepresentations. After an extensive pleadings battle under Civil Rule 12, the Court approved an operative

---

[1] *See* Exhibit 1, Photographs of the Packaging, Receipt, and Label of the Sheets Purchased by Ms. Hawes (Hawes_OH_001 to Hawes_OH_003). Ms. Hawes authenticated the photos during her deposition. *See* Exhibit 2, Deposition of Sara Hawes, pp. 132-133.

[2] *See* Ex. 1, Photos.

[3] *See* Ex. 2, Hawes Depo. at 49, 51 ("I have been made to believe … through marketing and advertising … if sheets have a higher thread count, they are a higher quality sheet…. The knowledge that most people have that the higher the thread count, the better the sheet."); *see also* ECF #64, Third Amended Complaint, ¶¶20-24 (collecting publicly available surveys regarding the relationship between thread counts and perceptions of quality); *accord* ECF #84, Motion for Class Certification, Appendix (collecting publicly available information regarding consumer use of thread count as a synecdoche for quality); *see also* ECF #84-1, Report of Expert Sean Cormier, p. 4 (the association between thread count and quality is well known in the industry and by the public). Mr. Cormier adopted the opinions in his report during his deposition. *See generally* ECF #115-2, Deposition of Sean Cormier.

[4] *See* Exhibit 3, Rule 30(b)(5) Deposition of Macy's West Stores, Inc. by Designee Danielle Swift, p. 57 (where two sheets have otherwise identical characteristics—weave, size, color, etc.—the one with a higher thread count will command a higher price); *accord* Exhibit 4, Deposition of Sal Ciniglio, pp. 31-33, 76.

[5] *See* Ex. 2, Hawes Depo. at 79.

[6] *See* ECF #84-1, Cormier Report at 17; *accord* ECF #115-1, Rebuttal Report of Expert Sean Cormier.

[7] *See generally* ECF #84, Certification Motion (seeking to represent a class of California consumers who purchased CVC sheets from Macy's retail locations).

complaint with eight causes of action: three under the California Unfair Competition Law; one under the California Business & Professions Code; one under the California Consumer Legal Remedies Act; and three under the common law (express warranty, fraud, and unjust enrichment.[8] Macy's recently filed a *Motion for Summary Judgment* (ECF #117) that again seeks dismissal of certain claims under pleading rules: the prayers for equitable (pp. 11-13) and injunctive relief (pp. 29-31), and the unjust enrichment claim (p. 21). We address these issues in **Section II** of the **Argument** below.

Macy's also deploys what it calls a garden-variety "innocent retailer defense." (*Id*. at 4, 14-20.) Macy's claims that it did not participate in, have control over, adopt, or even know about the thread-count misrepresentations it made on the packaging and labels of the bed sheets it sold in its retail locations. (*Id*. at 14-15, 18-20.) These assertions are so entirely contrary to the record. What the evidence shows is this:

- Macy's knows that an international industry-governing standard, ASTM 3775, controls how to count threads in the Chief Value Cotton (CVC) sheets.

- Macy's bed sheets are supplied by an importer called AQ Textiles, which is led by Larry Queen, who quickly grew the business by promising high-thread-count sheets at prices which *somehow* undercut his competitors.

- Queen long ago disclosed to Macy's that he had developed an alternative approach on how to count threads in CVC sheets, but that it had not been accepted by the ASTM, despite his lobbying efforts.

- AQ repeatedly provided Macy's with thread-count testing reports which confirmed that the counting method was Queen's own and not the ASTM-standard method.

- Macy's personnel worked closely with AQ personnel in developing the packaging and labels of the sheets, with Macy's ultimately responsible for the representations on them.

---

[8] *See* ECF #64, Third Amended Complaint at Counts Two through Nine. Former Plaintiff Amy Hill had brought an additional claim under Missouri law on behalf of herself and a proposed Missouri class; those claims have all been voluntarily dismissed. *See* ECF #72, Stipulation for Dismissal by Amy Hill.

