|  |  |
|---|---|
| SARA HAWES,<br><br>         Plaintiff,<br>         v.<br><br>MACY'S WEST STORES, INC.,<br><br>         Defendant. | Civil Action: 1:17-CV-00754<br><br>Judge Timothy S. Black |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Macy's West Stores, Inc. ("Defendant"), through undersigned counsel, respectfully submits the following Reply in Support of its Motion for Summary Judgment.

## <u>INTRODUCTION</u>

In its initial Motion and Memorandum, Defendant explained the numerous reasons why each of Plaintiff's individual claims against Defendant must fail.[1]  Defendant supported its arguments with a Statement of Proposed Undisputed Facts—as required by this Court's Standing Order—that detailed how the factual record before the Court fails to support, and frequently contradicts, the conclusory statements and faulty assumptions on which Plaintiff's claims rest.

In her Opposition, Plaintiff proclaims Defendant's factual record to be "a presentation of facts that is so at odds with the record that it is a wonder [Defendant] put it down on paper" (Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Opp'n"), ECF No. 124, at 3) and "a remarkable departure

---

[1] In the Opposition, Plaintiff frequently conflates her own individual claims with those of the class. Because no class has been certified and Defendant moved for summary judgment as to Plaintiff's individual claims, only those individual claims are at issue in the Motion, not class claims.  Plaintiff's individual claims must be supported by specific evidence relevant to the actual sheets <u>she</u> purchased.

from the record, which stretches even the generous bounds of zealous advocacy" (Opp'n 4). This rhetoric is meant to distract from the fact that Plaintiff cannot point to any evidence in the record that contradicts the proposed undisputed facts submitted by Defendant. In fact, Plaintiff does not even try; her Opposition conspicuously lacks the Response to Proposed Undisputed Facts required by this Court's Standing Order. That omission alone is sufficient to accept each of Defendant's proposed undisputed facts as unopposed and grant Defendant's Motion.

Even ignoring that defect, Plaintiff's Opposition falls well short of establishing that she can carry her burden of proof on any claims. Her arguments rely on misrepresentations of testimony, unsupported assertions of fact, and irrelevant documents that have nothing to do with thread count and/or are dated well after the sheet purchase on which Plaintiff's claims are premised. It is Plaintiff's burden at summary judgment to come forward with facts substantiating her claims, and she has not done so. Because Plaintiff has failed to demonstrate any genuine disputed of material fact, Defendant's Motion should be granted.

## ARGUMENT

### I. Plaintiff misstates the applicable inquiry and burdens at summary judgment.

Plaintiff argues that Defendant failed to "show that there are indisputable facts on which this Court could grant it judgment as a matter of law," and that as a result the burden did not shift to Plaintiff to prove that there are genuine issues of material fact. Opp'n 10. Plaintiff's interpretation of the summary judgment standard is incorrect. The Supreme Court long ago made clear, in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), that a moving party who does not bear the burden of proof at trial need not come forward with evidence <u>disproving</u> the nonmovant's claim to meet its summary judgment burden. Instead, the movant only "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. Consistent with

this holding, the current text of Rule 56 provides that one of the ways a moving party may support its assertions is by showing "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

Relying on *Celotex*, the Sixth Circuit recently confirmed that a defendant who seeks summary judgment is not required to "come forward with evidence affirmatively negating the disputed element" of a plaintiff's claim. *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020) (citing *Celotex*, 477 U.S. at 323). This means summary judgment is appropriate where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," <u>regardless</u> of whether or not they are the moving party. *Id.* (quoting *Celotex*, 477 U.S. at 322); *see also Bosley v. Singleton*, 237 F.R.D. 401, 403 (S.D. Ohio 2005) ("The movant may [meet its burden] by merely identifying that the nonmoving party lacks evidence to support an essential element of its case.").

Defendant's Motion for Summary Judgment satisfied the standards set forth in *Celotex*, *Viet*, and Rule 56. Defendant supported its motion with a detailed Statement of Proposed Undisputed Facts identifying both (i) record evidence negating elements of Plaintiff's claims, and (ii) elements of Plaintiff's claims for which there is no supporting evidence at all in the record and that Plaintiff therefore cannot prove. Plaintiff's burden in responding to Defendant's Motion is clear:

> Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, <u>even if the moving party has not submitted evidence to negate the existence of that material fact</u>.

