UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SARA HAWES, | : | Case No. 1:17-cv-754 |
| Plaintiff, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| MACY'S STORES WEST INC., | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 117)**

This civil action is before the Court on the motion for summary judgment of

Defendant Macy's Stores West Inc. (Doc. 117) and the parties' responsive memoranda

(Docs. 124 and 131)

### I. BACKGROUND[1]

**A. Undisputed Facts**

At a store in Los Angeles, California, Plaintiff Sara Hawes ("Plaintiff") bought

Chief Value Cotton sheets ("CVC sheets") from Defendant Macy's Stores West

("Macy's"), labelled with a thread-count of 900. (Doc. 64 at ¶12).[2] AQ Textile ("AQ")

---

[1] Pursuant to the Standing Order of the Court, Defendants filed a Statement of Proposed Undisputed Facts. (Doc. 117-2). In determining the undisputed facts, the Court has drawn on that statement and compared it to Plaintiff's motion in opposition and to the record. The Court, however, has not incorporated portions of the Statement of Proposed Undisputed Facts that re-frame arguments already made and decided in the Court's previous orders as well as those portions that are simply legal arguments cast as factual assertions.

[2] The Court has certified a class in this case, so arguably the Court could refer to "Plaintiffs." It is simply easier to refer to the named "Plaintiff" as the singular advocate for the position of the class. The Court will use "Plaintiff class" where necessary for clarity.

supplies the relevant CVC sheets for Macy's. (Doc. 100-1 at ¶7). Creative Textile ("Creative"), AQ's parent company, manufactures the sheets. (Doc. 100-5). AQ's president is Larry Queen. (Doc. 105 at ¶¶ 25–26).

The CVC sheets were manufactured by a process involving the simultaneous insertion of a number of adjacent, parallel, multi-filament polyester yarns into a single opening in the weave of the sheets. (Doc. 100-4). The purchase orders for the CVC sheets manufactured by Creative and imported by AQ reflect this method by stating both the number of insertions and the number of polyester yarns included in each insertion. (*Id.* at ¶¶ 12–13). For the CVC sheets at issue in this case, the individual polyester yarns inserted at one time are not twisted or woven together in any way, either before or during the weaving process.[3] (*Id.* at ¶ 8; Doc. 100-3, at ¶ 29).

The ASTM 3775, a set of guidelines promulgated by ASTM International, is a proper standard by which to measure the thread count of woven bedsheets, including the CVC sheets at issue in this case. (Doc. 117-8). The ASTM 3775 standard has been

---

[3] The Court finds a plain English summary may here be useful, drawn from the Court's Order on class certification (Doc. 137) with cites to the record omitted:

> Yarn consists of strands of fiber twisted together. Twist two yarns together—twisting the twists—and they create a ply. With most materials, there appears to be a shared understanding of how to differentiate a strand from a yarn and a yarn from a ply—but perhaps not with polyester. Polyester strands are very thin. A newly-patented weaving method allows these thin polyester strands to be inserted simultaneously and in parallel, meaning a textile manufacturer can insert several polyester strands through a single opening in the weave together without twisting them … Macy's and/or AQ count *each* untwisted strand inserted at the same time as individual threads. On the other hand, Plaintiff argues that, twisted or parallel, the strands within the bundle cannot be individuated [and should not be counted].

2

periodically updated. (*Id.*). The most recent effective versions of the standards have been ASTM D3775-12 (enacted in 2012) and D3775-17e1 (enacted in September 2017). (Doc. 117-5 at Exs. 6–7). Both D3775-12 and D3775-17e1 state that "[w]hen two yarns are laid-in together and parallel, count each yarn separately, as a single unit, regardless of whether it is comprised of single or plied components." (Doc. 117-5).

### B. Plaintiff's Proposed Disputed Facts

Plaintiff, *contra* this Court's specific instructions in its Standing Order, does not identify her proposed disputed facts. The Court can nonetheless discern the points of dispute with reference to the record and the memorandum in opposition.

1. *Whether Macy's CVC sheets supplied by AQ accurately list the thread-count.* Plaintiff contends that the sheets labelled 900-thread count contain only 227 countable threads. (Doc. 84-16 at PageID# 1231).

