**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

| | |
|---|---|
| SARA HAWES, *et al.*, | Civil Action: 1:17-CV-00754 |
| Plaintiffs, | Judge Douglas R. Cole |
| v. | |
| MACY'S WEST STORES, INC., | |
| Defendant. | |
| CHIARALUCE, *et al.*, | |
| Plaintiffs, | Civil Action: 2:20-CV-00081 |
| v. | Judge Douglas R. Cole |
| MACY'S INC., *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   STATEMENT OF FACTS ..................................................................................... 3

    A.   Plaintiffs' claims ........................................................................................... 3

    B.   The Court denies Macy's motion to dismiss ............................................... 3

    C.   Plaintiffs engaged in extensive discovery and expert analysis ................... 3

    D.   The Court grants class certification and the Sixth Circuit denies Macy's Rule 23(f) petition ....................................................................................... 4

    E.   The parties negotiate the settlement ............................................................ 5

    F.   Settlement terms ........................................................................................... 6

        1.   The Settlement Class ............................................................................. 6

        2.   The relief to Settlement Class Members ................................................ 6

        3.   The proposed release ............................................................................. 7

        4.   The Proposed Settlement Claims Administrator, notice, and the claims process ....... 7

            i.    Claims Administrator ..................................................................... 7

            ii.   Notice ............................................................................................ 7

            iii.  Requests for exclusion and objections ......................................... 9

            iv.   CAFA notice ................................................................................. 9

            v.    Claims process .............................................................................. 10

        5.   Attorneys' fees and compensation for the Named Representatives ......... 10

III.  ARGUMENT ....................................................................................................... 10

    A.   The proposed settlement meets the requirements for preliminary approval ............. 10

        1.   The settlement is fair, reasonable, and adequate .................................. 12

2.    Class Counsel and the Class Representatives adequately represented the Settlement Class ................................................................................................................ 13

3.    The Settlement was negotiated without fraud or collusion at arm's length after extensive discovery ............................................................................................... 14

4.    The relief provided by the proposed settlement is adequate ................................... 18

5.    The costs, risks, and delay of trial and appeal favor preliminary approval ............. 20

6.    The remaining Rule 23(e)(2)(c) factors weigh in favor of preliminary approval ..... 22

7.    The proposed relief treats Settlement Class members fairly relative to one another without preferential treatment to the Named Plaintiffs .......................................... 22

8.    The remaining traditional Sixth Circuit factors favor preliminary approval ........... 23

      i.     The opinions of Class Counsel and Class Representatives .................................. 23

      ii.    Reaction of Class members ................................................................................ 24

      iii.   Public interest ................................................................................................... 24

B.    Preliminary approval is warranted because the court will likely be able to certify the Settlement Class ........................................................................................................ 25

1.    The Settlement Class meets the requirements of Rule 23(a) ................................... 25

      i.     Numerosity ........................................................................................................ 25

      ii.    Commonality ...................................................................................................... 26

      iii.   Typicality ........................................................................................................... 26

      iv.    Adequacy ............................................................................................................ 27

2.    The Settlement Class meets the requirements of Rule 23(b)(3) .............................. 28

      i.     Predominance ..................................................................................................... 28

      ii.    Superiority .......................................................................................................... 29

3.    Certification pursuant to Rule 23(b)(2) with respect to injunctive relief is proper ... 30

C.    The Court should direct notice to the Class .............................................................. 31

D.      The Court should approve Angeion as Notice and Claims Administrator ............... 34

E.      A final fairness hearing should be scheduled and the court should provide a schedule leading up to the fairness hearing .......................................................................... 34

IV.      CONCLUSION.......................................................................................................... 35

## **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 29, 32

*Amos v. PPG Indus*, No. 2:05-cv-70, 2015 WL 4881459 (S.D. Ohio Aug. 13, 2015)11, 16, 20, 22

*Amos v. PPG Indus., Inc.*, No. 2:05-CV-70, 2019 WL 3889621 (S.D. Ohio Aug. 16, 2019 ....... 15

*Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) .................................................................. 31

*Bartell v. LTF Club Operations Co., Inc.*, No. 2:14-CV-401, 2020 WL 7062834 (S.D. Ohio Aug.
7, 2020) ................................................................................................................................. 16, 17, 21

*Bautista v. Twin Lakes Farms, Inc.*, No. 104-CV-483, 2007 WL 329162 (W.D. Mich. Jan. 31,
2007) ....................................................................................................................................... 11

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007) ............................................................ 29

*Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ........... 17

*Blasi v. United Debt Servs., LLC*, No. 2:14-CV-83, 2019 WL 6050963 (S.D. Ohio Nov. 15,
2019) ....................................................................................................................................... 16, 21

*Brotherton v. Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001); In re Southern Ohio Corr.
Facility, 173 F.R.D. 205 (S.D. Ohio 1997) ............................................................................. 12

*Burgos v. Sunvalleytek Int'l*, No. 18-cv-06910-HSG, 2021 U.S. Dist. LEXIS 132931 (N.D. Cal.
May 10, 2021) ........................................................................................................................ 19

*Chiaraluce v. Macy's Inc.*, No. 2:20-CV-081 (S.D. Ohio) ............................................................. 3

*Date v. Sony Elecs., Inc*., No. 07-15474, 2013 WL 3945981 (E.D. Mich. July 31, 2013) ........... 19

*Day v. Air Methods Corp.*, No. 5:17-CV-183-CHB, 2019 WL 3976511 (E.D. Ky. Aug. 22, 2019)
............................................................................................................................................... 23

*Day v. AMC Corp.*, No. 5:17-CV-183-CHB-MAS, 2019 WL 3977253 (E.D. Ky. July 26, 2019)

..................................................................................................................................... 23

*Dickman v. Banner Life Ins. Co.,* Civil Action No. 1:16-cv-00192-RDB 2019 WL 6716365 (D.

Md. Oct. 17, 2019*)*................................................................................................................ 30

*Doe v. Ohio*, No. 2:91-CV-00464, 2020 WL 728276 (S.D. Ohio Feb. 12, 2020)...... 13, 14, 15, 20

*Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-cv-01714(VAB), 2018 U.S. Dist. LEXIS

130535 (D. Conn. Aug. 3, 2018) ...................................................................................... 21

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)................................................................... 31

*Fenley v. Wood Grp. Mustang, Inc.*, 325 F.R.D. 232 (S.D. Ohio 2018) ............................... 25, 27

*Franks v. Kroger Co.*, 649 F.2d 1216 (6th Cir. 1981) ................................................................ 10

*Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740 (S.D. Ohio 2004) .................................... 34

*Givens v. Van Devere, Inc.,* 2012 WL 4092803 (N.D. Ohio 2012)............................................. 27

*Guttmann v. Ole Mexican Foods, Inc.*, No. 14-cv-04845-HSG, 2015 U.S. Dist. LEXIS 154046

(N.D. Cal. Nov. 13, 2015)................................................................................................. 19

*Hadix v. Johnson*, 322 F.3d 895 (6th Cir. 2003)......................................................................... 23

*Humphrey v. Stored Value Cards*, No. 1:18-CV-01050, 2021 WL 110786 (N.D. Ohio Jan. 12,

2021) ...................................................................................................................... 13, 15, 23

*Hyland v. Homeservices of Am., Inc.*, No. 3:05-CV-612-R, 2009 WL 2525587 (Aug. 17, 2009) 11

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013)................................................. 31

*In re Broadwing, Inc. ERISA*, 252 F.R.D. 369 (S.D. Ohio 2006) ............................................... 11

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL

5184352 (W.D. Ky. Dec. 22, 2009)........................................................................................ 31

*In re Ins. Broker Antitrust Litig.*, 297 F.R.D. 136 (D.N.J. 2013)............................................... 33

*In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410 (3d Cir. 2016)........... 31

*In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-CV-12141-AC-DAS, 2014 WL

    8335997 (E.D. Mich. Oct. 2, 2014) ...................................................................................... 12

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998)..... 32

*In re Skechers Toning Shoe Prod.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668 (W.D. Ky. Aug.

