# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

SARA HAWES, *et al.*,

    Plaintiffs,

v.

MACY'S INC., *et al.*,

    Defendants.

Case No. 1:17-cv-754 (Lead Case)
(Consolidated with 2:20-cv-81)

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Before the Court is the Plaintiffs' motion for attorneys' fees, (Doc. 173),[1] which asks the Court to award $3,500,000 in attorneys' fees, $216,561.44 in litigation expenses, and $6,500 in incentive awards for the named plaintiffs ($3,500 for Plaintiff Hawes, $1,500 for Plaintiff Chiaraluce, and $1,500 for Plaintiff Fontaine), (*id.* (cross-referencing Doc. 147)), from the now-approved class action settlement, (*see* Docs. 143-2, 170-3, 172). For the reasons below, the Court **GRANTS** the motion (Doc. 173) **IN PART**. Specifically, it **AWARDS** class counsel **$3,500,000 in attorneys' fees and $216,561.44 in litigation expenses**, but only partially awards incentive payments for the named plaintiffs. On that latter score, the Court **AWARDS** Plaintiff Hawes **$750**, Plaintiff Chiaraluce **$150**, and Plaintiff Fontaine **$150**.

---

[1] The Court by default cites docket entries in the lead 1:17-cv-754 case and will specifically note when citing the 2:20-cv-81 case.

## BACKGROUND

The factual background to this case is lengthy and largely irrelevant to this Opinion and Order. In short, this case began when Plaintiffs sued Macy's (along with other manufacturers and retailers no longer part of the suit) because Macy's allegedly misrepresented the thread-count on some of its bedsheets. *Hawes v. Macy's Inc.*, No. 1:17-cv-754, 2023 WL 8811499, at *1 (S.D. Ohio Dec. 20, 2023). The suit was eventually certified as a class action. *Id.* at *2. Settlement negotiations ensued.

The parties struck a bargain and sought this Court's approval under Federal Rule of Civil Procedure 23(e) of the class action settlement. The agreement called for Macy's to pay $10,500,000 into a common fund that would be used to settle class claims. *Id.* The fund would satisfy class claims according to a tiered structure. Claimants who could prove they purchased (or whom Macy's could verify had purchased) the sheets in question would receive $7.50 on a first distribution. *Id.* at *3. Meanwhile, claimants who could not prove they purchased sheets, but who nevertheless attested under penalty of perjury that they did so, would receive $2.50 on a first distribution. *Id.* Then, after the first distribution, claimants in the first tier of claims would receive a pro-rata second distribution of up to 50% of the purchase price of their sheets. *Id.* After that second distribution, the remaining funds, under what is known as a cy pres provision, were to go to an unrelated nonprofit group. *Id.*

The Court denied approval of the original agreement because the cy pres provision rendered the agreement unfair, unreasonable, and inadequate. *Id.* at *13–*18. The Court also denied the original Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award of Class Representative Service Awards

2

(Doc. 147) as moot because it rejected the settlement agreement. *Hawes*, 2023 WL 8811499, at *18. But the Court noted that the agreement was otherwise fair, save the cy pres provision. *Id.*

The parties amended the settlement agreement. (Doc. 170-3). The amendments eliminated the cy pres provision and instead provided that both the first and second tiers of claimants (the latter being those who could not prove they owned sheets) would receive a pro-rata share of a third distribution. (*Id.* at #4759). The Court approved the amended settlement. (Doc. 172).

The parties now renew their motion for attorneys' fees, which motion incorporates the same facts and arguments as their previous motion. (Doc. 173 (cross-referencing Doc. 147)).

## LAW AND ANALYSIS

As the Court noted previously when rejecting the original settlement agreement, the *Erie* doctrine demands that the Court apply state substantive law to this diversity class action. *Hawes*, 2023 WL 8811499, at *5. And as the Court forecasted in that Opinion and Order, attorneys' fees and awards, "particularly when they depend on the outcome of the suit" (as they do in all common fund cases like this one), involve an application of substantive state law. *Id.*

When attorneys' fees and awards depend on the outcome of the suit, they become "part and parcel" with the cause of action. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 460 (10th Cir. 2017). The Court previously held that the causes of action underlying the settlement agreement and

3

class certification were governed by Ohio law. *Hawes*, 2023 WL 8811499, at \*6–\*7. So the Court will apply Ohio law when awarding attorneys' fees, expenses, and incentive awards.