2

- Despite Macy's actual and constructive knowledge that the thread-count representations it was making were inconsistent with the ASTM standard—and instead dramatically inflated the counts using Queen's alternative counting method—Macy's continued to defraud its customers.

We set forth this evidence in further detail in the **Statement of Relevant Facts** below; and we address the legal significance of these facts in **Section III** of our **Argument**.

Macy's also argues that Hawes has not put forth any evidence of damages. (ECF #117 at 22-28.) As an initial matter, it is Macy's burden at the summary judgment stage to show that there are no damages, which it fails to do. And most of Macy's argument is about qualities unrelated to objective thread-count misrepresentations, like the subjective softness of the sheets (pp. 28-29), which are not at all relevant to the plaintiff's claims that she (and class members) *overpaid*. We address Macy's straw-man arguments and set forth the simple point-of-sale measure of damages (the difference in price between the sheets as sold with the inflated counts and the sheets as they would have been sold with the true counts) in **Section IV** of the **Argument** below.

In sum, much of Macy's motion is a retread of ground this Court has already covered, and the rest is based on a presentation of facts that is so at odds with the record that it is a wonder Macy's put it down on paper. When this Court reviews the actual evidence gathered in discovery, it should find (at a minimum) that genuine issues of material fact remain for trial such that summary judgment is manifestly inappropriate under Civil Rule 56, and therefore the defendant's motion should be promptly denied.

## STATEMENT OF THE CASE

The limited value in reciting the procedural history of this case is to show that (**a**) the Court has already heard most of the issues raised by the defendant's motion; (**b**) Macy's has had ample opportunity to address the pending claims; and (**c**) Macy's pull-out-all-the-stops approach to litigating this straightforward consumer fraud case seeks to needlessly complicate a simple question for trial—*what is the proper method for counting threads*—and misdirect the Court from that remaining genuine issue of material fact.

3

This case is almost four years old. (ECF #1.) Macy's moved to dismiss the original complaint (ECF #17) and the Court dismissed two claims (one under the Magnuson-Moss Act and the other for a breach of the implied warranty of merchantability) but denied the motion as to the consumer fraud claims (ECF #39). Macy's sought to certify the Court's decision for interlocutory review (ECF #43), which was denied (ECF #54). Hawes filed an amended complaint (ECF #44), which Macy's moved to strike (ECF #48), and Hawes withdrew (ECF #50). Hawes then received leave to file an amended complaint (ECF #54), and Macy's moved to strike one of its counts (ECF #57). The Court granted that motion and ordered Hawes to file an amended complaint clarifying her CLRA claim (ECF #62). Thus, this Court has had ample opportunity to hear Macy's arguments about the pleadings, and has determined which causes of action stated claims. Nothing in the facts developed during years of discovery should cause this Court to revisit these prior rulings.

## STATEMENT OF RELEVANT FACTS

Like the statements of facts in its opposition to class certification and various expert-related filings, Macy's *Statement of Facts* here reads like it was written by someone who did not review any of the key documents or attend a single deposition in this case. It is a remarkable departure from the record, which stretches even the generous bounds of zealous advocacy. Rather than point out every mistake, obfuscation, equivocation, and outright misstatement, we will simply set forth the critical facts actually in the record which prove the plaintiff's case is one that should proceed to trial.

**I.     Macy's Knew About Queen's Alternative Thread Counts for Years and Put the Non-Standard Counts on its Packaging and Labels.**

    **A.     Queen Uses an Improper Counting Method to Grow His Market Share.**

Over 12 years ago, Queen founded AQ to purchase cotton-polyester blend (CVC) sheets from manufacturers ("mills") in India owned by his co-adventurers, which AQ

would supply to retailers, like Macy's.[9] Queen quickly grew his business by supplying Macy's and other retailers with sheets that were purported to have very high thread counts at unusually low prices. Queen accomplished this by developing his own interpretation of the industry-governing standard for counting threads, ASTM 3775, and his own methodology for how to perform the counting.