*Bosley*, 237 F.R.D. at 401 (emphasis added) (citing *Celotex*); *see also Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (holding that plaintiff defending against motion for summary judgment

"must present evidence on which the trier of fact could find for the plaintiff" with respect to each element of her claims). Plaintiff's improper attempt to heighten Defendant's burden while ignoring her own must be rejected.

**II.    Plaintiff does not, and cannot, contest the undisputed facts submitted by Defendant.**

In its initial Memorandum and Statement of Proposed Undisputed Facts, Defendant identified the numerous factual issues for which there is no genuine dispute of material fact. Plaintiff's Opposition falls short of her burden of establishing disputed facts in several ways.

**a.    Plaintiff's failure to submit a response to Defendant's Statement of Proposed Undisputed Facts means the Court accepts those facts as true.**

Paragraph V(2)(a) of this Court's Standing Order for Cincinnati Civil Procedures ("Civil Procedure Order")[2] provides, in relevant part:

> Counsel must attach as the first attachment to every opening brief in support of a motion for summary judgment a document entitled "Proposed Undisputed Facts," which sets forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried.

Paragraph A(1) of the Court's separate Standing Order Governing Civil Motions for Summary Judgment (the "Summary Judgment Order")[3] states the same requirement. In compliance with these standing orders, Defendant attached such a statement to its Memorandum supporting its motion for summary judgment.  That statement set forth, in 69 numbered paragraphs, the facts

---

[2] This standing order is available at the following link:
https://www.ohsd.uscourts.gov/sites/ohsd/files//civil%20procedures%20in%20cincinnati%2011-13%20%282%29.pdf.
[3] This standing order is available at the following link:
https://www.ohsd.uscourts.gov/sites/ohsd/files/forms/standing%20order%20governing%20civil%20motions%20for%20summary%20judgment.pdf.

Defendant contends are undisputed, including a number of areas in which Plaintiff cannot point to any supporting facts whatsoever.

The Civil Procedure Order subsequently provides, in Paragraph V(2)(b):

> Counsel must attach to every brief in opposition to a motion for judgment a document entitled "Response to Proposed Undisputed Facts," which states, in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's statement of Proposed Undisputed Facts, whether each of the facts asserted by the moving party is admitted or denied. If denied, the denial must be supported with a citation to contrary evidence that would be admissible at trial, and such evidence must be filed and served with the Response to Proposed Undisputed Facts.

The same paragraph also requires that the Response include a separate section called "Disputed Issues of Material Fact" with "a list of each issue of material fact the opponent contends must be tried." Paragraph A(2) of the Summary Judgment Order sets forth the same requirements.

Despite those requirements, Plaintiffs did not attach any "Response to Proposed Undisputed Facts" to their Opposition. In fact, Plaintiff disclaimed the obligation to respond to the factual assertions made by Defendant in its Memorandum and Statement of Proposed Undisputed Facts. *See* Opp'n 4. Plaintiff and her counsel cannot unilaterally relieve themselves of the obligation to respond to Defendant's proposed undisputed facts.[4] Instead, Paragraph A(1) of the Summary Judgment Order provides that "[a]ll material facts set forth in [the movant's] statement will be deemed admitted unless controverted in the statement required to be filed and served by the opposing party." This Court has previously imposed that exact consequence where

---

[4] Nor can Plaintiff's counsel plead ignorance of the requirements for dispositive motions stated in this Court's standing orders. Indeed, in a recent filing, Plaintiff contended (albeit incorrectly) that the terms of the Civil Procedure Order relieve her of the obligation to comply with the deadlines for expert disclosures set forth in the Scheduling Orders entered by the Court in this case. *See* Opp'n to Mots. to Strike Rebuttal Reports, ECF No. 128, at 1-3. Additionally, the Court directed the parties' attention to the Summary Judgment Order in each of the several calendar orders entered in this case. *See* ECF No. 102 n.1; ECF No. 106 n.1; ECF No. 82 n.1; ECF No. 77 n.1; ECF No. 61 n.1.

the non-movant failed to file and serve a response to the movant's statement. *See Glowka v. Bemis*, No. 3:12-CV-345, 2015 WL 8647702, at *3 n. 6 (S.D. Ohio Dec. 14, 2015).