2. *Whether the ASTM D3775 permits the counting of each individual polyester yarn inserted in one bundle at one time into the CVC sheets (a counting method Plaintiff attributes to AQ proprietor Larry Queen); or, instead, each bundle should only count as one thread.*[4] Plaintiff argues each bundle should only count as one thread, at least where a visual inspection of the fabric under a lens is insufficient to differentiate the threads in the bundle. (*Id.* at PageID## 1228-1229). Plaintiff, with reference to her expert, claims each thread in the

---

[4] The Court uses plain language to simplify the disputes.

3

bundle inserted into the CVC sheets is not distinguishable under a lens, so each bundle should count as one thread. (*Id.* at PageID# 1231).

3. *Whether Larry Queen's updates to Macy's regarding his new thread-count and/or manufacturing method and his efforts to have the ASTM 3775 updated or clarified had the practical effect of putting Macy's on notice of possible thread-count misrepresentations.* Citing to various correspondence, Plaintiff argues these updates indeed had that effect. (*See* Doc. 124-3 at PageID## 3501-3504, 3520).

4. *Whether customer complaints likewise should have put Macy's on notice of issues with thread-counts.* (Doc. 124-4 at PageID## 3513-3519).

5. *The extent of Macy's involvement in labelling the sheets with the disputed thread-counts.* Citing to the record, Plaintiff argues Macy's works with AQ in arriving at the thread-counts put on the labels. (124-3 at PageID# 3498).

6. *Whether the independent testing labs that counted the threads in the AQ CVC sheets of behalf of AQ were instructed to count the individual yarns instead of the bundles of yarns and what those same labs would do if they were not so instructed.* Plaintiff states that Macy's or AQ, with Macy's knowledge, had to request that the labs count the threads under the thread-count method advocated by AQ. (Doc. 124-5 at PageID# 3533).

7. *Whether Plaintiff and the Plaintiff class paid more for the sheets than they would have if the thread-count was accurate according to Plaintiff's proposed*

4

   *counting method.* Plaintiff contends there is a linear relationship between price and thread-count. (Doc. 124-3 at PageID# 3500; Doc. 84-19).

8. *Whether Plaintiff and Plaintiff class suffered economic harm when they allegedly paid for sheets with a lower-than-advertised thread-count.* Plaintiff alleges they did. (Doc. 84-19).

9. *Whether the sheets at-issue underperform in their role as sheets.* Plaintiff contends that negative customer reviews are evidence of this. (Doc. 124-4 at PageID## 3513-3519)

  **C. Procedural Posture**

  Initially, Plaintiff Sara Hawes filed this case with a Missouri-based Plaintiff, Amy Hill. (Doc. 1). Plaintiffs initially named AQ and Creative as co-Defendants with Macy's. (*Id.*). The Court dismissed AQ and Creative for a lack of personal jurisdiction. (Doc. 38). Amy Hill voluntarily dismissed her claims. (Doc. 73). The Court also dismissed several of Plaintiff's claims. (Doc. 39). Currently, there is one Plaintiff, Sara Hawes, and one Defendant, Macy's. Omitting dismissed claims and those belonging only to former Plaintiff Amy Hill, Plaintiff's third amended complaint alleges causes of action under the California Unfair Competition Law ("UCL"), California's misleading and deceptive advertising law (also known as the False Advertising Law, or "FAL"); California's Consumer Legal Remedies Act ("CLRA") for injunctive relief only; breach of express warranty; fraud; and unjust enrichment. (Doc. 64).

5

By Order dated January 22, 2022, the Court declined to disqualify experts on either side and certified a Plaintiff class. (Doc. 137). Macy's now moves for summary judgment.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

Macy's makes five arguments. (Doc. 117-1). First, Macy's argues Plaintiff cannot obtain equitable relief because she has not pleaded an adequate remedy at law. (*Id.* at PageID# 2907). Second, Macy's contends that it had nothing to do with any wrongdoing—that Plaintiff "has not established that [Macy's] participated in, had control

over, adopted or even knew about the alleged misrepresentation." (Doc. 117-1 at PageID# 2897). Third, Macy's argues Plaintiff cannot maintain her unjust enrichment cause of action because it duplicates other claims or is unavailable under California law.[5] (*Id.* at PageID# 2917). Fourth, Macy's argues Plaintiff has not demonstrated damages. (*Id.* at PageID# 2918). Fifth, Macy's contends Plaintiff faces no future harm and is thus barred from forward-looking injunctive relief. (*Id.* at PageID# 2925).