    13, 2012) .............................................................................................................................. 12, 19

*In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737

    (N.D. Ohio Aug. 12, 2019) ..................................................................................................... 13

*In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001)........................ 20

*In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL

    5338012 (N.D. Ohio Sept. 23, 2016) ..................................................................................... 19

*Intercommunity Justice & Peace Ctr. V. Registrar, Ohio Bureau of Motor Vehicles*, No. 2:18-

    CV-1247, 2020 WL 832815 ....................................................................................... 25, 26, 28

*Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, No. 1:16-CV-448, 2017 WL 5247538

    (S.D. Ohio Nov. 13, 2017) ............................................................................................... 16, 21

*Littlejohn v. Copland*, 819 F. App'x 491 (9th Cir. 2020) ............................................................ 20

*Macy v. GC Servs. Ltd. P'ship*, No. 3:15-CV-819-DJH-CHL, 2019 WL 6684522 (W.D. Ky. Dec.

    6, 2019) ................................................................................................................................ 12, 13

*Miller v. Ghirardelli Chocolate Co.*, No. C 12-04936 LB, 2014 U.S. Dist. LEXIS 141111 (N.D.

    Cal. Oct. 2, 2014)................................................................................................................ 19, 20

*Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-1147, 2020 WL 5366380 (S.D. Ohio Sept. 8,

    2020) .......................................................................................................................... 13, 20, 24

*Paxton v. Union Nat'l Bank,* 688 F.2d 552 (8th Cir. 1982)........................................................ 27

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................ 32

*Rikos v. Proctor & Gamble Co.*, No. 1:11-CV-226, 2018 WL 2009681 (S.D. Ohio Apr. 30, 2018) ...................................................................................................................................... 19

*Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589 (S.D. Ohio Mar. 10, 2017) ............................................................................................................. 17

*Roland v. Convergys Customer Mgmt. Grp., Inc.*, No. 1:15-CV-00325, 2017 WL 4873343 (S.D. Ohio Jan. 10, 2017) ................................................................................................................. 11

*Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435 (S.D. Ohio 2009) .............................. 25, 26, 28

*Rotondo v. JPMorgan Chase Bank, N.A.*, No. 2:19-CV-2328, 2019 WL 6167086 (S.D. Ohio Nov. 20, 2019) ....................................................................................................................... 21

*Satterly v. Airstream, Inc.*, No. 3:19-CV-107, 2020 WL 6536342 (S.D. Ohio Sept. 25, 2020).. 16, 23, 24

*Senter v. Gen. Motors Corp.*, 531 F.2d 511 (6th Cir. 1976) ......................................................... 27

*Sprague v. Gen. Motors Corp.,* 133 F.3d 388 (6th Cir. 1998) ...................................................... 29

*Stanley v. Turner Oil & Gas Properties, Inc.*, No. 2:16-CV-386, 2018 WL 2928028 (S.D. Ohio June 12, 2018) ........................................................................................................................ 15

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ................................................ 32

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013) ......................................... 13, 22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........................................................... 26, 27

*Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415 (E.D. Ky. May 12, 2020) ........................................................................................................................................ 24

*Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532 (6th Cir. 2012) ............................................. 29

*Yue v. Conseco Life Ins. Co.,* 282 F.R.D. 469 (C.D. Cal. 2012) ................................................. 30

*Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.,* 935 F.3d 496 (6th Cir. 2019) ........ 26

**Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................................. 25

Fed. R. Civ. P. 23(a)(2) ............................................................................. 26

Fed. R. Civ. P. 23(a)(3) ............................................................................. 26

Fed. R. Civ. P. 23(a)(4) ............................................................................. 27

Fed. R. Civ. P. 23(b)(2) ............................................................................. 30

Fed. R. Civ. P. 23(c)(2)(A) ........................................................................ 34

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................ 33

Fed. R. Civ. P. 23(e)(1)(A) ........................................................................ 11

Fed. R. Civ. P. 23(e)(1)(B) .............................................................. 11, 12, 31

Fed. R. Civ. P. 23(e)(2) ............................................................................. 12

Fed. R. Civ. P. 23(e)(2)(A)-(D) ........................................................ 12, 13, 14, 22

Fed. R. Civ. P. 23(b)(3) ............................................................................. 28

Fed. R. Civ. P. 23(e)(1)(B)(ii) .................................................................... 25

Fed. R. Civ. P. 23(e)(2)(c)(i)-(iv) ............................................................... 18

**Treatises**

David F. Herr, Annotated Manual for Complex Litigation, Fourth, § 21.662 (2012) ................. 11

Manual for Complex Litigation, Fourth, § 21.632 ....................................... 10, 25

Manual for Complex Litigation, Fourth, § 21.633 ............................................ 34

Newberg on Class Actions § 13:10 ............................................................. 33

*Newberg on Class Actions* § 13:14. ........................................................... 15

Plaintiffs Sara Hawes, Cassandra Chiaraluce, and Jonathan Fontaine ("Named Plaintiffs") reached an agreement with Defendants Macy's Inc., Macy's Retail Holdings, Inc. n/k/a Macy's Retail Holdings, LLC, Macy's West Stores, Inc. n/k/a Macy's Retail Holdings, LLC, and Macy's.com, LLC ("Defendant" or "Macy's") to settle this class action on the terms set forth in the Settlement Agreement. *See* Joint Declaration in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Joint Decl.), Exhibit 1 ("Settlement Agreement").

Pursuant to Fed. R. Civ. P. 23(e), Named Plaintiffs, on behalf of themselves and the Settlement Class, respectfully move this Court to enter the proposed Preliminary Approval Order. *See* concurrently filed Proposed Order.

Per Local Rule 7.3, Named Plaintiffs consulted with Defendant before filing this Motion, which is unopposed. *See* Joint Decl. ¶ 19. For the reasons stated below, the Court should grant preliminary approval of the proposed settlement of this class action, order the dissemination of notice, and schedule a final fairness hearing.

## I. PRELIMINARY STATEMENT

Named Plaintiffs, through undersigned counsel, have secured a Proposed Settlement ("Settlement") that provides substantial benefits to a nationwide class of all persons in the United States who purchased from Macy's bed sheets and pillowcases comprised of a cotton and polyester blend ("CVC Sheets") supplied by AQ Textiles, LLC between November 8, 2013, and the date of this filing.

The Settlement merits preliminary approval, given the substantial benefits provided to the class. The Settlement was carefully negotiated at arm's length with the assistance of an experienced mediator, the Honorable Diane Welsh (Ret.), but only after the parties completed complex and substantial discovery (numerous depositions of fact witnesses, third-parties pursuant

to subpoenas, and experts who submitted reports that were later challenged), the Court granted class certification, denied Macy's summary judgment motions, and the parties and their counsel began trial preparations. Before going to trial, the parties decided to engage in mediation in an attempt to settle.

The parties engaged in two separate all-day mediation sessions with Judge Diane Welsh, a retired federal magistrate judge, as the mediator. *See* Joint Decl. ¶ 21. The mediation sessions were conducted in a hybrid fashion, with the mediator and some representatives of the Parties appearing in person while other representatives of the Parties participated remotely. *Id.* The parties also engaged in negotiations in-between the two mediation sessions, including the exchange of important information about the claims and defenses present in the Litigation. *Id.* At the second mediation session with Judge Welsh in November 2022, the Parties finally reached a settlement in principle of this matter. Thereafter, the Parties continued to negotiate and finalize the settlement details resulting in the Agreement. *Id.* This resolution ensures that Settlement Class Members are compensated and eliminates the risk of trial and appeal.

This matter settled after almost five years of highly contested litigation. Given the substantial benefits available to Class Members under the Settlement, and the risks in establishing Defendant's liability and proving damages at trial, the Plaintiffs respectfully submit that the proposed Settlement reflected in the Agreement is not only fair, reasonable, and adequate but that it represents an outstanding recovery on behalf of Class Members, as further described below. Plaintiffs request that the Court grant the instant motion for preliminary approval, preliminarily certify the proposed national Settlement Class, approve the proposed notice plan, and schedule a final approval hearing.

## II. STATEMENT OF FACTS

### A. Plaintiffs' claims

Plaintiff Sara Hawes filed this class action lawsuit on November 8, 2017, alleging that CVC Sheets she purchased from Macy's were falsely and deceptively labeled in that the thread count listed on the packaging was incorrect (higher than it actually was) and that as a result, she paid more for the CVC Sheets than they were worth. Dkt. Nos. 1, 44, and 64. After the filing of a third-amended complaint, Dkt. No. 64, the following six claims moved forward: (1) claims under the unlawful, unfair, and fraudulent prongs of the California Business and Professions Code § 17200; (2) claims for deceptive advertising under the same code § 17500; (3) a consumer protection claim under the California Consumer Legal Remedies Act § 1750; (4) a breach of express warranty claim; (5) a fraud claim; and (6) an unjust enrichment. On February 12, 2020, Plaintiffs' counsel herein also filed the action styled as *Chiaraluce v. Macy's Inc.*, No. 2:20-CV-081 (S.D. Ohio), which was then related to *Hawes* by Order of the Court. *Chiaraluce* Dkt. No. 4.