### A. Attorneys' Fees

Class counsel requests the Court award $3,500,000 in attorneys' fees, which amounts to one third of the total common fund. (Doc. 147-1, #4286). While Ohio law authorizes attorney's fees in common fund cases, *see Smith v. Kroeger*, 37 N.E.2d 45, 48 (Ohio 1941), few Ohio cases delineate the appropriate *amount* of fees.

The principal case, *State ex rel. Montrie Nursing Home, Inc. v. Creasy*, involved a suit between nursing homes and the Ohio Department of Public Welfare over Medicaid reimbursement rates. 449 N.E.2d 763, 764 (Ohio 1983). The nursing homes sued as a class and eventually prevailed on the liability issue. *Id.* The trial court awarded over $900,000 in attorney's fees, to be paid by the state in addition to the $9,000,000 fund. *See id.* at 765. The Supreme Court of Ohio vacated the fee award, finding that any attorneys' fees "must come from the fund itself" rather than as an additional assessment against the state. *Id.* at 767. The Ohio Supreme Court then instructed the trial court on remand to recalculate an appropriate fee award based not on a percentage of the fund but "upon a determination of the amount of reasonable compensation for the legal services rendered by counsel." *Id.* It also instructed the trial court to consider five factors when assessing what compensation is "reasonable":

> (1) the time and labor involved in maintaining th[e] litigation, (2) the novelty, complexity, and difficulty of the questions involved, (3) the professional skill required to perform the necessary legal services,

4

(4) the experience, reputation, and ability of the attorneys, and (5) the miscellaneous expenses of th[e] litigation.[2]

*Id.*

The first four of the factors largely map onto what federal courts would typically call a lodestar analysis. In a lodestar analysis, courts determine the reasonableness of the hours the various attorneys spent on the matter, the propriety of their respective levels of experience for the task at hand, and the reasonable rates that such attorneys would charge. *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 624 (6th Cir. 2020); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52 (2010). Courts then multiply the reasonable rate by the reasonable hours for each class attorney and sum such values across all the class attorneys to determine the lodestar. *See Linneman*, 970 F.3d at 624.

Compare that to *Creasy*. The question of what constitutes a reasonable number of hours is largely subsumed in the first *Creasy* factor. The appropriateness of the task to the experience of a given attorneys is addressed in the third. And the reasonableness of the hourly rates is covered by the fourth. The second *Creasy* factor appears to correspond to what federal courts sometimes refer to as a risk multiplier, which they sometimes apply to the lodestar calculation to account for the novelty, complexity, and difficulty of the issues that a case presents (and the corresponding risk that the attorneys will not prevail and obtain fees). *See Linneman*, 970 F.3d at

---

[2] The parties separately ask for an award of other legal expenses, so the Court will analyze the fifth factor separately.

624 ("The lodestar method attempts to approximate the work done … with the possibility of an enhancement in certain cases.").

More recently, at least some Ohio courts also have blessed the percentage-of-the-fund approach for determining attorneys' fees for common fund cases. *Steiner v. Van Dorn Co.*, 660 N.E.2d 1256, 1258 n.2 (Ohio Ct. App. 1995); *Musial Offs., Ltd. v. Cnty. of Cuyahoga*, 163 N.E.3d 84, 92 (Ohio Ct. App. 2020) (affirming an award of counsel fees valued at 50% of common fund). This approach to setting fees likewise mirrors in some ways typical federal class action practice, where attorneys' fee awards that are based on a lodestar may be subject to a percentage-of-the-fund cross-check. *E.g.*, *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 281–82 (6th Cir. 2016).

Given the basic similarities between Ohio law and general federal practice in awarding class counsel fees, and mindful of the Sixth Circuit's admonition that, "[i]n determining fee awards, courts should not become green-eyeshade accountants, but instead must content themselves with rough justice," *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 618 (6th Cir. 2021) (cleaned up), the Court here will start with a typical lodestar analysis and will then conduct a percentage-of-the-fund cross-check. As described below, based on the combination of the two, the Court finds that the requested $3,500,000 attorney fee award is reasonable.

1. **Lodestar Analysis**

Based on the billing materials class counsel presented, it appears class counsel (some 25 separate attorneys) and their professional staff spent over 6,154 hours on

this matter during more than five years of litigation. (Doc. 147-1, #4309; Doc. 147-2, #4338–40). At the fairness hearing, the Court inquired further of class counsel regarding the various activities they undertook. Class counsel represented, for example, that they reviewed over a million pages of discovery that were produced in response to the document requests they had drafted. Apart from those discovery activities, class counsel drafted several motions, including a successful motion to certify a class, as well as responses to motions to dismiss and a motion for summary judgment. Class counsel further researched and reviewed industry standards for thread counting. (Doc. 147-2, #4329). They analyzed test results for Plaintiffs' sheets and consulted thread counting experts. (*Id.* at #4330). And, of course, class counsel were involved in settlement negotiations with defendant. In sum, the Court finds that the hours class counsel incurred were reasonable in light of the tasks that they accomplished.