ASTM 3775 is not complicated: take a one-inch square of the fabric and, using a lens, count the number of threads ("yarns") running on the horizontal direction and add the number of threads running in the vertical direction. Cotton yarns are made of up small fibers ("staple"), and polyester yarns are made up of small fibers ("strands"), but these fibers are not counted—only the yarns are counted under the industry standard.

Queen, however, interprets ASTM 3775 as permitting the counting of the individual, almost impossibly thin polyester strands as *bona fide* yarns themselves.[10] And he has his own methodology for how to go about counting them by pulling the yarns apart to separate the strands. (*Id.*) Queen's interpretation of the standard is wrong[11]—and, despite his lobbying efforts,[12] the ASTM Committee rejected his proposal to "clarify" the standard[13]–and his methodology has not been generally accepted.

### B. In a January 2016 Meeting with Macy's, Queen Explained His Alternative Counting Method.

Sal Ciniglio used to work for Macy's as its bed sheets "buyer"—the most important person related to AQ's supplying of CVC sheets to Macy's.[14] In a January 2016 meeting

---

[9] *See* Exhibit 5, Rule 30(b)(6) Deposition of AQ Textiles through Designee Larry Queen, pp. 10-11.

[10] *Id.* at 58-59.

[11] *See* ECF #84-1, Cormier Report at 13-14, 18.

[12] *See* Ex. 5, Queen Depo. at 48.

[13] *Id.* at 62.

[14] *See* Ex. 5, Swift Depo at 26. Danielle Swift is now the Macy's "buyer"; she was designed by Macy's as its corporate designee on all topics in this case.

5

between Macy's Ciniglio and AQ's Queen, Queen advised that he had made a "business decision" to have CVC sheets constructed with "separable" yarns, by which he meant the polyester threads would be composed of many strands.[15] Queen further advised that he would count these strands as *bona fide* threads for purposes of determining the sheets' thread counts that would be represented to consumers on the sheets' labeling and packaging.[16] And Queen agreed that AQ would indemnify Macy's for any issues arising from that decision. (*Id.*)

Thus, by January 2016—at the latest—Macy's had clear and unequivocal actual knowledge that AQ would be providing CVC sheet thread counts based on Queen's alternative interpretation of ASTM 3775, and that the counts represented to consumers would be necessarily inflated by a multiple of the number of strands per polyester thread.

### C. Macy's Was Kept Up-to-Date on Queen's Failed Efforts to Change the ASTM Standard to His Methodology.

Throughout 2017 and 2018, Queen lobbied the ASTM to change Standard 3775 to embrace his alternative interpretation and methodology. He made Macy's aware of his failed efforts.[17] Indeed, Queen provided Macy's with a narrative of his efforts, a timeline of the committee proceedings, and the PowerPoint presentation he was making because "Macy's had concern because of what was going on in the market with regard to thread counts."[18] Industry leaders, such as the AATC organization, had been describing Queen's efforts to count separable polyester strands as though they were individual yarns (threads) as an "ongoing saga," actively questioning whether Queen's methodology would be "deceptive" from the "consumer perspective."[19] By October 2018, Queen was arguing

---

[15] *See* Ex. 4, Ciniglio Depo. Exhibit 10.

[16] *See* Ex. 4, Ciniglio Depo. at 64-71.

[17] *See* Ex. 5, Queen Depo. at 64.

[18] *Id.* at 100-101.

[19] *See* Ex. 5, Queen Depo. Exhibit 5.

6

to Swift that, "The current [ASTM] methodology is outdated.... I made a presentation proposing the way sheets should be counted... my methodology."[20] AQ and Macy's then held a meeting to discuss it further, in fact, they had "many meetings."[21]

Thus, Macy's had actual knowledge of the Queen-ASTM "saga," that Queen's methods were alternative, and that his interpretation had been rejected by the ASTM, and therefore his counts were grossly inflated. Moreover, Macy's had constructive knowledge, given its involvement in the bed sheet industry, that others in the industry were concerned about Queen's thread-counting methods would be deceptive to consumers.