Given that each of Defendant's proposed undisputed facts must be deemed admitted, Plaintiff cannot carry her burden of proof with respect to any of her claims. The unopposed facts in Defendant's statement include:

- Defendant did not label the Somerset sheets in question or approve the thread-count representations on them (SUF ¶¶ 32-33);

- AQ Textiles confirmed to Defendant that the Somerset sheets complied with all stated specifications (including with respect to thread count) and Defendant made no independent attempt to confirm the thread count (SUF ¶ 34) because it has no involvement in counting or confirming thread count (SUF ¶ 36);

- The independent test reports obtained by Creative Textiles with respect to the Somerset sheets confirm that their thread count was within 5% of their listed thread count (SUF ¶ 40);

- Cormier's supposed thread-count test of the Somerset sheets—the only evidence Plaintiff can arguably forecast in support of the contention that the thread count of her sheets was inflated—was not performed in accordance with the ASTM D3775 standard he says must be followed (SUF ¶¶ 46-47);

- There is no evidence that Defendant or AQ Textiles has asked or instructed testing labs to count anything other than yarns when performing thread-count tests (SUF ¶¶ 50-51); and

- There is no evidence that Defendant communicated with any testing labs regarding the Somerset sheets or was aware of AQ Textiles having any such communications at the time of Plaintiff's sheet purchase (SUF ¶¶ 52-53).

These facts alone—not to mention the dozens of other undisputed facts to which Plaintiff failed to respond—prevent Plaintiff from proving any of her claims. *See generally* Def.'s Mem. in Supp. of Mot. for Summ. J. ("Summ. J. Mem."), ECF No. 117-1, at 14-21. Defendant's Motion for Summary Judgment must be granted in its entirety.

### b. Plaintiff fails to dispute the majority of the undisputed facts in her Opposition.

Although Plaintiff failed to respond to the Statement of Proposed Undisputed Facts, she did include in her Opposition a narration of "the critical facts actually in the record which prove the plaintiff's case is one that should proceed to trial." Opp'n 4-9. Even if the Court credits this portion of the Opposition as a response to the Statement of Proposed Undisputed Facts, it fails to negate or otherwise respond to many of the proposed undisputed facts submitted by Defendant.

For example, in her Opposition, Plaintiff does not dispute any details regarding the manufacturing process of the Somerset sheets she purchased, including that (i) Defendant had no involvement in that process (SUF ¶ 23), (ii) the sheets were ordered and manufactured pursuant to specifications provided by AQ Textiles (SUF ¶¶ 19-20), and (iii) the specifications stated that the sheets would have a thread count of 900 (SUF ¶ 20). Moreover, Plaintiff makes no attempt to dispute critical facts regarding the construction of the Somerset sheets—for example, that the sheets were manufactured pursuant to a process involving multiple simultaneous insertions of 8 to 12 multifilament polyester weft yarns that are not twisted or woven together in any way (SUF ¶¶ 26, 28, 29)—the same process described in U.S. Patent No. 9,131,790. *See* ECF No. 92-1, Ex. 5.

Nor does Plaintiff dispute the basic facts regarding her sheet purchase. *See* SUF ¶¶ 1-14. These facts include that she purchased the sheets without realizing they were made from 55%

cotton and 45% polyester, not 100% cotton.[5]  SUF ¶¶ 11-12. They also include Plaintiff's testimony that she had always purchased 100% cotton sheets before and had intentionally avoided polyester sheets because her skin is sensitive to polyester.  SUF ¶¶ 8-9.  Finally, Plaintiff does not dispute that she did not see any thread-count representations on packaging or advertising other than the statement of 900 thread count on the sheets themselves. SUF ¶¶ 13-14. Indeed, Plaintiff has not provided the Court with <u>any</u> evidence related to advertisements of the sheets, whether by Defendant or anyone else.

Finally, Plaintiff makes no attempt to come forward with evidence disproving Defendant's contentions about the evidence entirely missing from the record. *See* SUF ¶¶ 50-67.  This leaves undisputed the fact that there is no evidence in the record regarding the market value of the sheets and the extent to which such value differed from the price at which the sheets were sold. SUF ¶¶ 54-58.  Nor does Plaintiff contend there is any evidence in the record regarding the softness, durability, longevity, or quality of the sheets in question, or any sheets at all (*see* SUF ¶¶ 59-67). This means that Plaintiff has entirely failed to support her numerous allegations that the sheets' supposed thread-count defects caused them to fall short with respect to those and other performance characteristics. *See* Third Am. Compl. ¶¶ 1, 2, 4, 5, 12, 69, 137, 141, 144.