### A. Plaintiff's entitlement to equitable relief

Macy's contends that Plaintiff "cannot obtain equitable relief because she has an adequate remedy at law." (Doc. 117-1 at PageID# 2907). Thus, according to Macy's, all Plaintiff's claims for equitable relief must fail in that respect, including claims for restitution.

Macy's hitches its argument to the case of *Sonner v. Premier Nutrition Corp. See* 971 F.3d 834 (9th Cir. 2020). In that case, on the day before trial, the plaintiff strategically dropped her "damages" claims to avoid a jury trial, after being warned by the district court that it would not look kindly on such a move. *Id.* at 838.[6] The Ninth Circuit held that the plaintiff was bound by her decision to pursue equitable relief and dismissed her claims for a failure to have pleaded an "inadequate remedy at law." *Id.* at

---

[5] No party seems to dispute that California law applies.

[6] "During oral argument on the motion, the district court warned Sonner that if it granted the motion and she dropped the damages claim, 'we are never going to hear again anything about a damage claim under the CLRA" and not to "put a lot of money' on a future motion to amend to re-allege the claim. The district court also explained that it would be 'open season' on a motion to dismiss and that Sonner was taking a 'chance' by dropping the damages claim." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 838 (9th Cir. 2020)

7

844. The Ninth Circuit was concerned that putting the stamp of approval on the *Sonner* plaintiff's conduct would have serious implications for "the well-established federal policy of safeguarding the constitutional right to a trial by jury in federal court. *Id.* at 842 (citing *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 537–38 (1958).

This case is not on terms. First, the Court must draw a distinction between "restitution" and other equitable relief sought by Plaintiff. This is because restitution is "not an exclusively equitable remedy." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 215, (2002). "[R]estitution is a legal remedy when ordered in a case at law and an equitable remedy ... when ordered in an equity case," and whether it is legal or equitable depends on "the basis for [the plaintiff's] claim" and the nature of the underlying remedies sought. *Id*. at 213 (2002).

Unlike *Sonner*, where the plaintiff pivoted to "equitable relief" to avoid a jury trial after years of pursuing damages, this case has been and remains centered on economic loss, which is to say it is primarily "a case at law." *Id.* In stark contrast to the situation in *Sonner*, all iterations of Plaintiff's complaint have requested a jury trial. (*See, e.g.*, Doc. 64). No party has doubted the propriety of trying this case before a jury. Moreover, Plaintiff's proposed damages model measures damages monetarily. (Doc. 84-19). Macy's *Daubert* motion, in turn, attacked that model on its alleged inaccuracy but did not challenge the notion that it ought to compute damages in terms of money. (*See* Doc. 91). To say this is a case in equity simply because the Plaintiff has requested restitution would exult form over substance. The court in *Sonner* had good reasons to make Plaintiff sow

8

the consequences of reframing her claims for damages as claims for restitution. In this case, the Court, following *Great-West*, declines to take such a categorical approach.

Additionally, with regards to its unjust enrichment claim, Plaintiff does in fact plead an inadequate remedy at law. (*See* Doc. 64 at ¶166). Under California law, as discussed more below, "restitution" and "unjust enrichment" have similar meanings. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Accordingly, the Court is content that Plaintiff, whether she is required to or not, has put Defendant on notice that she does not—or may not—have an adequate remedy at law. Thus, the Plaintiff class may resort to recovery under "unjust enrichment" or "restitution" if they cannot prove their entitlement to common-law legal claims like fraud.

On the other hand, Plaintiff has sought some attendant relief properly considered equitable and for which it has not alleged inadequacy of damages. Specifically, Plaintiff requests an injunction under its UCL, CLRA, and FAL claims. (Doc. 64). Because injunctive relief is undeniably equitable, consistent with the analysis of *Great-West*, Plaintiff must allege and ultimately show the inadequacy of legal remedies. *See also Huu Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-05591-LHK, 2017 WL 1330602, at *4 (N.D. Cal. Apr. 11, 2017) ("For the reasons discussed below, to the extent that Plaintiff seeks equitable relief in the form of a restitutionary redesign program and an injunction requiring Defendant to repair and replace Plaintiff's transmission, the Court agrees with Defendant that Plaintiff has an adequate remedy at law.").