### B. The Court denies Macy's motion to dismiss

Macy's filed a motion to dismiss on January 2, 2018. Dkt. No. 17. On September 28, 2018, the Court denied Macy's motion and granted, in part, and denied, in part, the motion to dismiss. Dkt. No. 39. On the same date, the Court granted a motion to dismiss filed by AQ Textiles' on jurisdictional grounds, removing them from the case. Dkt. No. 38.

### C. Plaintiffs engaged in extensive discovery and expert analysis

Prior to filing this matter, Plaintiffs' Counsel undertook an extensive investigation of the alleged issues and prepared for protracted litigation. *See* Joint Decl. ¶ 7. Among other things, Plaintiffs' Counsel investigated differences between represented thread counts of the sheets made on Macy's packaging and ASTM testing; Federal Trade Commission (FTC) investigations,

oversight, and actions related to thread counting and industry practices; the applicable legal standards for consumer cases; and relevant class action standards. *Id.*

Plaintiffs' Counsel has substantial experience in prosecuting class actions, particularly those involving consumer claims as alleged here. *Id.* ¶ 25 As part of their investigation, Plaintiffs' Counsel assembled a uniquely qualified team of experts in ASTM standards and damages to assist them with this litigation. *Id.* ¶ 8

The parties engaged in extensive discovery over several years. Plaintiffs served numerous interrogatories and requests for production on Macy's and received thousands of pages of documents in response. *Id.* ¶ 12.Macy's has produced, among other things, sheet design specifications, including changes thereto, third-party audit and testing data, product marketing materials, sales data, and information, pricing data and information, and additional product information. *Id.*

The parties conducted at least ten depositions of Macy's employees, fact witnesses, third-party witnesses, the Named Plaintiff, and experts. *Id.* ¶ 13. Plaintiffs served subpoenas on individuals and groups that assisted Macy's along with Freedom of Information Act requests. *Id.*

Plaintiffs also retained and worked closely with several experts. Plaintiffs' experts tested sheets in a laboratory using ASTM standards and examined sales records provided by Macy's. *Id.* ¶ 14. Plaintiffs' experts produced reports in support of Plaintiffs' motion for class certification, were deposed, and survived *Daubert* challenges seeking to preclude their opinions and testimony. *Id.*

### D.  The Court grants class certification and the Sixth Circuit denies Macy's Rule 23(f) petition

On February 1, 2021, Named Plaintiffs filed a motion for class certification. Dkt. No. 84. Extensive briefing followed Named Plaintiffs' certification motion. In May 2021, Macy's opposed

Plaintiffs' motion for class certification and moved to strike Named Plaintiffs' experts' testimony under *Daubert*. Dkt. No. 87. On July 21, 2021, Named Plaintiffs filed a reply. Dkt. No. 112. On January 22, 2022, the Court granted Named Plaintiffs' motion for class certification and certified the following California class:

> Each person in California who purchased from Macy's a CVC (cotton-polyester blend) sheet supplied by AQ between November 8, 2013, and the present.

Dkt. No. 137.

On July 30, 2021, Macy's filed a motion for summary judgment. Dkt. No. 117. On August 23, 2021, Plaintiffs responded. Dkt. No. 124. On September 9, 2021, Macy' filed its reply. Dkt. No. 131. On March 16, 2022, the Court denied in part Macy's motion. Dkt. No. 139

After Plaintiffs' motion for class certification was granted and Macy's summary judgment motion was denied, Macy's requested an interlocutory appeal under Rule 23(f). On June 22, 2022, the Sixth Circuit denied Macy's 23(f) petition for interlocutory appeal.

**E. The parties negotiate the settlement**

After a California class of purchasers of CVC sheets was certified and Macy's motion for summary judgment was denied in part, the Parties engaged in two separate all-day mediation sessions with Judge Welsh as the mediator. Joint Decl. ¶ 21. The mediation sessions were conducted in a hybrid fashion, with the mediator and some representatives of all Parties attending in person while other representatives of the Parties participated remotely. *Id*. As part of mediation, the Parties prepared and exchanged detailed mediation statements addressing the case's facts, posture, liability, and damages. *Id*. The Parties also negotiated between the two mediation sessions, including by exchanging important information about the claims and defenses present in the litigation. *Id*. At the second mediation session with Judge Welsh in November 2022, the parties

reached a settlement in principle in this matter. *Id.* Thereafter, the Parties continued to negotiate and finalize the details of the Settlement resulting in the Agreement. *Id.*

### F. Settlement terms

The terms of the settlement are memorialized in the Settlement Agreement.

#### 1. The Settlement Class

Per the Settlement Agreement, the Settlement Class is defined as follows:

> All persons in the United States who purchased from Macy's one or more CVC Sheets supplied by AQ Textiles, LLC between November 8, 2013 and the date of the filing of the Motion for Preliminary Approval.

Settlement Agreement ¶ 1.36.

#### 2. The Settlement Fund

A settlement fund of $10,500,000 will be created for the benefit of the class. The funds will be paid by Macy's after the settlement is finalized. The funds will be used to pay class members claims, notice and administrative costs, attorneys fees and incentive awards. There is not any right to a reverter benefiting Macys.

#### 3. The relief to Settlement Class Members

All members of the Settlement Class in one of the categories below who submit an Eligible Claim are eligible to receive monetary benefits as set forth below.

- Members of the Settlement Class verified from Defendants' records as actual purchasers of CVC sheets will receive $7.50 per unit of CVC Sheets purchased unless reduced as described below.

- Members of the Settlement Class who provide proof of purchase through a receipt will receive $7.50 per unit of CVC Sheets for which proof of purchase is provided unless reduced as described below.

- Members of the Settlement Class who attest under penalty of perjury that they purchased a unit of CVC Sheets and who do not fall within bullets one and two above will receive $2.50 unless reduced as described below. That amount is

capped at $2.50 per Household. These members are not eligible to participate in any possible second distribution as described below.

*See* Settlement Agreement ¶¶ 6.1, 6.1.1, 6.1.2, 6.1.3.

All Eligible Claims will be paid in full or reduced pro-rata, depending on the number of claims paid and after the fund is reduced for administrative expenses, fees, costs, and incentive awards. *Id.* ¶ 6.2.

If monies remain in the fund after the initial distribution, a second payment will be made pro-rata if economically feasible. If a second payment is not feasible, the second payment will be made to a the Public Interest Research Group, a charitable organization which has its purpose the advancement of consumer protections and rights. *Id.* ¶ 6.4.

### 4. The proposed release

In exchange for receiving the settlement benefits, Settlement Class Members will release all claims asserted in this case or that they could have asserted or could in the future assert relating to the claims asserted in this case and their purchase and use of CVC Sheets. *Id.* ¶ 13.1.

### 5. The Proposed Settlement Claims Administrator, notice, and the claims process

#### i. Claims Administrator

The proposed settlement and notice Claims Administrator is Angeion Group. *See* Joint Decl. ¶ 22; *see also* Settlement Agreement Exhibit 3 [Declaration of Steven Weisbrot ("Angeion Decl.").] The Claims Administrator and all costs of the Claims Program will be paid from the Settlement Amount. *See* Settlement Agreement ¶ 11.1.

#### ii. Notice

A long-form notice will be mailed, first-class postage prepaid, to each ascertainable Settlement Class Member identified by the Parties through reasonable efforts. *See* Settlement Agreement ¶ 8.4; Settlement Agreement, Ex. 4 (Long Form Notice).