Having reviewed class counsel's hourly rates, the Court also concludes that these rates are appropriate. (*Id.* at #4338–41 (providing hourly rates for each attorney and collecting cases where similar rates have been approved in other class actions)). Class counsel are experienced litigators and have practiced in the class action field for years, in which they secured class settlements topping hundreds of millions of dollars. (*See id.* at #4319–28). In connection with this matter, class counsel exhibited professional skill both in their factual investigations and their legal advocacy before the court, thereby securing a class certification and surviving a motion for summary judgment. (*Id.* at #4328–32).

While not one of the *Creasy* factors, the Court notes that class counsel has litigated this case for five years on a contingency fee basis, and thus has assumed great risk in the process. Federal courts often account for such risk when determining the reasonableness of attorney fee awards. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

Multiplying the hours by the hourly rates produces a lodestar of $4,711,813.80. (Doc. 147-2, #4337–38). Class counsel (wisely) does not seek that full amount, as that would approach 45% of the entire common fund. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii) (considering the "terms of any proposed award of attorney's fees" as relevant to the adequacy of class relief). But class counsel's lodestar calculation does reinforce the reasonableness of the $3,500,000 attorneys' fees request.

In short, the Court believes the request for $3,500,000 in attorneys' fees is reasonable on a lodestar basis.

### 2. Percentage of the Fund Cross-Check

Assessed on a percentage-of-the-fund basis, Class counsel's fee request—which represents 33% of the common fund—appears within the norm for such cases. For example, the two Ohio common fund cases the Court could locate in which attorney's fees were awarded as a percentage of the fund exceeded, on a percentage basis, the award requested here. *Hoeppner*, 780 N.E.2d 290, 294 (Ohio Ct. App. 2002) (40%);[3] *Musial Offs.*, 163 N.E.3d at 92 (50%). The requested fee also largely aligns more generally with the fee awards for consumer protection cases (within the Sixth Circuit

---

[3] *Hoeppner* reversed the trial court's fee award on other grounds. *See* 780 N.E.2d at 229.

8

and without), as well as fee awards in other kinds of class actions within the Sixth Circuit. *See, e.g.*, *Zilinsky v. LeafFilter N., LLC*, No. 2:20-cv-6229, 2023 WL 2696554, at *6 (S.D. Ohio Mar. 29, 2023) (approving a 1/3 award in a consumer protection action regarding misrepresentations regarding gutter protectors);[4] *Keil v. Lopez*, 862 F.3d 685, 701–03 (8th Cir. 2017) (affirming a district court's award of 25% of the fund in a class action over mislabeled pet food); *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622–23 (8th Cir. 2017) (affirming a district court's award of 28% of the fund in a class action related to unsolicited telephone calls from fitness centers); *see generally In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001) ("[T]he range of reasonableness ... has been designated as between twenty to fifty percent of the common fund.").

In terms of a cross-check, the Court finds the one-third request here reasonable.

**B.   Litigation Expenses**

Ohio law's common fund doctrine substantially relies on the reasoning of the Supreme Court in *Internal Improvement Fund Trustees v. Greenough*, 105 U.S. 527 (1881). *See Hoeppner*, 780 N.E.2d at 299 (citing *Greenough*); *Rocca v. Wilke*, 371 N.E.2d 223, 229 (Ohio Ct. App. 1977) (same). In *Greenough*, the Supreme Court held that when a plaintiff secures a benefit for himself and an entire class, he can recover

---

[4] *Zilinsky* did not involve extensive discovery or a motion for summary judgment. The parties settled after the motion-to-dismiss stage. *Zilinsky*, 2023 WL 2696554, at *1. This supports a finding here that a one-third award would be reasonable given counsel has done far more to advance the interests of the class.

9

"reasonable costs" related to the suit. 105 U.S. at 537. Those "reasonable costs" include expenses incurred in generating the benefit. *Id.* (allowing plaintiff to recover "his reasonable costs, counsel fees, *charges, and expenses* incurred in the fair prosecution of the suit" (emphasis added)).