### D.  AQ Provided Macy's with Spec Sheets and Testing Reports that Confirmed the Use of Queen's Alternative Methods.

"Macy's requires their suppliers to fill our spec[ification] sheets for every product that they buy."[22] The spec sheets AQ provided to Macy's include the warp and weft information, the number of polyester strands (sometimes called "picks") per yarn, and the purported thread count.[23] Thus, Macy's has the construction information from which thread counts are determined, which it could have compared to AQ's stated thread counts, which would have confirmed that the counts were not in compliance with ASTM 3775.

AQ also provided Macy's test reports.[24] The examples of these testing reports that were produced in this litigation show that the labs had been instructed to count the tiny, individual polyester strands, which the labs noted was "not required by ASTM 3775 test method."[25] A different lab said it could not provide a standard thread count because of a "customer requirement" to count "each individual separate thread per pick [*i.e.,*] strands

---

[20] *See* Ex. 53, Swift Depo. at 75, 77 & Exhibits 16 & 17.

[21] *Id.* at 77.

[22] *See* Ex. 5, Queen Depo. at 26.

[23] *Id.* at 28.

[24] *Id.* at 69; *accord* Ex. 3, Swift Depo. at 34.

[25] *See* Ex. 5, Queen Depo. Exhibit 13.

7

in each pick."²⁶  Another lab wrote that defining the "intermingled / co-mingled / weft multiple insertions" as separate threads was "a Macy's policy ... apply just for Macy's not for every other client."²⁷  Emails note: "Generally we can count the multiple insertions per direction but will not add them into the thread count unless client wants ... Macy's has this requirement to take into consideration of multiple insertions into thread count."²⁸

Thus, Macy's had actual knowledge that the labs were using Queen's alternative strand-counting method, which was not appropriate under ASTM 3775.  The labs refer to the alternative counting method as a "customer requirement," "a Macy's policy," and a "Macy's [ ] requirement."  This Court must infer, at this stage of proceedings, that Macy's itself was actively engaged with AQ in imposing the alternative counting method on the labs that were testing Macy's CVC sheets.

### E. Customers Complained to Macy's about the CVC Sheets.

Macy's received numerous complaints about the quality of the purported high thread count sheets.²⁹  Given what Macy's already knew—that Queen had made a "business decision" to supply CVC sheets constructed using multiple tiny polyester strands together to form a yarn, but to pass them off as high thread count products—Macy's should reasonably have associated customers' frustrated expectations about the sheets to arise from the misrepresentations about the sheets' thread counts.

### F. Macy's Approves All Thread Count Representations.

Macy's "approves or disapproves" the thread count representations on packaging in a "collaborative" process between its own team and AQ's team.³⁰  Swift testified that

---

²⁶ *Id.* at Exhibit 12

²⁷ *Id.* at Exhibit 3.

²⁸ *Id.* at Exhibit 4.

²⁹ *See* Ex. 4, Ciniglio Depo. Exhibits 1-7.

³⁰ *See* Ex. 5, Queen Depo. at 43-44.

"AQ and Macy's work together" to determine thread counts to ascribe to the sheets; but, ultimately, it is Macy's that must "bless them."[31] Thus, despite years of knowledge—both actual and constructive—that AQ was interpreting ASTM 3775 contrary to industry standards, and was using Queen's alternative counting method that multiplied the polyester yarn-count by the number of strands per such yarn, Macy's adopted those counts, working with AQ to label the sheets—and then advertising them under Macy's authority—with the vastly inflated thread counts.

## II. Hawes Suffered Economic Harm When She Paid More for the Sheets Than She Would Have Paid If the Thread Count Had Been Accurate.