In sum, even if the Court were to treat the factual narrative in Plaintiff's Opposition— which, as discussed below, suffers from numerous defects—as a response to Defendant's Statement of Proposed Undisputed Facts, a large number of the facts in the Statement would still have to be accepted as true because Plaintiff failed to address them in her Opposition.

---

[5] That is probably because Plaintiff was not primarily focusing on material or thread count, but instead on the fact that the sheets were the only ones in the store that matched the particular color she was looking for. SUF ¶¶ 7-10.

### c. Plaintiff's factual narrative is contrived, misleading, and unsupported by the factual record.

Not only does Plaintiff's factual narrative fail to rebut many of the facts in Defendant's Statement of Proposed Undisputed Facts, the narrative itself is fraught with misstatements and sweeping claims with no basis in the record. Defendant will address each in turn.

First, the Plaintiff begins her factual discussion with the claim that Larry Queen, the president of AQ Textiles, used supposedly inflated thread counts to "quickly [grow] his business" and his "market share." Opp'n 4-5. (This follows a statement in the introduction of the Opposition that Queen "quickly grew the business by promising high-thread-count sheets at prices with *somehow* undercut his competitors." Opp'n 2.) Plaintiff tellingly provides no citation for these statements. There is <u>no evidence whatsoever</u> in the record regarding AQ Textiles' market share, business growth, or pricing compared to its competitors.

Plaintiff follows these statements with the oft-repeated claim that Queen and AQ Textiles interpret the ASTM D3775 standard "as permitting the counting of the individual, almost impossibly thin polyester strands as bona fide yarns themselves." Opp'n 5. As Defendant has pointed out in numerous filings, this is simply not true. Nowhere in the evidence cited in support of this claim—namely, pages 58-59 of Queen's testimony—is there any statement suggesting that "strands" should be counted.[6] Indeed, as shown in the deposition excerpt submitted by Plaintiff,

---

[6] In the Opposition, Plaintiff consistently refers to AQ's supposed method of counting "strands." This is a notable departure from previous filings—such as Plaintiff's Motion for Class Certification—in which Plaintiff claimed that AQ's method was to count "fibers" rather than yarns. Presumably Plaintiff chose to change this terminology both to avoid the inconvenient fact that Queen flatly denied that anyone had suggested counting fibers and to take advantage of the ambiguity inherent in "strand," a term that the textile glossary cited by Plaintiff's own expert defines as <u>either</u> a fiber or yarn. **Ex. 1**, Cormier Tr. 89:6-91:23 & Ex. 4 (excerpt).

Queen <u>directly rejected</u> the idea that AQ Textiles, or anyone else, promotes the counting of anything other than yarns. *See* ECF No. 124-5 (Queen Tr. 62).

Next, Plaintiff claims there is evidence that Defendant was on notice of AQ's supposed "alternative" counting method as early as January 2016, because Queen "explained" the method to Macy's representatives at a meeting that occurred then. Opp'n 5-6. More specifically, Plaintiff claims that Queen announced at the meeting that AQ's sheets would be made with "'separable' yarns, by which [Queen] meant the polyester threads would be composed of many strands" and that "he would count these strands as *bona fide* threads for purposes of determining the sheets' thread count." Opp'n 6.

The sole source for these claims is a single paragraph in an email sent on January 26, 2016 from Lucy Snyder to Sal Ciniglio (and not including Queen at all).[7] *See* ECF No. 124-4 (Ciniglio Tr., Ex. 10). In the email, Snyder paraphrases Queen as saying that products will be made with "separable yarns," but there is <u>nothing</u> in the email that either (i) supports Plaintiff's characterization of what "separable yarns" means or (ii) references, discusses, or even implies <u>any</u> statement regarding thread counting, much less that "strands" would be counted as "*bona fide* threads." This email does not come anywhere close to supporting Plaintiff's overreaching assertion that "by January 2016—at the latest—Macy's had clear and unequivocal actual knowledge that AQ would be providing CVC sheet thread counts based on Queen's alternative interpretation of ASTM [D]3775, and that the counts . . . would be necessarily inflated by a multiple of the number of strands per polyester yarn." *See* Opp'n 6. In fact, there is <u>no evidence in the record</u> that could establish that Queen had discussed the ASTM D3775 standard with <u>any</u>

---

[7] Plaintiff cites pages 64-71 of Ciniglio's deposition as further support (Opp'n 6 n. 16) but only attached page 64 to her filing. The full excerpt cited by Plaintiff is included as an exhibit to this Memorandum for the Court's reference. **Ex. 2**, Ciniglio Tr. 64:1-71:25.