Plaintiff has not done so. In the Amended Complaint, the causes of action where

9

Plaintiff seeks an injunction are bereft of any assertion about the inadequacy of damages. (*See* Doc. 64). Moreover, the Court will not construe Plaintiff's allegations of inadequate remedies in her unjust enrichment claims as a statement about the inadequacy of remedies for her CLRA claim because—unlike restitution and unjust enrichment—there is no recognized relationship between the two.[7]

Because Plaintiff has failed to allege or show the inadequacy of legal damages, the Court grants partial summary judgment to Macy's and dismisses Plaintiff's requests for injunctive relief. Because Plaintiff only seeks injunctive relief under the CLRA, the Court effectively dismisses that entire claim.

### B. Macy's Knowledge of Wrongdoing

Macy's argues Plaintiff must, but has not, established that Macy's "participated in, controlled, or adopted the deceptive advertising"—in this case, the allegedly inflated thread-counts. (*See* Doc. 117-1 at PageID# 2910 (citing *In Re Hydroxy Mktg. & Sales Pracs. Litig.*, 801 F. Supp. 2d 993, 1012 (S.D. Call. 2011)). Macy's makes three sub-arguments: 1) Plaintiff cannot establish Macy's adopted or knew about any misrepresentation; 2) Plaintiff cannot establish that the thread-counts were misrepresented; 3) Assuming *arguendo* the thread-counts were misrepresented, Plaintiff cannot establish Macy's knowledge of falsity. Alas, for Macy's, Plaintiff has interjected a

---

[7] At risk of belaboring the point, the Court makes one final observation. Plaintiff only sought to certify a class under Rule 23(b)(3), traditionally the certification source for claims regarding monetary damages, and said nothing about the class's entitlement to injunctive relief, traditionally analyzed under Rule 23(b)(2). (Doc. 84).

material issue of fact with regards to all three. The Court looks at the arguments in turn.

### *1. Whether Macy's made or adopted any thread-count representations*

The Court finds Plaintiff has indeed raised a triable issue of fact regarding Macy's knowledge and adoption of any thread-count misrepresentation. The Court here summarizes only the most salient evidence.

It is not clear exactly what Macy's knew, but correspondence suggests Macy's was not without knowledge of possible changes to the thread-count schema, initiated by AQ proprietor Larry Queen. The first numbered item in a January 2016 email sent to Macy's representatives, which summarizes a meeting between Larry Queen and Macy's, states Queen made a "busines decision" to make all Macy's sheets out of "separable yarns." (Doc. 124-4 at PageID# 3520). Queen also states that AQ will "indemnify" Macy's, suggesting the change is substantively important and liability of some kind is not out of the question. (*Id.*). Given such language, it is potentially a fair inference that Macy's knew the details of AQ's new plans for labelling the sheets.

Later correspondence demonstrates how Macy's stayed apprised of and expressed interest in updates to Larry's Queens efforts to clarify the ASTM 3775 standard as applied to thread-counts. (*See* Doc. 124-3 at PageID# 3504). Finally, in a correspondence between employees of a sheet-testing lab, one lab employee states that a client called "Macy's"—although in this context, Macy's could be interchangeable or confused with AQ—specifically requested the lab to count the multi-pick insertions. (Doc. 124-5 at PageID# 3534). This correspondence makes clear the lab would

11

otherwise not do so. (*Id.*).

Based on this evidence, the question of Macy's knowledge of thread-counts and involvement in their labelling constitutes a triable issue of fact. The cases cited by Macy's reside in another factual universe. Put in terms of Macy's cited authority, in this case there is plenty of evidence Macy's did quite more than "merely place the falsely advertised products on the shelf." (*See* Doc. 117-1 at PageID# 2911 (citing *In Re Hydroxycut*, 801. F. Supp.2d at 1012 (S.D. Cal. 2011))).