The Claims Administrator will promptly log each long-form notice returned as undeliverable and make the log available to counsel for the Parties. Settlement Agreement ¶ 8.5. The Claims Administrator will take reasonable steps to update undeliverable addresses, including the National Change of Address Database or other reasonable means, and send a second copy of the long-form notice. *Id.* If any long form notice is returned as undeliverable a second time, no further mailing is required. *Id.*

Prior to the Notice Date, the Claims Administrator will establish and maintain an ADA-compliant website regarding this Settlement, the contents of which will be approved by counsel for the Parties. *Id.* ¶ 8.6. The address for the website will be included in published notices. *Id.* The website will provide: (1) generalized information about the Agreement, its scope, its remedies with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiffs' Counsel; (2) deadlines for opting out of or objecting to the Agreement, and the dates of relevant Court proceedings, including the Final Approval Hearing; (3) a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class (4) information on making a claim and a downloadable and online version of the Claim Form; and (5) relevant legal documents. *Id.*

As part of the Notice Plan, the Claims Administrator will employ programmatic notice tools, including, *inter alia*, advertising on websites and Internet ad platforms similar to Google and Facebook. *Id.* ¶ 8.7 The advertising will be targeted to reach Settlement Class Members. *Id.* The

advertising and paid search campaign will also direct viewers to the Settlement website. Search keyword advertising may also be used. *Id.*

The Claims Administrator will set up a call center which will be included in the published notices. *Id.* ¶ 8.9. The call center will: (1) receive requests for any materials or available on the Settlement website; (2) provide information on deadlines to opt-out, object, file a claim, and relevant Court proceedings; and (3) mail requested materials to Settlement Class Members to file claims with the Claims Administrator. *Id.*

The Claims Administrator will make periodic reports available to counsel for the Parties that show: calls and inquiries made to the call center; logs of mail received, requested, and sent out; detailed activities on the Settlement website; and the response rates to all notice activities. *Id.* ¶ 8.11.

### iii. Requests for exclusion and objections

Any member of the Settlement Class wishing to do so may opt out of the Settlement Class during the opt-out period. *Id.* ¶ 9.1. The opt-out period will be 60 days from the date notice is commenced. *Id.* ¶ 9.2. Those who wish to opt-out can do so by completing and signing an opt-out form and sending it using the directions on the form. *Id.* ¶ 9.3. Alternatively, Class members may file a notice of intent to object to the Settlement if they wish to do so. *Id.* Class members who wish to object must file a notice of intent with the Court, Plaintiffs' Counsel, and Macy's counsel by the date set by the Court and follow the specific instruction requirements set forth in the Settlement and referenced in the notice. *Id.* ¶ 9.7

### iv. CAFA notice

This settlement is subject to the requirements of the Class Action Fairness Act of 2005, which requires that notice containing certain required information be served upon the appropriate

State and Federal officials within ten days of filing a proposed settlement. 28 U.S.C. § 1715(b). The Settlement Administrator will prepare and mail the CAFA notice. *Id.* ¶ 8.12.

### v. Claims process

The Claims Administrator will determine whether: (1) the Claimant is a Settlement Class Member and (2) the Settlement Class Member has provided all information needed to complete the Claim Form. *Id.* ¶ 11.11. The Parties will be permitted to audit and review actual (or summary reports on) claims made, claims approved or denied, checks issued, calculation of benefits under the Settlement, returned checks, and uncashed checks to assist with (1) the effectuation of the Settlement and (2) the Parties' respective desire to reasonably ensure that the benefits are administered in a manner to attempt to reach each Settlement Class Member. *Id.* ¶ 11.10.

### 6. Attorneys' fees and compensation for the Named Representatives

Attorney's fees and costs for Plaintiffs' Counsel are subject to approval by the Court, to be paid from the settlement fund. *Id.* ¶ 10.2. The enforceability of the Settlement Agreement is not contingent on the amount of attorneys' fees or costs awarded. The parties did not discuss the amount of attorneys' fees and costs until after all of the material terms of the settlement were agreed upon. Joint Decl. ¶ 20. Class Counsel respectfully requests service awards for the Named Plaintiffs as follows: $3,500 to Ms. Hawes (deposed); and $1,500 each to Ms. Chiaraluce and Mr. Fontaine.

## III. ARGUMENT

### A. The proposed settlement meets the requirements for preliminary approval

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Approval of a class action settlement generally involves two stages: (1) preliminary approval, whereby the court gives preliminary approval to the settlement

and directs notice of the settlement to be sent to class members; and (2) final approval of the settlement. Manual for Complex Litigation, Fourth, § 21.632; *Roland v. Convergys Customer Mgmt. Grp., Inc.*, No. 1:15-CV-00325, 2017 WL 4873343, at *2 (S.D. Ohio Jan. 10, 2017); *In re Broadwing, Inc. ERISA*, 252 F.R.D. 369, 372 (S.D. Ohio 2006); *Amos v. PPG Indus*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015). Rule 23(e) sets forth a streamlined protocol for preliminary approval of class action settlements whereby the Court may authorize notice to be sent to class members. For the first step, the "parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). The Court must direct notice if the parties have shown that the court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for the purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

During the preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in the analysis as rigorous as is appropriate for final approval." David F. Herr, Annotated Manual for Complex Litigation, Fourth, § 21.662 (2012). Instead, the Court should only evaluate whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Hyland v. Homeservices of Am., Inc.*, No. 3:05-CV-612-R, 2009 WL 2525587, at *2 (Aug. 17, 2009) (citing *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y.1997)).[1] In essence, the Court must preliminarily determine that the settlement is sufficiently fair, reasonable, and adequate so that it can "direct the preparation of

---

[1] *See also Bautista v. Twin Lakes Farms, Inc.*, No. 104-CV-483, 2007 WL 329162, at *4 (W.D. Mich. Jan. 31, 2007) ("The court's role in reviewing settlements must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement taken as a whole is fair, reasonable, and adequate to all concerned.") (internal quotes omitted).

notice of certification, proposed settlement, and date of the final fairness hearing" to all those affected by it. *In re Skechers Toning Shoe Prod.*, No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012).[2]

Here, notice is warranted because the proposed Settlement meets the requirements of Rule 23(e)(2) as it is fair, reasonable, and adequate; and this class action has already been certified and thus should be certified again for the purposes of the nationwide Settlement. Therefore, notice can be sent to Settlement Class Members.

### 1. The settlement is fair, reasonable, and adequate

Rule 23(e)(2) provides that the Court may finally approve a settlement only after "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining the fairness, reasonableness, and adequacy of a settlement, Rule 23(e)—as amended December 1, 2018— provides a court must consider whether: (a) "the class representatives and class counsel have adequately represented the class"; (b) "the proposal was negotiated at arm's length"; (c) "the relief provided for the class is adequate"; and (d) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). At the preliminary approval stage, Named Plaintiffs need only demonstrate that the Court "will likely be able to" approve the settlement based on the Rule 23 factors. Fed. R. Civ. P. 23(e)(1)(B).

The factors contained in Rule 23(e)(2) were not intended "to displace any factor" previously relied on by courts, and "the rule largely encompasses the factors that have been employed by the Sixth Circuit." *Macy v. GC Servs. Ltd. P'ship*, No. 3:15-CV-819-DJH-CHL, 2019 WL 6684522, at *2 (W.D. Ky. Dec. 6, 2019) (quotations omitted). "[S]o long as courts use the

---

[2] *See also In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-CV-12141-AC-DAS, 2014 WL 8335997, at *3 (E.D. Mich. Oct. 2, 2014) ("The ultimate approval of a class action settlement requires a finding that the settlement is fair, adequate, and reasonable."); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001); *In re Southern Ohio Corr. Facility*, 173 F.R.D. 205, 211 (S.D. Ohio 1997).

23(e)(2) factors as the primary framework, courts may still consider circuit-specific factors in the analysis." *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *5 (N.D. Ohio Aug. 12, 2019).

The factors traditionally used by this Court and the Sixth Circuit for determining whether a settlement is fair, reasonable, and adequate are as follows: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement." *See, e.g.*, *Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-1147, 2020 WL 5366380, at *2 (S.D. Ohio Sept. 8, 2020); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013). However, "the Court need not make a determination as to every factor" at the preliminary approval stage. *Ostendorf*, 2020 WL 5366380, at *2.