Class counsel seeks $216,561.44 in expenses. (Doc. 173, #4770). The expenses include transcript and deposition expenses, legal database subscriptions, and expert and investigation expenses, among others, that counsel, because of their contingency fee structure, personally incurred. (Doc. 147-2, #4343). The Court finds the expense report to be reasonable, given it lists activities directly related to the suit. The Court therefore awards the requested $216,561.44 as reimbursed expenses.

## C.  Incentive Awards

That brings us to the requested incentive awards for the named plaintiffs. Here, the Court has some concerns.

As already stated, Ohio's common fund doctrine substantially borrows from *Greenough*. In *Greenough*, the plaintiff, a creditor and bondholder for the Florida Railroad Company (a state-owned company), brought a suit on behalf of himself and other bondholders against trustees of the Internal Improvement Fund of Florida, a fund that owned over 11 million acres of land, the proceeds of which were supposed to pay the interest on the bonds. 105 U.S. at 528–29. The plaintiff alleged that the trustees were being wasteful and sought to void several fraudulent conveyances. *Id.* He was successful, and because of his efforts, the vitality of the fund was maintained to the benefit of not just himself, but every other Florida Railroad Company

10

bondholder. *Id.* The plaintiff sought reimbursements for (1) litigation related expenses, (2) attorney's fees, and (3) his "personal services" (i.e., the time and effort he spent in pursuing the litigation). *See id.* at 529–31.

The Supreme Court held that, as a matter of equity, the plaintiff was entitled to recover expenses and attorney's fees from the common fund, despite the unavailability of those fees under the then-governing fee bill (the modern equivalent of a schedule of taxable court costs). *Id.* at 532–33, 535. The Supreme Court reasoned,

> It would be very hard on him to turn him away without any allowance except the paltry sum which could be taxed under the fee-bill. It would not only be unjust to him, but it would give to the other parties entitled to participate in the benefits of the fund an unfair advantage. He has worked for them as well as for himself[.]

*Id.* at 532. The *Greenough* Court relied on the rule that trusts "must bear the expenses of [their] administration" and held that, by analogy, the common fund should reimburse the plaintiff for "reasonable costs, counsel fees, charges, and expenses incurred in the fair prosecution of the suit." *Id.* at 532, 537.

But when it came to the reimbursement for "personal services," the *Greenough* Court pivoted. It stated that the plaintiff, as a creditor, was suing on behalf of himself and others, and that "[t]he reasons which apply to his expenditures … do not apply to his personal services." *Id.* at 537. The Court stated that unlike a trustee, who ordinarily is entitled to reasonable compensation for personal services, a creditor needs no encouragement "to secure greater activity and diligence" in maintaining the fund, presumably because he would personally benefit from the vitality of the fund. *Id.* at 537–38. The Supreme Court's holding then, turns on this trustee/creditor divide—allowing compensation for trustees and refusing the same for creditors.

11

The Courts of Appeals have since split on the application of *Greenough*'s logic to the class action context. The Ninth Circuit, for example, has held that *Greenough*'s enunciation of the common fund doctrine does not bar incentive awards for class representatives because such awards are not like the salary sought in *Greenough*. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 786–87 (9th Cir. 2022). The Eleventh Circuit, by contrast, sees no daylight between incentive awards and the salary in *Greenough*—both creditors and class members litigate to benefit themselves and the class and therefore both are precluded from receiving personal compensation from the fund. *See Johnson v. NPAS Sol'ns, LLC*, 975 F.3d 1244, 1255–61 (11th Cir. 2020).

The Court finds that the common fund doctrine, as enunciated by *Greenough* and incorporated by Ohio, does not preclude incentive awards to class representatives. Class representatives, though not a perfect fit, are more akin to trustees than creditors. Class representatives, like trustees and unlike creditors, owe fiduciary duties to the rest of the class. Benjamin Gould, *On the Lawfulness of Awards to Class Representatives*, 2023 Cardozo L. Rev. de novo 1, 19–20 (2023). And class representatives, like trustees, often require extra economic incentives to pursue the benefit of the class with "diligence." *Id.* at 21; *Greenough*, 105 U.S. at 537. So, like trustees, it seems appropriate that class representatives may receive an extra award as compensation for their litigation efforts.

But there are limits. As *Greenough*'s logic implies, incentive awards are akin to compensation that "induce[s]" the class representative's diligence in seeking the

12

benefit of the class. 105 U.S. at 537. They are not designed as—and cannot validly be—windfalls for the class representative. Indeed, the Sixth Circuit has suggested as much by cautioning district courts to beware of incentive awards that "may lead named plaintiffs to expect a bounty for bringing suit" or that make the named plaintiffs "more than whole" such that they "have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013) (cleaned up).