Ms. Hawes testified that she would not have purchased the sheets from Macy's at the price offered if she had known that the true thread count was less than what Macy's had represented it to be.[32] Indeed, Macy's and AQ witnesses agreed that Macy's charges a higher price for a higher-thread-count sheet, assuming all other characteristics—size, color, weave, blend, etc.—are held constant.[33] Hawes's experts agree.[34] And Macy's own internal pricing data—as well as the prices offered by Macy's competitors—demonstrates that the higher the thread count, the higher the list price. (*Id.*)

## ARGUMENT

## I. Macy's Fails to Satisfy the Standard for Entering Summary Judgment.

Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party has proven that it is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A defendant seeking summary judgment bears the initial burden

---

[31] *See* Ex. 3, Swift Depo. at 33 ("We always discuss a thread count.")

[32] *See* Ex. 2, Hawes Depo. at 87.

[33] *See* Ex. 3, Swift Depo. at 57; *accord* Ex. 4, Ciniglio Depo. at 31-32, 76.

[34] *See* ECF #84-1, Cormier Report at 4; *accord* ECF #84-4, Report of Expert Stefan Boedeker, ¶¶71-78. Mr. Boedeker adopted the opinions in his report throughout his deposition. *See generally* Exhibit 6, Deposition of Stefan Boedeker; *accord* ECF #114-1, Boedeker Rebuttal Report.

9

of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). It is only if and after this burden is met that a burden is then placed on the plaintiff to present some specific facts showing there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In making these determinations, all evidence must be viewed in a light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Macy's motion does not satisfy these standards, nor does it even try to do so. Instead, it points to an issue in the case and says, more or less, 'Plaintiff hasn't proven her case or doesn't have enough evidence of this or that." Thus, Macy's has failed to show that there are indisputable facts on which this Court could grant it judgment as a matter of law. Indeed, Macy's motion is insufficient to even shift the burden to make Hawes present specific facts on which there is a genuine issue for trial. That said, Hawes has easily made such a showing here.

## II. Macy's Pleadings-Based Argument Should Be Rejected.

Macy's argues (ECF #117-1 at 13 and then again at 21-22 and a third time from 29-31) that, because Hawes brings breach of warranty and fraud claims which may result in money damages (*i.e.,* an "adequate remedy at law"), that her prayers for equitable, injunctive, and restitutionary relief under her California statutory and unjust enrichment claims must be "dismissed." This was precisely the argument made in a similar, recent case, *Francis v. GM,* 504 F. Supp. 3d 659, 694 (E.D. Mich. 2020), which also included California statutory claims brought within the Sixth Circuit. There, the district court said:

> GM contends that "the plaintiffs cannot proceed on an unjust enrichment theory where their consumer fraud and breach of warranty claims offer them an adequate remedy at law for any losses produced by the alleged defect." However, unjust enrichment claims routinely are allowed to proceed when pleaded in the alternative to other viable claims for relief. "Defendants contend that equitable relief such as unjust enrichment will not be granted where an adequate remedy at law exists," but the plaintiffs "are clearly permitted to plead alternative theories of recovery," and "consequently, it would be premature at this stage of the proceedings to dismiss ... the unjust enrichment claims on this basis."

10

(Internal citations omitted.) This Court should hold the same: Hawes will have to choose a route of recovery under her alternative claims *at trial*, but not before.

### III. The Record Does Not Support Macy's "Innocent Retailer Defense" and Instead Demonstrates a Genuine Issue of Material Fact Remains for Trial.

Macy's says (ECF #117-1 at 14-15) that Hawes's statutory causes of action require her to show that Macy's "somehow participated in, controlled, or adopted the deceptive advertising" at issue in this case and that her common law causes of action require her to show that Macy's "made, controlled, or adopted thread-count representations." And Macy's says (*Id.* at 18-21) that it did not have actual or constructive knowledge of the false nature of its thread-count representations.