Macy's representative as of January 2016, much less that he had told them he was using an "alternative" thread-count method for his sheets.

Plaintiff next turns her focus to Queen's subsequent efforts to have the ASTM D3775 standard updated to ensure more consistent thread counts of CVC sheets. Opp'n 6-7. Whatever those efforts may have been, there is no evidence that Defendant was involved in them. Instead, there is only an email from October 1, 2018, in which Queen described his efforts to Danielle Swift, a Macy's buyer.[8] *See* ECF No. 124-3 (Swift Tr., Exs. 16-17). The email says nothing about counting "strands" or about AQ using anything other than the ASTM D3775 standard to calculate thread counts for sheets. More importantly, Plaintiff fails to acknowledge that this email was sent more than a year after her sheet purchase in June 2017. In other words, the October 1, 2018 email— whatever it says—is entirely irrelevant to determining whether Defendant had any knowledge of potential thread-count defects in Somerset sheets at the time Plaintiff purchased them.

Plaintiff also discusses "spec sheets" and test reports supposedly received by Defendant as relevant evidence. Opp'n 7-8. Neither provides support for her claims. As for spec sheets, Plaintiff has not actually attached any spec sheets as exhibits; instead, she relies on Queen's testimony about them. Queen's testimony provides only general details about their content and does not include, as Plaintiff baselessly suggests, any reference to the word "strands."[9] In any event, the information referenced by Queen, which did not include any discussion how thread count is

---

[8] Plaintiff also cites Swift's testimony that Swift and Queen had "many meetings," implying that those meetings were about the ASTM D3775 standard. Opp'n 7 (citing Swift Tr. 77). What Plaintiff fails to acknowledge is that on the next page of her transcript, Swift testified that she had never had a meeting with Queen to discuss a "methodology for counting CVC sheets, which is not compliant with the ASTM standard." **Ex. 3** Swift Tr. 77:23-78:2.

[9] Plaintiff also suggests, without support, that the word "pick" is synonymous with "strand" (which, in turn, Plaintiff now suggests in synonymous with the word "fiber."). But "pick" is just another term for weft, or "filling" yarns; in fact, "picks" are exactly what ASTM D3775 says should be counted in a thread-count test. *See generally* ECF No. 117-6, Ex. 7 (ASTM D3775).

calculated, would not in any way have "confirmed [to Defendant] that the [thread] counts were not in compliance with ASTM [D]3775." *See* Opp'n 7.

As for the test reports referenced by Plaintiff, they are similarly irrelevant. Those test reports are not uniform in format and do not say what Plaintiff claims they do. In particular, most of them represent that the independent labs conducting the testing did so in accordance with ASTM D3775,[10] and none of them purport to count "fibers" or any constituent unit less than "yarns" or "picks."[11] *See* ECF No. 124-5 (Queen Tr., Ex. 12). Even if Plaintiff had accurately characterized the reports, they would still be irrelevant to proving her individual claims because (i) none of the test reports Plaintiff submitted were for the Somerset sheets she purchased, and (ii) Plaintiff has not provided any evidence that Defendant ever received any of those test reports, much less received them prior to Plaintiff's sheet purchase.[12] A similar conclusion follows from the unauthenticated internal SGS Laboratories emails submitted by Plaintiff (ECF No. 124-5 (Queen Tr., Exs. 3-4)), one of which is from well after Plaintiff's sheet purchase and neither of which involve representatives of AQ Textiles or Defendant.[13] None of these documents demonstrate, as

---

[10] The test reports from Texanlab Laboratories instead applied an older international standard called ISO 7211-2, (*see* **Ex. 1**, Cormier Tr. 179:11-180:7), not any supposed "alternative" method urged by Queen. Plaintiff has not argued that ISO 7211-2 is an improper test method.