In reply, Plaintiff points out that several of its factual recitations are uncontradicted: Macy's did not participate in the manufacturing; Macy's ordered the sheets by specifying a 900-thread count; and the sheets were manufactured according to a patent. (Doc. 131 at 7). Respectively, as to the relevant questions on summary judgment, the Court finds that these uncontradicted statements do not negate the triable issue of fact. Macy's did not participate in the manufacturing but was kept well-apprised of how AQ/Creative manufactured and labelled the sheets. Yes, Macy's order forms specified a 900-thread count; but those same order forms also flag, and demonstrate an awareness of, the at-issue thread-count practices at the center of this case. As this Court has already stated in an earlier Order, the patent process means nothing as to the propriety of the thread-counts. (*See* Doc. 137 at 25).

Plaintiff has developed a record that raises triable issues of fact on the question of Macy's knowledge of the thread-count methodology. Accordingly, Macy's is not entitled to summary judgment on the issue.

### *2. Misrepresentation of thread-counts*

Macy's contends Plaintiff has not established sufficient evidence that the thread-counts were inflated. Of course, Plaintiff's evidence needs to be only so "sufficient" as to raise a triable issue of material fact. The Court finds Plaintiff has met that threshold.

This is the signal issue in the case, and both parties have presented evidence for their positions. Plaintiff's expert Sean Cormier's report is properly before this Court. (Doc. 84-16). His inspection of four types of AQ CVC sheets closely tracked the ASTM 3775 testing protocols, even if it was not exactly to the standard. (*Id.* at PageID# 1226). Cormier opined, to greatly simplify his report, that the polyester yarns should not be counted as threads because they cannot be distinguished from one another under a "pick-glass"—apparently a type of lens specifically used for comparing and counting yarns in fabric. (*Id.* at PageID# 1226). Cormier grounds his opinion in the language of the ASTM 3775 (*Id.*). Defendant's expert, for his part, cites to an updated version of the ASTM 3775 for the proposition that "[w]hen two yarns are laid-in together and parallel, count each yarn separately, as a single unit, regardless of whether it is comprised of single or plied components." (Doc. 117-5).

But this leaves the question of what to do when a tester cannot see the yarns under a lens and thus would have no reason to know to count the yarns. The dueling experts frame the central issue of the case nicely. But neither proves their method to the exclusion of the other. Thus, summary judgment would be inappropriate.

Even without its expert, Cormier, Plaintiff would probably have enough evidence

13

to raise a triable issue of fact on this issue. The above-referenced emails between lab technicians suggest that Macy's or AQ asked for a thread-count analysis that the lab would otherwise not perform. To the Court's eye, then, there are at least some knowledgeable people in the textile industry who regard the Macy's/AQ methodology as non-standard.

This is a textbook example of a triable issue of fact. Accordingly, the Court will not grant summary judgment.

### 3. *Whether Macy's knew or should have known that the thread-count representations were false*

Even assuming the thread counts are misleading, Macy's states Plaintiff cannot show Macy's knowledge of falsity. Under the UCL and FAL, Defendants are only liable if they know or should have known that the material representations were false. *See, e.g., Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146–49 & n.5 (9th Cir. 2012). In support, Macy's aligns itself with cases finding retailers harmless where they have displayed products mislabeled by third-parties, *see e.g.*, *Parent v. Millercoors LLC*, No. 3:15-CV-1204-GPC-WVG, 2016 WL 3348818, at *7 (S.D. Cal. June 16, 2016), and asserts that Plaintiff lacks evidence of falsity. The Court finds neither argument persuasive.

First, as already established by evidence reviewed here, Macy's is doing more than just selling on consignment. The correspondence between AQ and Macy's is evidence Macy's was aware of the thread-count issues and was aware specifically of Larry's Queen's efforts to—depending on which party is making the case—either change the

ASTM 3775 standard or clarify it.

Macy's knowledge of Queen's thread-counting methodology is for now also competent evidence that Macy's should have known about any falsity. From the Court's vantage, Plaintiff's evidence is far from conclusive on the question of Macy's knowledge of falsity. But the email that refers to Queen's willingness to indemnify Macy's certainly raises the possibility of Macy's knowledge of falsity. For this reason, the Court finds the question of Macy's knowledge of falsity is properly in dispute, based on the evidence submitted by Plaintiff, and not subject to resolution on a summary judgment motion.