"[I]n considering whether to approve the parties' proposed settlement, a District Court in the Sixth Circuit should look to both the factors found in Rule 23 as well as the Sixth Circuit's traditional factors." *Doe v. Ohio*, No. 2:91-CV-00464, 2020 WL 728276, at *3 (S.D. Ohio Feb. 12, 2020), *report and recommendation adopted,* No. 2:91-CV-464, 2020 WL 996561 (S.D. Ohio Mar. 2, 2020). Because of the "substantial overlap" between the Rule 23 and traditional Sixth Circuit factors, *Macy*, 2019 WL 6684522, at *2, Named Plaintiffs will be able to demonstrate that the proposed Settlement is fair, reasonable, and adequate under both sets of factors below, combining any that overlap. *See Humphrey v. Stored Value Cards*, No. 1:18-CV-01050, 2021 WL 110786, at *4 (N.D. Ohio Jan. 12, 2021) ("The Court considers the Rule 23 and Sixth Circuit factors below, combining any that overlap.").

**2. Class Counsel and the Class Representatives adequately represented the Settlement Class**

Rule 23 requires courts to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Named Plaintiffs and Class Counsel submit that, at final approval, Rule 23(e)(2)(A) will be satisfied because they have adequately—indeed, zealously—represented and pursued the best interests of the proposed Settlement Class at each stage of the respective litigations.

Class Counsel zealously represented Named Plaintiffs and the Settlement Class Members by researching the viability of asserting various claims against Macy's; successfully opposing a contentious motion to dismiss; fully conducting discovery (consisting of reviewing tens of thousands of pages of documents, conducting depositions, engaging experts, and conducting written discovery); and fully briefing a class certification motion as well as a motion for summary judgment. Class Counsel has extensive experience in litigating class action cases and in nationwide complex-litigation practice. *See supra* Part II.

Likewise, the Named Plaintiffs vigorously prosecuted the claims on behalf of the Class throughout litigation and settlement negotiations. Ms. Hawes fully participated in the litigation by responding to written discovery, producing documents, making her sheets available for testing, sitting for a deposition, and remaining informed of the progress of the litigation and mediation, all of which weigh in favor of preliminary approval. *See Doe*, 2020 WL 728276, at *6. In addition, Ms. Chiaraluce and Mr. Fontaine fully participated and assisted counsel in the litigation by providing information regarding their purchases, producing documents, making their sheets available for testing, and remaining informed of the progress of the litigation and mediation. Therefore, the Named Plaintiffs and Class Counsel were equally diligent in prosecuting their actions to satisfy the adequate representation requirement.

### 3. The Settlement was negotiated without fraud or collusion at arm's length after extensive discovery

A proposed class-wide settlement is fair, reasonable, and adequate under the Rule 23 factors, where the parties "negotiated at arm's length," Fed. R. Civ. P. 23(e)(2)(B), which overlaps with the Sixth Circuit's "fraud or collusion" and "amount of discovery" factors. *Doe*, 2020 WL 728276, at \*4; *Humphrey*, 2021 WL 110786, at \*4. This Court "presume[s] the absence of fraud or collusion unless there is evidence to the contrary." *See, e.g.*, *Stanley v. Turner Oil & Gas Properties, Inc.*, No. 2:16-CV-386, 2018 WL 2928028, at \*5 (S.D. Ohio June 12, 2018). In all, "[w]here the proposed settlement was preceded by a lengthy period of adversarial litigation involving substantial discovery, a court is likely to conclude that settlement negotiations occurred at arms-length." *Newberg on Class Actions* § 13:14.

First, the procedural posture of the case indicates the settlement arose out of arm's-length, non-collusive negotiations. This case has been pending for over five years, with extensive discovery and motion practice during that time. Indeed, not only did Plaintiff Hawes file a Complaint (and multiple Amended Complaints), she also successfully opposed dispositive motions in the forms of a motion to dismiss and a motion for summary judgment. *See herein.* Plaintiff also fully briefed a motion for class certification, which the Court granted. *Id.* Also, the Parties engaged in months of adversarial settlement discussion and negotiation before reaching an agreement. *Id.* The advanced stage of the proceedings dispels any possibility of fraud or collusion.

Second, the extent of discovery conducted demonstrates that the relevant facts and damages have been sufficiently developed to permit an accurate assessment of the merits of the case and adequacy of the settlement. Traditionally, this Court has considered the amount of discovery in which the parties to a settlement engaged to confirm plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement." *Amos v. PPG Indus., Inc.*, No. 2:05-CV-70, 2019 WL 3889621, at \*8 (S.D. Ohio Aug. 16, 2019), *report*

*and recommendation adopted,* No. 2:05-CV-70, 2019 WL 3980570 (S.D. Ohio Aug. 22, 2019) (citation omitted); *Bartell v. LTF Club Operations Co., Inc.*, No. 2:14-CV-401, 2020 WL 7062834, at *4 (S.D. Ohio Aug. 7, 2020). Courts "take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced" when considering whether plaintiffs had sufficient information. *Id.* (citations omitted). Named Plaintiffs here fully completed the discovery phase of litigation, which consisted of exchanging, reviewing, and analyzing tens of thousands of pages of documents as well as deposing numerous fact witnesses (including the third parties that imported the sheets) and Macy's corporate representative. *See herein.* Further, Macy's deposed Plaintiff Hawes, and Class Counsel defended her deposition. *Id.* The Parties also engaged in expert discovery, which included the disclosure of economic and defect expert reports as well as depositions. *Id.* As such, the amount of discovery produced and examined in this litigation "coupled with expert and lay depositions, produced a well-developed factual record that enabled Class Counsel to make informed decisions about the Settlement." *Blasi v. United Debt Servs., LLC*, No. 2:14-CV-83, 2019 WL 6050963, at *7 (S.D. Ohio Nov. 15, 2019); *Satterly v. Airstream, Inc.*, No. 3:19-CV-107, 2020 WL 6536342, at *5 (S.D. Ohio Sept. 25, 2020) (granting approval where "the parties reached a settlement after an extensive review and computation of damages [and] substantial discovery [was] exchanged").

Third, the circumstances surrounding settlement negotiations establish that the settlement was reached by well-informed counsel after arm's-length negotiations. *See Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, No. 1:16-CV-448, 2017 WL 5247538, at *4 (S.D. Ohio Nov. 13, 2017) (granting approval where a settlement "was the result of arm's-length negotiations, free of collusion or fraud, conducted by experienced counsel on both sides, and achieved over the course of several months of negotiations"). Arm's-length negotiations conducted by competent

counsel, especially given the assistance of an experienced and independent mediator, constitute prima facie evidence of fair settlements. *See, e.g., Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"); *Brotherton,* 141 F. Supp. 2d at 906 (absence of any evidence suggesting collusion or illegality "lends toward a determination that the agreed proposed settlement was fair, adequate and reasonable")[3]; *Bert v. AK Steel Corp.*, No. 1:02-CV-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("[t]he participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.")

In this case, the Settlement was the result of intensive, arm's-length negotiations between experienced attorneys who have extensive class action litigation experience and who have knowledge of the legal and factual issues of this case in particular. The Parties' respective counsel are experienced in the litigation, certification, trial, and settlement of class action cases. There is no evidence that any collusion or illegality existed during the settlement process. Settlement negotiations, in this case. took place over the course of multiple mediation sessions with the assistance of the Honorable Diane Welsh (Ret.), a highly regarded and experienced mediator, which weighs heavily in favor of approval. *See, e.g.*, *Bartell*, 2020 WL 7062834, at *3 ("mediations facilitated by experienced and highly skilled mediators" favor approval).[4] As part of mediation, the Parties prepared and exchanged detailed mediation statements addressing the facts, posture, liability, and damages of the case. *See supra* Part II. After reaching an agreement in

---

[3] *See also Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001); 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 at 90 (4th Ed. 2002).
[4] *See also Amos v. PPG Indus.*, 2015 WL 4881459, at *1 (noting that the Southern District of Ohio "recognizes that the settlement of class action is generally favored and encouraged").

principle, the Parties exchanged numerous drafts of the Settlement terms and the Settlement Agreement prior to entering a final agreement. *Id.*

Given the amount of discovery and the advanced stage of the proceedings, Class Counsel was well-positioned to assess the benefits of the Settlement balanced against the strengths and weaknesses of their claims and of Macy's defenses, all of which was discussed during mediation facilitated by an experienced mediator. Thus, the Court will likely be able to approve the settlement because the Settlement was negotiated at arm's length.

### 4. The relief provided by the proposed settlement is adequate

Under Rule 23(e)(2)(c), a court's assessment of whether a proposed settlement is adequate takes into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(c)(i)-(iv). A preliminary consideration of these factors shows that it is likely that Named Plaintiffs will be able to satisfy this prong of Rule 23(e)(2) when seeking final approval.