Rule 23's equitability requirement reinforces this no-windfall rule. Any class action settlement must treat all class members (including class representatives) "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). A class action settlement treats class representatives equitably when it compensates them such that the rest of the class is not unjustly enriched at the representatives' expense. *See Moses v. N.Y. Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023); *cf. Greenough*, 105 U.S. at 532 ("It would not only be unjust to him [not to award fees], but it would give to the other parties entitled to participate in the benefits of the fund an unfair advantage."). Incentive awards that operate as a bounty for bringing suit, on the other hand, unjustly enrich *class representatives* at the rest of the class's expense merely because the representative signed their name to a suit that had the power of a large class behind it. *See Moses*, 79 F.4th at 245. The ideal incentive award, then, will make a class member ambivalent as between becoming a named representative or remaining an absent class member. That is, the incentive award should overcome the economic

13

disincentive of participating in the litigation as a class representative, but not create a profit motive to serve in that role.

Measured against that standard, the incentive award request here is too high. Plaintiff Hawes would receive $3,500 for being the lead plaintiff in a suit about bedsheets; a suit in which the damages for any individual class member likely never tops $18. Meanwhile plaintiffs Chiaraluce and Fontaine would each receive $1,500, even though they did not join the litigation until 2020. (*See* Case No. 2:20-cv-81, Doc. 1). And perhaps most importantly, class counsel could not substantiate nor even persuasively estimate how much time any of these plaintiffs had spent on legal matters during the more-than-five-year course of this litigation. At the fairness hearing, when the Court asked what actions the named plaintiffs took on behalf of the class, class counsel stated,

> Ms. Hawes sat through discovery. The other two plaintiffs, Mr. Fontaine and Chiaraluce [sic], worked with us every step of the way. They were available during settlement negotiations, provided information that we needed. … [T]hey helped us in the investigation, the talk, speaking [sic] to them about what was your [sic] experience in purchasing the sheets …

(Case No. 2:20-cv-81, Doc. 45, #598). The Court finds class counsel's vague description wanting. Working with class counsel "every step of the way" and being *available* during settlement negotiations hardly suggests that named plaintiffs engaged in much meaningful work on behalf of the class, such that absent a service award the class would be unjustly enriched at the named plaintiffs' expense. True, the record reflects that Hawes, the lead plaintiff from the beginning of the lawsuit in 2017, was

14

deposed. (Doc 84-11). But that is the only objective accounting of *any* actual work that any named plaintiff performed apart from signing on the bottom line.

Class counsel's request would ultimately require this Court to rely on counsel's subjective assessment to award the named plaintiffs an amount between *200x and 1400x* the per-capita class recovery that other class member will receive on a first distribution.[5] That is excessive both procedurally (because class counsel never provided an accounting of the named plaintiffs' work) and substantively. *See Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 628 (E.D. Mich. 2020) (holding that incentive award that was over 100x the class member recovery was excessive). At bottom, if class counsel intends to seek an incentive award that represents such an inflated recovery compared to what the absent class members will receive, it is incumbent upon counsel to explain why it is justified. Here, counsel failed to do so.

The Court therefore reduces the incentive award: granting $750 to Plaintiff Hawes (in recognition of her preparation for and participation in her deposition) and $150 each to Plaintiffs Chiaraluce and Fontaine (in light of the lack of any evidence as to the hours either invested or the tasks they performed). The Court finds that this amount better approximates a proper inducement (i.e., a reasonable estimate of the value of the services they provided to the class) and avoids a windfall.

---

[5] The low 200x figure is drawn from the smaller named plaintiff awards ($1,500) divided by the larger tier first distribution ($7.50). The 1400x figure is drawn from the larger named plaintiff award ($3,500) divided by the smaller tier first distribution ($2.50).

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiffs' Renewed Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award of Class Representative Service Awards and Entry of Final Judgment (Doc. 173), and **AWARDS** class counsel **$3,500,000 in attorneys' fees and $216,561.44 in litigation expenses**. But the Court only partially awards incentive payments for the named plaintiffs. Specifically, the Court **AWARDS** Plaintiff Hawes **$750**, Plaintiff Chiaraluce **$150**, and Plaintiff Fontaine **$150**. Accordingly, the Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

      **SO ORDERED.**

May 13, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**