As **Sections I(B)-(F)** of the **Statement of Relevant Facts** above amply demonstrate, Macy's participated or adopted the thread-count misrepresentations, which it knew or had reason to know were false, because it (1) knew that Queen was using an alternative interpretation of ASTM 3775 and his own methodology of counting the strands in a single polyester yarn; (2) knew that the ASTM Committee had rejected Queen's interpretation and methodology, despite his long-running lobbying efforts; (3) received spec sheets and testing reports that showed the use of the improper counting method was resulting in wildly inflated thread counts; (4) was aware that the industry was questioning the alternative counting method as deceptive to consumers; and yet (5) Macy's worked in collaboration with AQ to develop marketing, packaging, and labels for the sheets that emphasized thread counts, and over which Macy's had ultimate control, "blessing" the counts as its own—backed by the Macy's brand and good will.

There is no evidence that Queen secretly adjusted the thread counts, lied about how the sheets were constructed, prevaricated about his interpretation, equivocated about his methodology, hid his efforts to lobby the ASTM Committee, or that AQ doctored the spec sheets or lab reports. To the contrary, Queen was an out-spoken champion of his own novel interpretation of ASTM 3775, his own method of counting polyester strands as

11

though they were real free-standing yarns, and his efforts to lobby the industry to come around to his way of thinking. And AQ produced spec sheets that identified the multi-strand polyester yarns and testing reports that counted the strands—and said those counts were not compliant with the ASTM Standard but were instead at the request of the "customer," including Macy's itself.

Moreover, Queen had discussions, meetings, and correspondence—dating well back to January 2016—advising Macy's of his "business decision" to use multi-strand polyester yarn construction and to count those strands as individual yarns—and that he would indemnify Macy's if there were "any issues" that resulted from that approach, which was an obvious red flag that this conduct was (at a minimum) highly questionable and (when viewed in a light most favorable to the plaintiff) admittedly deceptive. Macy's went along with plan and was able to obtain from AQ relatively cheap CVC sheets that it could market at very high thread counts—with price-premiums based on those counts.

Thus, there is ample evidence that Macy's knew, for years, exactly what Queen was doing and Macy's went along with it, endorsed it, adopted it, and participated in it—all for its own benefit—and at the expense of consumers like Sara Hawes. Reasonable jurors could find in her favor on this question, such that there remains a genuine issue of material fact for trial such that summary judgment would be manifestly inappropriate.

## IV. Hawes Has Set Forth Sufficient Evidence of Injury at this Stage of the Litigation.

### A. Macy's Utterly Fails to Carry Its Summary Judgment Burden on Its Damages-Related Arguments.

Under Rule 56, Macy's must meet an initial burden to show that there is no genuine issue of material fact on the question of damages. To do that here, Macy's would have to show that it would've listed the Somerset sheets Hawes purchased *at the same price* had they been manufactured, advertised, labeled, and sold with *only one change* in the product specifications: a lower thread count. Macy's cannot show this: it does not, could

not, and cannot show that it would have sold a Somerset sheet with a 900-thread count and an *otherwise identical* Somerset sheet with a 250-thread count for the same price.

This simple fact is dispositive of Macy's damages arguments. So Macy's tries to avoid it by, instead and improperly, asking the Court to impermissibly place the initial burden on Hawes to prove that there are damages. But that's now how summary judgment works. In any event, there *is* ample evidence of plausible damages in the record, such that Macy's is double-wrong.

### B. Genuine Issues of Fact Obviously Remain on Damages Questions.

Macy's makes a half-hearted attempt (ECF #117-1 at 17-18) to argue that Hawes has not shown sufficient evidence that her sheets actually had lower thread counts than Macy's had represented them to have. As an initial matter, there is no dispute that the Queen interpretation of ASTM 3775 and AQ method of counting the strands that make up polyester yarns *will necessarily* result in a higher count. Since there is no dispute that the Queen interpretation and method was applied to the counts of the sheets in this case, including those purchased by Hawes, there is no question but that the sheets had an inflated count as sold by Macy's and would have to have been marked with a much lower count had they been properly counted under the ASTM 3775 industry interpretation and standard methodology.