[11] Only two of the test reports submitted by Plaintiff—a June 6, 2017 test report from SGS Laboratories and a January 22, 2016 test report from Intertek—even use the term "strands." The Intertek report makes clear that it is referring to yarns by using the phrase "multifilament strands"—in other words, each "strand" at issue contains multiple fibers, making it a yarn.

[12] Plaintiff suggests that references to "customer" in test reports are to Macy's, but the test reports themselves reference Creative Textiles as the "customer" or "applicant." Moreover, as noted above, there is no evidence they were sent to Macy's.

[13] When asked about these emails, neither Larry Queen nor Danielle Swift had any idea who the members of the conversations were or what they were referencing. **Ex. 4**, Queen Tr. 84:9-86:17; **Ex. 3**, Swift Tr. 87:14-94:16. Plaintiff did not depose any witnesses from SGS about these documents, and Plaintiff has not submitted any testimony from an SGS witness. In any event, there is no evidence that Defendant ever communicated with SGS or any other testing lab about sheets purchased from AQ Textiles, including the sheets purchased by Plaintiff. Nor is there any evidence

Plaintiff claims, that Defendant had "actual knowledge that the labs were using Queen's alternative strand-counting method." *See* Opp'n 8.

Another fact to which Plaintiff assigns great importance is that customers occasionally complained about the sheets supplied by AQ. *See* Opp'n 8. Plaintiff argues that this handful of complaints shows that "Macy's should reasonably have associated customers' frustrated expectations about the sheets to arise from the misrepresentations about the sheets' thread counts." Opp'n 8. But the emails in which the complaints are discussed (*see* ECF No. 124-4 (Ciniglio Tr. Exs. 1-7)) make no reference whatsoever to thread-count problems. Instead, they reference widely varying issues including the sheets feeling "thin," the "seams ripping," suffering from "extreme shrinkage," the sheets becoming "discolored" or having a "poor fit," a "rough or scratchy feel" that the supplier planned to solve by adding a "softening agent," or having a "strong vinegar odor." There is no evidence at all that could be used to compare the number of complaints for the sheets purchased from AQ to complaints for other similar products. More importantly, there is no evidence at all that any of these issues could, or did, result from thread-counting deficiencies.

Finally, Plaintiff claims that Macy's "'approves or disapproves' the thread count representations on packaging," and that "'AQ and Macy's work together' to determine thread counts to ascribe to the sheets." Opp'n 8-9. This mischaracterizes Swift's testimony. Swift did not say that Macy's is involved in "determin[ing] thread count" for any sheets. Instead, she testified that "AQ is responsible for putting all thread counts on the insert" (**Ex. 3**, Swift Tr. 31:20-21), testified that she "would not have any idea" how AQ determines thread count (Swift Tr. 32:15-20), that AQ always provides a thread count for the sheets (Swift Tr. 33:15-20), and that it is AQ

---

that Defendant ordered thread-count test reports from any lab with respect to those sheets. SUF ¶ 52.

Textiles—not Macy's—that answers the question of "what is the thread count" (Swift Tr. 33:22-34:5). As Swift and former Macy's buyer Sal Ciniglio have made clear, the only involvement Macy's has with respect to labeling is the approval of <u>aesthetic</u> elements of product labels. SUF ¶¶ 32-34, Plaintiffs have not identified any product for which Macy's determined or dictated a particular thread count, and has not submitted any evidence at all regarding the development of the label for the Somerset sheets Plaintiff purchased.

In sum, even leaving aside all the ways in which Plaintiff's factual narrative fails to respond to Defendant's proposed undisputed facts, Plaintiff's own factual presentation is misleading, irrelevant, and insufficient for her claims to survive summary judgment.

### III. Plaintiff failed to meet her burden of coming forward with any evidence supporting her claimed damages.

In its initial Memorandum, Defendant explained that Plaintiff's claims must be dismissed to the extent they seek monetary damages because Plaintiff has failed to come forward with evidence sufficient to establish the existence or amount of her damages. In the Opposition, Plaintiff first disclaims that she has the burden to prove the existence of her damages, arguing that it is <u>Defendant</u> that instead bears the burden of affirmatively disproving the existence of damages at the summary judgment stage. Plaintiff does not cite any authority in support of this proposition, which runs directly counter to the principles from *Celotex* and its progeny. *See supra* Section I. As discussed above, because the amount and existence of damages is one of the elements for which Plaintiff bears the burden of proof, Plaintiff (not Defendant) has the burden of identifying evidence sufficient to prove those damages at trial. *See, e.g.*, *Murphy v. Norfolk S. Ry. Co.*, No. 1:13-CV-863, 2015 WL 914922, at *8 (S.D. Ohio Mar. 3, 2015) ("It was Plaintiff's burden on summary judgment to come forward with evidence demonstrating that he incurred these damages after [defendant] showed there was no genuine issue of fact on these claims."); *Prestige Cap. Corp. v.*