### C. Plaintiff's unjust enrichment claims

Macy's argues that Plaintiff's unjust enrichment claim must fail. Macy's makes two arguments. First, unjust enrichment is not an independent cause of action in California if relief is available under other legal doctrines. Second, unjust enrichment, as an action in quasi-contract, cannot be maintained where there is an express binding agreement, such as a warranty.

As previewed by an earlier Order of the Court, the status of unjust enrichment as an independent cause of action in California is fraught with complexity. (Doc. 54 at 8). Indeed, for some time, courts analyzing California law were split on the question. *See In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1113 (C.D. Cal. 2012) (discussing split). Macy's, naturally, cites to every case determining there is no unjust enrichment claim in California. (Doc. 117-1 at PageID# 2917). However, the 9th Circuit Court of Appeals, in a case decided after *ConAgra* and after all Macy's-cited cases on the point, held that

15

"unjust enrichment" and "restitution" are synonymous in California. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Thus—especially in the case of an "inartful pleading"—a court may "construe" an unjust enrichment claim as one for "restitution." *Id.* Thus, Macy's cannot simply rest on its argument that an unjust enrichment claim is unavailable in California, notwithstanding the availability of other remedies.

It is a closer question as to whether an unjust enrichment claim must give way to an express breach of warranty claim at the summary judgment stage. Both sides have cases in partial support. Macy's finds support in *Smith v. Allmax Nutrition, Inc*. *See* No. 1:15-CV-00744-SAB, 2015 WL 9434768, at *10 (E.D. Cal. Dec. 24, 2015). The court in *Smith* concluded:

> Plaintiff's damages in this action result from his direct purchase of the Product ''which, under the California Commercial Code, creates an express contract between the buyer and seller." *Gerlinger*, 311 F.Supp.2d at 856 (citing Cal. Com. Code §§ 2106(1) & 2204(1)). Further, Plaintiff is alleging damages based upon a breach of an express warranty which covers the same subject matter. (Compl. ¶¶ 94-99.) Therefore, a separate claim in quasi-contract is inappropriate here under California law. Plaintiff's fourth cause of action for unjust enrichment is dismissed without leave to amend.

No. 1:15-CV-00744-SAB, 2015 WL 9434768, at *10 (E.D. Cal. Dec. 24, 2015).

Meanwhile, Plaintiff directs the Court to *Francis v. GM*, a case that analyzes similar California-based causes of action. *See* 504 F. Supp. 3d 659, 694 (E.D. Mich. 2020). In relevant part, that court states:

> GM also argues that the plaintiffs cannot proceed on an unjust enrichment theory where they affirmatively plead the existence of an express contract (the limited warranty) governing the parties' relationships. But alternative pleading of contract

16

> and quasi-contract claims routinely is permitted, and particularly is appropriate, where the defendant explicitly disclaims the availability of a contractual remedy, as it has done here by vigorously asserting its warranty coverage defense. *Solo v. UPS Co.*, 819 F.3d 788, 797 (6th Cir. 2016*); see also Johnston v. PhD Fitness*, LLC, 2018 WL 646683, at *6 (E.D. Mich. Jan. 31, 2018) ("Even after dismissing the warranty claims, it might remain an open question whether an express agreement governs the parties' conduct.").

*Id.* at 694.

Both parties leave questions for the Court, though. It is not clear, for example, that Macy's recognizes the existence of an express warranty. Macy's seems to deny the existence of such an express warranty in its answer. (Doc. 69 at ¶¶132-149). On the other hand, Plaintiff expresses the view that she must choose between unjust enrichment and breach of an express warranty "only at trial." (Doc. 124 at PageID# 2480). But the case she cites to, *Francis*, resolves a motion to dismiss and says nothing about when alternatively-pleaded theories must be reconciled. *See* 504 F. Supp. 3d 659, 693 (E.D. Mich. 2020).

Ultimately, it comes down to burden—and Macy's cannot establish that facts related to the existence of an express warranty and unjust enrichment will not affect the outcome of the case at trial. *Celotex*, 477 U.S. at 323. In this case, the existence of an express warranty is not a matter of record. Moreover, the whole point of pleading in the alternative would seem to be to allow Plaintiff to pursue an unjust enrichment and/or restitution claim in the event she cannot establish breach of an express warranty. Plaintiff has put forth evidence of an unjust enrichment claim—namely, a benefit unjustly conferred upon, and retained by, Macy's. *See Astiana*, 291 F.R.D. 493, 505 (S.D. Cal.