Notably, the proposed Settlement provides for a non-reversionary common fund with cash benefits to class members as follows:

- Members of the Settlement Class verified from Defendants' records as actual purchasers of CVC sheets will receive $7.50 per unit of CVC Sheets purchased unless reduced as described below.

- Members of the Settlement Class who provide proof of purchase through a receipt will receive $7.50 per unit of CVC Sheets for which proof of purchase is provided unless reduced as described below.

- Members of the Settlement Class who attest under penalty of perjury that they purchased a unit of CVC Sheets and who do not fall within bullets one and two above will receive $2.50 unless reduced as described below. That amount is

18

capped at $2.50 per Household. These members are not eligible to participate in any possible second distribution as described below

This result compares favorably to settlements courts have approved in similar consumer class actions in this circuit. *See Date v. Sony Elecs., Inc*., No. 07-15474, 2013 WL 3945981, at *3 (E.D. Mich. July 31, 2013); *In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig*., No. 1:08-WP-65000, 2016 WL 5338012, at *1 (N.D. Ohio Sept. 23, 2016); *In re Skechers Toning Shoes Prod. Liab. Litig*., No. 3:11-MD-2308-TBR, 2013 WL 12321203, at *1 (W.D. Ky. May 13, 2013); *Rikos v. Proctor & Gamble Co*., No. 1:11-CV-226, 2018 WL 2009681, at *11 (S.D. Ohio Apr. 30, 2018). Consequently, this Settlement is adequate and should be preliminarily approved.

In addition, Macy's has agreed to make significant changes to its sales and marketing of the CVC sheets manufactured by AQ with respect to the thread count claims and representations—the issue central to the lawsuit. This injunctive relief provided by the settlement is long-lasting and ensures that thread counts on Macy's products made by AQ will be accurate.

There is injunctive relief in the form of label and practice changes, and numerous courts have approved 'label change' settlements, with value assigned specifically to these reforms and their impact on consumers. *See, e.g.*, *Guttmann v. Ole Mexican Foods, Inc.*, No. 14-cv-04845-HSG, 2015 U.S. Dist. LEXIS 154046 (N.D. Cal. Nov. 13, 2015) (approving injunctive relief settlement with full release for mislabeling case where ingredient not properly disclosed); *Burgos v. Sunvalleytek Int'l*, No. 18-cv-06910-HSG, 2021 U.S. Dist. LEXIS 132931 (N.D. Cal. May 10, 2021) (granting final approval of misleading label change settlement); *Miller v. Ghirardelli Chocolate Co.*, No. C 12-04936 LB, 2014 U.S. Dist. LEXIS 141111 (N.D. Cal. Oct. 2, 2014) (assigning significant value to injunctive relief in a settlement). To be clear, when there are claims for the mislabeling of products—modification of the allegedly mislabeled packaging and advertising "adequately addresses the very claims raised in Plaintiffs' Complaint, provid[ing]

19

value to the Class." *Littlejohn v. Copland*, 819 F. App'x 491, 493 (9th Cir. 2020) (affirming preliminary approval of settlement that required removal of phrase "no artificial flavors" and the identification of a new ingredient, with no monetary relief involved).

The injunctive relief here provides that Macys will state the exact method used to count the threads in the sheets it sells. *See, e.g.*, *Littlejohn*, 919 F. App'x at 492 (settlement providing for removal of "no artificial flavors" and addition of the artificial ingredient to the ingredient list). And because Macy's customers tend to be repeat customers that frequently shop for bed and bath products, Class members are likely to be exposed to AQ thread-count representations in the post-approval period when the injunctive relief is in force, *see* Dkt. 109-1, so the label change provides significant value. *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS 20725, at *15 (N.D. Cal. Feb. 20, 2015) (label changes can hold significant value to a settlement class).

### 5. The costs, risks, and delay of trial and appeal favor preliminary approval

The costs, risks, and delay of trial and appeal factor of Rule 23(e)(2) are analogous to "the complexity, expense and likely duration of the litigation" and "the likelihood of success on the merits" factors generally used by this Court. *See Ostendorf*, 2020 WL 5366380, at *2. "The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Amos*, 2019 WL 3889621, at *8 (citations omitted); *Doe*, 2020 WL 728276, at *5.

At the outset, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Amos*, 2019 WL 3889621, at *7 (quoting *In re Telectronics Pacing Systems, Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)).

Here, the costs, risks, and potential delay all increase significantly with a complex class action of class members who have suffered monetary damages. Based on Macy's vigorous defense through motion practice and Named Plaintiffs' claims, Named Plaintiffs reasonably expect that this case will continue to be zealously contested through trial and appeal if not settled. *See Kimber Baldwin Designs*, 2017 WL 5247538, at *5 (likelihood of success "factor weighs in favor of approval because Defendant categorically denies Plaintiffs' claims."); *Blasi*, 2019 WL 6050963, at *7 ("the docket reflects that UDS has vigorously defended this action and would likely continue to do so. Certification is not certain, and even if granted, decertification remains a real possibility."); *Bartell*, 2020 WL 7062834, at *4 ("continued litigation in the face of strong opposition and the 'substantial ground for disagreement' that exists as to the merits of Plaintiffs' claims creates substantial risk to the Class."). Moreover, "the class's likelihood of success on the merits remains uncertain," which weighs in favor of preliminary approval. *Rotondo v. JPMorgan Chase Bank, N.A.*, No. 2:19-CV-2328, 2019 WL 6167086, at *5 (S.D. Ohio Nov. 20, 2019), *report and recommendation adopted,* No. 19-CV-02328, 2019 WL 6496806 (S.D. Ohio Dec. 2, 2019).

Named Plaintiffs have also expended significant expense through motion practice and discovery and would continue to incur significant expense if the case were to proceed to trial with the possibility of an appeal. Trial preparation would be lengthy, likely involve extended pre-trial motion practice, and would culminate in a multi-week, complex trial, which will undoubtedly be a battle of experts regarding the thread counting method and damages. Courts have acknowledged that reliance on expert testimony "often increases the risk that a jury may not find liability or would limit damages." *Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-cv-01714(VAB), 2018 U.S. Dist. LEXIS 130535, at *40 (D. Conn. Aug. 3, 2018) (granting final approval). As such, "there are multiple risks if litigation continues – including the chance to recover nothing." *Peck v. Air Evac*

*EMS, Inc.,* 2019 WL 3219150, at \*6 (E.D. Ky. July 17, 2019*)*. Yet, the Settlement provides substantial relief without the risks inherent in continued litigation, trial, and appeal. *See also Amos*, 2019 WL 3889621, at \*9 ("the risk of failure to Plaintiffs and the classes, weighed against the certainty of benefits provided by the Settlement Agreement, favors approval."). Thus, the costs and risks involved in continuing to litigate this case are far outweighed by the relief provided under the Settlement.

### 6. The remaining Rule 23(e)(2)(c) factors weigh in favor of preliminary approval

As to the second Rule 23 adequacy factor, the effectiveness of distributing relief is sound. The claim's administrator will distribute benefit awards to eligible claimants as set forth in the Settlement and their Declaration. Angeion Decl. Lastly, Settlement Class Members may opt out of the Settlement if they do not wish to obtain the remedies therein. Settlement Agreement. ¶ 9.1.

Finally, the Parties did not enter any agreement in connection to the Proposed Settlement other than the terms memorialized in the Settlement Agreement. As such, there are no other agreements that are required to be identified under Rule 23(e)(3). Thus, all the adequacy factors identified in Rule 23(e)(2)(c) favor preliminary approval.

### 7. The proposed relief treats Settlement Class members fairly relative to one another without preferential treatment to the Named Plaintiffs

The final element for consideration under Rule 23(e) is whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). Likewise, the Sixth Circuit has traditionally "looked to whether the settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Vassalle*, 708 F.3d at 755 (internal quotations and citations omitted). Courts in the Sixth Circuit have held settlements treat class members where the amounts are proportional to the amount of purported damages each

member sustained (*i.e.*, pro rata distributions), even where there is disparity in the amounts some class members receive. *Day v. AMC Corp.*, No. 5:17-CV-183-CHB-MAS, 2019 WL 3977253, at *5 (E.D. Ky. July 26, 2019), *report and recommendation adopted sub nom. Day v. Air Methods Corp.*, No. 5:17-CV-183-CHB, 2019 WL 3976511 (E.D. Ky. Aug. 22, 2019); *Humphrey*, 20 WL 110786, at *5.