The rest of Macy's argument is a regurgitated attack on Hawes's expert, Sean Cormier, that Macy's counsel has made in other expert-related motion practice. We do not waste more of the Court's time responding to them at length here. In short, Mr. Cormier is beyond-qualified to testify about how CVC sheets are constructed, how the ASTM 3775 method applies to them, what the actual thread counts under that method are for sheets in this case, and how Queen's method departs from the industry standard and results in much higher thread-count representations. Mr. Cormier did conduct an

13

ASTM 3775 thread-count test of Ms. Hawes's sheets and found that the true count was 227, not the 900-count Macy's claimed.

The balance of Macy's brief (pp. 22-29) is an attack on Hawes's class damages expert, Stefan Boedeker, coupled with a misguided series of arguments that Hawes did not suffer any damages from the thread-count misrepresentation. As for Boedeker, once again, Macy's counsel are re-briefing expert-related motions that we've dealt with in other filings. In short, Boedeker is a well-credentialed expert capable of conducting different economic analyses of products and markets—in this instance, a regression analysis or a conjoint analysis—to determine the price premiums consumers paid as a result of a misrepresentation by a retailer about an objective characteristic of a household good like a bed sheet.

Moreover, the traditional measure of damages in consumer fraud cases, which is what Hawes seeks here, is the difference between the price paid and the price which would have been paid absent the deception. *See Broomfield v. Craft Brew All., Inc.,* 2018 WL 4952519, at *16-17 (N.D. Cal. Sept. 25, 2018); *accord Brazil v. Dole Packaged Foods, LLC,* 2014 WL 2466559, at *15 (N.D. Cal. May 30, 2014). As set forth in **Section II** of the **Statement of Relevant Facts** above, there is sufficient evidence that Hawes suffered an economic damage—in the form of a price premium—to sustain her case at the summary-judgment stage. First, she herself testified she would not have paid out-of-pocket the same price for the sheets if she had known the thread count was less than what was represented. Second, all the witnesses and experts in this case agree that a lower thread count sheet commands a lower price. And third, Macy's own pricing data supports this inference.

## **CONCLUSION**

Defendant Macy's *Motion for Summary Judgment* (ECF #117) should be denied and Plaintiff Hawes's claims should proceed to trial. This Court should also grant the

pending *Motion for Class Certification* (ECF #84) so that the claims can be determined on a class-wide basis in a single adjudication for all California consumers.

                                                Respectfully submitted,

s/ Drew Legando
Drew Legando (0082409)
Edward S. Jerse (0013155)
MERRIMAN LEGANDO WILLIAMS & KLANG, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-9000
F. (216) 522-9007
E. drew@merrimanlegal.com
   edjerse@merrimanlegal.com

Charles Schaffer
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelpha, PA 19106
T. (877) 882-1011
E. cschaffer@lfsblaw.com

Charles LaDuca
Brendan S. Thompson
David L. Black
CUNEO GILBERT & LADUCA LLP
4725 Wisconsin Ave., NW, Suite 200
Washington, DC 20016
T. (202) 789-3960
E. charles@cuneolaw.com
   brendant@cuneolaw.com
   dblack@cuneolaw.com

Stuart L. Cochran
STECKLER GRESHAM COCHRAN PLLC
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230
T. (972) 387-4040
E. stuart@stecklerlaw.com

Michael McShane
Ling Y. Kuang
Kurt D. Kessler
AUDET & PARTNERS
711 Van Ness Ave., Suite 500

San Francisco, CA 94102
T. (715) 568-2555
E. mmcshane@audetlaw.com
   lkuang@audetlaw.com
   kkessler@audetlaw.com

*Counsel for Plaintiff Hawes & the Proposed Class*

## CERTIFICATE OF SERVICE

This *opposition brief* was filed on the Court's ECF System, through which it will be served on counsel of record, on August 23, 2021.

s/ Drew Legando
Drew Legando (0084209)