*Michigan Gage & Mfg., LLC*, 722 F. Supp. 2d 837, 844–45 (E.D. Mich. 2010) ("Because the plaintiff carries the burden of persuasion on all the issues of its claim—including the issue of damages—it must offer evidence at the summary judgment stage that satisfies that burden.").

Here, there is not—as Plaintiff claims—"ample evidence of plausible damages in the record" (Opp'n 13). Plaintiff does not dispute that the fundamental showing she must make to prove her damages is the existence and amount of a difference between the price she paid for the sheets and the sheets' market value—what she refers to as a "price premium." Nor does she dispute (i) that neither she nor her expert has attempted to calculate a price premium, and (ii) that there no evidence in the record from which such a premium could be calculated. Instead, Plaintiff suggests that she has carried her burden of proof because (1) she has testified that she would not have bought the sheets if she knew their true thread count, and (2) Macy's, on average, charged less for sheets with a lower thread count. Opp'n 9, 14.

Plaintiff provides no legal basis for the first contention—that a plaintiff can carry her burden of proof on damages at summary judgment and trial solely be saying that she, subjectively, would have paid less for something. Tellingly, Plaintiff cites no case in which any court has made a similar holding. As one federal district court has recognized, testimony about what a plaintiff "would have paid," or that the plaintiff "would not have purchased" an item under different circumstances, is not competent to prove damages, because it is "pure speculation." *Magnum Hunter Res. Corp. v. Hall, Kistler & Co., LLP*, No. 5:12-CV-70-JMH-REW, 2013 WL 6019321, at *2 (E.D. Ky. Nov. 13, 2013). That district court based its holding on longstanding Sixth Circuit precedent that "a witness may not testify to what he would have done had the situation been different from what it actually was," because such an answer is "too speculative to be admissible." *Elyria-Lorain Broad. Co. v. Lorain J. Co.*, 298 F.2d 356, 360 (6th Cir. 1961). Accordingly,

Plaintiff's testimony that she would not have purchased the sheets had she known their alleged "true" thread count is irrelevant to establishing her damages.

As for the claim that Macy's charged more, on average, for sheets with higher thread counts, that is also insufficient to establish damages. First, though Plaintiff references Macy's "pricing data" that supports this claim,[14] she has not actually submitted any such data to the Court; instead, she relies on Boedeker's summary of the data in his expert report. *See* Opp'n 9 n. 34. Plaintiff cannot substitute her experts' narration of supposed facts in place of the actual facts themselves. Furthermore, the data Boedeker refers to is not the actual <u>sales</u> price, but the <u>ticket</u> price (which is not what customers actually pay). *See* Boedeker Rep., ECF No. 84-4, ¶ 74 (referring to "ticket price" of sheets). In any event, the fact that Macy's may charge more <u>on average</u> for sheets with higher thread counts in no way establishes (1) that it charged more for <u>the specific sheets Plaintiff purchased</u> because of their thread count,[15] or (2) the <u>actual amount</u> by which Plaintiff was overcharged. Because that information cannot be gleaned from average pricing data alone, Plaintiff falls short of meeting her burden on damages.

The bottom line is that neither Plaintiff nor her expert have even attempted to calculate the "price premium" she supposedly paid; nor have they come forward with any evidence that could be used to calculate it. Because Plaintiff is not entitled to ask the jury to award damages based on

---

[14] Plaintiff also makes passing reference to "the prices offered by Macy's competitors" as support for this proposition. Opp'n 9. Defendant has no idea what supposed evidence Plaintiff is referring to. There is no evidence in the record of any price charged by a Macy's competitor for any product, much less a comparable one.

[15] Indeed, the "informal survey" incorporated into Paragraph 24 of Plaintiff's Third Amended Complaint suggests that the price Plaintiff paid for her sheets—under $70—would be well <u>below</u> the average price for a set of 900-thread-count sheets. Plaintiff has never substantiated that paragraph of her Complaint.