17

2013). And Macy's has not proven that facts supporting an unjust enrichment claim would not affect the outcome under the substantive law governing the issue. *Celotex*, 477 U.S. at 323. Accordingly, given Macy's burden, the Court will deny summary judgment to Macy's on the issue.

### D. Whether Plaintiff has adequately demonstrated damages

Macy's makes three arguments regarding damages. First, Plaintiff provides no evidence that she paid more than the true market value for sheets. (Doc. 117-1 at PageID# 2918). Second, Plaintiff's price premium theory, supported by Plaintiff's expert, must fail because Plaintiff does not say what the "true value" of the sheets are. (*Id.* at PageID# 2921). Third, Plaintiff does not put forth evidence that the sheets failed to meet any objective standard for softness, durability or quality. (*Id.* at PageID# 2924).

The Court disagrees that Plaintiff has not put forth evidence that she paid more than the true market value of the sheets. Macy's relies on *Chowning v. Kohl's*, which held, in relevant part:

> Restitution requires that the value of what the plaintiff received was less than what the plaintiff paid. *In re Vioxx Class Cases*, 103 Cal.Rptr.3d at 96; *see also In re Tobacco Cases II*, 192 Cal.Rptr.3d at 894. Without evidence of the value ... received, that calculation is impossible. Therefore, Kohl's is entitled to summary judgment.

733 F. App'x 404, 406 (9th Cir. 2018).

Macy's argues it is entitled to summary judgment for the same reason. (Doc. 117-1 at PageID# 2920). But the Court finds, here, there *is* evidence of the value of what Plaintiff received. Using Macy's own price points, Plaintiff's expert Stefan Boedecker

18

has shown that Macy's lists its higher thread count sheets with higher prices. (Doc 84-19 at PageID# 1331). This does not amount to complete proof of what the final damages are, but it does offer some <u>evidence</u> as to the "value received" by Plaintiffs.

Macy's follow up argument regarding the alleged shortcomings of Boedecker's alleged failure to show a price premium must likewise fail. It is true that Boedecker seemingly still has not completed his price premium analysis. But his report that is before the Court provides evidence that consumers do pay more for more threads. (Doc. 84-19). Additionally, depositional testimony from a Macy's buyer suggests that, other things being equal, high thread-counts command higher prices. (Doc. 124-3 at PageID# 3500).

Macy's seems to suggest that Plaintiff must reduce class damages to a specific dollar amount. This is not required to offer "evidence" of damages or to raise a triable issue of fact on the question. Moreover, some of Plaintiff's claims, such as those under the UCL, demand only "some reasonable basis of computation of damages…." *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 998 (E.D. Cal. 2018) (citing *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 938–39 (9th Cir.1999)). Given that flexibility, the Court is willing to find Plaintiff's evidence of a value differential sufficient at this stage, even if it is not exacting.

Finally, the record squarely contradicts Macy's argument that there is no evidence that the CVC sheets underperform in their role as sheets. Plaintiff has introduced into the record emails between Macy's employees discussing the poor reviews of the sheets.

These emails show Macy's was aware of these reviews and took them seriously. (Doc. 124-4 at PageID## 3513-3519). Macy's regarded the problems complained of as problems with AQ CVC sheets specifically. (*Id.* at PageID# 3518) ("We look forward to an update from Larry on what can be done to address these quality issues."). Thus, Macy's argument is not well-taken.

For these reasons, the Court finds there is sufficient evidence of damages to send this case to trial. The Court need not reach Macy's argument about Plaintiff's standing to pursue injunctive relief. (Doc. 117-1 at PageID# 2925). The Court has already determined that Plaintiff's requests for injunctive relief will not go forward.

## IV. CONCLUSION

Based upon the foregoing, Defendant Macy's motion for summary judgment (Doc. 117) is **GRANTED IN PART** and **DENIED IN PART**. Consistent with the above, Plaintiff **CANNOT** seek injunctive relief under any of the counts of her complaint. Plaintiff's COUNT SIX, seeking injunctive relief under the CLRA, is **DISMISSED**. All other claims remain pending.

**IT IS SO ORDERED.**

Date: 3/16/2022

Timothy S. Black
United States District Judge