Here, all Settlement Class Members are entitled to cash benefits. This relief treats all Settlement Class Members fairly and equitably and does not provide preferential treatment to the Named Plaintiffs at the expense of unnamed Class Members. *See Humphrey*, 2021 WL 110786, at *5 (internal quotations and citations omitted).

Rather, the Class Representative is also treated the same as every other member of the Settlement Class under the Settlement, with the lone exception of a proposed service awards of $3,500 to Class Representative Hawes and $1,500 each to Class Representatives Chiaraluce and Fontaine. *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003) ("when a class-action litigation has created a communal pool of funds to be distributed to the class members, courts have approved incentive awards to be drawn out of that common pool."); *Satterly*, 2020 WL 6536342, at *8 ("Service awards to representative plaintiffs 'are common in class action settlement and routinely approved.'").

### 8. The remaining traditional Sixth Circuit factors favor preliminary approval

#### i. The opinions of Class Counsel and Class Representatives

"The recommendation of Class Counsel, skilled in class actions and consumer litigation, that the Court should approve the Settlement is entitled to deference." *See, e.g.*, *Bartell*, 2020 WL 7062834, at *4 (citations omitted). Class Counsel are experienced in class actions, including deceptive advertising, are well-positioned to assess the strengths and weaknesses of this case after

substantial discovery, and have concluded the proposed Settlement is an excellent result that confers substantial benefits to the Settlement Class. *See* Joint Decl. ¶ 25. As such, they fully endorse and approve of the Settlement as fair, reasonable, and adequate, as well as in the best interest of the Settlement Class. *Id.* Further, the Named Plaintiffs remained informed of the litigation and likewise fully endorse the Settlement because it confers substantial monetary and non-monetary relief to the Settlement Class. As such, the opinions of Class Counsel and Class Representatives are entitled to deference and weigh in favor of preliminary approval.

### ii. Reaction of Class members

A small number of class members objecting to a proposed class action settlement weighs in favor of the adequacy of a settlement. *Peck*, 2019 WL 3219150, at *8. However, at the preliminary, pre-notice stage, the Court cannot ascertain the reaction of class members such that this factor "does not yet weigh one way or the other in determining whether settlement is appropriate." *Id.*; *Ware v. CKF Enterprises, Inc.*, No. CV 5:19-183-DCR, 2020 WL 2441415, at *14 (E.D. Ky. May 12, 2020) ("The 'reaction of absent class members' is not relevant to the preliminary approval stage analysis.").

### iii. Public interest

Because "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them," there is a "public interest favoring settlement . . . as the proposed settlement ends potentially long and protected litigation." *Ostendorf*, 2020 WL 5366380, at *3 (citations omitted and alterations in original). As demonstrated above, this case is no different. "The settlement provides relief to the class members, avoids further litigation in a complex set of cases, and frees the Court of judicial resources." *Satterly*, 2020 WL 6536342, at *7. Thus, public interest favors preliminary approval.

**B. Preliminary approval is warranted because the court will likely be able to certify the Settlement Class**

An important consideration in assessing whether to authorize Notice to the proposed Settlement Class is whether the Named Plaintiffs can demonstrate that the Court will likely be able to certify the class for judgment and settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(ii). At this stage, the Court need only make a "preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." Manual for Complex Litigation, Fourth, § 21.632. Here, because Settlement Class Members will receive monetary and injunctive relief under the Settlement, Named Plaintiffs seek certification under Rules 23(b)(3) and 23(b)(2). Notably, the Court has already certified a California class in this action. *See* Dkt. 137. The Court will likely be able to certify the nationwide class as demonstrated below.

### 1. The Settlement Class meets the requirements of Rule 23(a)

A class action must comply with the four prerequisites established in Rule 23(a): (1) numerosity of parties; (2) commonality of factual and legal issues; (3) typicality of claims; and (4) adequacy of representation. *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 439 (S.D. Ohio 2009). The proposed Settlement Class meets all four requirements; thus, the Court should grant preliminary approval.

#### i. Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members would be impracticable." Fed. R. Civ. P. 23(a)(1); *see also Intercommunity Justice & Peace Ctr. V. Registrar, Ohio Bureau of Motor Vehicles*, No. 2:18-CV-1247, 2020 WL 832815, at *7 (S.D. Ohio Feb. 20, 2020) (finding numerosity satisfied in class of 3,700 individuals); *Fenley v. Wood Grp. Mustang, Inc.*, 325 F.R.D. 232, 249 (S.D. Ohio 2018) ("courts routinely hold that 'a class of 40 or more members is sufficient to meet the numerosity requirement.'"). Here, numerosity for the

proposed class is clearly satisfied, as was established in the briefing regarding Class Certification. *See* Dkt. 137 at 30.

### ii. Commonality

Commonality exists if there are questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). The common legal or factual contention underlying the claims "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. "The claims of the potential class members need not be factually identical." *Ross*, 257 F.R.D. at 442.

Here, the Court will likely find commonality again is satisfied based on the fundamental issue of whether the counting method employed by Macy's and AQ differed from the ASTM standard counting method. And, because commonality does not require "the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.,* 935 F.3d 496, 503 (6th Cir. 2019) (quoting *Wal- Mart*, 564 U.S. at 350). Common questions of fact and law exist as to the Settlement Class.

### iii. Typicality

Rule 23's typicality requirement is met where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that the "representative's interests [are] aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Intercommunity Justice & Peace Ctr.*, 2020 WL 832815, at *8. "The concepts of

commonality and typicality 'tend to merge' in practice because they both 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Fenley*, 325 F.R.D. at 250 (quoting *Dukes*, 564 U.S. at 349 n.5).

Here, the Class Representatives' claims are typical of the claims of other class members because they "stem from a single event or are based on the same legal or remedial theory." *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 561-562 (8th Cir. 1982). Here, Macy's use of the alternative counting method is a single course of conduct that applies to all class members, and the theory that such use deceives consumers is the same for all class members who are protected by the same state statutory and common laws. Indeed, since the "representative plaintiff would be able to prove other class members' claims by proving [her] own claim," *Givens v. Van Devere, Inc.,* 2012 WL 4092803, at *19 (N.D. Ohio 2012), their claims are typical of those of the class.

### iv. Adequacy

Rule 23(a)(4)'s adequacy requirement is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two criteria exist for determining the adequacy of representation: "(1) [t]he representative must have common interests with unnamed members of the class;" and (2) "it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 531 F.2d 511, 525 (6th Cir. 1976).

The first criterion overlaps with the commonality and typicality requirements and requires the class representative and "the class members have interests that are not antagonistic to one another." *Intercommunity Justice & Peace Ctr.*, 2020 WL 832815, at *10 (quoting *In re Dry Max*

*Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013)). Here, the class representative's interests are aligned with those of the Settlement Class. Specifically, Named Plaintiffs share an interest with Class Members in establishing that the counting method employed by Macy's and AQ differs from the ASTM standard counting method, and thus that Macy's made misrepresentations to customers regarding the thread count of sheet products.

As to the second criterion, Named Plaintiffs and Class Counsel have established adequacy through their prosecution of the claims to date, zealously litigating this matter since 2017, filing an extensive complaint and amending it twice, prevailing on motions to dismiss, defeating a motion for summary judgment, certifying a class, and vigorously pursuing discovery. Named Plaintiffs have overseen the litigation and maintained constant contact with counsel and their attorneys are qualified, experienced, and competent, evidenced by their background in litigating class action cases. Joint Decl. ¶¶ 25, 27-31. Therefore, the adequacy requirement will likely be determined to be satisfied.

### 2. The Settlement Class meets the requirements of Rule 23(b)(3)

In addition to the requirements of Rule 23(a), Named Plaintiffs must meet the requirements for maintenance of a class imposed by Rule 23(b). Under Rule 23(b)(3), a class may be certified if "(1) 'the questions of law or fact common to class members predominate over any questions affecting only individual members,' and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Ross*, 257 F.R.D. at 451 (quoting Fed. R. Civ. P. 23(b)(3)).