"pure speculation," summary judgment on her claims to the extent they seek monetary damages is appropriate.

## IV. Plaintiff fails to explain why the Court should not dismiss her equitable claims pursuant to *Sonner*.

In its initial Memorandum, Defendant cited the Ninth Circuit's landmark decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), for the proposition that federal courts must apply federal common law to bar equitable claims—including the exact equitable claims Plaintiff asserts here—where the plaintiff fails (or, as is the case here, does not even seek) to establish that she has no adequate remedy at law. Defendant also explained how the holding in *Sonner* was consistent with Sixth Circuit and Supreme Court precedent regarding the application of federal common law. *See* Summ J. Mem. 12-14.

In the Opposition, Plaintiff does not distinguish *Sonner* or contend that its holding is inapplicable here. Instead, Plaintiff points to a solitary decision from a federal district court in Michigan in which the court allowed equitable claims to proceed in the alternative. Opp'n 10-11. Plaintiff ignores, however, that the case on which she relies was decided at the <u>pleadings</u> stage, not at the summary judgment stage. *See Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 694 (E.D. Mich. 2020) (citing and discussing decisions holding that plaintiff may proceed with alternative theories at the <u>pleading</u> stage).

Moreover, the court in *Francis* did not consider *Sonner* or account for its holding; indeed, in finding equitable claims not precluded despite an adequate remedy at law, it cited and relied on a California district court decision that predates, and is inconsistent with, *Sonner*. *See id.* at 692 (citing *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-04384, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018)). As another district court recently realized, the decision in *Aberin* is among those that created a "split of authority" among California district courts that was resolved by *Sonner*. *See*

*In re Subaru Battery Drain Prod. Liab. Litig.*, No. 1:20-CV-03095-JHR-JS, 2021 WL 1207791, at *28 (D.N.J. Mar. 31, 2021) (quoting *Luong v. Subaru of Am., Inc.*, No. 17-CV-03160-YGR, 2018 WL 2047646, at *7 (N.D. Cal. May 2, 2018)); *see also Luong*, 2018 WL 2047646, at *7 n. 6 (referencing "split of authority" among cases, including *Aberin*). This Court should recognize that *Francis*, like *Aberin*, is invalid to the extent it conflicts with *Sonner*, and grant summary judgment in favor of Defendant on each of Plaintiff's equitable claims.

## V.      Defendant is an "innocent retailer."

Finally, Plaintiff contends that Defendant is not entitled to summary judgment pursuant to its "innocent retailer" defense. Plaintiff does not dispute or distinguish any of the authorities cited and relied upon by Defendant. Instead, Plaintiff bases her argument solely on the factual contention that "there is ample evidence that Macy's knew, for years, exactly what Queen was doing and Macy's went along with it, endorsed it, adopted it, and participated in it." Opp'n 12. As explained above, this statement has no support in the factual record. The undisputed facts are that Defendant did not label the sheets and did not determine or verify their thread counts (SUF ¶¶ 32-37) and there is no evidence that, at the time of Plaintiff's sheet purchase, Defendant knew or had any reason to suspect that the thread count of Plaintiff's sheets was inflated. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims.

## CONCLUSION

For the reasons stated above and in Defendant's initial Memorandum, Defendant's Motion for Summary Judgment should be granted.

This the 9ᵗʰ day of September, 2021.

                */s/ Beth A. Bryan*                  
Beth A. Bryan (Ohio Reg. 0082076)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
Telephone: (513) 381-2838
Facsimile: (513) 381-0205
bryan@taftlaw.com

Jennifer K. Van Zant (admitted *pro hac vice*)
NC State Bar No. 21280
Andrew L. Rodenbough (admitted *pro hac vice*)
NC State Bar No. 46364
Ryan C. Fairchild (admitted *pro hac vice*)
N.C. State Bar No. 47729
BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP
230 North Elm Street
2000 Renaissance Plaza
Greensboro, NC 27401
Telephone: (336) 373-8850
Facsimile: (336) 378-1001
jvanzant@brookspierce.com
arodenbough@brookspierce.com
rfairchild@brookspierce.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed via the Court's

CM/ECF system, which will send electronic notification to all counsel of record.

This the 9th day of September, 2021.

/s/ Beth A. Bryan
Beth A. Bryan