### i. Predominance

The predominance inquiry focuses on whether liability issues are subject to generalized proof and are applicable to the class as a whole or require individualized and fact-intensive

determinations. *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 544 (6th Cir. 2012). "[C]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007). Under Rule 23(b)(3), the predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Id.* Although the Rule "speaks of 'questions' in the plural," the Sixth Circuit has held that "one question common to the class" satisfies this requirement. *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998).

Here, common questions will likely be found to predominate because the central question to be decided is whether the method, used by Macy's and AQ, of counting untwisted polyester strands as individual threads accords with the industry standard of ASTM 3775. The central questions to be decided for the claims here all flow from that counting method, as has already been recognized by the court. *See* Dkt. 137 at 33.

### ii. Superiority

The superiority inquiry asks whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Although Rule 23(b)(3) lists various superiority factors, the Court need not consider the manageability of a potential trial, because the Settlement, if approved, would obviate the need for a trial. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Nonetheless, the remainder of the factors enumerated in Rule 23(b)(3) demonstrate this Court will likely be able to conclude at final approval that the superiority requirement is met. Settlement Class Members have not manifested an interest in individually controlling the prosecution given that the amount in controversy each individual Settlement Class Member suffered would likely not justify the high costs of individual suits. Undoubtedly, class

certification is superior to thousands of costly individual lawsuits, which would impose unnecessary expense upon Settlement Class Members and the court system.

### 3. Certification pursuant to Rule 23(b)(2) with respect to injunctive relief is proper

A class may be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As the Supreme Court stated in *Dukes*, "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" 564 U.S. at 360 (citation omitted). In other class actions involving mislabeling, courts have certified class under both Rule 23(b)(3) and Rule 23(b)(2).

Here, this Court will likely be able to conclude at final approval a nationwide settlement class is properly certified under Rule 23(b)(2) with respect to the non-monetary relief provided by the Settlement because the entire Settlement Class is treated alike: the labels changes will equally affect everybody purchasing the CVC Sheets at Macy's. *See Yue v. Conseco Life Ins. Co.,* 282 F.R.D. 469, 479 (C.D. Cal. 2012) ("Class certification is appropriate because Defendant has acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."). *Dickman v. Banner Life Ins. Co.,* Civil Action No. 1:16-cv-00192-RDB 2019 WL 6716365, at *2 (D. Md. Oct. 17, 2019*)* (preliminary certifying a settlement class where "the actions by Defendants apply generally to the Settlement Class, so that the injunctive relief agreed upon is appropriate respecting the class as a whole"). Therefore, the Court will be likely to certify the Settlement Class pursuant to Rule 23(b)(2) at the final approval stage.

### C. The Court should direct notice to the Class

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is finally approved by the Court. Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P.23(e)(1)(B). In an action certified under Rule 23(b)(3), the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In order to satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009). "Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 435 (3d Cir. 2016), *as amended* (May 2, 2016) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013)). "Although the Rule provides broad discretion to district courts with respect to the notice's form and content, it must satisfy the requirements of due process." *In re Baby Prods. Antitrust Litig.*, 708 F.3d at 180. "The adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Arbuthnot v. Pierson*, 607 F. App'x 73, 73 (2d Cir. 2015).)

Under Rule 23(e) and due process, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether

31

to opt-out of the class. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 326–27 (3d Cir. 1998); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996). However, the Supreme Court has not held that Rule 23 or due process requires the accomplishments of delivery of actual notice to every class member in every case, but the provision of "notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Nevertheless, Named Plaintiffs' notice plan has been developed with the thought of providing the most comprehensive notice possible, and a notice that will, in fact, "reach" all class members.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Class Counsel will file their Motion for Attorneys' Fees and Expenses no later than 30 days before the extension deadline as detailed herein and before the deadline for Class Members to object. The Motion will be available on the Settlement Website after it is filed to allow Class Members the opportunity to review it.

The Notice Plan, described above, and in the accompanying Angeion Decl., provides all information required under Rule 23(c)(2)(B) in plain language and is designed to be "the best . . . practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem*, 521 U.S. at 617. All Settlement Class Members for whom addresses are known to Macy's or Class Counsel will receive direct notice. The proposed notice program provides for not only direct mail to all known Macy's Customers but also media notice using the internet and social media, which is designed to reach the demographics of the Settlement Class Members. The planned media notice is an acceptable method of providing notice where the identity of specific Settlement Class Members is not reasonably available. In addition,

the settlement website will be a useful resource: It will post the claim form, the long form notice, and key pleadings in the case. The Settlement Administrator will also establish a toll-free number for class members to call with questions. This plan provides the best notice practicable under the circumstances. *See generally* Angeion Decl.; *see also In re Ins. Broker Antitrust Litig.*, 297 F.R.D. 136, 152 (D.N.J. 2013) (finding notice via postcards to be sufficient). This notice plan also safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* Newberg on Class Actions § 13:10 (5th ed.).

The proposed Notice Plan complies with Fed. R. Civ. P. 23 and due process because, among other things, it informs Settlement Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Settlement Class, and the benefits offered; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for objection and exclusion, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; (5) information regarding the Named Plaintiffs' request for an incentive award and the payment of attorneys' fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the Notice Plan and Settlement Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). The manner of providing notice, which includes individual notice by direct mail and email to all Settlement Class Members, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Frost v. Household*

*Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004). Thus, the Notice Plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### D. The Court should approve Angeion as Notice and Claims Administrator

The Declaration of Steven Weisbrot, Notice and Claims Administration expert with Angeion Group, sets forth his and Angeion's expertise and qualifications. Angeion Decl. Named Plaintiffs request that the Court approve and appoint Angeion as Notice and Claims Administrator in this action. *Id.*

### E. A final fairness hearing should be scheduled and the court should provide a schedule leading up to the fairness hearing

The Court should schedule a final fairness hearing to obtain all required information to determine that class certification is proper and the Settlement should be approved. *See* Manual for Complex Litigation, Fourth, § 21.633. The fairness hearing will provide a forum for proponents and opponents to explain, describe, or challenge the terms and conditions of the class certification and Settlement, including the Settlement's fairness, adequacy, and reasonableness. Accordingly, Named Plaintiffs request that the Court set a schedule leading up to a Fairness Hearing that includes the following dates:

| Date | Event |
|---|---|
| No later than 45 days after the entry of the Preliminary Approval Order or thirty (30) days after April 24, 2023, whichever is later | Class Notice Disseminated ("Notice Date") |
| No later than 30 days after the Notice Date | Motion for Approval of Attorneys' Fees and Expenses and Service Awards filed |
| 60 days after Notice Date | Objection and Opt-Out Deadline |
| 180 days after the Effective Date | Claim Submission Deadline |

| No later than 14 days before Fairness Hearing | Motion for Final Approval filed |
|---|---|

## IV.  CONCLUSION

For the foregoing reasons, the Court should grant preliminary approval of the proposed settlement of this class action, order the dissemination of notice, and schedule a final fairness hearing.

Date: March 24, 2023                                By:  *s/ Michael McShane*

Michael McShane
Ling Y. Kuang
Kurt D. Kessler
**AUDET & PARTNERS, LLP**
711 Van Ness Avenue Suite 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-2556
mmcshane@audetlaw.com

Drew Legando
**MERRIMAN LEGANDO**
**WILLIAMS & KLANG, LLC**
1360 West 9th Street, Suite 200
Cleveland, OH 44113
Telephone: 216-522-9000
drew@merrimanlegal.com

Charles LaDuca
Brendan Thompson
**CUNEO GILBERT & LADUCA LLP**
4725 Wisconsin Avenue, NW Suite 200
Washington, DC 20016
Telephone: (202)789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com
brendant@cuneolaw.com

Charles Schaffer

**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (877) 882-1011
Facsimile: (215) 592-4663
cschaffer@lfsblaw.com

Stuart Cochran
**COCHRAN LAW PLLC**
8140 Walnut Hill Lane, Suite 250
Dallas, TX 75231
Telephone: (469) 333-3405
stuart@scochranlaw.com

Erica Mirabella
**MIRABELLA LAW LLC**
132 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: (855) 505-5342
erica@mirabellallc.com

Bruce Steckler
**STECKLER WAYNE CHERRY & LOVE**
12720 Hillcrest Road, Suite 1045
Dallas, TX 75230
Telephone: 972-387-4040
bruce@swclaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 24, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF.

_s/ Michael McShane_
Michael McShane
